SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Phone:  (415) 979-0500
Fax:      (415) 979-0511

Raymond M. DiGuiseppe (SBN  228457)
**LAW OFFICES OF RAYMOND MARK DIGUISEPPE, PLLC**
4002 Executive Park Blvd., Suite 600
Southport, NC 28461
Phone: (910) 713-8804
Fax:      (910) 672-7705

Attorneys for Plaintiffs
WILLIAM WIESE, JEREMIAH MORRIS,
LANCE COWLEY, SHERMAN MACASTON,
ADAM RICHARDS, CLIFFORD FLORES,
L.Q. DANG, FRANK FEDEREAU, ALAN NORMANDY,
TODD NIELSEN, THE CALGUNS FOUNDATION,
FIREARMS POLICY COALITION,
FIREARMS POLICY FOUNDATION,
and SECOND AMENDMENT FOUNDATION

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WIESE, an individual; JEREMIAH MORRIS, an individual; LANCE COWLEY, an individual; SHERMAN MACASTON, an individual; ADAM RICHARDS, in his capacity as Trustee of the Magazine Ban Lawsuit Trust; CLIFFORD FLORES, individually and as trustee of the Flores Family Trust; L.Q. DANG, an individual; FRANK FEDEREAU, an individual; ALAN NORMANDY, an individual; TODD NIELSEN, an individual; THE CALGUNS FOUNDATION; FIREARMS POLICY COALITION; FIREARMS POLICY FOUNDATION; SECOND AMENDMENT FOUNDATION, <br><br>                 Plaintiffs, <br><br>        vs. | Case No. 2:17-cv-00903-WBS-KJN <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

– 1 –

XAVIER BECERRA, in his official capacity as
Attorney General of California; MARTHA
SUPERNOR, in her official capacity as Acting
Chief of the Department of Justice Bureau of
Firearms,

                Defendants.

COME NOW the plaintiffs WILLIAM WIESE, JEREMIAH MORRIS, LANCE

COWLEY, SHERMAN MACASTON, ADAM RICHARDS, CLIFFORD FLORES, L.Q.

DANG, FRANK FEDEREAU, ALAN NORMANDY, TODD NIELSEN, THE CALGUNS

FOUNDATION, FIREARMS POLICY COALITION, FIREARMS POLICY FOUNDATION,

and SECOND AMENDMENT FOUNDATION (collectively, "Plaintiffs"), by and through their

undersigned counsel, who hereby complain and allege as follows:

## **INTRODUCTION**

1.      This is a facial and as-applied constitutional challenge to California Penal Code §
32310, as recently amended by Senate Bill 1446 and Proposition 63, and Penal Code § 32390
(collectively, the "Large-Capacity Magazine Ban"), which would, if enforced, and as applied,
individually and collectively prohibit Plaintiffs and other law-abiding citizens from continuing to
possess, use, or acquire lawfully-owned firearms, in common use for lawful purposes such as
self-defense (inside and outside the home), competition, sport, and hunting.

2.      This action further challenges the Large-Capacity Magazine Ban statutory scheme
which would, if enforced, as of July 1, 2017, subject thousands of law-abiding gun owners to
criminal liability and sanctions, and subjecting their lawfully-possessed personal property to
forfeiture, seizure and permanent confiscation, without due process or compensation.

3.      Moreover, the Large-Capacity Magazine Ban is hopelessly vague and ambiguous,
as it fails to provide fair or even adequate notice to law-abiding gun owners of what they may do
with their personal property without being subject to criminal sanctions, fails to fairly or

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

adequately inform them of which version of the statutes may apply, fails to fairly or adequately inform them whether they are subject to an exception thereunder, and encourages or authorizes arbitrary or discriminatory enforcement.

4.     The Large-Capacity Magazine Ban is also unconstitutionally overbroad because its provisions capture a substantial amount of constitutionally-protected activity, the prohibition of which does not advance the stated justification for the ban, and the law is not readily susceptible to a limiting construction that would render it constitutional.

5.     The possession of all ammunition magazines, which are intrinsic operating parts of modern, constitutionally-protected semi-automatic firearms, has heretofore been legal.  In 1999, through passage of Senate Bill 23 ("SB23"), California enacted legislation banning the importation, sale or manufacture of standard-capacity ammunition feeding devices that can hold more than ten rounds of ammunition (so-called "large-capacity magazines" as the Legislature called and defined them in Cal. Penal Code § 16740).  However, as a part of SB23, possession of lawfully-acquired "large capacity magazines" was not prohibited and continued to be legal. Therefore, millions of these "grandfathered" large-capacity magazines have existed and currently are lawfully possessed by law-abiding California gun owners.  More to the point, they are inherent, operating parts of handguns and other firearms that are lawfully owned and protected under the United States Constitution.  The Large-Capacity Magazine Ban is, effectively and now, actually, a confiscation, in part, of bearable arms, protected by the United States Constitution.

6.     This action therefore seeks to vindicate the right of the people of the State of California, including Plaintiffs, and others similarly situated, to keep and bear arms under the Second Amendment, as incorporated to the states, which prohibits infringement of a core right to keep and use commonly-possessed firearms for lawful purposes, including self-defense.

7.     This action is brought by individual and organizational plaintiffs, both on their own behalves, and as representatives on behalf of the class of individuals who are or would be affected by the Large-Capacity Magazine Ban, that is, those law-abiding California residents, who are not otherwise exempt, who lawfully and have legally possessed Large-Capacity

– 3 –

Magazines in this state, prior to December 31, 1999.

**PARTIES**

8.     Plaintiff William Wiese is a natural person and a law-abiding California resident who resides in the City of San Jose, California.  Wiese has lawfully owned and possesses large-capacity magazines, as defined by statute, before 2000.  Wiese is a board member and supporter of The Calguns Foundation.  Wiese is a member and supporter of Second Amendment Foundation, Firearms Policy Coalition, and Firearms Policy Foundation.  Plaintiff Wiese is suing herein in his capacity as an individual, and as a named Trustor and Beneficiary of the Magazine Ban Lawsuit Trust, described further herein.

9.     Plaintiff Jeremiah Morris is an individual, and a law-abiding resident of the County of Kern, California.  Morris has possessed, and continues to lawfully possess a so-called large-capacity magazine for an AR-type rifle, chambered in 5.56 x 45 mm, since before the ban on the importation and sale of such magazines in 2000.  Morris holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff, issued to him only after proving "good cause" and his "good moral character" to his licensing authority, successfully completing a course of training on the law and firearms proficiency, passing an extensive Live Scan-based background check[1] and placement into the State's "Rap Back" system for monitoring law enforcement contact, arrests, and criminal convictions.  Morris has maintained an active CCW license, requiring additional training and background checks, since 2010.

