1   XAVIER BECERRA, State Bar No. 118517
    Attorney General of California
2   TAMAR PACHTER, State Bar No. 146083
    Supervising Deputy Attorney General
3   ALEXANDRA ROBERT GORDON, State Bar No. 207650
    Deputy Attorney General
4   JOHN D. ECHEVERRIA, State Bar No. 268843
    Deputy Attorney General
5     300 South Spring Street, Suite 1702
      Los Angeles, CA  90013
6   Telephone:  (213) 897-4902
    Fax:  (213) 897-5775
7   E-mail:  John.Echeverria@doj.ca.gov
    *Attorneys for Defendants*

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

| | |
|---|---|
| **WILLIAM WIESE, et al.,** | Case No.:  17-cv-00903-WBS-KJN |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND ISSUANCE OF PRELIMINARY INJUNCTION** |
| v. | |
| **XAVIER BECERRA, et al.,** | |
| Defendant. | Date:          June 16, 2017<br>Time:          10:00 a.m.<br>Courtroom:  5, 14th Floor<br>Judge:         Hon. William B. Shubb<br>Trial Date:   None Set<br>Action Filed:  April 28, 2017 |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS .......................................................................................... 3

ARGUMENT ............................................................................................................... 5

    I.    Plaintiffs' Request for a TRO Should Be Denied Due to Plaintiffs' Repeated, Inexcusable Delays in Seeking Injunctive Relief. ............................... 5

    II.    Plaintiffs Have Failed to Establish Sufficient Grounds for the Issuance of a TRO. ............................................................................................................................ 6

        A.    Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits of Any of Their Claims. ................................................................. 7

            1.    Second Amendment. ........................................................................ 7

                a.    Intermediate Scrutiny Is Appropriate. ................................ 9

                b.    Section 32310 Advances the State's Compelling Interests. .................................................................................. 12

            2.    Takings. .......................................................................................... 15

                a.    Section 32310 Is Not a Physical Taking. ........................... 16

                b.    Section 32310 Is Not a Regulatory Taking. ...................... 17

            3.    Vagueness. ...................................................................................... 18

            4.    Overbreadth. ................................................................................... 20

        B.    Plaintiffs Have Failed to Demonstrate Either Irreparable Injury or that the Balance of Hardships and the Public Interest Weigh in Favor of Injunctive Relief. ........................................................................ 21

    III.    Plaintiffs' Request for a Briefing and Hearing Schedule on Shortened Time for Their Motion for a Preliminary Injunction Should Be Denied. ..................... 23

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

CASES

*Aiello v. OneWest Bank*
 No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092 (E.D. Cal. Jan. 29, 2010) .............................7

*Akins v. United States*
 82 Fed. Cl. 619 (2008) ...........................................................................................................16, 17

*Alliance for the Wild Rockies v. Cottrell*
 632 F.3d 1127 (9th Cir. 2011).......................................................................................................7

*Andrus v. Allard*
 444 U.S. 51 (1979)........................................................................................................................18

*Bauer v. Becerra*
 No. 15-15428, 2017 WL 2367988 (9th Cir. June 1, 2017) ...................................................9, 15

*Boutros v. Tan*
 No. 13-cv-01306, 2013 WL 3338660 (E.D. Cal. July 2, 2013)...................................................22

*Cal. Teachers Ass'n v. State Bd. of Educ.*
 271 F.3d 1141 (9th Cir. 2001)......................................................................................................19

*Chang v. United States*
 327 F.3d 911 (9th Cir. 2003)........................................................................................................18

*Chevron USA, Inc. v. Cayetano*
 224 F.3d 1030 (9th Cir. 2000)................................................................................................16, 18

*Chi., B. & Q. R. Co. v. Illinois*
 200 U.S. 561 (1906)......................................................................................................................16

*Colorado Outfitters Ass'n v. Hickenlooper*
 24 F. Supp. 3d 1050 (D. Colo. 2014)................................................................................8, 11, 14

*District of Columbia v. Heller*
 554 U.S. 570 (2008)..................................................................................................................8, 17

*Dore v. United States*
 97 F. Supp. 239 (Ct. Cl. 1951) ....................................................................................................17

*Drake v. Filko*
 724 F.3d 426 (3d Cir. 2013).........................................................................................................12

*Edward P. Stahel & Co. v. United States*
 78 F. Supp. 800 (Ct. Cl. 1948) ....................................................................................................17

ii

Defendants' Opposition to Renewed Motion for Temporary Restraining Order
and Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Everard's Breweries v. Day*
  265 U.S. 545 (1924) ............................................................................................16

*Fed. Trade Comm'n v. Affordable Media, LLC*
  179 F.3d 1228 (9th Cir. 1999)..............................................................................22

*Fesjian v. Jefferson*
  399 A.2d 861 (D.C. Ct. App. 1979) ......................................................................17

*Fla. Bar v. Went for It, Inc.*
  515 U.S. 618 (1995) ............................................................................................12

*Foster v. SCME Mortg. Bankers, Inc.*
  No. CIV. 2:10-518 WBS GGH, 2010 WL 1408108 (E.D. Cal. Apr. 7, 2010) ..........7

*Friedman v. City of Highland Park*
  784 F.3d 406 (7th Cir. 2015)...........................................................................8, 10

*Fyock v. City of Sunnyvale*
  25 F. Supp. 3d 1267 (N.D. Cal. 2014) ..............................................................7, 21

*Fyock v. Sunnyvale*
  779 F.3d 991 (9th Cir. 2015)........................................................................ *passim*

*Goldie's Bookstore, Inc. v. Superior Ct.*
  739 F.2d 466 (9th Cir. 1984)................................................................................21

*Gun South, Inc. v. Brady*
  877 F.2d 858 (11th Cir. 1989)..............................................................................17

*Hawaii v. Trump*
  __ F.3d __, 2017 WL 2529640 (9th Cir. June 12, 2017) ......................................20

*Heller v. District of Columbia*
  670 F.3d 1244 (D.C. Cir. 2011) ................................................................... *passim*

*Heller v. District of Columbia*
  698 F.Supp.2d 179 (D.D.C. 2010) ........................................................................12

*Hightower v. City of Boston*
  693 F.3d 61 (1st Cir. 2012) .........................................................................9, 11, 12

*Hill v. Colorado*
  530 U.S. 703 (2000)..............................................................................................19

iii

# TABLE OF AUTHORITIES
### (continued)

Page

*Jackson v. City and County of San Francisco*
746 F.3d 953 (9th Cir. 2014)..................................................................9, 10, 12

*Kashalsky v. County of Westchester*
701 F.3d 81 (2d Cir. 2012).........................................................................15, 20

*Kolbe v. Hogan*
849 F.3d 114 (4th Cir. 2017)......................................................................7, 9, 10

*Kolbe v. O'Malley*
42 F. Supp. 3d 768 (D. Md. 2014) .................................................................15

*Lingle v. Chevron U.S.A., Inc.*
544 U.S. 528 (2005)...................................................................10, 15, 16

*Lucas v. South Carolina Coastal Council*
505 U.S. 1003 (1992).......................................................................17, 18

*Madsen v. Women's Health Ctr., Inc.*
512 U.S. 753 (1994)..............................................................................12

*Maryland v. King*
133 S. Ct. 1 (2012)................................................................................22

*Mazurek v. Armstrong*
520 U.S. 968 (1997).................................................................................7

*McDonald v. City of Chi.*
561 U.S. 742 (2010)...........................................................................8, 17

*Members of City Council of L.A. v. Taxpayers for Vincent*
466 U.S. 789 (1984)..............................................................................21

*Mission Power Engineering, Co. v. Continental Casualty Co.*
883 F. Supp. 488 (C.D. Cal. 1995) ...............................................................23

*Mugler v. Kansas*
123 U.S. 623 (1887)..............................................................................16

*N.Y.S. Rifle & Pistol Ass'n v. Cuomo*
804 F.3d 242 (2d Cir. 2015)..............................................................7, 10, 12, 13

*Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco & Firearms*
700 F.3d 185 (5th Cir. 2012).......................................................................8

## TABLE OF AUTHORITIES
### (continued)

**Page**

*New York v. Ferber*
    458 U.S. 747 (1982) ................................................................................20

*Nichols v. Harris*
    17 F. Supp. 989 (C.D. Cal. 2014) ............................................................18

*Occupy Sacramento v. City of Sacramento*
    No. 11-cv-02873, 2011 WL 5374748 (E.D. Cal. Nov. 4, 2011)................22

*Pa. Coal Co. v. Mahon*
    260 U.S. 393 (1922) ................................................................................16

*Palazzolo v. Rhode Island*
    533 U.S. 606 (2001) ................................................................................18

*Penn Central Transp. Co. v. City of N.Y.*
    438 U.S. 104 (1978) ..........................................................................16, 18

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't*
    *of Agriculture*
    499 F.3d 1108 (9th Cir. 2007)..................................................................10

*S.F. Veteran Police Officers Ass'n v. City of S.F.*
    18 F. Supp. 3d 997 (N.D. Cal. 2014) ....................................................8, 21

*Silvester v. Harris*
    843 F.3d 816 (9th Cir. 2016)..................................................................9, 10

*Tracy Rifle and Pistol LLC v. Harris*
    118 F. Supp. 3d 1182 (E.D. Cal. 2015) ...................................................22

