1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  TAMAR PACHTER, State Bar No. 146083
   Supervising Deputy Attorney General
3  ALEXANDRA ROBERT GORDON, State Bar No. 207650
   Deputy Attorney General
4  JOHN D. ECHEVERRIA, State Bar No. 268843
   Deputy Attorney General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013
6    Telephone:  (213) 897-4902
     Fax:  (213) 897-5775
7    E-mail:  John.Echeverria@doj.ca.gov
   *Attorneys for Defendants*

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

| | |
|---|---|
| 13  **WILLIAM WIESE, et al.,** | 2:17-cv-00903-WBS-KJN |
| 14                                    Plaintiff, | **DEFENDANTS' SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION TO RENEWED MOTION FOR** |
| 15        **v.** | **TEMPORARY RESTRAINING ORDER AND ISSUANCE OF PRELIMINARY** |
| 16  **XAVIER BECERRA, et al.,** | **INJUNCTION** |
| 17                                    Defendant. | Date:           June 29, 2017 |
| 18 | Time:          9:00 a.m. |
|  | Dept:          5, 14th Floor |
| 19 | Judge:        Hon. William B. Shubb |
|  | Trial Date:   None Set |
| 20 | Action Filed:  April 28, 2017 |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.    Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits as to Any of Their Claims. ......................................................................................... 2

    A.    Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of Their Takings Claim.................................................................... 3

        1.    Section 32310 Is Not a Physical Taking. ........................................ 4

        2.    Section 32310 Is Not a Regulatory Taking. .................................... 9

    B.    Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of Their Vagueness Claim. ............................................................ 11

II.    Plaintiffs Have Failed to Demonstrate Irreparable Harm in the Absence of a Preliminary Injunction. ......................................................................................... 12

CONCLUSION ..................................................................................................................... 14

i

1

# TABLE OF AUTHORITIES

2

__Page__

3  C<small>ASES</small>

4
*Akins v. United States*
5    82 Fed. Cl. 619 (2008) ..............................................................................5, 7

6  *Alliance for the Wild Rockies v. Cottrell*
     632 F.3d 1127 (9th Cir. 2011)...................................................................1, 12

7
*Andrus v. Allard*
8    444 U.S. 51 (1979) .......................................................................................10

9  *Asian Am. Rights Comm. of Cal. v. Brown*
     No. CGC 12-517723 (Cal. Super. Ct. July 20, 2012) ....................................6
10

11  *Burns v. Mukasey*
     2009 WL 3756489 (E.D. Cal. Nov. 6, 2009) ................................................7
12

13  *Chang v. United States*
     327 F.3d 911 (9th Cir. 2003) ........................................................................11

14  *Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*
     958 F.2d 941 (9th Cir. 1992).........................................................................3
15

16  *Chevron USA, Inc. v. Cayetano*
     224 F.3d 1030 (9th Cir. 2000)..................................................................5, 10
17

18  *Chi., B. & Q. R. Co. v. Illinois*
     200 U.S. 561 (1906)........................................................................................5

19  *Chinatown Neighborhood Ass'n v. Harris*
     33 F. Supp. 3d 1085 (N.D. Cal. 2014) ...........................................................6
20

21  *Ctr. for Competitive Politics v. Harris*
     784 F.3d 1307 (9th Cir. 2015).........................................................................2
22

23  *District of Columbia v. Heller*
     544 U.S. 570 (2008)....................................................................................7, 8

24  *Dore v. United States*
     97 F. Supp. 239 (Ct. Cl. 1951) .......................................................................5
25

26  *Edward P. Stahel & Co. v. United States*
     78 F. Supp. 800 (Ct. Cl. 1948) .......................................................................5

27  *Fesjian v. Jefferson*
     399 A.2d 861 (D.C. Ct. App. 1979)................................................................7
28

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

3

*Fyock v. Sunnyvale*
779 F.3d 991 (9th Cir. 2015)..................................................................3

4

5

*Gun South, Inc. v. Brady*
877 F.2d 858 (11th Cir. 1989)................................................................7

6

*Karlin v. Foust*
188 F.3d 446 (7th Cir. 1999)..................................................................11

7

8

*Levald, Inc. v. City of Palm Desert*
998 F.2d 680 (9th Cir. 1993)........................................................4, 9, 10

9

*Lingle v. Chevron U.S.A., Inc.*
544 U.S. 528 (2005) ............................................................................3, 4, 9

10

11

*Lucas v. South Carolina Coastal Council*
505 U.S. 1003 (1992) .........................................................................8, 10

12

13

*Mazurek v. Armstrong*
520 U.S. 968 (1997) ............................................................................1

14

*McDonald v. City of Chi.*
561 U.S. 742 (2010) ............................................................................7

15

16

*MHC Fin. Ltd. P'ship v. City of San Rafael*
714 F.3d 1118 (9th Cir. 2013)................................................................10

17

18

*Oakland Trib., Inc. v. Chron. Publ'g Co.*
762 F.2d 1374 (9th Cir. 1985)................................................................13

19

20

*Pa. Coal Co. v. Mahon*
260 U.S. 393 (1922) ............................................................................4, 10