10.     Plaintiff Lance Cowley is an individual, and a law-abiding resident of the County of Placer, California.  Plaintiff Cowley is the lawful possessor of one or more large-capacity magazines, as defined by statute, which he legally acquired before 2000.  Cowley is a member and supporter of The Calguns Foundation, Second Amendment Foundation, Firearms Policy Coalition, and Firearms Policy Foundation.

---

[1] Laws relating to licenses to carry a concealed handgun are set forth in California Penal Code § 26150, *et seq.*

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

11.     Plaintiff Sherman Macaston is an individual, and law-abiding resident of the County of Sonoma, California.  Plaintiff Macaston was born and raised in California, and has honorably served his country, serving two combat tours of duty in Vietnam.  After being honorably discharged from the United States Army in 1978, Plaintiff Macaston returned to California, and here he lawfully acquired, prior to 2000, large-capacity magazines for a Browning Hi-Power pistol, chambered in 9mm, and large-capacity magazines for a Smith & Wesson Model 59 pistol, also chambered in 9mm.  In fact, the large-capacity magazines that Plaintiff Macaston acquired for the Smith & Wesson Model 59 pistol are the only magazines that he has for that particular pistol, and as far as plaintiff Macaston is aware, and on information and belief, no 10-round OEM magazines were ever produced by the original manufacturer, specifically for that particular pistol, before its production was discontinued in 1988.

12.     Plaintiff Adam Richards is an individual and licensed attorney, with a law practice in the County of Sacramento, California, suing herein in his capacity as a duly appointed Trustee of the Magazine Ban Lawsuit Trust, a trust that was created and established under California law in 2017 to keep one or more large-capacity magazines owned by plaintiff Wiese within this state during the duration of this lawsuit, and thereafter, in accordance with California law, to wit: Cal. Penal Code § 32406, subdiv. (e), as currently chaptered.[2]  See paragraph 86, *infra*.  In his capacity as trustee of the Magazine Ban Lawsuit Trust, plaintiff Richards has received or will have received one or more large-capacity magazines.

13.     Plaintiff Clifford Flores is an individual and law-abiding resident of the County of Santa Clara, California.  Plaintiff Flores has possessed, and continues to possess, large-capacity magazines as defined by statute, since before 2000, which include a large capacity magazine originally manufactured for, and made a part of a Pistole Parabellum 1908 Luger pistol,

---

[2]Plaintiffs' reference to this statute should not be construed as and is not intended as any concession on the validity or enforceability of the ban, in whole or in part, the entirety of which Plaintiffs maintain is unconstitutional. *See e.g., infra,* Count III, ¶¶ 81-90 (demonstrating how the conflicting versions of the law as chaptered under SB 1446 and Prop. 63 render the law void for vagueness).

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  chambered in 9mm Luger, and a large-capacity magazine originally manufactured for, and made

2  a part of a Mauser C96 "Broomhandle" pistol, also chambered in 9mm Luger.  On information

3  and belief, both of these pistols are World War I-era pistols, manufactured in 1917 or before, and

4  imported into the United States thereafter for legal sale and acquisition by collectors.  On

5  information and belief, the large-capacity magazines that are a part of these pistols have

6  substantial historical and financial value, and are irreplaceable – especially in California, where

7  the transfer of large-capacity magazines by ordinary citizens has been generally prohibited since

8  2000.  Plaintiff Flores would like to pass these pistols on to his son, a law-abiding California

9  resident, but is prevented from doing so due to the prohibition on the transfer of large-capacity

10  magazines within this state, as described herein, and he would be deprived of any opportunity to

11  pass the same onto any family member, or anyone else, should he be forced to dispose of the

12  magazines pursuant to the Large-Capacity Magazine Ban.  Plaintiff Flores is suing in his

13  capacity as an individual and as the trustee of the Flores Family Trust, a testamentary trust

14  established in approx. 2008 to bequeath all personal property to his children, successors, issue

15  and heirs, including his son.

16      14.      Plaintiff L.Q. Dang is an individual, and law-abiding resident of the County of

17  Alameda, California.  Plaintiff Dang has lawfully owned, since before 2000, two large-capacity

18  magazines as defined by statute for a Steyr GB pistol, chambered in 9mm Luger.  The large-

19  capacity magazines which plaintiff Dang owns is solely for use with that pistol, and on

20  information and belief, no other magazine that holds ten or fewer rounds of ammunition was

21  manufactured or is otherwise compatible with that firearm.  Plaintiff Dang is a supporter of the

22  Calguns Foundation.

23      15.      Plaintiff Frank Federau is an individual, and law-abiding resident of the County of

24  San Francisco, California.  Plaintiff is the lawful possessor of large-capacity magazines,

25  including one or more magazines that are currently working and intrinsic parts of a lawfully

26  possessed AR-15 platform model rifle, chambered in .458 SOCOM caliber.  Said magazines hold

27  10 rounds of .458 SOCOM ammunition for the firearm as it is currently chambered and used.

28

However, such magazine also holds 30 rounds of 5.56 x 45mm ammunition, and is therefore classified as a large-capacity magazine under California law, even though plaintiff's firearm does not accept that round.  On information and belief, plaintiff Federau is one of many other persons in a similar situation regarding the use of firearm magazines that are capable of accepting more than 10 rounds of a different caliber ammunition. Federau is a member and supporter of The Calguns Foundation, Second Amendment Foundation, Firearms Policy Coalition, and Firearms Policy Foundation.

16.     Plaintiff Lt. Alan Normandy (retired) is an individual and law-abiding resident of Prescott, Arizona.  Normandy has family in California and visits them often.  Normandy is an honorably retired police officer who faithfully served the people of California in the South San Francisco Police Department for over 28 years.  Normandy competes in shooting competitions and conducts and participates in firearms training, and would like to do so in California.  Normandy is a former S.W.A.T. and tactical firearms instructor, and a firearms expert.  Normandy was a firearms consultant for the "Mythbusters" television program produced for and broadcast on the Discovery Channel.  Normandy is an individual member, member of the board of directors, and the current vice-president of Firearms Policy Coalition.  Normandy is a member and supporter of The Calguns Foundation, Second Amendment Foundation, and Firearms Policy Foundation.

17.     Plaintiff Todd Nielsen is an individual and a law-abiding resident of Mapleton, Utah.  Nielsen is an honorably retired peace officer and a 20+ year veteran of the San Jose Police Department.  Nielsen competes in shooting competitions and conducts and participates in firearms training through his firm, Nielsen Training and Consulting.  Nielsen is a member and supporter of The Calguns Foundation, Second Amendment Foundation, Firearms Policy Coalition, and Firearms Policy Foundation.