*Turner Broad. Sys., Inc. v. FCC*
    512 U.S. 622 (1994) ..........................................................................12, 15

*Turner Broad. Sys., Inc. v. FCC*
    520 U.S. 180 (1997) ................................................................................12

*United States v. Carter*
    750 F.3d 462 (4th Cir. 2014)....................................................................12

*United States v. Chester*
    628 F.3d 673 (4th Cir. 2010)..................................................................9, 20

*United States v. Chovan*
    735 F.3d 1127 (9th Cir. 2013)..........................................................8, 9, 12, 15

## TABLE OF AUTHORITIES
### (continued)

Page

*United States v. Purdy*
   264 F.3d 809 (9th Cir. 2001)...............................................................................................18

*United States v. Salerno*
   481 U.S. 739 (1987)...........................................................................................................20

*United States v. Williams*
   553 U.S. 285 (2008)...........................................................................................................19

*Williams-Yulee v. Fla. Bar*
   135 S. Ct. 1656 (2015).......................................................................................................12

*Winter v. NRDC*
   555 U.S. 7 (2008)..................................................................................................................7

STATUTES

2016 Cal. Stat. Chapter 58
   § 1.........................................................................................................................................3

California Penal Code
   § 16740.....................................................................................................................3, 16, 19
   § 32310..........................................................................................................................*passim*

CONSTITUTIONAL PROVISIONS

United States Constitution
   First Amendment...............................................................................................18, 19, 20, 21
   Second Amendment .......................................................................................................*passim*
   Fifth Amendment ....................................................................................................5, 15, 16, 17
   Fourteenth Amendment........................................................................................5, 7, 8, 15

COURT RULES

Federal Rules of Civil Procedure
   rule 6..................................................................................................................................23

Local Rule
   144.....................................................................................................................................23
   230...............................................................................................................................23, 24
   231...............................................................................................................................2, 5, 22

Defendants' Opposition to Renewed Motion for Temporary Restraining Order
and Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

## TABLE OF AUTHORITIES
### (continued)

Page

**OTHER AUTHORITIES**

HUFFINGTON POST, Apr. 25, 2010,
   http://www.huffingtonpost.com/2010/02/23/deer-creek-middle-
   school_n_473943.html .............................................................................................15

John Wilkens, *Construction Workers Felt They 'Had To Do Something,'* SAN
   DIEGO UNION-TRIBUNE, Oct. 11, 2010 ..................................................................15

Safety for All Act of 2016...............................................................................................4

Senate Bill 1446 .........................................................................................................2, 4

Shaila Dewan, *Hatred Said to Motivate Tenn. Shooter*, N.Y. TIMES, Jul. 28, 2008 ......................15

Defendants' Opposition to Renewed Motion for Temporary Restraining Order
and Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

1    In accordance with the Court's Order, dated June 14, 2017, defendants Xavier Becerra and

2    Martha Supernor (together, "Defendants") respectfully submit this opposition to the Renewed

3    Motion for Temporary Restraining Order and Issuance of Preliminary Injunction (the "TRO

4    Motion") (Dkt. Nos. 28, 29), filed by plaintiffs ("Plaintiffs") on June 14, 2017.[1]

5                                    **INTRODUCTION**

6        In 2016, in the wake of escalating mass-shootings and gun violence, the Legislature and the

7    people of California enacted a ban on the possession of magazines holding more than ten rounds

8    of ammunition.  These large-capacity magazines ("LCMs") are disproportionately used in crime,

9    and feature prominently in some of the most heinous crimes, including homicides, mass

10   shootings, and killings of law enforcement officers.  Because LCMs are so dangerous, federal and

11   state law have restricted their manufacture, importation, and sale for decades.  Now, in order to

12   strengthen these restrictions, and close a loophole that allowed for the continued proliferation of

13   LCMs, California Penal Code section 32310 ("Section 32310")[2] prohibits the possession of

14   LCMs by private citizens beginning July 1, 2017.

15       Plaintiffs seek to enjoin the implementation and enforcement of this important public safety

16   legislation and request that this Court (1) issue an "immediate" TRO enjoining the enforcement of

17   Section 32310 and (2) set a briefing and hearing schedule on their motion for a preliminary

18   injunction on shortened time no later than June 30, 2017.[3]  (*See* Notice of Mot. (Dkt. No. 28);

19   Proposed Order (Dkt. No. 28-14).)  The Court should do neither.  Plaintiffs are not entitled to

20   injunctive relief at all, let alone on an emergency basis or on shortened time.

21

22       [1] In conjunction with this opposition, Defendants have filed a Declaration of Alexandra
     Robert Gordon ("Gordon Decl."), a Declaration of Professor John J. Donohue ("Donohue Decl."),
23   a Declaration of Daniel W. Webster ("Webster Decl."), a Declaration of Lucy P. Allen ("Allen
     Decl."), a Declaration of Blake Graham ("Graham Decl."), and a Request for Judicial Notice
24   ("RJN"), with exhibits annexed thereto, which are expressly incorporated herein by reference.

25       [2] All subsequent statutory references are to the California Penal Code, unless otherwise
     noted.

26       [3] While the Declaration of George M. Lee ("Lee Decl.") (Dkt. No. 28-12) requests to have
27   the motion heard "before June 30, 2017" (Lee Decl. ¶ 4), this appears to be a typographical error,
     as Plaintiffs' Notice of Motion requests a hearing "no later than June 30, 2017" (Notice of Mot. at
28   2), and the enforcement date of the challenged statute is July 1, 2017.

                                        1

1    The law that Plaintiffs challenge in this action—California's amendment of Section 32310

2    to prohibit the possession of LCMs—was originally enacted nearly one year ago in Senate

3    Bill 1446, with an enforcement date of July 1, 2017.  Sen. Bill No. 1446, 2015-2016 Reg. Sess.

4    (Cal. 2016) ("SB 1446").  On November 8, 2016, California voters passed Proposition 63, which

5    largely mirrored SB 1446's amendments to Section 32310 with an enforcement date of July 1,

6    2017.  Even though SB 1446 was enacted nearly a year ago and Proposition 63 went into effect

7    immediately upon its passage in November 2016, Plaintiffs waited until April 28, 2017 to file

8    their complaint, which contends that Section 32310, as amended by Proposition 63, violates their

9    Second Amendment and Due Process rights.  Plaintiffs did not seek any injunctive relief at that

10   time, and they waited until June 12, 2017—more than *seven months* after the enactment of

11   Proposition 63—to seek injunctive relief to enjoin this critical public safety measure.  Plaintiffs'

12   TRO Motion should be denied.

13       *First*, Plaintiffs' request for a TRO should be denied in accordance with Local Rule 231(b)

14   and this Court's procedures due to Plaintiffs' delays in seeking injunctive relief.  Plaintiffs waited

15   until less than three weeks before the enforcement date of the law, a month-and-a-half after filing

16   their complaint and more than seven months after the law went into effect, to file their initial

17   motion for a TRO.  Plaintiffs offer no explanation, nor can they credibly do so, for waiting until

18   the last minute to seek injunctive relief.  The Court can deny the TRO Motion on this ground

19   alone.

20       *Second*, Plaintiffs have failed to establish sufficient grounds for the issuance of a TRO.

21   Plaintiffs cannot establish a likelihood of success on the merits for any of their claims.

22   Possession of LCMs is not protected by the Second Amendment, and, even if it were, there is a

23   "reasonable fit" between Section 32310 and the State's important interests.  *Fyock v. Sunnyvale*,

24   779 F.3d 991, 1000 (9th Cir. 2015) (upholding municipal LCM ban under the Second

25   Amendment).  Section 32310 does not constitute an unconstitutional taking because the statute is

26   an exercise of the State's police power that does not deprive plaintiffs of all economic or

27   beneficial use of their property.  Nor is the statute unconstitutionally vague or overbroad; it is

28   clear from the face of the statute what magazines are subject to its prohibition, and Plaintiffs

2

1   cannot establish their overbreadth claim because the statute does not impair any constitutional

2   rights.  In addition, Plaintiffs' TRO Motion is unsubstantiated by any cognizable evidence of

3   irreparable injury that they would suffer in the absence of injunctive relief; Plaintiffs' egregious

4   delays in seeking injunctive relief merely confirm the absence of irreparable injury here.  By

5   contrast, the harm to the State's ability to effectively enforce its laws and to the public interest in

6   the event that injunctive relief is granted would be considerable.  Accordingly, the law, the

7   balance of equities, and the public interest all weigh against issuing injunctive relief.

8        ***Third***, Plaintiffs have failed to establish good cause to shorten time on the briefing and

9   hearing for their motion for a preliminary injunction.  Plaintiffs delayed in seeking injunctive

10  relief until the last moment, and they cannot now, by way of an ex parte application, seek an

11  extremely compressed briefing and hearing schedule, which would severely prejudice

12  Defendants' ability to review the voluminous materials submitted in support of the motion for a

13  preliminary injunction and adequately prepare an opposition.[4]

14                              **STATEMENT OF FACTS**

15       On July 1, 2016, the State of California enacted SB 1446, which prohibited the possession

16  of LCMs (defined under section 16740 as "a feeding device with the capacity to accept more than

17  10 rounds") beginning on July 1, 2017.  SB 1446 went into effect on January 1, 2017 and

18  amended Section 32310 to state that, beginning on July 1, 2017, any person possessing an LCM,

19  with exemptions not relevant here, would be guilty of an infraction punishable by a fine starting

20  at $100 for the first offense.  Cal. Stats. 2016, ch. 58 (SB 1446) § 1 (amending Section 32310 to

21  add a new subdivision (c)).  The law also provided that anyone possessing an LCM may, prior to

22  July 1, 2017, dispose of the magazine by any of the following means: (1) removing it from the

23  state; (2) selling it to a licensed firearms dealer; (3) destroying it; or (4) surrendering it to a law

24  enforcement agency for destruction.  *Id*. (amending Section 32310 to add a new subdivision (d)).