21

*Palazzolo v. Rhode Island*
533 U.S. 606 (2001) ............................................................................10

22

23

*Penn Central Transp. Co. v. City of N.Y.*
438 U.S. 104 (1978) ......................................................................4, 5, 6, 10

24

25

*People v. Sakai*
56 Cal. App. 3d 531 (1976)...................................................................6

26

*Ruckelshaus v. Monsanto Co.*
467 U.S. 986 (1984) ............................................................................12

27

28

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Suitum v. Tahoe Regional Planning Agency*
    520 U.S. 725 (1997)...................................................................................4, 9

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*
    535 U.S. 302 (2002)......................................................................................4

*United States v. Salerno*
    481 U.S. 739 (1987).....................................................................................2, 3

*Wash. State Grange v. Wash. State Republican Party*
    552 U.S. 442 (2008)......................................................................................3

*Wilkins v. Daniels*
    913 F. Supp. 2d 517 (S.D. Ohio 2012) .......................................................6

*Winter v. Nat'l Res. Def. Council, Inc.*
    555 U.S. 7 (2008).......................................................................................1, 12

*Wis. Cent. Ltd. v. Pub. Serv. Comm'n of Wis.*
    95 F.3d 1359 (7th Cir. 1996)......................................................................12

**STATUTES**

California Code of Regulations Title 11
    § 5480...........................................................................................................13

California Fish and Game Code
    § 2021............................................................................................................6
    § 2021.5.........................................................................................................6

California Penal Code
    § 653..............................................................................................................7
    § 1170............................................................................................................7
    § 16740....................................................................................................5, 8, 13
    § 18010..........................................................................................................8
    § 21810..........................................................................................................7
    § 32310 .................................................................................................. *passim*
    § 32390..........................................................................................................5
    § 32390..........................................................................................................8
    § 32406.........................................................................................................11
    § 32425.........................................................................................................10
    § 32625..........................................................................................................7

Defendants' Supplemental Brief in Further Opposition to Renewed Motion for Temporary Restraining Order and
Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

# TABLE OF AUTHORITIES
### (continued)

Page

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment....................................................................................................................11
    Second Amendment .....................................................................................................3, 7, 8, 12
    Fifth Amendment ......................................................................................................... *passim*
    Fourteenth Amendment...........................................................................................................3

Defendants' Supplemental Brief in Further Opposition to Renewed Motion for Temporary Restraining Order and
Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

1    In accordance with this Court's Order, dated June 16, 2017 (Dkt. No. 45), Defendants

2 respectfully submit this supplemental brief in further opposition to Plaintiffs' Renewed Motion

3 for Temporary Restraining Order and Issuance of Preliminary Injunction (the "Motion") (Dkt.

4 No. 28).[1]

5             **INTRODUCTION**

6    Plaintiffs have failed to demonstrate sufficient grounds for the issuance of a preliminary

7 injunction to enjoin enforcement of Section 32310—a public safety measure enacted to eliminate

8 from the State large-capacity magazines ("LCMs"), which have been used in mass shootings to

9 kill and injure the maximum number of victims.  A preliminary injunction is "an extraordinary

10 and drastic remedy . . . that should not be granted unless the movant, *by a clear showing*, carries

11 the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted and

12 emphasis in original).  Plaintiffs have failed to meet that burden.  They have not established *any*

13 of the elements required for issuance of a preliminary injunction. *See Winter v. Nat'l Res. Def.*

14 *Council, Inc.*, 555 U.S. 7, 20 (2008).  Nor have they presented "serious questions" going to the

15 merits of their claims that could justify preliminary injunctive relief. *See Alliance for the Wild*

16 *Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

17    *First*, Plaintiffs have not established a likelihood of success on the merits of any of their

18 claims.  Plaintiffs have failed to satisfy their burden in asserting a facial challenge to Section

19 32310, and their takings and vagueness claims are not cognizable.  Contrary to Plaintiffs'

20 contentions, Section 32310 is neither a physical nor a regulatory taking.  Instead, Section 32310 is

21 a valid exercise of the State's police power and, in any event, the statute does not, by its mere

22 enactment, eliminate the value of Plaintiffs' LCMs.  Plaintiffs cannot state a vagueness claim

23 because, even if there were a question as to which amendments are controlling (SB 1446 or

24 Proposition 63), such a legal question would not render the statute void for vagueness.

25

26 ———————————

27    [1] On June 15, 2017, Defendants filed an opposition to the Motion (the "Opposition" or "Opp'n") and supporting materials.  (Dkt. Nos. 34-42.)  Capitalized terms used but not defined herein shall have the same meanings assigned to them in the Opposition.

28

1

Defendants' Supplemental Brief in Further Opposition to Renewed Motion for Temporary Restraining Order and
Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)

1    **Second**, Plaintiffs have also failed to demonstrate that they would suffer irreparable harm in

2    the absence of a preliminary injunction.  Even if Plaintiffs could succeed on their takings claim

3    (they cannot), they have failed to explain why monetary damages for any loss of value of their

4    LCMs (*i.e.*, "just compensation") would be an inadequate remedy in this case.

5         For the reasons discussed in Defendants' Opposition, and the additional reasons discussed

6    below, the Court should deny Plaintiffs' motion for a preliminary injunction.