18.     Plaintiff The Calguns Foundation, Inc. (CGF) is a non-profit membership organization incorporated under the laws of California with its principal place of business in Sacramento, California, with members residing both within and outside of this state, dedicated to

promoting education for all of stakeholders about California and federal firearm laws, rights and privileges, and defending and protecting the civil rights of California gun owners.  CGF represents these members and supporters, who include California firearm retailers and consumers.  CGF brings this action on behalf of itself, its members, supporters, who possess all the indicia of membership, and similarly situated members of the public.

19.  Plaintiff Firearms Policy Coalition, Inc. (FPC) is a non-profit membership organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California, with members residing both within and outside of this state, that serves its members and the public through direct and grassroots advocacy, legal efforts, and education. The purposes of FPC include defending the United States Constitution and the People's rights, privileges and immunities deeply rooted in the Nation's history and tradition, especially the fundamental right to keep and bear arms.  FPC represents these members and supporters, who include California firearm retailers and consumers.  FPC brings this action on behalf of itself, its members, supporters, who possess all the indicia of membership, and similarly situated members of the public.

20.  Plaintiff Firearms Policy Foundation, Inc. (FPF) is a non-profit membership organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California, with members residing both within and outside of this state, that serves to defend and advance constitutional rights through charitable purposes, with a focus on the fundamental, individual right to keep and bear arms.  FPF represents these members and supporters, who include California firearm retailers and consumers.  FPF brings this action on behalf of itself, its members, supporters, who possess all the indicia of membership, and similarly situated members of the public.

21.  Plaintiff Second Amendment Foundation, Inc. (SAF) is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including California.  The purposes of SAF include education, research, publishing and legal action

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.  SAF brings this action on behalf of itself, its members, supporters, who possess all the indicia of membership, and similarly situated members of the public.

22.     Individual plaintiffs Wiese, Morris, Cowley, Macaston, Flores and Dang are bringing this claim on behalf of themselves, and as representatives of the class of similar individuals consisting of law-abiding California residents, who are not otherwise prohibited nor exempt, who lawfully and have legally possessed Large-Capacity Magazines in this state, prior to December 31, 1999.  Organizational plaintiffs CGF, FPC, FPF and SAF are bringing this claim as public interest organizations, whose California members similarly have lawfully possessed Large-Capacity Magazines in this state, prior to December 31, 1999.  As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties and liabilities of a large number of California residents who knowingly or unknowingly are subject to the Large-Capacity Magazine Ban.  The relief sought in this action is declaratory and injunctive in nature, and is a matter of substantial public interest.

23.     Individual plaintiffs and California Residents Richards and Flores, in addition to any other capacity designated herein, are suing as trustees of trusts created under California law. The creators of said trusts have evidenced an intention to pass along such lawfully-acquired and held personal property to the beneficiaries, or their children, issue or heirs, but are or would be prevented from doing so by the prohibition on the transfer of personal property represented by the Large-Capacity Magazine Ban.

24.     Individual plaintiffs and California residents Wiese, Morris, Cowley, Macaston, Flores, Dang and Federau also seek to acquire, and would acquire, additional large-capacity magazines for lawful use and purposes such as self-defense, recreation and competition, as would many of the members of CGF, FPC, FPF, and SAF, but they are and have been further prevented from doing so by the Large-Capacity Magazine Ban.

25.     Defendant Xavier Becerra is the Attorney General of the State of California, and is sued herein in his official capacity.  The Attorney General is the chief law enforcement officer

1    of the state, and it is his duty to ensure that California's laws are uniformly and adequately

2    enforced.  The Attorney General is the head of the California Department of Justice ("DOJ").

3    The DOJ and its Bureau of Firearms regulate and enforce state law related to the sales,

4    ownership, and transfer of firearms, including the licensing and regulation of firearms dealers.

5    The Attorney General maintains an office in Fresno.

6         26.     Defendant Martha Supernor is the Acting Chief of the DOJ Bureau of Firearms.

7    Upon information and belief, Ms. Supernor reports to Attorney General Becerra, and is

8    responsible for overseeing the licensing and regulation of firearms and firearms dealers.  She is

9    sued herein in her official capacity.

**JURISDICTION AND VENUE**

     27.     This court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1331,
as this action arises under the Constitution and laws of the United States, and under 28 U.S.C. §§
1343 and 42 U.S.C. § 1983.  All Plaintiffs herein are seeking relief under the Declaratory
Judgment Act, 28 U.S.C. §§ 2201-2202.  To the extent that the court determines that Plaintiffs
are asserting state law claims, this court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

     28.     Venue is proper under 28 U.S.C. § 1391(b).  Assignment to the Fresno Division is
proper pursuant to Local Rule 120(d) because the Attorney General and Department of Justice
maintain an office in Fresno and at least one of the named plaintiffs in this action resides in this
jurisdiction.

**BACKGROUND AND FACTS COMMON TO ALL COUNTS**

***The Second Amendment***

     29.     The Second Amendment to the United States Constitution states, in pertinent part,
that "the right of the people to keep and bear arms, shall not be infringed."  U.S. Const., Amend
II.  The Second Amendment further "elevates above all other interests the right of law-abiding,
responsible citizens to use arms in defense of hearth and home."  *District of Columbia v. Heller*,

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

554 U.S. 570, 635 (2008).  The Second Amendment protects "arms….of the kind in common use…. for lawful purposes like self-defense."  *Id.*, 554 U.S. at 624.

30.     California is unique in that its state constitution contains no provision securing the right to keep and bear arms.  Without any express right to keep and bear arms within its constitution, the political branches of the State were effectively given free rein to restrict the rights of law-abiding people for decades, creating one of the most onerous and burdensome gun control schemes in the country.

31.     Indeed, until the U. S. Supreme Court decided *McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010), and incorporated the Second Amendment's guarantees as against states and local governments through the Fourteenth Amendment, law-abiding California residents and visitors were not able to enjoy the freedoms and benefits of an enduring and substantive protection of the fundamental, individual right to keep and bear arms.

32.     The Second Amendment is not a second-class guarantee buried at the bottom of our Constitution.  As the Court held in *McDonald*, "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those *fundamental* rights necessary to our system of ordered liberty."  130 S.Ct. at 3043 (emphasis added.)

### *Ammunition Magazines and the California Magazine Ban*

33.     Ammunition magazines and feeding devices are an intrinsic part of all semi-automatic firearms, which were designed, developed, produced and sold in large quantities starting in the early 20th Century and continuing through today.  Today, a vast majority of firearms, including handguns, are self-loading semi-automatic firearms that require a magazine to feed each round of ammunition.  Of these semi-automatic firearms, a vast majority in existence use spring-loading magazines which load each successive round of ammunition.  A magazine is therefore an inherent part of, and inseparable from, a modern firearm.  In fact, most, if not all all semi-automatic firearms sold at retail by all manufacturers today are sold with at least one magazine included as an inherent part of that firearm.  A modern, semi-automatic

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  firearm is essentially inoperable without a magazine, or other ammunition feeding device.