---

26  [4] Although this opposition raises arguments that are applicable to Plaintiffs' motion for a
preliminary injunction, due to the time constraints in having to brief the instant opposition to the
27  TRO Motion on an extremely compressed schedule, Defendants reserve the right to submit
additional arguments and evidence in opposition to Plaintiffs' request for a preliminary injunction
in the event the Court is inclined to issue a preliminary injunction.

3

1    The Senate Bill Analysis noted that the amendments were necessary because the prior version of

2    the law, which did not prohibition possession of LCMs, was "very difficult to enforce." (Gordon

3    Decl., Ex. 46 (Sen. Bill No. 1446, 3d reading Mar. 28, 2016 (2015-2016 Reg. Sess.) (Cal.

4    2016)).) Specifically, there was no reliable way for law enforcement to know which LCMs were

5    properly grandfathered and which had been illegally smuggled and sold or were the product of

6    "magazine conversion kits," which enabled people to skirt the law. (*Id.*; Graham Decl.,

7    ¶¶ 24-32.)

8        On November 8, 2016, California voters passed Proposition 63, the "Safety for All Act of

9    2016." (Gordon Decl., Ex. 49 (Prop. 63, § 1, as approved by voters (Gen. Elec. Nov. 8, 2016));

10   *see also* Pls.' Req. for Judicial Notice in Support of Pls.' Mot. for TRO and Issuance of Prelim.

11   Inj. ("RJN") (Dkt. No. 28-13), Ex. E (text of Proposition 63).) The measure included several

12   provisions—including amendments to Section 32310—intended to close "loopholes that leave

13   communities throughout the state vulnerable to gun violence and mass shootings." (Gordon

14   Decl., Ex. 50 (Prop. 63, § 2, ¶ 5 (uncodified findings and declarations of the people of

15   California)); *id.* (Prop. 63, § 2, ¶ 11 (finding that LCMs "significantly increase a shooter's ability

16   to kill a lot of people in a short amount of time. That is why these large-capacity ammunition

17   magazines are common in many of America's most horrific mass shootings, from the killings")).)

18       The amendments to Section 32310 largely mirror the same amendments made under SB

19   1446. Both provisions prohibit the possession of LCMs on or after July 1, 2017, and list options

20   for the disposal of LCMs before that date. (Gordon Decl., Ex. 50.) Prop. 63 also increased the

21   potential consequence for violations of the possession ban, from an infraction to an infraction or a

22   misdemeanor. (*Id.*, (Prop. 63, § 6.1).) Because Proposition 63's amendments to Section 32310

23   were enacted after the enactment of SB 1446, Proposition 63's amendments supersede those of

24   SB 1446 and are the governing provisions for the statute.[5]

25       On April 28, 2017, Plaintiffs filed their original complaint, alleging that Section 32310, as

26   amended by Proposition 63, violates their rights under the Second Amendment, Takings Clause,

27   _____

     [5] References to Section 32310 in this brief are to the statute as amended by Proposition 63.

28

1    and Due Process Clause.  (Dkt. No. 1.)  On June 5, 2017, Plaintiffs filed a First Amended

2    Complaint, adding three plaintiffs as well as a claim that Section 32310, as amended, is

3    unconstitutionally overbroad.  (Dkt. No. 7.)  On Thursday, June 8, 2017, counsel for Plaintiffs

4    informed counsel for Defendants that Plaintiffs intended to file the motion for a TRO and

5    preliminary injunction on the following Monday, June 12, 2017.  (Declaration of George M. Lee

6    in Supp. of Pls.' Mot. for TRO and Issuance of Prelim. Inj. ("Lee Decl.") (Dkt. No. 28-12) ¶ 5.)

7    In addition, counsel for Plaintiffs proposed a briefing schedule that would have afforded

8    Defendants only seven days to prepare and file an opposition, to which counsel for Defendants

9    did not agree.  (*Id.*)

10        On June 12, 2016, at the close of business hours, Plaintiffs filed their initial motion for a

11   TRO.  The motion—comprised of 15 separate filings spanning over 200 pages—requested a TRO

12   and a briefing and hearing schedule on their motion for a preliminary injunction on shortened

13   time prior to the July 1, 2017 enforcement date of Section 32310.  (Dkt. Nos. 9-23.)  By Order

14   dated June 13, 2017, this Court denied Plaintiffs' motion "without prejudice to its being renewed

15   at such time as plaintiffs may seriously want the court to rule on it."  (Order (Dkt. No. 26).)

16   Plaintiffs refiled the TRO Motion on June 14, 2017, requesting "the immediate issuance of

17   temporary injunctive relief, and/or that this matter be heard no later than June 30, 2017."  (Dkt.

18   No. 28.)

19                                              **ARGUMENT**

20   **I.    PLAINTIFFS' REQUEST FOR A TRO SHOULD BE DENIED DUE TO PLAINTIFFS'
              REPEATED, INEXCUSABLE DELAYS IN SEEKING INJUNCTIVE RELIEF.**
21

22        Plaintiffs' request for an immediate TRO should be denied due to Plaintiffs' seven-month

23   delay in seeking injunctive relief.  Under Local Rule 231(b) of the Local Rules of the United

24   States District Court for the Eastern District of California,

25        [T]he Court will consider whether the applicant [for a TRO] could have sought relief by
26        motion for preliminary injunction at an earlier date without the necessity for seeking last-
27        minute relief by motion for [a TRO].  Should the Court find that the applicant unduly
          delayed in seeking injunctive relief, the Court may conclude that the delay constitutes
28

5

laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on either ground."

Similarly, this Court's procedures make clear that an applicant for a TRO must submit a "satisfactory explanation" for, *inter alia*, "the need for the issuance of such an order."

Plaintiffs have delayed in pursuing the injunctive relief sought in the TRO Motion, and they have failed to offer any credible explanation for these delays. Plaintiffs claim that they have "moved with all due haste to file" the Motion on June 12, 2017 (Lee Decl. ¶ 3), and they represent that there has not "been undue delay in bringing a TRO" and that the TRO Motion could not have been brought earlier (TRO Checklist (Dkt. No. 29)). Nothing in Plaintiffs' supporting materials substantiates these claims. To the contrary, SB 1446's amendments to Section 32310 were enacted nearly one year ago with an enforcement date of July 1, 2017. Moreover, Plaintiffs have had since November 2016 to challenge Proposition 63's amendments to Section 32310. At a minimum, Plaintiffs had seven months since the passage of Proposition 63 to file a complaint and a regularly noticed motion for a preliminary injunction to be heard well before the July 1, 2017 enforcement date, which would have provided the parties and the Court sufficient time to brief and consider their arguments. Plaintiffs do not adequately explain the reason for their delays, let alone establish excusable neglect in failing to seek injunctive relief at an earlier time.

Plaintiffs' delays in seeking injunctive relief warrant the denial of their request for a TRO because Plaintiffs created the emergency they now cite to justify a TRO. For this reason alone, the Court should deny Plaintiffs' request for a TRO.

## II.   PLAINTIFFS HAVE FAILED TO ESTABLISH SUFFICIENT GROUNDS FOR THE ISSUANCE OF A TRO.

"In order to obtain a temporary restraining order or a preliminary injunction, the moving party 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Foster v. SCME Mortg. Bankers, Inc.*, No. CIV.

6

Defendants' Opposition to Renewed Motion for Temporary Restraining Order
and Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

1   2:10-518 WBS GGH, 2010 WL 1408108, at *1 (E.D. Cal. Apr. 7, 2010) (quoting *Winter v.*

2   *NRDC*, 555 U.S. 7, 20 (2008)); *see also Aiello v. OneWest Bank*, No. 2:10-cv-0227-GEB-EFB,

3   2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) ("'Temporary restraining orders are governed

4   by the same standard applicable to preliminary injunctions.'") (citations omitted)).  Alternatively,

5   injunctive relief "is appropriate when a plaintiff demonstrates that serious questions going to the

6   merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Alliance for*

7   *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

8   Plaintiffs must make a showing of all four *Winter* factors even under the alternative sliding scale

9   test.  *Id*. at 1132, 1135.  It is well settled that injunctive relief "is 'an extraordinary and drastic

10  remedy, one that should not be granted unless the movant, by a clear showing, carries the burden

11  of persuasion.'"  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

12      **A.    Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits of**
        **Any of Their Claims.**
13

14      Plaintiffs assert four facial and as-applied challenges to Section 32310:  (i) that the law

15  violates the Second Amendment, (ii) that the law constitutes a taking in violation of the

16  Fourteenth Amendment, (iii) that the law is void for vagueness, and (iv) that the law is

17  unconstitutionally overbroad.  (Mem. of P. & A. in Supp. of Pls.' Mot. for TRO and Issuance of

18  Prelim. Inj. ("Memorandum" or "Mem.") (Dkt. No. 28-1) at 9 ("This both is a facial and as-

19  applied challenge . . . .").)  Plaintiffs have failed to demonstrate a likelihood of success on the

20  merits as to any of these claims.