7                                          **ARGUMENT**

8    **I.    PLAINTIFFS HAVE FAILED TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THE**

9         **MERITS AS TO ANY OF THEIR CLAIMS.**

10        Plaintiffs have failed to show a likelihood of success on the merits of their facial challenge

11   to Section 32310.  Although Plaintiffs claim to assert both facial and as-applied challenges to

12   Section 32310 (*see* First Am. Compl. ("FAC"), ¶ 1; Mem. at 9), to obtain a preliminary

13   injunction, they must show that they are likely to prevail on a facial challenge, because that is the

14   reach of the relief they seek.  During the June 16 hearing on Plaintiffs' application for a TRO,

15   there was a colloquy concerning whether this action is brought in a "representative capacity"

16   pursuant to state law[2] (it is not) and whether, if Plaintiffs prevail in the action, all owners of

17   LCMs would benefit (they would).  If successful, this action would enjoin the State from

18   enforcing the LCM ban.  Plaintiffs seek a declaration that Section 32310 is unconstitutional as

19   well as a statewide injunction enjoining the enforcement of Section 32310.  (*See* FAC at 29

20   (Prayer for Relief).)  Because the relief they seek would "reach[] beyond the particular

21   circumstances of these plaintiffs," Plaintiffs must "satisfy [the] standards for a facial challenge to

22   the extent of that reach."  *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1314 (9th Cir.

23   2015), *cert. denied*, 136 S. Ct. 480 (2015).

24        In order to succeed on a facial challenge, a plaintiff "must establish that no set of

25   circumstances exists under which the [regulation or statute] would be valid."  *United States v.*

26

27        [2] Plaintiffs purport to bring their claims in a "representative capacity" pursuant to state law.  (Mem. at 7, 23.)

28

2

1    *Salerno*, 481 U.S. 739, 745 (1987); *accord Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958

2    F.2d 941, 943 (9th Cir. 1992).  In seeking to void a statute or regulation as a whole, a plaintiff

3    cannot prevail by suggesting that in some future hypothetical situation constitutional problems

4    may possibly arise as to the particular application of the statute.  Rather, they must show that the

5    statute is unconstitutional in *all* of its applications.  *See Wash. State Grange v. Wash. State*

6    *Republican Party*, 552 U.S. 442, 450 (2008).  Where, as here, a statute has a "plainly legitimate

7    sweep," a facial challenge must fail.  *Id.* at 449 (citation and internal quotations omitted).

8          Plaintiffs have not met their "heavy burden" of showing that Section 32310 is facially

9    unconstitutional in *any* circumstance, let alone *every* circumstance.  *Salerno*, 481 U.S at 745 ("A

10    facial challenge to a legislative Act is, of course, the most difficult challenge to mount

11    successfully, since the challenger must establish that *no set of circumstances* exists under which

12    the Act would be valid." (emphasis added)).  As discussed in the Opposition, the Ninth Circuit

13    has determined that "intermediate scrutiny is appropriate" in evaluating LCM bans, *Fyock v.*

14    *Sunnyvale*, 779 F.3d 991, 999 (9th Cir. 2015), and *every* court to have considered a Second

15    Amendment challenge to an LCM ban has upheld the ban under the Second Amendment.  (*See*

16    Opp'n at 7-8 (string cite).)  Plaintiffs do not explain why the outcome in this case is likely to be

17    (or should be) any different.

18          Plaintiffs have failed to demonstrate a likelihood of success on the merits, or serious

19    questions going to the merits, of any of their claims.  Certain additional problems unique to the

20    takings and vagueness claims are expanded upon below.

21
22        **A.**    **Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of Their Takings Claim.**

23          Plaintiffs have failed to articulate a cognizable takings claim because Section 32310 is a

24    lawful exercise of the State's police powers, not an exercise of the State's eminent domain

25    powers.  The Takings Clause of the Fifth Amendment, made applicable to the states through the

26    Fourteenth Amendment, provides that private property shall not "be taken for public use, without

27    just compensation."  *Lingle v. Chevron U.S.A., Inc*., 544 U.S. 528, 536 (2005).  Its purpose is to

28    prohibit "[g]overnment from forcing some people alone to bear public burdens which, in all

3

1   fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. City*

2   *of N.Y.*, 438 U.S. 104, 123 (1978) (internal quotations and citations omitted).  Although a taking

3   often occurs when the government physically invades or confiscates property, the Supreme Court

4   has recognized that economic regulation may also effect a taking if it "goes too far," *Pa. Coal Co.*

5   *v. Mahon*, 260 U.S. 393, 415 (1922), and government regulation that "completely deprive[s] an

6   owner of '*all* economically beneficial us[e]' of her property" is generally deemed to be a taking

7   compensable under the Fifth Amendment, *Lingle*, 544 U.S. at 538 (quoting *Lucas v. South*

8   *Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992)) (emphasis in original).  Plaintiffs have

9   failed to articulate a cognizable takings claim, let alone demonstrate a likelihood of success on

10  such a claim.