2      34.    Although an exact number is not known at this time, as will be shown at trial,

3  over the past century, many millions of magazines have existed, lawfully within the United

4  States, as inherent parts of semi-automatic firearms commonly held and used by Americans for

5  lawful purposes like self-defense, competition, training, and sport.

6      35.    Likewise, and up through 1999, millions of California citizens lawfully acquired,

7  possessed and continued to possess semi-automatic firearms that contained, as a part of such

8  firearms, magazines, many of which were only *later* legislatively branded as "large-capacity

9  magazines," though they were never described as such before 1999.

10      36.    In 1999, through passage of Senate Bill 23, California enacted legislation

11  generally banning methods of acquiring standard-capacity ammunition feeding devices that can

12  hold more than ten rounds (so-called "large-capacity magazines", as defined in Penal Code §

13  16740).  However, as a part of Sen. Bill 23, as enacted, possession of lawfully-acquired "large

14  capacity magazines" was not prohibited and continued to be lawful.  Individual Plaintiffs Wiese,

15  Morris, Cowley, Macaston, Fores and Dang, and the members of the putative class of persons on

16  whose behalf this action is brought, are law-abiding citizens, who are neither prohibited nor

17  exempt, and who have lawfully possessed such large-capacity magazines through December 31,

18  1999.

19      37.    California gun owners, in trusting and justifiable reliance upon the legislative

20  compromise and the continued lawful possession of large-capacity magazines, owned, continued

21  to own, and acquired new firearms which included firearms capable of accepting large-capacity

22  magazines.  Furthermore, many California gun owners made choices regarding firearms based

23  upon the reasonable assumption that they would be able to use, and continue to use, lawfully-

24  acquired magazines, including large-capacity magazines.

25

26      38.    The California Department of Justice acknowledges, in its recently-issued

27  "Finding of Emergency" for regulations it had sought to promulgate related to the Large

28  Capacity Magazine Ban, that "[t]here are likely hundreds of thousands of large-capacity

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

magazines in California at this time. In recent years, there has been an increase in these types of firearms on the market. The Department therefore expects many gun owners to be affected by the new ban." The California Department of Justice likely understates the number of large-capacity magazines in this state. On information and belief, the true number of magazines well exceeds the Attorney General's estimates. A true and correct copy of the Department's "Finding of Emergency" promulgated on or about December 16, 2016 (less exhibits thereto) is attached hereto as **Exhibit A**.

39.     As a further matter of scale, moreover, this is not simply a matter of prohibiting ownership of one or two items of personal property. Many of California's gun owners, including some members and constituents of the organization plaintiffs, own many magazines, worth substantial amounts of value, for many different types of firearms. For example, plaintiff Flores has two large-capacity magazines as part of World War I-era Luger and Mauser pistols, the value of which is substantial, and which are irreplaceable, given the current state of California law. Plaintiff Macaston has grandfathered large-capacity magazines for a Smith & Wesson Type 59 pistol, for which Smith and Wesson never created original magazines capable of accepting ten or fewer rounds, specifically to be used with that pistol. And plaintiff Dang has two grandfathered large-capacity magazines for use with a Steyr GB pistol, which are very rare and difficult to obtain (and again, are impossible to obtain lawfully in California.) The financial impact for the loss of these intrinsic firearm parts would be substantial, as plaintiffs will demonstrat at trial.

40.     On July 1, 2016, Governor Brown signed into law the provisions of Senate Bill 1446, which amended and will amend Penal Code § 32310(b), to make it a criminal offense to possess large-capacity magazines starting on July 1, 2017, "regardless of the date the magazine was acquired[.]" The law as signed would also require a person in lawful possession of any large-capacity magazines prior to July 1, 2017, to dispose of such magazine(s) only as provided by the statute.

41.     Furthermore, on November 8, 2016, California voters enacted Proposition 63 (the

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

"Safety for All Act")[3], a measure that was sponsored and heavily promoted as a "gun safety" measure by Lt. Gov. Gavin Newsom.  Proposition 63 amended Penal Code §§ 32310, 32400, 32405, 32410, 32425, 32435, 32450, added section 32406, and repealed section 32420 by initiative statute, which changed the law to totally prohibit and criminalize the possession of "large-capacity magazines" as of July 1, 2017, for Plaintiffs and others similarly situated. Proposition 63 took effect on the day after the election.  (Cal. Const., Art. II, § 10(a): "An initiative statute or referendum approved by a majority of votes thereon takes effect the day after the election unless the measure provides otherwise.")

42.     Absolutely no financial impact statement or report about the costs of enforcement of this scheme was ever conducted in conjunction with either SB 1446, or Proposition 63, because both the bill's sponsors, and the initiative's promoters, simply assumed that the state, via local law enforcement agencies, had the power to confiscate the magazines without providing compensation therefor.

43.     In fact, in enacting the provisions of SB 1446, and/or Proposition 63, neither the sponsors of the bill, nor the proponents of the initiative, considered such statutory scheme to implicate any takings violation at all.  (*See* Senate Rules Committee Analysis dated 5/19/16 regarding SB 1446, at pp. 4-5 (summarily concluding that "courts have held that prohibiting possession of dangerous weapons is a valid exercise of the government's police power not to be confused with the power of imminent domain [*sic*][,]" a copy of which is attached hereto as **Exhibit B**.)  Therefore, the State has neither created nor established, nor has there even been any established process, remedy or administrative body to which one may seek compensation for the surrender/takings of the firearm parts at issue.  Accordingly, Plaintiffs are not required to exhaust any administrative remedies, as there are no such administrative remedies available at all, and any request for compensation by individual magazine holders – individually and collectively – would be futile.

---

[3]The full text of Proposition 63 can be viewed or downloaded at:
https://www.oag.ca.gov/system/files/initiatives/pdfs/15-0098%20(Firearms)_0.pdf.

44.     Plaintiffs simply wish to continue to hold and otherwise exercise their Second Amendment right to possess, keep, use and acquire firearms and standard-capacity magazines, which are in common use, and for lawful purposes, but cannot because of the total, categorical ban presently and soon to be imposed by the Large-Capacity Magazine Ban.

45.     Plaintiffs further wish, on their own behalves, on behalf of all similarly-situated individuals lawfully possessing large-capacity magazines, to prevent the state from enforcing its statutory scheme which amounts to a taking of constitutionally-protected arms, without just compensation, by declaring the entire statutory scheme to be invalid.

46.     The ammunition magazines that Plaintiffs wish to continue to lawfully possess, use and/or acquire—those items prohibited through California's Large-Capacity Magazine Ban—are exactly the type of instruments that are afforded protection under the Second Amendment for the acquisition, protection, and use by law-abiding people for the preservation of self and the state in times of unjust force. They are inherent parts of lawfully acquired and possessed firearms including most handguns, that are now subject to confiscation, i.e., through "surrender" to the state.