21      **1.    Second Amendment.**

22      Plaintiffs' Second Amendment claim, which has been rejected by every court to consider it,

23  is without merit and cannot provide the basis for enjoining state law.  *See Fyock v. City of*

24  *Sunnyvale*, 25 F. Supp. 3d 1267, 1271 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779

25  F.3d 991 (9th Cir. 2015) ("No court has yet entered a preliminary injunction against a law

26  criminalizing the possession of magazines having a capacity to accept more than ten rounds, nor

27  has any court yet found that such a law infringes the Second Amendment."); *Kolbe v. Hogan*, 849

28  F.3d 114, 130-41 (4th Cir. 2017) (en banc); *N.Y.S. Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242,

7

Defendants' Opposition to Renewed Motion for Temporary Restraining Order
and Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

1   263-64 (2d Cir. 2015), *cert denied sub nom*, *Shew v. Malloy*, 136 S. Ct. 2486 (2016) (*NYSRPA*);

2   *Friedman v. City of Highland Park*, 784 F.3d 406, 411-12 (7th Cir. 2015), *cert. denied*, 136 S. Ct.

3   447 (2015); *Heller v. District of Columbia*, 670 F.3d 1244, 1260-64 (D.C. Cir. 2011) (*Heller II*);

4   *S.F. Veteran Police Officers Ass'n v. City of S.F.*, 18 F. Supp. 3d 997, 1002-06 (N.D. Cal. 2014);

5   *Colorado Outfitters Ass'n v. Hickenlooper*, 24 F. Supp. 3d 1050, 1067-74 (D. Colo. 2014),

6   *vacated and remanded for lack of standing*, 823 F.3d 537 (10th Cir. 2016).

7           While the Supreme Court held, in *District of Columbia v. Heller*, 554 U.S. 570, 622 (2008),

8   that the Second Amendment confers an individual right to keep and bear arms, Plaintiffs overstate

9   the nature and scope of that right and the consequent restrictions on the government's ability to

10  enact reasonable gun safety regulations.  The Court in *Heller* stated that the Second Amendment

11  has "the core lawful purpose of self-defense" and "elevates above all other interests the right of

12  law-abiding, responsible citizens to use arms in defense of hearth and home."  *Id.* at 630, 635.[6]

13  The Court was clear, however, that the Second Amendment does not provide "a right to keep and

14  carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Heller*, 554

15  U.S. at 626.  Rather, the right to keep and bear arms, like other constitutional rights, is limited in

16  scope and subject to regulation.  *Id.* at 626-28.  "When the fledgling republic adopted the Second

17  Amendment, an expectation of sensible gun safety regulation was woven into the tapestry of the

18  guarantee." *Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco & Firearms*, 700 F.3d 185, 200 (5th

19  Cir. 2012).  Thus, the Supreme Court has emphasized that the Second Amendment "does not

20  imperil every law regulating firearms" and that "state and local experimentation with reasonable

21  firearms regulation will continue under the Second Amendment."  *McDonald*, 561 U.S. at 785;

22  *see also Heller*, 554 U.S. at 626-29.

23          In evaluating whether the Second Amendment permits such state regulation, the Ninth

24  Circuit employs a two-step inquiry.  *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir.

25  2013).  First, the court "asks whether the challenged law burdens conduct protected by the Second

26

27          [6] This right is incorporated against the states through the Fourteenth Amendment.
    *McDonald v. City of Chi.*, 561 U.S. 742, 790-91 (2010) (plurality).

28                                                  8

1   Amendment." *Id.*  If not, the challenged law does not implicate the Second Amendment and is

2   valid.  *See id*. at 1138; *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010).  If a Second

3   Amendment right is implicated, the court then selects an appropriate level of scrutiny.  *Chovan*,

4   735 F.3d at 1136.  LCMs are unusually dangerous, designed to "kill or disable the enemy,"

5   "clearly most useful in military service" and not commonly used for self-defense.  *See Kolbe*, 849

6   F.3d at 137; *Heller II*, 670 F.3d at 1262; *Hightower v. City of Boston*, 693 F.3d 61, 66, 71 (1st Cir.

7   2012) (noting that "large capacity weapons" with ability to carry more than ten rounds are not "of

8   the type characteristically used to protect the home").  Consequently, and as the Fourth Circuit

9   recently determined, LCMs are not within the right secured by the Second Amendment.  *See*

10  *Kolbe*, 849 F.3d at 137.  Plaintiffs' claim thus fails at the threshold of the Court's analysis.  *See*

11  *Jackson v. City and County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).  Moreover,

12  because Section 32310 advances the State's compelling interests in protecting citizens and law

13  enforcement from gun violence, protecting public safety, and preventing crime, it is

14  constitutional.[7]

15  **a.  Intermediate Scrutiny Is Appropriate.**

16          Even if Section 32310's prohibition on LCMs fell within the scope of Second Amendment

17  protection, the law would survive constitutional scrutiny.  In determining the appropriate level of

18  scrutiny to apply to a Second Amendment challenge, the court must consider "(1) how close the

19  challenged law comes to the core of the Second Amendment right, and (2) the severity of the

20  law's burden on that right."  *Jackson*, 746 F.3d at 960-61.  At most, Section 32310 regulates the

21  manner in which persons may exercise their Second Amendment rights.  *See id.* at 961.  It does

22  not impose a complete ban on an entire category of firearms considered to be "the quintessential

23  ---

24          [7] Because Section 32310 would survive heightened scrutiny even if it implicated Second Amendment protections, for purposes of this analysis, this Court may assume, without deciding, that some Second Amendment protection is warranted.  *See Fyock*, 779 F.3d at 997 (bypassing

25  step one on preliminary injunction motion because ban on LCMs would survive heightened scrutiny even if LCMs fell within the scope of the Second Amendment); *see also Bauer v.*

26  *Becerra*, No. 15-15428, 2017 WL 2367988, at *4 (9th Cir. June 1, 2017) (assuming without deciding that fee on firearms implicated the Second Amendment); *Silvester v. Harris*, 843 F.3d

27  816, 826–27 (9th Cir. 2016) (assuming without deciding that waiting period laws fall within the scope of the Second Amendment at step one).

28

9

1  self-defense weapon," like the law at issue in *Heller*. *See* 544 U.S. at 629.  Rather, it bans a

2  particularly dangerous subset of magazines that have been illegal for sale in California for more

3  than twenty years.  Section 32310 does not restrict the number of magazines that a person may

4  own, or the number of defensive shots he can fire in the unlikely event that such shots would be

5  necessary.  Thus, the "prohibition of … large capacity magazines does not effectively disarm

6  individuals or substantially affect their ability to defend themselves."  *Fyock*, 779 F.3d at 999.

7  Accordingly, in assessing the constitutionality of a municipal ordinance banning possession of

8  LCMs, which was substantially identical to Section 32310,[8] the Ninth Circuit, like every other

9  court to consider the issue, concluded that intermediate scrutiny was appropriate.  *Id.*[9]  The Ninth

10  Circuit's determination is binding here.  *See Ranchers Cattlemen Action Legal Fund United*

11  *Stockgrowers of Am. v. U.S. Dep't of Agriculture*, 499 F.3d 1108, 1114 (9th Cir. 2007) (stating

12  that while decisions made during the preliminary injunction phase are not, as a "general rule,"

13  controlling, conclusions on pure issues of law are binding).

14      Moreover, and contrary to plaintiffs' view (Mem. at 14-16), strict scrutiny is reserved for

15  only those laws that significantly burden the core Second Amendment right to keep and bear arms

16  for self-defense in the home.  *See Silvester*, 843 F.3d at 821 (9th Cir. 2016); *Jackson*, 746 F.3d at

17  961, 964-65.  Notably, Plaintiffs do not cite, and research has not revealed, a single case applying

18  strict scrutiny to a regulation of firearms.  Section 32310 places no appreciable burden on an

19  individual's ability to defend himself at home or anywhere else.  *See Kolbe*, 849 F.3d at 127 ("[I]t

20  is rare for a person, when using a firearm in self-defense, to fire more than ten rounds.");

21  *NYSRPA*, 804 F.3d at 258 (stating that ban on large-capacity magazines "does not effectively

22  ───────────────

[8] Plaintiffs' assertion that because the ban in *Fyock* only involved a municipal ordinance
that this Court is not bound by the Ninth Circuit's determination that intermediate scrutiny applies
to LCM prohibitions is baseless.  (Mem. at 14-15.)  The Ninth Circuit's determination that
intermediate scrutiny was appropriate was not based on the geographic scope of the ordinance.
Rather, intermediate scrutiny applied because the complete ban on LCMs, like Section 32310,
was not as sweeping as a complete ban on handguns and "restricts possession of only a subset of
magazines that are over a certain capacity.  It does not restrict the possession of magazines in
general," "nor does it restrict the number of magazines that an individual may possess."  *Fyock*,
779 F.3d at 999.  Other courts have applied intermediate scrutiny to state-wide bans on LCMs.
*See Kolbe*, 849 F.3d at 138; *NYSRPA*, 804 F.3d at 260-61.