11      Takings claims are "divided into 'facial' and 'as-applied' challenges." *Levald, Inc. v. City*

12  *of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993).  In a facial takings challenge, a party attacking

13  a statute must demonstrate that its "mere enactment" constitutes a taking and deprives the owner

14  of all viable use of the property as issue.  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe*

15  *Regional Planning Agency*, 535 U.S. 302, 318 (2002).[3]  The Supreme Court has stated that facial

16  takings challenges "face an 'uphill battle' since it is difficult to demonstrate that 'mere

17  enactment' of a piece of legislation 'deprived [the owner] of economically viable use of [his]

18  property." *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736 n.10 (1997) (internal

19  and external citations omitted).  Plaintiffs have not made this showing.

20          **1.    Section 32310 Is Not a Physical Taking.**

21      Plaintiffs argue that Section 32310 is a physical taking because it compels the physical

22  appropriation of property.  (Mem. at 24-28.)  They claim that there is no market for selling LCMs

23  to a licensed firearms dealer and that storing LCMs out of state is "unrealistic," and they conclude

24  that the only option left for all LCM owners is to surrender their LCMs to law enforcement for

25

26          [3] In contrast to a facial takings challenge, an as-applied takings claim involves a "claim
    that the particular impact of a government action on a specific piece of property requires the
27  payment of just compensation." *Levald, Inc.*, 998 F.2d at 686 (quoting *Keystone Bituminous
    Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987)).

28

                                                    4

1    destruction, for which they would be entitled to compensation. (*Id.* at 24-25 (citing § 32310(d)).)

2    Setting aside the utter lack of evidentiary support for this proposition,[4] Section 32310 still does

3    not amount to a physical taking. "In a physical taking, the government exercises its eminent

4    domain power to take private property for 'public use.'" *Chevron USA, Inc. v. Cayetano*, 224

5    F.3d 1030, 1034 (9th Cir. 2000). By contrast, where, as here, the government acts pursuant to its

6    police power to protect the safety, health, and general welfare of the public, a prohibition on the

7    possession of property that the Legislature has declared to be a public nuisance[5] is not a physical

8    taking. *See Chi., B. & Q. R. Co. v. Illinois*, 200 U.S. 561, 593-94 (1906) ("It has always been

9    held that the legislature may make police regulations, although they may interfere with the full

10   enjoyment of private property, and though no compensation is given." (citation omitted)); *Akins*

11   *v. United States*, 82 Fed. Cl. 619, 622 (2008) ("Property seized and retained pursuant to the police

12   power is not taken for a 'public use' in the context of the Takings Clause." (citation omitted)).

13   While the eminent domain power is used to confer benefits upon the public (by the taking of

14   private property for public use), the police power is used to prevent harm. *See Penn Central*, 438

15   U.S. at 123.[6]

16        Recognizing this distinction, courts have routinely rejected Takings Clause challenges to

17   the exercise of state police powers to prohibit the possession of property found to be harmful or

18
19        [4] Plaintiffs have not demonstrated that their 17-year-old (or older) LCMs have anything more than de minimis value. (*See* Mem. at 38 (noting that Plaintiffs' LCMs are "now at least 17 years old, and in most cases, much older"); Youngman Decl., ¶ 10 (Dkt. No. 28-2) (stating that older LCMs "may suffer from defects such as worn springs, followers and feed lips, which may greatly impair their reliability").) Moreover, Plaintiffs may permanently modify their LCMs to accept ten rounds or less to comply with the law. § 16740.
20
21
22        [5] § 32390 ("[A]ny large-capacity magazine is a nuisance . . . .").

23        [6] The cases cited by Plaintiffs (*see* Mem. at 27) are inapposite because they involved the exercise of the eminent domain power and acquisition of private property for public use or forcing the sale of private property to a government designee to use for a public purpose. *See Dore v. United States*, 97 F. Supp. 239, 242 (Ct. Cl. 1951) (rice milling companies' forced sales of rice to the government for public use in compliance with government orders, made in exercise of wartime powers, constituted taking of rice for public use, so as to entitle companies to just compensation under Fifth Amendment); *Edward P. Stahel & Co. v. United States*, 78 F. Supp. 800, 804 (Ct. Cl. 1948) (priority order of October 16, 1941, made by War Production Board requiring owners of silk to fill orders of contractors having contracts with government for manufacture of parachutes and orders of Defense Supplies Corporation constituted a taking of property for public use).

24
25
26
27
28

5

1   dangerous.  *See, e.g.*, *Penn Central*, 438 U.S. at 125 (stating that where the State "reasonably

2   conclude[s] that 'the health, safety, morals, or general welfare' would be promoted by prohibiting

3   particular contemplated uses of land," compensation need not accompany the prohibition).  For

4   example, in *Asian American Rights Committee v. Brown*, Case No. CGC 12-517723, the Superior

5   Court of the County of San Francisco dismissed a takings challenge to California's ban on the

6   possession of shark fin.  (*See* Declaration of John D. Echeverria, Ex. A (Order re Demurrers of

7   the State Defendants and the Defendant-Intervenors, *Asian Am. Rights Comm. of Cal. v. Brown*,

8   No. CGC 12-517723 (Cal. Super. Ct. July 20, 2012)), at 3.)  California Fish and Game Code

9   section 2021 makes it "unlawful for any person to possess, sell, offer for trade, trade, or distribute

10  a shark fin" after January 1, 2013.  Cal. Fish & Game Code § 2021(b); *see also Chinatown*

11  *Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1091 (N.D. Cal. 2014) (describing history

12  and scope of Fish and Game Code section 2021), *aff'd*, 794 F.3d 1136 (9th Cir. 2015).