47.     Such magazines are, in virtually every other state of the Union, exactly the sorts of lawful weapons in common use that law-abiding people possess at home for lawful purposes–and exactly what they would bring to service in militia duty should such cause be necessary. *See, e.g., Heller II*, 670 F.3d at 1261 ("We think it clear enough in the record that semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use,' as the plaintiffs contend."); *Colorado Outfitters Ass'n v. Hickenlooper*, 24 F. Supp. 3d 1050, 1068 (D. Colo. 2014) (concluding that statute "affects the use of firearms that are both widespread and commonly used for self-defense," in view of the fact that "lawfully owned semi-automatic firearms using a magazine with the capacity of greater than 15 rounds number in the tens of millions"); *Shew v. Malloy*, 994 F. Supp. 2d 234, 246 (D. Conn. 2014) (concluding that semi-automatic rifles such as the AR-15 as well as magazines with a capacity greater than 10 rounds "are 'in common use' within the meaning of *Heller* and, presumably, used for lawful purposes").

48.     Despite California's apparent legislative policy preferences and animus towards Second Amendment rights (and, by extension, those who would lawfully seek to assert and exercise them), "[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S., at 636, 128 S.Ct., at 2822.  Indeed, the Court "expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing[.]" *McDonald v. City of Chicago,* 561 U.S. at 785, 130 S.Ct. at 3047 quoting *District of Columbia v. Heller*, 554 U.S., at 634-636, 128 S.Ct., at 2820-2821.

49.     Millions of semi-automatic firearms in common use for lawful purposes are possessed by law-abiding people throughout the United States, including in California. Those firearms include, but are not limited to, highly-popular makes and models of handguns like the Glock models 17, 19, 22, and 23, the Smith & Wesson M&P series models, the Springfield Armory XD series models, and many others, including some pistols that have now been discontinued.

50.     Millions of such firearms, including those handguns, are commonly possessed by law-abiding people for lawful purposes including target shooting, training, sport shooting, competition, and self-defense.

51.     Millions of such firearms, including those handguns, were designed with and were intended to be used with magazine capacities exceeding 10 rounds.  For example, one of the most common and popular models of handgun commonly used and possessed for self-defense, the Glock model 17 9mm, was designed with a 17-round magazine.

52.     Many of these handguns that were designed for factory-standard large-capacity magazines that hold more than 10 rounds, including the Glock model 17 handgun, are available for sale in the State of California to law-abiding people and on the Roster of Handguns Certified for Sale (Roster) promulgated and maintained by the California Department of Justice.[4]

53.     Some handguns were designed, equipped and sold *only* with Large-Capacity

---

[4] The Roster can be viewed online at http://certguns.doj.ca.gov.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

Magazines, and for which no magazines holding ten or fewer rounds were ever produced by the original manufacturer.  For example, manufacturer Smith & Wesson, on information and belief, never produced or sold OEM magazines holding ten or fewer rounds specifically for use with its Model 59 pistol, the type that is owned by plaintiff Macaston.  On information and belief, the Steyr GB 9mm pistol owned by plaintiff Dang was manufactured only with large-capacity magazines, and no compatible magazines were ever made or are otherwise available for said firearm.

54.     The State of California expressly recognizes that the large-capacity magazines prohibited under the Large-Capacity Magazine Ban to normal, law-abiding people who possess them for lawful purposes have intrinsic value for self-defense in its exemption for armored vehicle companies and their employees, Cal. Penal Code § 32435, as armored vehicle companies and personnel are only legally authorized for defensive, rather than offensive, actions using such large-capacity magazines to preserve life and property from violent attackers.  Other statutory exemptions make it clear that California fully recognizes that large-capacity magazines have intrinsic value as parts of semi-automatic pistols, per the exemptions that it allows.   (See list of statutory exemptions, found at Penal Code Part 6, Title 4, Div. 10, Chapter 5, Article 2, at §§ 32400, *et seq.*)

55.     As alleged herein, the legislative prohibition on the possession of a fundamental part of most lawfully-owned handguns and rifles amounts to a de facto confiscation of firearms, or parts thereof, which are in common use for lawful purposes.  As Plaintiffs will demonstrate at trial, the so-called large capacity magazines are widely owned, used and are inherent parts of operating and lawfully-possessed firearms.  The state may not enact nor enforce a statutory scheme which amounts to confiscation of constitutionally-protected bearable arms, either with or without compensation.

56.     Plaintiffs must now appeal to the third branch of government and seek declaratory and injunctive relief to invalidate the statutory provisions and enjoin any further action by the Attorney General of California and the California Department of Justice Bureau of Firearms to

1  confiscate and take, or to allow confiscation and taking by local law enforcement agencies, their

2  lawfully-possessed and constitutionally-protected property, and infringe their right to keep and

3  bear lawfully-acquired arms, in common use, which are not unusual and dangerous.

## CLAIMS FOR RELIEF

## COUNT I: VIOLATION OF U.S. CONST., AMEND. II

57.    Plaintiffs incorporate herein by reference paragraphs 1 through 56 as if fully set forth herein.

58.    Large capacity magazines, as so called and defined by the Legislature, are commonly possessed by law-abiding citizens in California, and throughout the United States, for self-defense, target shooting, hunting, and other lawful purposes.  Most modern semi-automatic firearms are designed for, and commonly sold with magazines that hold more than 10 rounds of ammunition.

59.    The need for, and usefulness of such large-capacity magazines, as so defined by the Legislature, is demonstrated by the fact that they are issued to civilian law enforcement officers, presumably for self-defense purposes.  Criminals and other prohibited persons have and will use magazines against the unarmed and the armed, without any limitation in capacity.  The Large-Capacity Magazine Ban's prohibition on the possession of large-capacity magazines – "regardless of the date the magazine was acquired" – puts law abiding citizens such as Plaintiffs at a severe disadvantage to those intending to do them harm.

60.    The arbitrarily-defined large capacity magazines, as so defined by the Legislature, are not merely individual pieces of personal property, but rather, are intrinsic and inherent constitutionally-protected parts of constitutionally-protected firearms, which are lawfully possessed and used by millions of California citizens, including Plaintiffs affected herein.

61.    California Penal Code section 32310, subdiv. (b), as amended by the Large-Capacity Magazine Ban, would prohibit as of July 1, 2017 the possession of large-capacity magazine, "regardless of the date the magazine was acquired," including previously and

1  lawfully-owned magazines as described above, and in substantial quantities to be proven at trial.