[9] *See also Friedman*, 784 F.3d at 410 (same); *Heller II*, 670 F.3d at 1264 (same).

10

1    disarm individuals or substantially affect their ability to defend themselves."); *Hightower*, 693

2    F.3d at 66, 71 (noting that "large capacity weapons" with ability to carry more than ten rounds are

3    not "of the type characteristically used to protect the home").

4         In fact, numerous studies have shown that law-abiding individuals do not fire ten or more

5    rounds in their homes, in self-defense or for any other reason.[10]  An analysis of the NRA's own

6    reports of firearm use in self-defense "demonstrated that in 50 percent of all cases, two or fewer

7    shots were fired, and the average number of shots fired across the entire data sample was about

8    two."  (Gordon Decl., Ex. 4.)  An updated analysis of the NRA reports for the period January

9    2011 to May 2017 likewise indicates that individuals fired on average only 2.2 bullets when using

10   a firearm in self-defense.  (Allen Decl., ¶¶ 7-10.)  Out of 47 incidents in California during this

11   period, there were no instances in which a defender was reported to have fired more than 10

12   bullets.  (Allen Decl., ¶ 10; *see also* RJN, Ex. A (Declaration of Ken James) ¶ 8.)

13        There is no credible evidence that a civilian would need more than a ten-round magazine in

14   his home in order to defend himself.  As a former Baltimore Police Colonel has stated, "the

15   typical self-defense scenario in a home does not require more ammunition than is available in a

16   standard 6-shot revolver or 6-10 round semiautomatic pistol.  In fact, because of the potential

17   harm to others in the household, passersby, and bystanders, too much firepower is a hazard."

18   (Gordon Decl., Ex. 30 at 16.)  *See also Heller II*, 670 F.3d at 1263-63 (noting that "high-capacity

19   magazines are dangerous in self-defense situations because the tendency is for defenders to keep

20   firing until all bullets have been expended, which poses grave risks to others in the household,

21   passersby, and bystanders." (internal quotation marks omitted)); *Colorado Outfitters*, 24 F. Supp.

22   3d at 1072 (citing testimony by Mr. Ayoob that his students "frequently feel the need to 'spray

23   and pray'" that at least one shot will hit their target).

24

25   _____

26   [10] Gun rights proponents have testified that 98 percent of the time that firearms are used defensively, it is only necessary to "brandish" a gun, but not fire it.  (Donohue Decl., ¶¶ 34-36.)

27   Mr. Ayoob similarly has commented that "[t]he bottom line is, it's not about 'what gun you have,' so much as 'did you have a gun?'"  (Gordon Decl., Ex. 5.)

28

11

For these reasons, courts that have examined the civilian use of large-capacity magazines for home or self-defense have found evidence of such uses to be lacking.  *See NYSRPA*, 804 F.3d at 263; *Hightower*, 693 F.3d at 66, 71; *Heller II*, 670 F.3d at 1263-64; *Heller v. District of Columbia*, 698 F.Supp.2d 179, 193-94 (D.D.C. 2010).  Thus, even if this Court were not bound by *Fyock* (and it is), Section 32310 would be subject to intermediate scrutiny.

**b.     Section 32310 Advances the State's Compelling Interests.**

In the Ninth Circuit, the intermediate scrutiny test under the Second Amendment requires that (1) the government's stated objective must be significant, substantial, or important; and (2) there must be a "reasonable fit" between the challenged regulation and the asserted objective. *Chovan*, 735 F.3d at 1139.  Intermediate scrutiny does not require the fit between the challenged regulation and the stated objective to be perfect, nor does it require that the regulation be the least restrictive means of serving the interest. *Jackson*, 746 F.3d at 969.  Rather, the government "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Id.* at 969-70 (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 52 (1986)).  In determining whether a law survives intermediate scrutiny, courts "afford substantial deference to the predictive judgments of the legislature." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997).  The courts' narrow role is to "assure that, in formulating its judgments, [the State] has drawn reasonable inferences based on substantial evidence." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994) (plurality).  Substantial evidence can take many forms: "history, consensus, and simple common sense," *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 628 (1995) (quotation marks omitted); *Drake v. Filko*, 724 F.3d 426, 438 (3d Cir. 2013); correlational evidence, *see United States v. Carter*, 750 F.3d 462, 469 (4th Cir. 2014); and intuition, *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1666 (2015).  Section 32310 easily passes scrutiny under this framework.

The government has important interests in promoting public safety and preventing crime and gun violence.  *See, e.g.*, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994); *Fyock*, 779 F.3d at 1000; *Chovan*, at 1135.  Section 32310 furthers these interests by eliminating a particularly lethal subset of magazines, LCMs, that are designed to cause greater fatalities and

12

1   injuries and are disproportionately used in mass shootings and the killing of law enforcement

2   officers. *Fyock*, 779 F.3d at 1000.  (Gordon Decl., Ex. 34.)  LCMs holding more than 10 rounds

3   of ammunition—in some cases up to 100 rounds—allow shooters to inflict mass casualties by

4   continuously firing bullets without pausing to reload.  Despite Plaintiffs' contention that there is

5   no evidence of a causal connection between LCMs and gun crime (Mem at 17),[11] LCMs are the

6   thread linking numerous recent high-fatality gun massacres, including the 2012 Aurora movie

7   theater shooting, where a gunman shot 70 people in ten minutes; the 2012 Sandy Hook

8   Elementary shooting, where a gunman fired 154 rounds, killing 26 children and teachers, in under

9   five minutes; the 2015 San Bernardino shooting, where assailants shot 36 people in four minutes;

10  and the 2016 Orlando nightclub shooting, where a gunman shot over 100 people and killed 49.

11  (Webster Decl., ¶ 10; Allen Decl., tbl. 1.)  While Plaintiffs argue that it is "the desire to kill" and

12  not LCMs that are the cause of these mass shootings (Mem. at 18), the fact remains that those

13  who are determined to kill as may innocent victims as possible overwhelmingly employ LCMs in

14  order to realize their "lethal intent."  (*See* Donohue Decl. ¶ 29; Graham Decl. ¶ 19; Gordon Decl.,

15  Exs. 9-11, 22.)

16      In addition to common sense, which suggests that the most effective way to eliminate the

17  threat of death, injury, and destruction caused by LCMs is to prohibit their use, the evidence

18  shows that banning possession of LCMs has the greatest potential to "prevent and limit shootings

19  in the state over the long run." *NYSRPA*, 804 F.3d at 264.  A reduction in the number of LCMs in

20  circulation will reduce the number of crimes in which LCMS are used and reduce the lethality

21

22          [11] Plaintiffs' related contention that there is no evidence linking "grandfathered, pre-ban
    large capacity magazines and mass shootings" (Mem. at 17) is both unsupported by competent
23  evidence and irrelevant.  Existing law, which allowed for possession of grandfathered LCMs was
    extremely difficult to enforce.  Because LCMs lack identifying marks to indicate when they were
24  manufactured or sold, grandfathering meant that police officers who came upon LCMs could not
    determine whether they were legally obtained. The Los Angeles County Sheriff's Department has
25  explained that the state's LCM "law is difficult to enforce since the date of acquisition is nearly
    impossible to prove," and magazines "acquired before the ban, or illegally purchased in other
26  states since the ban, are usually indistinguishable.  A ban on the possession of high capacity
    magazines will help address this issue." (Gordon Decl., Ex. 62.)  Reflecting the sheer difficulty
27  of enforcement, the Los Angeles Police Department continued to recover drastically *larger*
    numbers of crime guns loaded with LCMs in the years after the enactment of the 2000
28  restrictions, suggesting the law was not having its intended effect.  (*Id.*, Ex. 63)

13

1   and devastation of gun crime when it does occur.  (Webster Decl., ¶¶ 24-26; Donohue Decl.,

2   ¶¶ 9-10, 36; James Decl., ¶¶ 6-9, Ex. A.)

3        The only comprehensive study of the effect of the federal ban on LCMs demonstrates that

4   the ban reduced the use of LCMs in gun crimes and that it would have had an even more

5   substantial impact had it not been allowed to expire in 2004.  (Webster Decl., ¶¶ 17-24; Gordon

6   Decl., Ex. 6 at ¶¶ 7-50, 66, 74-75.)  While the use of LCMs initially increased after the federal

7   ban went into effect, due in large part to a massive stock of grandfathered and imported

8   magazines not covered by federal law, LCM use in crime appeared to be decreasing by the early

9   2000s.  (Webster Decl., ¶ 19; Gordon Decl., Ex. 58 at ¶¶ 54-63, 78-88.)  A later investigation by

10  the *Washington Post*, using more current data on the use of LCMs in crime in Virginia, confirmed

11  that between 1994 and 2004, the period the federal ban was in effect, that gun crimes using LCMs

12  declined by roughly 31 to 41 percent.  This investigation also determined that once the federal

13  ban expired, crimes with LCMs more than doubled.  (Gordon Decl., Exs. 18, 19 & 58 at ¶¶ 57, 74,

14  81; Webster Decl., ¶¶ 19, 23.)  Section 32310, which is far more robust than the federal ban, can

15  reasonably be expected to be more effective in reducing LCM use.  (Webster Decl., ¶ 26; Gordon

16  Decl., Exs. 6 at ¶¶ 51-57 & 58 at ¶¶ 69-77; James Decl., ¶ 9.)

17       Experience also indicates that because shooters limited to ten-round magazines must reload

18  more frequently, the prohibition of LCMs helps create a "critical pause" that has been proven to

19  give potential victims an opportunity to hide, escape, or disable a shooter.  *Colorado Outfitters*,

20  24 F. Supp. 3d at 1072-73.  (Donohue Decl., ¶ 21; Gordon Decl., Exs. 14, 30.) Moreover, the

21  "two or three second pause during which a criminal reloads his firearm can be of critical benefit

22  to law enforcement."  *Heller II*, 670 F.3d at 1264.  (Gordon Decl., Ex. 54.)  For example, eleven

23  children at Sandy Hook Elementary School were able to escape while the shooter reloaded his 30-

24  round LCM.  (Donohue Decl., ¶ 21; *see id.* (noting that citizens have subdued a perpetrator

25  stopping to reload his weapon in at least 20 different shootings in the United States since

26  1991).)[12]  Further, it will limit damage caused by civilians indiscriminately firing more rounds

27

28

---

[12] For example, in the 2013 massacre at Washington Navy Yard, a man with a seven-shell (continued…)

14

than necessary, thereby endangering themselves and bystanders. *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 795-96 (D. Md. 2014).  (Gordon Decl., Ex. 61 at 16.)