13         Like Section 32310, the law banning shark fin allowed individuals to possess, sell, offer for

14  sale, trade, or distribute a shark fin possessed by that person at the date of enactment for one year

15  (until the effective date of the statute).  *See* Cal. Fish & Game Code § 2021.5(a)(3).  In each case,

16  the statute prohibits an individual from his intended prospective use of a product that had been

17  lawful when obtained and became unlawful after being deemed harmful by the State.  In both

18  cases, because the law is a reasonable exercise of the State's police power, it does not amount to a

19  taking.  *See also People v. Sakai*, 56 Cal. App. 3d 531, 538-39 (1976) (holding that statute

20  banning the selling or possessing with intent to sell certain whale meat or other food or products

21  was a reasonable and proper exercise of the police power and thus not a taking); *Wilkins v.*

22  *Daniels*, 913 F. Supp. 2d 517, 543 (S.D. Ohio 2012) (holding that law prohibiting possession of

23  dangerous wild animals was not a taking and noting that, while the court was "sympathetic to the

24  exotic animal owners who will not be able to retain possession of their beloved animals as a result

25  of the operation of the Act, and it recognizes that this circumstance may lead to the severance of

26  strong bonds between the animals and their owners, . . . "[t]his is a consequence of the adjustment

27  of rights as the legislature reasonably deems appropriate, in its effort to protect the public from

28  dangers associated with the possession of exotic animals"), *aff'd*, 744 F.3d 409, 418-19 (6th Cir.

6

1  2014) ("[T]he Act is close kin to the general welfare provisions that the Supreme Court ensured

2  were not constitutionally suspect.").[7]

3      These principles have also been applied to cases involving dangerous weapons.  *See Akins*,

4  82 Fed. Cl. at 623-24 (restrictions on sale and possession of machine guns not a taking); *Fesjian*

5  *v. Jefferson*, 399 A.2d 861, 865-66 (D.C. Ct. App. 1979) (ban on machine guns not a taking); *cf.*

6  *Gun South, Inc. v. Brady*, 877 F.2d 858, 869 (11th Cir. 1989) (suspension on importation of

7  assault weapons not a taking); *Burns v. Mukasey*, No. CIV S-09-0497-MCE-CMK, 2009 WL

8  3756489, at *5 (E.D. Cal. Nov. 6, 2009), *report and recommendation adopted*, No. 09-cv-00497-

9  MCE-CMK, 2010 WL 580187 (E.D. Cal. Feb. 12, 2010) (stating that because the firearm seized

10  was "not taken in order to be put to public use," "the Takings Clause simply does not apply").

11      Plaintiffs' argument that the Supreme Court's decision in *District of Columbia v. Heller*,

12  544 U.S. 570 (2008), rendered the regulation of LCMs an invalid exercise of police power (Mem.

13  at 31-35) is unfounded.  *Heller* recognized a core Second Amendment right of individuals to

14  possess an operable handgun in the home for self-defense, but affirmed the longstanding police

15  power of the States to enact reasonable gun regulations.  *Heller*, 554 U.S. at 626-29; *McDonald v.*

16  *City of Chi.* 561 U.S. 742, 785 (2010) ("We made it clear in *Heller* that our holding did not cast

17  doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by

18  felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as

19  schools and government buildings, or laws imposing conditions and qualifications on the

20

21      [7] California law prohibits the possession and sale of a number of species, including polar
bear, leopard, ocelot, tiger, cheetah, jaguar, sable antelope, wolf (Canis lupus), zebra, whale,
22  cobra, python, sea turtle, colobus monkey, kangaroo, vicuna, sea otter, free-roaming feral horse,
dolphin or porpoise, Spanish lynx, or elephant.  Cal. Penal Code § 653o.  There do not appear to
23  have been challenges brought under the Takings Clause to these prohibitions.  Similarly, there are
no reported takings claims brought with respect to California laws banning other dangerous
24  weapons and products.  *See, e.g.*, *id.* § 21810 ("[A]ny person in this state who manufactures or
causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or
25  who gives, lends, or possesses any metal knuckles is punishable by imprisonment in a county jail
not exceeding one year or imprisonment . . . ."); *id.* § 32625 ("[A]ny person, firm, or corporation,
26  who within this state possesses or knowingly transports a machinegun, except as authorized by
this chapter, is guilty of a public offense and upon conviction thereof shall be punished by
27  imprisonment pursuant to subdivision (h) of Section 1170, or by a fine not to exceed ten thousand
dollars ($10,000), or by both that fine and imprisonment.").