2       62.   California Penal Code section 32310, sudiv. (d), as amended by Proposition 63,

3  requires a person who, prior to July 1, 2017, legally possesses a large-capacity magazine to

4  "dispose" or the magazine, only by three specific methods, which are: (1) *personal* physical

5  removal of the magazine from the state (since giving/arranging for or otherwise selling to

6  someone out of state is still prohibited); (2) sale of the magazine to a "licensed firearms dealer,"

7  and (3) surrender of the magazine to a law enforcement agency for destruction.  However, and as

8  alleged further below (*infra* at ¶¶ 93-95), the first two of these purported options are illusory, as

9  they do not reflect viable means of recovering the value of their personal property, leaving only

10  the third "option," i.e., "surrender" of the magazine to law enforcement, for which no

11  compensation is provided for or appropriated.

12       63.   Furthermore, California Penal Code § 32390, which has already been enacted,

13  provides that any large-capacity magazine is a "nuisance" and is subject to an injunction against

14  its possession, manufacture, or sale, and is subject to confiscation and summary destruction.

15  However, neither the statute nor the regulations that pertain to it provide for compensation to be

16  provided to the owner of a legally-owned large capacity magazine.

17       64.   As an added burden, any person who has lawfully owned one or more firearms

18  with a large-capacity magazine as the *only* ammunition feeding device for such firearm will now

19  have to acquire –  presumably through the added expense of purchasing – at least one, if not

20  more, reduced-capacity (non-large-capacity) magazine for each such firearm owned.  This is an

21  expense that could cost California gun owners hundreds, if not thousands of dollars, a burden

22  which disarms the owner of the use of such firearms until a suitable replacement magazine can

23  be obtained.

24       65.   All of the individual Plaintiffs herein, and organizational Plaintiffs on behalf of

25  their California members and similarly-situated individuals who lawfully possess large-capacity

26  magazines, are suing to enjoin enforcement of the Large-Capacity Magazine Ban on the grounds

27  that the Ban violates their rights to own, possess, and use firearms as guaranteed by the Second

28

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

– 19 –

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

Amendment, and that the Ban constitutes an illegal taking of their constitutionally-protected firearms.

66.     First, the Large Capacity Magazine Ban infringes upon the right of the people, including Plaintiffs, to keep and bear arms, as guaranteed by the Second Amendment, and made applicable to the States by the Fourteenth Amendment, of the United States Constitution.  The arms include handguns which, as *Heller* observed, are the "quintessential self-defense weapon," *Heller*, 554 U.S. at 629, 128 S. Ct. at 2818, and are therefore widely, commonly and lawfully possessed in California and in all other states in the Union.

67.     The Large Capacity Magazine Ban further amounts to a total, confiscatory taking of lawfully-held, common, and constitutionally-protected arms, or intrinsic parts thereof, from law-abiding people who possess them for lawful purposes and therefore violates the Second Amendment.

68.     By maintaining and enforcing a set of laws that restrict law-abiding people from acquiring or possessing arms in common use for lawful purposes like self-defense, Defendants, acting under color of state law, are propagating customs, policies, and practices that violate the Second Amendment to the United States Constitution, facially and as applied against the individual Plaintiffs, depriving Plaintiffs of civil rights and damaging Plaintiffs in violation of 42 U.S.C. § 1983.

69.     Because California's Large-Capacity Magazine Ban Laws constitute a total ban on the possession and acquisition of constitutionally-protected instruments to keep in the home, strict scrutiny should apply.  The prohibition and taking of heretofore lawful and integral firearms parts implicates a core protection of the Second Amendment right to keep and bear arms, and severely burdens such right, as will be demonstrated at trial, which makes such ban and taking categorially unconstitutional under any level of heightened scrutiny.

70.     Plaintiffs are entitled to injunctive relief against such infringing customs, policies, and practices.  Plaintiffs and all of them, on their own behalves and on behalf of the class of all similarly-situated persons, seek declaratory and injunctive relief, in a specific manner according

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    to proof at trial.

2        WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below.

3

4        **COUNT II: VIOLATION OF U.S. CONST., AMENDS. V and XIV**

5        **(Due Process and Takings)**

6        71.    Plaintiffs incorporate herein by reference paragraphs 1 through 70 as if fully set

7    forth herein.

8        72.    The Fifth Amendment to the United States Constitution provides that no person

9    shall be deprived of life, liberty, or property, without due process of law; nor shall private

10   property be taken for public use, without just compensation.

11       73.    The Fourteenth Amendment to the United States Constitution provides that no

12   State shall deprive any person of life, liberty, or property without due process of law.

13       74.    Aside from the violation of the Second Amendment, as applied to the states, as set

14   forth above, that the statutory scheme represents, defendants' enforcement of the Large-Capacity

15   Magazine Ban violates additional rights of Plaintiffs, and the class of persons they represent,

16   specifically: their rights to compensation and/or due process as guaranteed by the Fifth and

17   Fourteenth Amendments to the United States Constitution, in that the Laws completely

18   dispossess them of their lawfully-owned, constitutionally-protected personal property.

19   Moreover, the manner in which Plaintiffs and the class have kept, bore and possessed such

20   property was a substantial, constitutionally-protected liberty interest.

21       75.    Penal Code section 32310, subdiv. (d) as amended by Proposition 63, provides for

22   three and only three enumerated ways of disposing of a lawfully-possessed magazine, owned

23   prior to July 1, 2017, and is therefore a taking of the entire bundle of said Plaintiffs' rights to

24   possess, use and dispose of the property in the manner as they see fit.  Subdivision (d)(3)

25   provides for the purported option of the property owner to "surrender" a large-capacity magazine

26   to any law enforcement agency for destruction, without stating any means of recompensing the

27   property owner for such statutorily-mandated "surrender."  Subdivision (d)(2) provides for the

28

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

purported option of the property owner to sell the magazine to a licensed firearms dealer, without providing for the fact that not every firearms dealer (in fact very few) will or are otherwise permitted to receive large-capacity magazines, leaving this as not a valid option.  The purported option to "sell the large-capacity magazine to a licensed firearms dealer" set forth in section 32310, subdiv. (d)(2) as amended, is illusory, and not really an option at all.  As will be demonstrated at trial, and on information and belief, a substantial number of licensed firearms dealers refuse or will refuse to accept for sale any large-capacity magazines because, among other reasons, economics, vagueness of risk, and personal choices relating to their views of the unconstitutionality that SB 1446/Proposition 63 presents, and refuse to participate in an undertaking that amounts to a de facto taking, and the legal and financial risks associated with receiving "large capacity magazines" under a vague law.  The inability and/or refusal of California firearms dealers to accept the large-capacity magazines for sale, effectively means there is no market for the sale of Plaintiffs' personal property, as will be demonstrated at trial.