Accordingly, substantial evidence demonstrates that there is "reasonable fit" between Section 32310 and the State's important interests. *Chovan*, 735 F.3d at 1139.   Section 32310 prohibits possession of LCMs while allowing people to have as many magazines containing 10 rounds or fewer as they wish.  Even assuming that it "could have been drawn more narrowly, because the burden [is] minimal and intermediate scrutiny does not require the least restrictive means," the law is constitutional. *Bauer v. Becerra*, No. 15-15428, 2017 WL 2367988, at *6 (9th Cir. June 1, 2017) (citing *Jackson*, 746 F.3d at 967).[13]  Plaintiffs thus have not demonstrated a likelihood of success on their Second Amendment claim.

### 2.     Takings.

Plaintiffs' takings claim fares no better.  The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005).  Its purpose is to prohibit "[g]overnment from forcing some people

---

(…continued)

shotgun killed twelve people, but while he reloaded, a victim he had cornered was able to crawl to safety. In 2014, a gunman at Seattle Pacific University was tackled while he reloaded his shotgun. Other examples abound. (*E.g.*, John Wilkens, *Construction Workers Felt They 'Had To Do Something,'* SAN DIEGO UNION-TRIBUNE, Oct. 11, 2010, http://www.sandiegouniontribune.com/sdut-hailed-as-heroes-construction-workers-who-stopped-2010oct11-htmlstory.html (after gunman wounded two students, "workers chased after him as he stopped to reload, knocked him" down "and held him until police arrived"); *Deer Creek Middle School Shooting: At Least Two Shot in Incident in Littleton, Colorado*, HUFFINGTON POST, Apr. 25, 2010, http://www.huffingtonpost.com/2010/02/23/deer-creek-middle-school_n_473943.html (math teacher "tackled the suspect as he was trying to reload his weapon"); Shaila Dewan, *Hatred Said to Motivate Tenn. Shooter*, N.Y. TIMES, Jul. 28, 2008, http://www.nytimes.com/2008/07/28/us/28shooting.html ("It was when the man paused to reload that several congregants ran to stop him.").)

[13] While Plaintiffs dispute the efficacy of Section 32310, even if any of their supposition regarding the behavior of mass-shooters were valid and not contradicted by empirical evidence (*see, e.g.*, Gordon Decl., Ex. 34; Allen Decl., ¶¶ 11-16; Webster Decl., ¶¶ 13-16), some disagreement regarding the utility of the ban on LCM possession would not prevent Section 32310 from surviving intermediate scrutiny. *See Turner*, 512 U.S. at 666; *Fyock*, 779 F.3d at 1001-01; *Kashalsky v. County of Westchester*, 701 F.3d 81, 99 (2d Cir. 2012).

15

1   alone to bear public burdens which, in all fairness and justice, should be borne by the public as a

2   whole." *Penn Central Transp. Co. v. City of N.Y.*, 438 U.S. 104, 123 (1978) (internal quotations

3   and citations omitted).  Although a taking often occurs when the government physically invades

4   or confiscates property, the Supreme Court has recognized that economic regulation may also

5   effect a taking if it "goes too far." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

6   Government regulation that "completely deprives an owner of all economically beneficial use of

7   her property" is generally deemed to be a taking compensable under the Fifth Amendment.

8   *Lingle*, 544 U.S. at 528.

9                              **a.    Section 32310 Is Not a Physical Taking.**

10        Plaintiffs argue that Section 32310 is a physical taking because it compels the physical

11  appropriation of property.  (Mem. at 24-28.)  Plaintiffs reason that because they claim that there is

12  no market for selling LCMs to a licensed firearms dealer and storing LCMs out of state is

13  "unrealistic," the only option left for all LCM owners is to surrender their LCMs to law

14  enforcement for destruction and thus, they are entitled to compensation.  (*Id.* at 24-25 (citing

15  § 32310(d)).)[14]  Even overlooking the complete lack of cognizable evidentiary support for this

16  argument, Section 32310 still does not amount to a physical taking.  In a physical taking, the

17  government exercises its eminent domain power to take private property for "public use."  S*ee*

18  *Lingle*, 544 U.S. at 536; *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1034 (9th Cir. 2000).

19  By contrast, where, as here, the government acts pursuant to its police power to protect the safety,

20  health, and general welfare of the public, a prohibition on possession of property declared to be a

21  public nuisance is not a physical taking.  *See Chi., B. & Q. R. Co. v. Illinois*, 200 U.S. 561, 593-

22  594 (1906) ("It has always been held that the legislature may make police regulations, although

23  they may interfere with the full enjoyment of private property and though no compensation is

24  given."); *Akins v. United States*, 82 Fed. Cl. 619, 622 (2008) ("Property seized and retained

25  pursuant to the police power is not taken for a 'public use' in the context of the Takings

26  Clause."); *see also Everard's Breweries v. Day*, 265 U.S. 545, 563 (1924); *Mugler v. Kansas*, 123

27        _____
          [14] Although Plaintiffs do not address this, they may also modify an LCM to accept ten
28  rounds or less to comply with the law.  § 16740.

1    U.S. 623, 668-69 (1887).  Recognizing this distinction, a number of courts have rejected Takings

2    Clause challenges to laws banning the possession of dangerous weapons.  *See Akins*, 82 Fed. Cl.

3    at 623-24 (restrictions on sale and possession of machine guns not a taking); *Fesjian v. Jefferson*,

4    399 A.2d 861 (D.C. Ct. App. 1979) (ban on machine guns not a taking); *cf. Gun South, Inc. v.*

5    *Brady*, 877 F.2d 858, 869 (11th Cir. 1989) (suspension on importation of assault weapons not a

6    taking).[15]

7           In contrast to the cases cited by plaintiffs (*see* Mem. at 27), Section 32310 is not an exercise

8    of the eminent domain power and does not involve the government acquiring LCMs for public

9    use or forcing the sale of property to a government designee to use for a public purpose.  *See*

10   *Dore v. United States*, 97 F. Supp. 239, 242 (Ct. Cl. 1951) (rice milling companies' forced sales

11   of rice to the government for public use in compliance with government orders, made in exercise

12   of wartime powers, constituted taking of rice for public use, so as to entitle companies to just

13   compensation under Fifth Amendment); *Edward P. Stahel & Co. v. United States*, 78 F. Supp.

14   800 (Ct. Cl. 1948) (priority order of October 16, 1941, made by War Production Board requiring

15   owners of silk to fill orders of contractors having contracts with government for manufacture of

16   parachutes and orders of Defense Supplies Corporation constituted a taking of property for public

17   use).

18          Regardless of how Plaintiffs choose to divest themselves of an LCM in accordance with

19   Section 32310, the purpose of the statute is to remove LCMs from circulation, not to transfer title

20   to the government or an agent of the government for use in service of the public good.

21   Accordingly, it does not affect a physical taking.

22                  **b.     Section 32310 Is Not a Regulatory Taking.**

23          In addition to the reasons discussed above as to why this regulation is not a "taking" at all,

24   *see Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027-1028, Plaintiffs' argument

25          [15] Plaintiffs' argument that after the Supreme Court's decision in *Heller*, the regulation of
     LCMs is not a valid exercise of police power (Mem. at 31-35) is unfounded.  While *Heller*
26   recognizes a core Second Amendment right of individuals to possess an operable handgun in the
     home for self-defense, the Court affirmed the longstanding police power of the States to enact
27   reasonable gun regulations.  *Heller*, 554 U.S. at 626-29; *McDonald*, 561 U.S. at 785.