28

1   commercial sale of arms.'  We repeat those assurances here.  Despite municipal respondents'

2   doomsday proclamations, incorporation [of the Second Amendment] does not imperil every law

3   regulating firearms." (internal citations omitted)); *see also Heller*, 554 U.S. at 636 (noting that

4   "[t]he Constitution leaves the [government] a variety of tools for combatting" the problem of gun

5   violence).

6       Similarly mistaken is the argument that the State's authority to ban the possession of LCMs

7   is undermined by the Supreme Court's admonition in *Lucas* that the government's justification of

8   "prevention of harmful use," standing alone, "cannot be the basis for departing from our

9   categorical rule that total regulatory takings must be compensated."  505 U.S. at 1026.  In *Lucas,*

10  the Court held that where government regulation "goes beyond what the relevant background

11  principles would dictate," and completely eliminates the economically productive or beneficial

12  uses of land, a "total [regulatory] taking occurs."  *Id.* at 1030.  *Lucas*, which has never been

13  applied outside of cases involving land, does not transform the exercise of police power to

14  eliminate a harmful weapon into a taking.  *See id.* at 1027 ("[I]n the case of personal property, by

15  reason of the State's traditionally high degree of control over commercial dealings, [one] ought to

16  be aware of the possibility that new regulation might even render his property economically

17  worthless (at least if the property's only economically productive use is sale or manufacture for

18  sale).").  Here, the enactment of Proposition 63 to ban the possession of LCMs was a valid

19  exercise of the State's police power.  LCMs had been declared a nuisance subject to confiscation

20  and destruction under state law, §§ 32390, 18010(a)(20), and thus the ban on possession of

21  LCMs—including LCMs that were grandfathered under the prior law—is entirely consistent with

22  the relevant "background principles" concerning the nuisance status of LCMs.

23      Section 32310 is properly understood as an exercise of the State's *police power* to protect

24  the public by eliminating the dangers posed by LCMs.  Regardless of how Plaintiffs choose to

25  divest themselves of an LCM in accordance with Section 32310, or to modify their LCMs in

26  accordance with Section 16740, the purpose of the statute is to remove LCMs from circulation,

27  not to transfer title to the government or an agent of the government for use in service of the

28  public good.  Accordingly, Section 32310 does not amount to a physical taking.

8

1

### 2.     Section 32310 Is Not a Regulatory Taking.

2  Plaintiffs' argument that Section 32310 is a regulatory taking also fails.  "A regulatory

3  taking occurs when the value or usefulness of private property is diminished by a regulatory

4  action that does not involve a physical occupation of the property."  *Levald, Inc.*, 998 F.2d at 684.

5  Government regulation that "completely deprives an owner of all economically beneficial use of

6  her property" is generally deemed to be a taking compensable under the Fifth Amendment.

7  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. at 538; *see also Suitum*, 520 U.S. at 736 n.10.  Plaintiffs

8  have failed to show that Section 32310 "amounts to a compensable taking because the law will

9  have completely deprived the owners of *all* economically beneficial use of their property."

10  (Mem. at 29 (emphasis in original).)[8]

11  As Plaintiffs acknowledge, they may protect or realize the economic value of their LCMs

12  by storing them out-of-state, or selling them to a licensed firearms dealer.  *See* § 32310(d).  While

13  Plaintiffs assert that this is "unrealistic," they fail to provide any evidence in support of this claim.

14  In addition to selling or storing LCMs out of state, it is also possible and relatively easy to modify

15  an LCM so that it will only accept a maximum of ten rounds, thereby allowing Plaintiffs to retain

16  value in their LCMs even after the statute's enforcement date.  Indeed, counsel for plaintiffs in

17  another challenge to Section 32310, *Duncan v. Becerra*, No. 17-cv-1017-BEN-JLB (S.D. Cal.),

18  stated in opposition to the Department of Justice's proposed emergency regulations regarding

19  LCMs and LCM "conversion kits,"

20
21
22
23
24

> For 17 years, Californians knew that an ammunition feeding device holding
> more than 10 rounds would lose its LCM status if someone *permanently*
> *alters* it so that it can no longer accept more than 10 rounds. . . . For the last
> 17 years, Californian firearm owners, dealers, and manufacturers made or
> remade LCMs "California compliant" through "permanent alteration."
> There are countless articles and videos online on how to modify LCMs to
> hold 10 rounds.  And there are a number of different ways to restrict a
> magazine so that it cannot hold more than 10 rounds.

25
26

27  [8] It is unclear how much value Plaintiffs' LCMs, all of which were acquired before 2000,
still have.  (*See supra* note 4.)

28

1    (Gordon Decl., Ex. 7 at 5.)  If Plaintiffs do not wish to "tinker" with their own LCMs, as their

2    counsel indicated at the hearing on June 16, they may take them to a licensed gunsmith and have

3    them permanently altered; as a practical matter, anyone wishing to modify an LCM would need to

4    deliver the magazine to a gunsmith prior to July 1, 2017, but any permanent modification would

5    not need to be completed before that date because the gunsmith tasked with modifying the LCM

6    would be exempt from Section 32310 during the process.  *See* § 32425(a) (exempting from

7    Section 32310 the giving of an LCM to "a gunsmith, for the purposes of maintenance, repair, or

8    modification of that large-capacity magazine").  Accordingly, Section 32310 does not deprive

9    plaintiffs of all economically beneficial uses of their property and, thus, they cannot succeed on a

10   facial regulatory taking claim.[9]  *See Lucas*, 505 U.S. at 1019; *Chevron USA*, 224 F.3d at 1041-42.