76.     Penal Code § 32390 (previously codified at § 12029), provides that any large-capacity magazine is considered to be a "nuisance," and is subject to summary confiscation and disposal, even those that were and continue to be lawfully possessed.  Under Pen. Code § 18010(b), such items are "subject to confiscation and summary destruction whenever found within the state."  Neither the statute, nor any regulations promulgated that pertain to such statute, provide for any means by lawfully-possessing large-capacity magazine owners to challenge, petition, or even address the fact that such personal property is legally owned, and therefore may not be detained or destroyed by an arm of the state, with or without compensation.

77.     The Large Capacity Magazine Ban, as a whole, is a regulatory scheme which completely deprives the owners of all economically beneficial uses of their lawfully-owned property, and therefore, constitutes a regulatory taking.  See, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019, 112 S.Ct. 2886 (1992).  Certain regulations, such as the Large-Capacity Magazine Ban moreover, are so onerous that their effect is tantamount to a direct appropriation of property, and therefore, a compensable taking under the Fifth Amendment.  See, e.g., *Lingle v.*

*Chevron U.S.A., Inc.*, 544 U.S. 528, 538, 125 S.Ct. 2074, 2081 (2005).  In essence, this statutory scheme eviscerates the full bundle of rights, i.e., the rights to possess, use and dispose of the property in a manner that plaintiffs may choose, which includes personal property.  *Horne v. Dept. of Agriculture*, __ U.S. __ 135 S.Ct. 2419, 2427 (2015).

78.     Individual plaintiffs and California residents Wiese, Morris, Cowley, Macaston, Flores and Dang would like to pass along firearms to their children, issue and heirs, but are prevented from doing so by the Large-Capacity Magazine Ban provisions which prohibit transfer to another person.  This is, in essence, deprivation of the right to pass on lawfully-owned – and we might add, Constitutionally-protected – personal property.

79.     By enacting and enforcing the Large-Capacity Magazine Ban, defendants are thereby propagating customs, policies, and practices which violate the Fifth and Fourteenth Amendment to the United States Constitution, facially and as applied against the individual Plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against such customs, policies, and practices.

80.     Plaintiffs are entitled to injunctive relief against such infringing customs, policies, and practices.  Plaintiffs and all of them, on their own behalves and on behalf of the class of all similarly-situated persons, seek declaratory and injunctive relief, in a specific manner according to proof at trial.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below.

## COUNT III: VIOLATION OF U.S. CONST., AMEND. XIV
### (Vagueness)

81.     Plaintiffs incorporate herein by reference paragraphs 1 through 80 as if fully set forth herein.

82.     In 2016, the Legislature, and the People – guided by Lt. Gov. Newsom, the primary proponent of Proposition 63 – enacted the Large-Capacity Magazine Ban, in two

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

separate versions.  The version of the Large-Capacity Magazine Ban, found in SB 1446 (Stats.2016, c. 58, hereinafter "the SB 1446 Version") was passed by the Legislature, on June 30, 2016, signed by Gov. Brown on July 1, 2016 and chaptered on July 1, 2016.  However, the version of the Large-Capacity Magazine Ban found in Proposition 63 (Prop. 63, § 6.4, hereinafter "the Prop. 63 Version) was passed by California voters at the polls on November 8, 2016, and became effective Nov. 9, 2016.

83.     Unlike the many other gun-control bills that were considered and passed in 2016, SB 1446 did not contain a "pre-amendment" provision whereby certain provisions of the bill would become law only if "the Safety for All act of 2016 is enacted by the voters at the November 8, 2016, statewide general election and becomes effective[.]"  And thus, Proposition 63, when enacted, purported to amend certain sections of the Penal Code, and "add" other sections, in apparent conflict with those provisions enacted by SB 1446.  This has resulted in the chaptering and current existence of two conflicting laws, some of which share the same sections of the California Penal Code, pertaining to the subject of Large-Capacity Magazines.

84.     For example, the California Penal Code currently has two live but differing versions of Penal Code § 32406, both of which are active, but which include the competing SB 1446 Version and the Prop. 63 Versions of the law.  True and correct copies of Penal Code section 32406, certified by the State of California Legislative Counsel Bureau, are attached hereto as **Exhibits C and D**.

85.     Plaintiffs Dang, and others similarly situated, are or would be subject to the exemptions set forth in Pen. Code § 32406, subdiv. (f) (in the SB 1446 Version), in that they have lawfully possessed a Steyr GB firearm, since before 2000, which is a firearm for which there are no magazines holding ten rounds or fewer available, and plaintiff Dang thus possesses a large-capacity magazine solely for use with that firearm.

86.     Plaintiff Richards has received, or will have received, one or more large-capacity magazines owned by plaintiff Wiese, or in which he otherwise has a possessory interest, as the trustee of a trust that has been established to hold and keep such Large-Capacity magazine(s)

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

within this state pending resolution of this lawsuit and thereafter.  Plaintiff Richards and others similarly situated are subject to the exemptions set forth in Pen. Code § 32406, subdiv. (e) (in the SB 1446 Version), in that he and they are the trustees of a legally-established trust, created under California law, which includes large-capacity magazines as a trust asset.

87.     Plaintiff Flores possesses rare and irreplaceable large-capacity magazines currently, for himself and also as a trustee of the Flores Family Trust, in which he seeks to bequeath most or all of his personal property to his son, a California resident, but is prevented from doing so.  As a trustee of a duly-established trust, plaintiff Flores and others similarly situated are subject to the exemptions set forth in Pen. Code § 32406, subdiv. (e) (in the SB 1446 Version), in that he and they are the trustees of a legally-established trust, created under California law, which includes large-capacity magazines as a trust asset.

88.     However, by running two "parallel" versions of Pen Code § 32406, with substantive differences between them, the state has enacted vague and conflicting laws, with no certainty as to which version applies.  The entire Large Capacity Magazine Ban, including §§ 32310(b) and (c) to which the exceptions of 32406 appear on their face to apply, is therefore vague and unenforceable, because it fails to provide adequate notice to plaintiffs, and others similarly situated, and other persons of ordinary intelligence as to whether they and others similarly situated are or would be subject to or exempt from its provisions.

89.     Defendants are therefore thereby propagating customs, policies, and practices that violate the Fifth and Fourteenth Amendment to the United States Constitution, facially and as applied against the individual plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against such customs, policies, and practices.

90.     Plaintiffs are entitled to injunctive relief against such infringing customs, policies, and practices.  Plaintiffs and all of them, on their own behalves and on behalf of the class of all similarly-situated persons, seek declaratory and injunctive relief, in a specific manner according to proof at trial.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below.

### COUNT IV: VIOLATION OF U.S. CONST., AMEND. XIV
**(Vagueness and Overbreadth)**

91.     Plaintiffs incorporate herein by reference paragraphs 1 through 90 as if fully set forth herein.

92.     The Large-Capacity Magazine Ban further fails to provide adequate notice and is vague, in violation of the Due Process Clause of the Fourteenth Amendment.  The Large-Capacity Magazine Ban is unconstitutionally vague and overbroad both on its face, and as applied to one or more of the individual plaintiffs herein.