28

                                                        17

1    that Section 32310 is a regulatory taking also fails.  As Plaintiffs acknowledge, until July 1, 2017,

2    they are able to protect or realize the economic value of their LCMs by storing them out-of-state

3    or selling them to a licensed firearms dealer.[16]  *See* § 32310(d).  It is also possible and relatively

4    easy to modify an LCM so it can only accept a maximum of ten rounds.  Gordon Decl., Ex. 7

5    at 5-6.  Accordingly, Section 32310 does not deprive plaintiffs of all economically beneficial uses

6    of their property and thus plaintiffs cannot succeed on a regulatory taking claim.[17]  *See Lucas*,

7    505 U.S. at 1019; *Chevron USA*, 224 F.3d at 1041-42.[18]

8            **3.    Vagueness.**

9            Plaintiffs' claim that Section 32310 is "unconstitutionally vague on its face and as applied

10   to Plaintiffs" (Mem. at 43) fails as a matter of law.  Where a plaintiff's constitutional challenge to

11   a statute does not involve the First Amendment (as is the case here), the Court "do[es] not

12   consider whether the statute is unconstitutional on its face," but rather "'whether the [statute] is

13   impermissibly vague *in the circumstances of this case.*'"  *United States v. Purdy*, 264 F.3d 809,

14   811 (9th Cir. 2001) (quoting *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977); *see*

15   *also Nichols v. Harris*, 17 F. Supp. 989, 1012 (C.D. Cal. 2014) (rejecting plaintiff's facial

16   _____

17          [16] It is unclear how much value Plaintiffs' LCMs, all of which were acquired before 2000,
     still have.  (*See* Mem. at 38; Declaration of Youngman ("Youngman Decl."), ¶ 10 (Dkt. No. 28-

18   2).)  Relatedly, while Plaintiffs cite *Penn Central Transp. Co. v. City of N.Y.*, 438 U.S. 104, even
     assuming that analyzing the ban on LCMs under the *Penn Central* factors, there are insufficient
19   facts about the effect of Section 32310 to do so.  A "court cannot determine whether a regulation
     goes 'too far' [so as to constitute a taking] unless it knows how far the regulation goes."
20   *Palazzolo v. Rhode Island*, 533 U.S. 606, 622 (2001).

21          [17] Plaintiffs mistakenly rely on cases such as *Andrus v. Allard*, 444 U.S. 51 (1979), in
     support of their argument that Section 32310 is a regulatory taking.  *Andrus* involved the
22   prohibition on commercial transactions of eagle feathers.  In determining that the prohibition was
     not a taking, the Court stated that although the law did prevent the most profitable use of
     plaintiffs' property, because they could continue to possess the artifacts, they had not been
23   deprived of all economic benefit.  444 U.S. at 66-67.  Nothing in *Andrus* suggests that a ban on
     possession is a per se taking.  Further, and as discussed herein, Section 32310 does not deprive
24   plaintiffs of all economic benefit of their LCMs.

25          [18] To the extent that Plaintiffs suggest that Section 32310 is a taking because it is
     "retroactive," this argument is baseless.  Section 32310 is not retroactive, as it does not punish
26   individuals for the past possession of LCMs.  Rather, the law imposes criminal penalties only
     upon those individuals that possess LCMs *on or after* July 1, 2017.  § 32310 (c), (d).  Thus,
27   Section 32310 does not "alter[] the legal consequences of acts completed before its effective
     date," *Chang v. United States*, 327 F.3d 911, 920 (9th Cir. 2003).

28
                                                    18
     _____

1  challenge to California's open carry regulations on vagueness grounds because "facial challenges

2  on the ground of unconstitutional vagueness that do not involve the First Amendment are not

3  cognizable." (citation omitted)), *appeal docketed*, No. 14-55873 (9th Cir. May 29, 2014).

4  Because this case does not involve the First Amendment, Plaintiffs cannot assert a facial

5  challenge to Section 32310 on vagueness grounds.

6  Even if a vagueness claim could be made in this case, Section 32310 is not

7  unconstitutionally vague or ambiguous.  Plaintiffs contend that Section 32310 is

8  "unconstitutionally vague to the point of being downright confusing and nonsensical."  There is

9  no merit to this argument.  "What renders a statute vague is not the possibility that it will be

10  difficult to determine whether the incriminating fact it establishes has been proved; but rather the

11  indeterminacy of precisely what that fact is."  *United States v. Williams*, 553 U.S. 285, 306 (2008);

12  *see also Hill v. Colorado*, 530 U.S. 703, 732 (2000) ("[S]peculation about possible vagueness in

13  hypothetical situations not before [the Court] will not support a facial attack on a statue when it is

14  surely valid in the vast majority of its intended applications."); *Cal. Teachers Ass'n v. State Bd. of*

15  *Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001) ("Even when a law implicates First Amendment

16  rights, the constitution must tolerate a certain amount of vagueness.").

17  The regulatory ambit of Section 32310 is clear:  it prohibits the possession of LCMs, which

18  are defined as "any ammunition feeding device with the capacity to accept more than 10 rounds,

19  but shall not be construed to include any of the following:  (a) A feeding device that has been

20  permanently altered so that it cannot accommodate more than 10 rounds.  (b) A .22 caliber tube

21  ammunition feeding device.  (c) A tubular magazine that is contained in a lever-action firearm."

22  § 16740.  There is nothing ambiguous about this statute, and, in the particulars of this case,

23  Plaintiffs do not argue that there is any uncertainty as to the application of the statute to their

24  LCMs.  To the contrary, they admit that they are in possession of LCMs that are subject to

25  Section 32310.  (*See, e.g.*, Declaration of William M. Wiese Jr. (Dkt. No. 28-6) ¶ 3 ("I have

26  legally owned large-capacity magazines, *as that term is defined by statute*." (emphasis added)).)

27  Plaintiffs also argue that Section 32310 is unconstitutionally vague due to some

28  inconsistencies between SB 1446 and Proposition 63.  (Mem. at 41-42.)  Any inconsistencies

19

1   between the two measures is of no moment.  The amendments of Proposition 63 take precedence

2   over those contained in SB 1446 because Proposition 63 was enacted by the people of California

3   after the enactment of SB 1446.  *See Hawaii v. Trump*, __ F.3d __, 2017 WL 2529640, at *20

4   (9th Cir. June 12, 2017) ("[A] later enacted, more specific statute generally governs over an

5   earlier, more general one." (citation omitted)).  Here, SB 1446 was enacted in July 2016 with an

6   effective date of January 1, 2017.  Proposition 63 was enacted several months later, on November

7   8, 2016, effective the next day, and contained several changes to SB 1446, including enhanced

8   penalties for violation of the statute.  Accordingly, Section 32310, as amended by Proposition 63

9   (and not SB 1446), is controlling and there can be no confusion as to what is required of Plaintiffs

10  on July 1, 2017.

11      The statute is not void for vagueness and Plaintiffs' vagueness claim cannot provide the

12  basis for injunctive relief.

13          **4.      Overbreadth.**

14      As with each of their other claims, Plaintiffs' overbreadth claim fails.  (*See* Mem. at 43-44.)

15  As a threshold matter, the overbreadth doctrine simply does not apply outside of the First

16  Amendment context and, thus, is inapplicable in this case.  *See, e.g.*, *United States v. Salerno*, 481

17  U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited

18  context of the First Amendment." (citation omitted)); *Kachalsky v. Cnty. of Westchester*, 701 F.3d

19  81, 101 (2d Cir. 2012) ("Overbreadth challenges are generally limited to the First Amendment

20  context." (citing *Salerno*, 481 U.S. at 745)); *United States v. Chester*, 628 F.3d 673, 688 (4th Cir.

21  2010) ("[I]mporting the over-breadth doctrine . . . into the Second Amendment context would be

22  inappropriate.").  And even in the First Amendment context, overbreadth doctrine has been

23  recognized as "strong medicine" and is employed by the courts "with hesitation."  *New York v.*

24  *Ferber*, 458 U.S. 747, 769 (1982).  Because overbreadth doctrine does not apply in the Second

25  Amendment context, Plaintiffs cannot state a claim that Section 32310 is unconstitutionally

26  overbroad.

27      Moreover, even if the doctrine were applicable in this case, Plaintiffs overbreadth claim

28  would still fail.  A statute is unconstitutionally overbroad only when it infringes upon or would

have the tendency to chill constitutionally protected activity.  *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984) ("There must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections . . . for it to be facially challenged on overbreadth grounds.").  Plaintiffs contend that Section 32310 is overbroad because it "would deprive countless responsible owners of their *constitutionally-protected rights.*"  (*Id.* at 44 (emphasis added).)  But this claim assumes the conclusion—that depriving owners of their LCMs would violate their constitutional rights.  Plaintiffs have failed to establish any such constitutional violation.  (*See supra* Section II.A.1-3.)  Because Plaintiffs' overbreadth claim is contingent on the unconstitutionality of Section 32310, and because they have failed to demonstrate any other constitutional violation in the enforcement of Section 32310, even if overbreadth were applicable in the context of the Second Amendment, Plaintiffs' overbreadth claim is groundless.[19]

### B.     Plaintiffs Have Failed to Demonstrate Either Irreparable Injury or that the Balance of Hardships and the Public Interest Weigh in Favor of Injunctive Relief.