11          Plaintiffs also have no likelihood of success on the merits of an as-applied or "partial

12   regulatory" taking challenge.  Even assuming that any such claim is ripe,[10] Plaintiffs have not

13   established either a sufficient loss of value from Section 32310 nor any meaningful interference

14   with distinct investment-backed expectations in LCMs that were acquired decades ago.  *See Penn*

15   *Central*, 438 U.S. at 123; *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th

16   Cir. 2013) (holding that an 81-percent value loss was "not . . . sufficient . . . to constitute a

17   taking"); *cf. Penn. Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922) ("Government hardly could go

18   ────────────────────

19          [9] Plaintiffs mistakenly rely on cases such as *Andrus v. Allard*, 444 U.S. 51 (1979), in support of their argument that Section 32310 is a regulatory taking.  *Andrus* involved the prohibition on commercial transactions of eagle feathers.  In determining that the prohibition was not a taking, the Court stated that although the law did prevent the most profitable use of plaintiffs' property, because Plaintiffs could continue to possess the artifacts, they had not been deprived of all economic benefit.  *Id.* at 66-67.  Nothing in *Andrus* suggests that a ban on possession of LCMs is a per se taking.  Further, and as discussed herein, Section 32310 does not deprive plaintiffs of all economic benefit of their LCMs.

20   (continued)

21

22          [10] Because the statute has not yet been enforced against any of the Plaintiffs, there are insufficient facts about the effect of Section 32310 to properly analyze an as-applied claim.  A "court cannot determine whether a regulation goes 'too far' [so as to constitute a taking] unless it knows how far the regulation goes."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 622 (2001).  Indeed, in order for an as-applied "takings claim brought in federal court against states and their political subdivisions" to be ripe, a plaintiff "must seek a final decision regarding the application of the regulation to the property at issue before the government entity charged with its implementation."  *Levald, Inc.*, 998 F.2d at 686 (citation omitted).  And in both facial and as-applied takings claims, a plaintiff must first "'seek compensation through the procedures the State has provided for doing so' before turning to the federal courts," unless such action would be futile.  *Id.* (citation omitted).

23

24

25

26

27

28

on if to some extent values incident to property could not be diminished without paying for every such change in the general law.").[11]

### B. Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of Their Vagueness Claim.

Plaintiffs' claim for vagueness is without merit.  Even if a facial vagueness challenge were cognizable outside of the First Amendment context—and it is not (*see* Opp'n at 18-19)—Plaintiffs cannot demonstrate that the statute is vague or ambiguous.  (*See id.* at 19.)  Instead, Plaintiffs contend that Section 32310 is void for vagueness because there may be some confusion about which amendments to Section 32310 are operative (*i.e.*, the amendments of SB 1446 or those of Proposition 63), particularly with respect to Section 32406.  (Mem. at 40-43.)  Tellingly, Plaintiffs have cited no authority endorsing this vagueness theory.  To the contrary, a statute is not rendered void for vagueness merely because a court may be required to determine which version of a statute applies in a given case.  *See Karlin v. Foust*, 188 F.3d 446, 469 (7th Cir. 1999) ("[W]hile plaintiffs are correct that the two statutes operate to impose conflicting standards on a physician's decision to perform an emergency abortion on a minor, this conflict does not render AB 441 void for vagueness. . . . Instead, the conflicting provisions in the two statutes concerning emergency abortions for minors creates a question of implied repeal under Wisconsin law.").  Even if the Court were required to determine which version of Section 32406 is operative (which is not necessarily the case given the nature of Plaintiffs' claims), there should be no confusion about which version applies; the amendments of Proposition 63 would be controlling here because they were enacted after SB 1446.  (Opp'n at 20.)  Accordingly, Plaintiffs have failed to demonstrate any likelihood of succeeding on the merits of their vagueness challenge to Section 32310.

---

[11] To the extent that Plaintiffs suggest that Section 32310 is a taking because it is "retroactive," this argument is baseless.  Section 32310 is not retroactive, as it does not punish individuals for the past possession of LCMs.  Rather, the law imposes criminal penalties only upon those individuals that possess LCMs *on or after* July 1, 2017.  § 32310 (c), (d).  Thus, Section 32310 does not "alter[] the legal consequences of acts completed before its effective date."  *Chang v. United States*, 327 F.3d 911, 920 (9th Cir. 2003).

1  **II.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE IRREPARABLE HARM IN THE
2          ABSENCE OF A PRELIMINARY INJUNCTION.**

3          It is well settled that, "under *Winter*, plaintiffs must establish that irreparable harm is *likely*,

4  not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v.*

5  *Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 22).  Plaintiffs suggest

6  that they will suffer a "constitutional injury [in] being forced to comply with an unconstitutional

7  law or else face financial injury or enforcement action" if a preliminary injunction is not issued.