93.     As asserted above, the purported option to "sell the large-capacity magazine to a licensed firearms dealer" set forth in section 32310, subdiv. (d)(2) as amended, is illusory, and not really an option at all.  As will be demonstrated at trial, a substantial number of licensed firearms dealers refuse or will refuse to accept for sale any large-capacity magazines because, among other reasons, economics, vagueness of risk, and personal choices relating to their views of the unconstitutionality that SB 1446/Proposition 63 presents, and refuse to participate in an undertaking that amounts to a de facto taking, and the legal and financial risks associated with receiving "large capacity magazines" under a vague law.  Both the vagueness of the law as amended, and the refusal of California firearms dealers to accept the large-capacity magazines for sale, effectively means there is no market for the sale of Plaintiffs' personal property, as will be demonstrated at trial.

94.     As will be demonstrated at trial, and as applied to the Plaintiffs herein, the purported option under Penal Code § 32310, subdiv. (d)(1) to "remove the large-capacity magazine from the state," is not a viable option and is also vague.  In the first place, there is no provision which allows the holder of a large-capacity magazine to sell, or arrange a sale of the magazine to a willing buyer, out of state.  Indeed, section 32310, subdiv. (a), makes no such exception, and expressly criminalizes the offering or exposure for sale of such magazines by any

person in the state.  Therefore, arranging an out-of-state sale of the large-capacity magazine itself, while the magazine holder is within this state, is expressly prohibited.  Therefore, section 32310, subdiv. (d)(1) does not provide any avenue by which a lawful large-capacity magazine holder, including Plaintiffs, can or will recover any portion of the value of his or her property.  Physical transfer of the magazines to an out of state recipient, without arranging for the transfer beforehand, is impractical if not implausible.  And, moreover, any such *forced* sales would not result in fair or just compensation in any event.

95.     Therefore, Penal Code § 32310, subdivisions (d)(1) and (d)(2) are impermissibly vague, and utterly impractical, and amount to no real option that does not expose Plaintiffs and other large-capacity magazine holders to criminal liability, nor does it provide any relief to large-capacity magazine holders to recover any portion, in whole or in part, of the value of their lawfully-owned property.  The only option, therefore, as will be demonstrated at trial, is to "surrender" the large-capacity magazine to a law enforcement agency for destruction, effectively rendering it a taking for which compensation is not provisioned or required.

96.     Furthermore, as to plaintiffs Normandy and Nielsen, and similarly-situated individuals, the statute as amended by Proposition 63 is further vague, in that it purports to exempt "honorably retired peace officers" and retired federal officers from the new prohibitions on possession of large-capacity magazines, but such retired peace officers and retired federal officers continue to be prohibited from the importation restrictions of section 32310(a).  And thus, the statute as amended results in the absurdity of allowing a retired peace officer or retired federal officer to possess large-capacity magazines in this state, for lawful purposes, but prohibits them from bringing them in, even temporarily.  And therefore, retired peace officers such as plaintiffs Normandy and Nielsen, and similarly-situated individuals, who often participate in, or are asked to join or conduct, or instruct in firearms training programs for law enforcement agencies and civilians are legally prohibited from bringing large-capacity magazines into the state, though once here, they may possess them.  The inherent absurdity subsisting within this purported exemption not only necessarily results in a failure to provide

persons of ordinary intelligence with fair and adequate notice of what is and is not truly permissible or prohibited conduct, but it effectively defeats the very purposes for which the purported exemption was ostensibly designed. The two parallel Penal Code sections 32406 as enacted by SB 1446 and Proposition 63 are therefore unconstitutionally vague.

97.      The Large-Capacity Magazine Ban, taken in total, is vague because it fails to provide adequate notice to a person of ordinary intelligence what they can do with a lawfully-held large-capacity magazine, nor does it provide them with viable, practical options.  Therefore, on the face of its provisions, and as applied, for the reasons stated herein, the Large-Capacity Magazine Ban violates the Due Process Clause of the Fourteenth Amendment.

98.      The Large-Capacity Magazine Ban further violates the Due Process Clause of the Fourteenth Amendment for the related reason that it is unconstitutionally overbroad. As written, the ban requires all current owners of large-capacity magazines in California (who presumably number into the thousands, if not tens of thousands) to dispose of their magazines by July 1, 2017. As will be demonstrated at trial, there can be no legitimate claim that the ban's *retroactive* application to current, legal owners of such magazines advances the stated objective of the law – to reduce the prevalence of "mass shootings" or the extent of harm inflicted during those (fortunately) rare tragic incidents. Accordingly, the ban sweeps up a substantial amount of constitutionally-protected conduct under the Second Amendment. And given that the entire statutory scheme is designed around this forced extraction of property, it is not readily susceptible to a limiting construction that would render it constitutional. Rather, the constitutional infirmity infects the entire statutory scheme, rendering it hopelessly overbroad.

99.      Defendants are thereby propagating customs, policies, and practices that violate the Fifth and Fourteenth Amendment to the United States Constitution, facially and as applied against the individual plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to permanent injunctive relief against such customs, policies, and practices.

100.      Plaintiffs are entitled to injunctive relief against such infringing customs, policies,

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

and practices.  Plaintiffs and all of them, on their own behalves and on behalf of the class of all similarly-situated persons, seek declaratory and injunctive relief, in a specific manner according to proof at trial.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants, and pray for relief as follows:

1.     For declaratory judgment and relief, pursuant to 28 U.S.C. § 2201, that California Penal Code sections 32310, 32390, and sections 32445 and 32450 are unconstitutional and violate the Second Amendment;

2.     For declaratory judgment and relief, pursuant to 28 U.S.C. § 2201, that California Penal Code sections 32310, 32390, and sections 32445 and 32450 are unconstitutional and violate the Fifth and Fourteenth Amendments;

3.     For declaratory judgment and relief, pursuant to 28 U.S.C. § 2201, that California Penal Code sections 32310, 32390, and sections 32445 and 32450 are indefinite, vague and uncertain, and therefore unenforceable, and also, on the grounds that it is not clear which version of these statutes (i.e., the version passed pursuant to SB 1446 or Prop. 63), and the exceptions thereto, may apply, among other grounds;

4.     For injunctive relief, consistent with declaratory relief sought herein, enjoining defendants, and their officers, agents and employees, from enforcing any of the provisions of California Penal Code sections 32310, 32390, and sections 32445 and 32450;

5.     For costs of suit, including attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law; and

6.     For all such relief to which Plaintiffs may be justly entitled.

Dated: June 5, 2017

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**

/s/ George M. Lee
George M. Lee

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law