Aside from claiming that they will not longer have possession of their LCMs, Plaintiffs fail to articulate any *irreparable* injury if a TRO is not issued.  As a threshold matter, because their constitutional claims fail (*see supra* Section II.A), plaintiffs cannot demonstrate that they will be injured, let alone irreparably so, in the absence of an injunction.  *See Goldie's Bookstore, Inc. v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984); *Fyock*, 25 F. Supp. 3d at 1282.  (*See also* Mem. at 19 (noting that irreparable harm is "inseparably linked to the likelihood of success on the merits" (citation omitted)).)  Plaintiffs have not established that having to use lower-capacity magazines instead of LCMs qualifies as irreparable harm.  *See S.F. Veteran Police Officers Ass'n*, 18 F. Supp. 3d at 1005.[20]

---

[19] Plaintiffs contend that they are law-abiding citizens and that "[t]here is simply no evidence any of *these* magazines or any of their owners have ever been involved in mass shootings, gun crimes, or in anything other than purely lawful activities."  (Mem. at 44 (emphasis in original)).)  Even so, the State is not precluded from prohibiting LCMs that may be used in criminal activity, or fall into the wrong hands, in the future.

[20] Plaintiffs have not established that their LCMs—which were all acquired before 2000—would be more effective than standard magazines for self-defense purposes.  (Youngman Decl., ¶
(continued…)

21

1    Any claim of irreparable injury in this case is further undermined by Plaintiffs' delays in

2    seeking injunctive relief in this case.  Plaintiffs waited for more than seven months to seek

3    injunctive relief, and less than three weeks before the enforcement date of Section 32310.  (*See*

4    *supra* Section I.)  If Plaintiffs' purported injuries were so serious, they should have sought

5    injunctive relief at a much earlier date.  Plaintiffs' own delay in seeking injunctive relief

6    "contradicts [their] allegations of irreparable injury and [the Court] may deny the motion solely

7    on [this] ground."  L.R. 231(b); *see also See Boutros v. Tan*, No. 13-cv-01306, 2013 WL

8    3338660, at *2 (E.D. Cal. July 2, 2013) (noting that the plaintiff's "delay of nearly six months

9    constitutes an 'undue delay' under Local Rule 231(b)" because plaintiff's delay in seeking

10   injunctive relief "contradicts Plaintiff's claims that Plaintiff will be irreparably injured if a [TRO]

11   does not issue"); *Occupy Sacramento v. City of Sacramento*, No. 11-cv-02873, 2011 WL

12   5374748, at *4 (E.D. Cal. Nov. 4, 2011) (noting that plaintiffs' 25-day delay in seeking injunctive

13   relief "tends to undermine their claim that the extraordinary remedy of a TRO is warranted").

14   Ultimately, plaintiffs have not established, and cannot establish, harm sufficient to

15   outweigh the fact that "[a]ny time a State is enjoined by a court from effectuating statutes enacted

16   by representatives of its people, [the State] suffers a form of irreparable injury."  *Maryland v.*

17   *King*, 133 S. Ct. 1, 2 (2012) (quotation and citation omitted).  Plaintiffs cannot show that having

18   to use magazines containing ten rounds outweighs the grievous injuries and deaths caused to

19   innocent civilians and law enforcement by LCMs.  Nor can they demonstrate that it is in the

20   public interest to enjoin a duly-enacted law designed to protect the public safety and reduce gun

21   violence and gun-related crime.  *See Tracy Rifle and Pistol LLC v. Harris*, 118 F. Supp. 3d 1182,

22   1193-94 (E.D. Cal. 2015); *see also Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d

23   1228, 1236 (9th Cir. 1999).  Accordingly, in addition to Plaintiffs' failure to demonstrate a

24

25

26   _____

(…continued)

27   10 (stating that older LCMs "may suffer from defects such as worn springs, followers and feed
     lips, which may greatly impair their reliability.").)

28                                                    22

1    likelihood of success on the merits as to their claims, the law, the balance of hardships, and the

2    public interest all weigh decisively against injunctive relief.[21]

3    ### III.   PLAINTIFFS' REQUEST FOR A BRIEFING AND HEARING SCHEDULE ON SHORTENED
     TIME FOR THEIR MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED.

4

5        In addition to a TRO, Plaintiffs request an accelerated briefing and hearing schedule on their

6    motion for a preliminary injunction.  (Notice of Mot. at 2 (Dkt. No. 28); Proposed Order at 2-3

7    (Dkt. No. 28-14).)  Although not explicitly styled as an ex parte request for shortened time on the

8    motion for a preliminary injunction, Plaintiffs' TRO Motion seeks to, *inter alia*, set a briefing

9    schedule and hearing date no later than June 30, 2017.  To receive ex parte relief, however,

10   Plaintiffs must show that they are "without fault in creating the crisis that requires ex parte relief,

11   or that the crisis occurred as a result of excusable neglect."  *Mission Power Engineering, Co. v.*

12   *Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).  Under Local Rule 144(e), any

13   ex parte application to shorten time "will not be granted except upon affidavit of counsel showing

14   a satisfactory explanation for the need for the issuance of such an order and for the failure of

15   counsel to obtain a stipulation for the issuance of such an order from other counsel or parties in

16   the action."  Similarly, pursuant to this Court's procedures, any applicant for ex parte relief must

17   submit "an affidavit indicating a satisfactory explanation for the following: 1) the need for the

18   issuance of such an order; 2) the failure of the filer to obtain a stipulation for the issuance of such

19   an order from other counsel or parties in the action, [and] 3) why such request cannot be noticed

20   on the court's motion calendar pursuant to Local Rule 230."

21       Plaintiffs' moving papers fail to disclose sufficient good cause for shortening time on the

22   motion for a preliminary injunction.  *See* Fed. R. Civ. P. 6(c)(1)(C) (requiring a showing of "good

23   cause" for shortening time).  Plaintiffs are not entitled to an order shortening time based on their

24   own delays in seeking injunctive relief.  (*See supra* Section I.)  Moreover, Plaintiffs' ex parte

25   ───────────
     [21] Plaintiffs also claim that they have raised "serious questions" concerning the merits of

26   their claims. (Mem. at 20-21).  They have not done so. (*See supra* Section II.A.)  Given the
     universal rejection of Plaintiffs' arguments by all courts to have considered LCM bans, including

27   the Ninth Circuit, Plaintiffs have not raised "serious questions" about the constitutionality of
     Section 32310, and, in any event, the balance of the hardships weigh strongly against injunctive

28   relief.

                                              23

1   request for a highly compressed briefing and hearing schedule would severely prejudice

2   Defendants' ability to review the voluminous materials submitted in support of the motion for a

3   preliminary injunction and adequately prepare an opposition.  Any claim of good cause is further

4   undermined here by the parallel litigation in *Duncan v. Becerra*, which is currently pending

5   before the Honorable Roger T. Benitez in the United States District Court for the Southern

6   District of California (Case No. 17-cv-1017-BEN-JLB).  As noted in the Supplemental

7   Declaration of George M. Lee ("Lee Supp. Decl.") (Dkt. No. 25), filed in conjunction with

8   Plaintiffs' initial motion for a TRO, the plaintiffs in that action are "seeking substantially similar

9   relief" (Lee Supp. Decl. ¶ 3), and the hearing on plaintiffs' motion for a preliminary injunction

10  has already occurred.  Even if the motion for a preliminary injunction in this case is heard on a

11  normal briefing and hearing schedule, another court will likely rule on the propriety of enjoining

12  enforcement of Section 32310 prior to the July 1, 2017 enforcement date.[22]

13          The Court should deny this ex parte request for lack of good cause and set the matter for

14  hearing at least 28 days following the filing of the TRO Motion (July 12, 2017), with the parties'

15  respective briefing deadlines being governed by Local Rule 230(c) and (d).  The Court should not

16  delay enforcement of this vital public safety measure simply because Plaintiffs sat on their rights

17  and waited until the eve of the statute's enforcement date to pursue injunctive relief.  In the event

18  that the Court is inclined to hear the motion for a preliminary injunction on an expedited basis,

19  however, Defendants request that the hearing be set for June 30, 2017, with Defendants'

20  opposition being due four days prior to the hearing.

21

22

23

24

25          [22] As Mr. Lee correctly observed, depending on the outcome of *Duncan*, it may not be
    necessary to schedule a hearing on Plaintiffs' motion for a preliminary injunction.  And even if
26  the plaintiffs in *Duncan* do not prevail, the only purpose an expedited hearing in this matter
    would serve is to give Plaintiffs the opportunity to have a different judge potentially enjoin the
27  statute.  Nothing prevented Plaintiffs from seeking injunctive relief, and scheduling a hearing
    before this Court, long before the *Duncan* litigation even commenced.  (*See supra* Section I.)

28

24

**CONCLUSION**

For the foregoing reasons, Plaintiffs' TRO Motion should be denied.

Dated:  June 16, 2017                                Respectfully submitted,

                                                     XAVIER BECERRA
                                                     Attorney General of California
                                                     TAMAR PACHTER
                                                     Supervising Deputy Attorney General
                                                     ALEXANDRA ROBERT GORDON
                                                     Deputy Attorney General


                                                     *s/ John D. Echeverria*
                                                     JOHN D. ECHEVERRIA
                                                     Deputy Attorney General
                                                     *Attorneys for Defendants*

Defendants' Opposition to Renewed Motion for Temporary Restraining Order
and Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

# CERTIFICATE OF SERVICE

Case Name: **Wiese, William, et al.  v.**        No.    **2:17-cv-00903-WBS-KJN**
               **Xavier Becerra, et al.**

I hereby certify that on <u>June 15, 2017</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND ISSUANCE OF PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>June 15, 2017</u>, at San Francisco, California.


N. Newlin                    /s/ N. Newlin
Declarant                    Signature

SA2017106942
POS.doc