8  (Mem. at 19 (citation omitted).)  Having failed to demonstrate any likelihood of succeeding on

9  any of their claims, however, Plaintiffs cannot establish any constitutional injury.  Nor do they

10  attempt to articulate any other form of irreparable injury.  As discussed above, Section 32310

11  does not eliminate all economic value of Plaintiffs' LCMs, as Plaintiffs are still free to store them

12  out-of-state, sell them to a licensed firearms dealer, and modify them to hold ten rounds or less.

13  (*See supra* Section I.A.2.)

14          With respect to the takings claim in particular, Plaintiffs do not explain why monetary

15  damages (*i.e.*, "just compensation") would not be an adequate remedy if they were to somehow

16  prevail on their takings claim.  Plaintiffs contend that Section 32310 "would constitute a taking of

17  [their] property, *for which no compensation has been or would be provided*" (Mem. at 22), but

18  they do not explain why monetary compensation (if awarded by a court) would be inadequate.[12]

19  Thus, they have not demonstrated that they would suffer an *irreparable* injury from the purported

20  taking.  *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("Equitable relief is not

21  available to enjoin an alleged taking . . . when a suit for compensation can be brought against the

22  sovereign subsequent to the taking."); *Wis. Cent. Ltd. v. Pub. Serv. Comm'n of Wis.*, 95 F.3d 1359,

23  1369 (7th Cir. 1996) ("A state is required to pay just compensation when it exercises its power of

24  eminent domain, and in most cases (as in this one), this just compensation will take the form of

25  money to compensate a property owner for a physical invasion.  With the question being one of

26  _____

27          [12] In fact, Plaintiffs' entire discussion of irreparable injury is contained in their section on
the Second Amendment (Mem. at 19-21), suggesting that the purported irreparable injury is based
solely upon Plaintiffs' Second Amendment rights.

28

1   monetary compensation, a plaintiff would be hard pressed to demonstrate either irreparable harm

2   or an inadequate remedy at law." (citations omitted and emphasis added)).

3         Any claim of irreparable harm is also undermined by Plaintiffs' delay in seeking

4   preliminary injunctive relief.  *See Oakland Trib., Inc. v. Chron. Publ'g Co.*, 762 F.2d 1374, 1377

5   (9th Cir. 1985) ("[L]ong delay before seeking a preliminary injunction implies a lack of urgency

6   and irreparable harm.").  Plaintiffs could have filed suit and sought a preliminary injunction in

7   April 2016 after the enactment of SB 1446, or after California voters enacted Proposition 63 in

8   November 2016, and yet they waited until three weeks before the July 1, 2017 enforcement date

9   to seek injunctive relief.  (Opp'n at 6.)

10         During the June 16 hearing, counsel for Plaintiffs incorrectly suggested that their delays

11   were warranted as they waited for potential regulations construing certain provisions related to

12   the LCM ban.  The Department of Justice submitted proposed emergency regulations to the

13   California Office of Administrative Law ("OAL"), concerning, *inter alia*, the permanent

14   modification of LCMs under Section 16740.[13]  These emergency regulations were proposed

15   nearly two months after Proposition 63 was enacted, and yet Plaintiffs did not seek injunctive

16   relief between the enactment of Proposition 63 and the filing of these proposed emergency

17   regulations.  Moreover, as previously noted, counsel for the plaintiffs in *Duncan* opposed the

18   proposed emergency regulations because, *inter alia*, there was no need for guidance on how to

19   permanently modify an LCM.  (*See supra* Section I.A.2; Gordon Decl., Ex. 7 at 5.)  Plaintiffs do

20   not explain why, after the Department of Justice withdrew the proposed emergency regulations,

21   they waited for over six months for the Department of Justice to potentially propose regulations

22   on this subject—which would have been subject to a lengthy notice-and-comment period—before

23   commencing this litigation and seeking injunctive relief.  Given Plaintiffs' failure to establish any

24   *irreparable* injury, the Court should not issue a preliminary injunction enjoining the enforcement

25   of Section 32310 during the pendency of this action.

26   ───────────────
        [13] (*See* Dep't of J., Text of Regulations – Assault Weapons and Large-Capacity Magazines
27   (Dec. 23, 2016) (to be codified at Cal. Code. Regs.. tit. 11, § 5480 *et seq.*),
     https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/regs/lcmp-text-of-regs.pdf.)

28
                                          13

1

**CONCLUSION**

2      For these reasons, and those set forth in Defendants' Opposition, the Court should deny the

3  Motion.

4  Dated:  June 23, 2017                    Respectfully Submitted,

5                                           XAVIER BECERRA
                                            Attorney General of California
6                                           TAMAR PACHTER
                                            Supervising Deputy Attorney General
7                                           ALEXANDRA ROBERT GORDON
                                            Deputy Attorney General
8

9

10                                          *s/ John D. Echeverria*
                                            JOHN D. ECHEVERRIA
11                                          Deputy Attorney General
                                            *Attorneys for Defendants*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Supplemental Brief in Further Opposition to Renewed Motion for Temporary Restraining Order and
Issuance of Preliminary Injunction (17-cv-00903-WBS-KJN)