1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

| | |
|---|---|
| 12  WILLIAM WIESE, an individual; JEERMIAH MORRIS, an individual; | Civ. No.  2:17-903 WBS KJN |
| 13  LANCE COWLEY, an individual; SHERMAN MACASTON, an individual; | |
| 14  ADAM RICHARDS, in his capacity as Trustee of the Magazine Ban | MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY |
| 15  Lawsuit Trust; CLIFFORD FLORES, individually and as trustee of | INJUNCTION |
| 16  the Flores Family Trust; L.Q. DANG, an individual; FRANK | |
| 17  FEDEREAU, an individual; ALAN NORMANDY, an individual; TODD | |
| 18  NIELSEN, an individual; THE CALGUNS FOUNDATION; FIREARMS | |
| 19  POLICY COALITION; FIREARMS POLICY FOUNDATION; and SECOND | |
| 20  AMENDMENT FOUNDATION; | |
| 21              Plaintiffs, | |
| 22        v. | |
| 23  XAVIER BECERRA, in his official capacity as Attorney General of | |
| 24  California; and MARTHA SUPERNOR, in her official capacity as | |
| 25  Acting Chief of the Department of Justice Bureau of Firearms; | |
| 26 | |
| 27              Defendants. | |

28

1

----oo0oo----

1

2     Before the court is plaintiffs' Motion for Issuance of

3   Preliminary Injunction.  (Docket No. 28.)  The court held a

4   hearing on the request for a preliminary injunction on June 29,

5   2017.

6   I.   Factual and Procedural History

7     This case concerns a challenge to California's

8   prohibition on the possession of gun magazines that can hold more

9   than ten bullets, or "large capacity" magazines ("LCM").[1]

10  Although California had banned the purchase, sale, transfer,

11  receipt, or manufacture of such magazines since 2000, it did not

12  ban the possession of these magazines.  Fyock v. City of

13  Sunnyvale, 779 F.3d 991, 994 (9th Cir. 2015).  In effect,

14  Californians were allowed to keep large capacity magazines they

15  had obtained prior to 2000, but no one, with a few exceptions

16  such as law enforcement officers, has been allowed to obtain new

17  large capacity magazines since 2000.

18     On July 1, 2016, however, California enacted Senate

19  Bill 1446 ("SB 1446"), which amended California Penal Code §

20  32310, criminalizing the possession of large capacity magazines

21  as of July 1, 2017, regardless of when the magazines were

22  obtained.  Then, on November 8, 2016, the California electorate

23  approved Proposition 63, which largely mirrors SB 1446.  The

24  amended version of Section 32310 enacted by Proposition 63

25  requires that anyone possessing a large capacity magazine either

26

27        [1]   Large capacity magazines are defined under California
    Penal Code § 16740 as any ammunition-feeding device with the
28  capacity to accept more than ten rounds.

2

1   remove the magazine from the state, sell the magazine to a

2   licensed firearms dealer, or surrender the magazine to a law

3   enforcement agency for its destruction prior to July 1, 2017.

4   Cal. Penal Code § 32310(d).  The amended version of Section 32310

5   also provides that possession of a large capacity magazine as of

6   July 1, 2017 constitutes an infraction or a misdemeanor

7   punishable by a fine not exceed $100 per large capacity magazine

8   and/or imprisonment in a county jail not to exceed one year.  Id.

9   § 32310(c).

10        On April 28, 2017, plaintiffs filed the instant action

11  alleging that Section 32310 is unconstitutional.  After amending

12  their complaint, plaintiffs filed a motion for a temporary

13  restraining order and preliminary injunction on June 12, 2017 and

14  a renewed motion on June 14, 2017.  The court denied the request

15  for a temporary restraining order after a hearing on June 16,

16  2017 based on an insufficient showing of irreparable harm, given

17  plaintiffs' delay in filing suit and the fact that the court

18  would hold a hearing on plaintiffs' request for a preliminary

19  injunction before the large capacity magazine ban took effect on

20  July 1, 2017.  (Docket No. 45.)  The parties then filed

21  supplemental briefs regarding plaintiffs' request for a

22  preliminary injunction on June 23, 2017.

23  II. Discussion

24        Injunctive relief is "an extraordinary and drastic

25  remedy, one that should not be granted unless the movant, by a

26  clear showing, carries the burden of persuasion." Mazurek v.

27  Armstrong, 520 U.S. 968, 972 (1997) (citation omitted).  In order

28  to obtain a preliminary injunction, the moving party must

3

1   establish (1) it is likely to succeed on the merits, (2) it is

2   likely to suffer irreparable harm in the absence of preliminary

3   relief, (3) the balance of equities tips in its favor, and (4) an

4   injunction is in the public interest.  Winter v. Nat. Res. Def.

5   Council, Inc., 555 U.S. 7, 20 (2008); Fyock, 779 F.3d at 995-96.

6        Plaintiffs contend that California's large capacity

7   magazine ban violates the Second Amendment, is an

8   unconstitutional taking under the Fifth and Fourteenth

9   Amendments, is void for vagueness, and is overbroad.  The court

10  proceeds to examine plaintiffs' showing with respect to each

11  claim below.

12       A.   Second Amendment Challenge

13            1.   Likelihood of Success on the Merits

14       To evaluate a Second Amendment claim, the court asks

15  whether the challenged law burdens conduct protected by the

16  Second Amendment, and if so, what level of scrutiny should be

17  applied.  Fyock, 779 F.3d at 996 (citing United States v. Chovan,

18  735 F.3d 1127, 1136 (9th Cir. 2013)).

19                 a.   Burden on Conduct Protected by the Second

20                      Amendment

21       There appears to be no dispute in this case that many

22  people inside and outside of California up to this point have

23  lawfully possessed large capacity magazines for lawful purposes.

24  See Heller v. District of Columbia, 670 F.3d 1244, 1261 (D.C.

25  Cir. 2011) ("Heller II") (finding that magazines holding more

26  than ten rounds were in "common use").  Indeed, there is evidence

27  that large capacity magazines are commonly possessed by law-

28  abiding citizens for lawful purposes and have been legally

4

1  possessed by many Californians for many years, notwithstanding

2  California's ban on the transfer of such magazines since 2000.

3  (See Curcuruto Decl. ¶¶ 6-8 (citing estimate that 114 million

4  magazines with eleven or more rounds were in consumer possession

5  between 1990 and 2015, just under half of the overall 230 million

6  pistol and rifle magazines owned during that time); Pls.' Request

7  for Judicial Notice, Ex. A (Cal. Dep't of Justice Finding of

8  Emergency at 1) ("There are likely hundreds of thousands of

9  large-capacity magazines in California at this time . . . . The

10 Department therefore expects many gun owners to be affected by

11 the new ban."); Youngman Decl. ¶ 9 (large capacity magazines are

12 commonly owned by millions of persons in the United States for

13 lawful purposes including target shooting, competition, home

14 defense, collecting, and hunting).)

15     Thus, notwithstanding California's existing ban on the

16 transfer of large capacity magazines, it appears that

17 California's ban on large capacity magazines burdens conduct

18 protected by the Second Amendment.  See Fyock, 779 F.3d at 998

19 (district court did not clearly err in finding that a regulation

20 on large capacity magazines burdens conduct falling with the

21 scope of the Second Amendment).  But see Kolbe v. Hogan, 849 F.3d

22 114, 135-37 (4th Cir. 2017) (en banc) (large capacity magazines

23 are not protected by the Second Amendment because they are

24 weapons most useful in military service).[2]

25     [2]  Because the court holds that California's large

26 capacity magazine ban burdens conduct protected by the Second
   Amendment because these magazines are commonly possessed by law-

27 abiding citizens for lawful purposes, the court does not examine
   whether the ban resembles longstanding provisions historically

28 exempted from the Second Amendment.  See Fyock, 779 F.3d at 997.

5

1                    b.    Appropriate Level of Scrutiny

2                    In determining what level of scrutiny applies to the

3    ban on large capacity magazines, the court considers (1) how

4    closely the law comes to the core of the Second Amendment right,

5    which is self-defense, and (2) how severely, if at all, the law

6    burdens that right.  Fyock, 779 F.3d at 998-99 (citing Chovan,

7    735 F.3d at 1138).  Intermediate scrutiny is appropriate if the

8    regulation does not implicate the core Second Amendment right or

9    if the regulation does not place a substantial burden on that

10   right.  Id. at 998-99 (citing Jackson v. City & County of San

11   Francisco, 746 F.3d 953, 964 (9th Cir. 2014)).

12                   Here, the court finds that intermediate scrutiny is

13   appropriate because "the prohibition of . . . large capacity

14   magazines does not effectively disarm individuals or

15   substantially affect their ability to defend themselves."  Heller

16   v. District of Columbia, 670 F.3d 1244, 1262 (D.C. Cir. 2011)

17   ("Heller II"); Fyock, 779 F.3d at 999 (quoting Heller II).  The

18   ban may implicate the core of the Second Amendment because it

19   restricts the ability of law-abiding citizens to possess large

20   capacity magazines within their homes for self-defense.  See

21   Fyock, 779 F.3d at 999.  However, the ban "does not affect the

22   ability of law-abiding citizens to possess the 'quintessential

23   self-defense weapon'--the handgun.  Rather, [it] restricts

24   possession of only a subset of magazines that are over a certain

25   capacity."  Id. (quoting District of Columbia v. Heller, 554 U.S.

26   570, 629 (2008) ("Heller I")).

27                   Indeed, it appears that virtually every other court to

28   examine large capacity magazine bans has found that intermediate

                                    6

1   scrutiny is appropriate, assuming these magazines are protected

2   by the Second Amendment.  See Fyock, 779 F.3d at 999; Kolbe, 849

3   F.3d at 138-139; N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo,

4   804 F.3d 242, 258-60 (2d Cir. 2015); Heller II, 670 F.3d at 1261-

5   62; S.F. Veteran Police Officers Ass'n v. City & County of San

6   Francisco, 18 F. Supp. 3d 997, 1002-04 (N.D. Cal. 2014).  But see

7   Friedman v. City of Highland Park, 784 F.3d 406 (7th Cir. 2015)

8   (upholding municipal ban on assault weapons and large capacity

9   magazines but declining to determine what level of scrutiny

10  applied).

11          Accordingly, because California's ban does not

12  substantially burden individuals' ability to defend themselves,

13  intermediate scrutiny is appropriate.

14                  c.   Application of Intermediate Scrutiny

15          Intermediate scrutiny requires "(1) the government's

16  stated objective to be significant, substantial, or important;

17  and (2) a reasonable fit between the challenged regulation and

18  the asserted objective."  Fyock, 779 F.3d at 1000 (quoting

19  Chovan, 735 F.3d at 1139).  This test does not require that the

20  government's regulation is the least restrictive means of

21  achieving its interests.  Rather, the government need only show

22  that the regulation "promotes a substantial government interest

23  that would be achieved less effectively absent the regulation."

24  Id. (citation omitted).  In reviewing the fit between the

25  government's stated objective and the regulation, the court may

26  consider legislative history as well as studies in the record or

27  applicable case law.  Id.  The evidence need only "fairly

28  support" the state's rationale, and in making this determination,

                                    7

1    courts "afford substantial deference to the predictive judgments
2    of the legislature."  N.Y. State Rifle, 804 F.3d at 261
3    (citations omitted); see also Kolbe, 849 F.3d at 140 (court must
4    give substantial deference to the legislature, because "it is the
5    legislature's job, not ours, to weigh conflicting evidence and
6    make policy judgments") (citations omitted).

7          One stated objective of California's large capacity
8    magazine ban is to reduce the incidence and harm of mass
9    shootings.  (Gordon Decl., Ex. 50 § 2, ¶ 11; § 3, ¶ 8.)  There
10   can be no serious argument that this is not a substantial
11   government interest, especially in light of several recent high
12   profile mass shootings involving large capacity magazines,
13   including the 2016 Orlando Pulse nightclub shooting, the 2015 San
14   Bernardino shooting, the 2012 Aurora movie theater shooting, the
15   2012 Sandy Hook school shooting, the 2011 Arizona shooting
16   involving then-U.S. Representative Gabrielle Giffords, and the
17   2007 Virginia Tech shooting, all of which resulted in multiple
18   deaths and injuries.  (See Webster Decl. ¶ 10; Graham Decl. ¶ 19;
19   Donohue Decl. ¶ 29.)

20         Further, defendants have provided studies and expert
21   analyses supporting their conclusion that California's ban would
22   further these objectives.  (See Gordon Decl., Ex. 34 at 87, 89,
23   97; Webster Decl. ¶¶ 12, 21, 25-26; Donohue Decl. ¶¶ 21, 29;
24   Gordon Decl., Ex. 54 at 2; Gordon Decl., Ex. 62 at 10.)  Multiple
25   courts have found a reasonable fit between similar bans with
26   similar stated objectives.  See Kolbe, 849 F.3d at 139-41
27   (reasonable fit between assault weapon and LCM ban and interest
28   in reducing harm caused by criminals and preventing unintentional

1   misuse by otherwise law-abiding citizens); <u>Fyock</u>, 779 F.3d at

2   1000-01 (reasonable fit between LCM ban and interests in reducing

3   the harm of intentional and accidental gun use and reducing

4   violent crime); <u>N.Y. State Rifle</u>, 804 F.3d at 263-64 (reasonable

5   fit between assault weapon and LCM ban and interest in

6   controlling crime); <u>Heller II</u>, 670 F.3d at 1262-64 (reasonable

7   fit between assault weapon and large capacity magazine ban and

8   interest in protecting police officers and controlling crime);

9   <u>S.F. Veteran Police Officers</u>, 18 F. Supp. 3d at 1003-04

10  (reasonable fit between LCM ban and goals of protecting public

11  safety and reducing injuries from criminal use of LCMs).

12          Reasonable minds will always differ on such questions

13  as the best way to reduce the incidence and harm of mass

14  shootings, or whether that can even be accomplished at all.  In

15  order for there to be a reasonable fit between the objective

16  sought to be achieved and the proposed solution, however, the

17  solution need not be the best possible means of achieving the

18  objective.  Defendants are not required to show a perfect fit,

19  only a reasonable fit, between the ban and the important

20  objective of easing enforcement of California's existing ban on

21  the purchase, sale, transfer, or importation of large capacity

22  magazines.

23          The prior ban did not prohibit possession, and there

24  was no way for law enforcement to determine which magazines were

25  "grandfathered" and which were illegally transferred or modified

26  to accept more than ten rounds after January 1, 2000.  (Gordon

27  Decl., Ex. 46 at 3; Graham Decl. ¶ 30; Gordon Decl., Ex. 62 at

28  10.)  The evidence indicates that a ban on the possession of

1  large capacity magazines will help address this enforcement

2  issue.  (See Gordon Decl., Ex. 62 at 10.)  Further, after the

3  2004 federal ban on large capacity magazines was lifted, the

4  illegal importation of LCMs into California increased, giving

5  further impetus to California's efforts to ease enforcement of

6  its existing ban.  (See Graham Decl. ¶ 23; Gordon Decl., Ex. 63.)

7  The proposed ban will facilitate that effort.

8          The court recognizes plaintiffs' evidence that few

9  California shootings have involved large capacity magazines, that

10  there is no evidence that any of these shootings involved

11  grandfathered large capacity magazines, and that violent

12  criminals might still be capable of inflicting great harm after

13  the enactment of a ban.  (See, e.g., Moody Decl. ¶¶ 9-17; Ayoob

14  Decl. ¶¶ 8-12.)  However, it is not necessary for defendants to

15  show, or for the court to find, that the proposed ban will

16  eliminate all gun violence in California, or that it would have

17  prevented any of the past incidents of gun violence.  Nor is it

18  the role of this court to judge the wisdom of the California

19  legislature in enacting the statutes at issue here.  It is only

20  for this court to determine whether those duly enacted statutes

21  pass constitutional muster under the test which the decisions of

22  higher courts require this court to apply.  See N.Y. State Rifle,

23  804 F.3d at 261 (citations omitted); Kolbe, 849 F.3d at 140.

24          Overall, it appears that California's stated interests

25  of reducing the incidence and harm of mass shootings and easing

26  enforcement of the state's existing ban "would be achieved less

27  effectively absent the regulation," Fyock, 779 F.3d at 1000, and

28  thus there is a reasonable fit between the ban and California's

10

1   important objectives.  Because of this reasonable fit, plaintiffs

2   have not shown that the large capacity magazine ban fails

3   intermediate scrutiny and have not shown a likelihood of success

4   on the merits on their Second Amendment claim.

5              2.    Irreparable Injury, Balance of Hardships, and the

6                    Public Interest

7              Because plaintiffs have not met their burden of showing

8   the likelihood of success on the merits of their Second Amendment

9   claim, preliminary injunctive relief must be denied,

10  notwithstanding the court's findings with respect to irreparable

11  injury, balance of hardships or the public interest.  See Winter,

12  555 U.S. at 20 ("A plaintiff seeking a preliminary injunction

13  just establish that he is likely to succeed on the merits, that

14  he is likely to suffer irreparable harm in the absence of

15  preliminary relief, that the balance of equities tips in his

16  favor, and that an injunction is in the public interest.")

17  (emphasis added).

18             That said, if plaintiffs are correct that the large

19  capacity magazine ban violates the Second Amendment, it appears

20  that plaintiffs will likely suffer irreparable injury by having

21  to surrender their large capacity magazines, which are

22  irreplaceable due to California's ban on the transfer of large

23  capacity magazines, in violation of their Second Amendment

24  rights.  "[C]onstitutional violations cannot be adequately

25  remedied through damages and therefore generally constitute

26  irreparable harm."  Am. Trucking Ass'ns v. City of Los Angeles,

27  559 F.3d 1046, 1059 (9th Cir. 2009) (citation omitted); see also

28  Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]he

1    deprivation of constitutional rights 'unquestionably constitutes

2    irreparable injury.'") (quoting Elrod v. Burns, 427 U.S. 347, 373

3    (1976)).

4         While defendants claim there is no irreparable harm

5    because plaintiffs may store their magazines out of state, sell

6    them to licensed dealers, or permanently modify their magazines,

7    there is little evidence as to whether these are in fact viable

8    options for plaintiffs or Californians generally.  Accordingly,

9    if plaintiffs were able to show a likelihood of success on the

10   merits of their Second Amendment claim, this factor would weigh

11   in favor of granting a preliminary injunction.

12        The other Winter factors, however, do not weigh in

13   favor of granting preliminary injunctive relief.  Withholding an

14   injunction may result in the violation of plaintiffs' Second

15   Amendment rights and the unlawful forced loss of their personal

16   property, but granting an injunction would also result in a

17   substantial hardship to defendants.  The State has a substantial

18   interest in preventing and limiting gun violence, as well as in

19   enforcing validly enacted statutes.  See Maryland v. King, 133 S.

20   Ct. 1, 3 (2012) ("Any time a State is enjoined by a court from

21   effectuating statutes enacted by representatives of its people,

22   it suffers a form of irreparable injury.").  Such interest is

23   especially strong here, where the ban was enacted first by the

24   state legislature and then through a state-wide proposition

25   approved by a majority of voters.

26        Further, while the public's interest is furthered by

27   the protection of individuals' Second Amendment rights, assuming

28   the ban infringes those rights, the public interest is also

12

1  furthered by preventing and minimizing the harm of gun violence,

2  and in making it easier to enforce California's existing ban on

3  the sale, purchase, transfer, or importation of large capacity

4  magazines, pursuant to a bill enacted by the California

5  Legislature and a proposition approved by the California

6  electorate.

7          Given the substantial hardships that may result to both

8  sides in this litigation based on the granting or withholding of

9  a preliminary injunction, and the dueling substantial public

10 interests, plaintiffs have not shown that the balance of

11 hardships or the public interest favor granting a preliminary

12 injunction.  Further, as discussed above, plaintiffs have not

13 shown a likelihood of success on the merits of their Second

14 Amendment claim.  Accordingly, the court will deny plaintiffs'

15 request for a preliminary injunction based on their Second

16 Amendment claim.

17         B.   Takings Clause/Due Process Challenge

18         The Fifth Amendment prohibits the taking of private

19 property for public use without just compensation.  U.S. Const.

20 amend. V.  Plaintiffs argue that the magazine ban operates as an

21 unconstitutional taking under the Fifth and Fourteenth Amendments

22 because they will have to physically turn over their magazines

23 for destruction or, in the alternative, they will be completely

24 deprived of all beneficial use of their magazines, without just

25 compensation.

26         Preliminarily, the court is not persuaded that

27 plaintiffs will likely succeed on the merits of their takings

28 claim.  Plaintiffs have not cited, and the court is unaware of,

13

1   any case holding that a complete ban on personal property deemed

2   harmful to the public by the state is a taking for public use

3   which requires compensation.  Further, the Supreme Court's

4   decision in Heller I said nothing which could be interpreted as

5   suggesting that a city or state's ban of a previously lawful

6   firearm or firearm component would require compensation to

7   existing owners of those firearms or components.  See Heller I,

8   554 U.S. at 626-27 (stating that reasonable gun regulations were

9   permissible and implying that a complete ban on machine guns, for

10  example, was permissible).

11          A long line of federal cases has authorized the taking

12  or destruction of private property in the exercise of the state's

13  police power without compensation.  See Mugler v. Kansas, 123

14  U.S. 623, 669 (1887) ("The exercise of the police power by the

15  destruction of property which is itself a public nuisance . . .

16  is very different from taking property for public use . . . . In

17  the one case, a nuisance only is abated; in the other,

18  unoffending property is taken away from an innocent owner.");

19  Akins v. United States, 82 Fed. Cl. 619, 622-23 (2008) ("Property

20  seized and retained pursuant to the police power is not taken for

21  a 'public use' in the context of the Takings Clause" and thus no

22  compensation was due where a federal agency ordered, pursuant to

23  federal law, an inventor to surrender a device later classified

24  by the agency as a machine gun) (quoting AmeriSource Corp. v.

25  United States, 525 F.3d 1149, 1153 (Fed. Cir. 2008)); Fesjian v.

26  Jefferson, 399 A.2d 861 (D.C. Ct. App. 1979) (no compensation is

27  due where a municipality bans machine guns or semi-automatic

28  weapons capable of firing more than twelve rounds without manual

14

1  reloading); accord Wilkins v. Daniels, 744 F.3d 409, 419 (6th

2  Cir. 2014) (law banning wild animals unless they were implanted

3  with microchips did not operate as a physical taking because

4  owners retained the ability to use and possess their animals and

5  the implanted microchips, and the act was "close kin to the

6  general welfare regulations that the Supreme Court ensured were

7  not constitutionally suspect").

8         More importantly, even assuming, without deciding, that

9  the large capacity magazine ban operates as a taking requiring

10  just compensation, injunctive relief is generally not available

11  for takings claims.  The Takings Clause "is designed not to limit

12  the governmental interference with property rights per se, but

13  rather to secure compensation in the event of [an] otherwise

14  proper interference amounting to a taking."  First English

15  Evangelical Lutheran Church of Glendale v. County of Los Angeles,

16  482 U.S. 304, 315 (1987); see also Lingle v. Chevron, 544 U.S.

17  528, 543 (2005) (Due Process clause "does not bar government from

18  interfering with property rights" but only requires compensation

19  in event of interference amounting to a taking) (citing First

20  English Lutheran Church, 428 U.S. at 315).

21         As explained by one legal scholar, "if a local

22  government is regulating land use to protect the community and

23  the owner has the opportunity to sue for compensation based on

24  any taking that might result, the owner cannot sue to block

25  enforcement of the regulation under the Takings Clause."  John D.

26  Echeverria, Eschewing Anticipatory Remedies for Takings: A

27  Response to Professor Merrill, 128 Harv. L. Rev. Forum 202, 204

28

15

1    (2015).[3]  Moreover, "[t]he Fifth Amendment does not require that

2    compensation precede the taking." Ruckelshaus v. Monsanto Co.,

3    467 U.S. 986, 1016 (1984) (citation omitted).

4         Thus, an allegation that a law operates as an illegal

5    taking because there was no just compensation is not ground to

6    void the law, as "the government is not prohibited from taking

7    private property; indeed, the eminent domain clause contemplates

8    that the government will take private property as needed for

9    public purposes, so long as it pays compensation." Bay View,

10   Inc. v. Ahtna, Inc., 105 F.3d 1281, 1284-85 (9th Cir. 1997)

11   (citing Evangelical Lutheran Church, 482 U.S. at 314).

12        Plaintiffs' cited cases do not establish that a

13   preliminary injunction is available for a takings claim.  Most of

14   the cases involve California courts applying California law.

15   Plaintiffs cite Lingle, 544 U.S. at 528, though as discussed

16   above, that case actually stands for the proposition that

17   injunctive relief is generally not available for an alleged

18   taking.  Plaintiffs also cite Golden Gate Hotel Association v.

19   City & County of San Francisco, 836 F. Supp. 707, 709 (N.D. Cal.

20   1993), where an injunction was granted based on a takings claim,

21   but that decision was reversed by the Ninth Circuit based on a

22   statute of limitations issue, 18 F.3d 1482 (9th Cir. 1994).

23        Plaintiffs' supplemental brief cites Babbitt v. Youpee,

24   519 U.S. 234 (1997), where Native Americans challenged a law

25   providing that certain small interests in Indian lands would

26

27        [3]   John D. Echeverria, the author of the quoted article,
     is a professor at Vermont Law School, not to be confused with
28   counsel for defendants with the same name.

1   transfer (or "escheat") to the tribe upon the death of the owner

2   of the interest if they did not generate at least $100 in income

3   to the owner in any one of the five years before it was due to

4   escheat.  While that decision provides some support for

5   plaintiffs' position, it did not involve review a preliminary

6   injunction, but rather a summary judgment.

7           Moreover, the Court in Babbitt did not address the rule

8   repeated in numerous cases that injunctive relief is generally

9   not available for a takings claim, or why that rule did not

10  apply.  The Court may have found that an injunction was

11  appropriate there because of the speculative nature of the

12  property that was taken--a future interest in land that may or

13  may not be lost depending on future circumstances--meaning that

14  the normal remedy of filing suit to recover the value of the lost

15  property was not a realistic remedy.  The Court also noted the

16  "extraordinary character" of the regulation, which "amounted to

17  the virtual abrogation of the right to pass on a certain type of

18  property."  Id. at 239-40.

19          Should plaintiffs succeed on their takings claim, their

20  only remedy is money damages, or compensation for the value of

21  the magazines which they are forced to surrender to the state.[4]

22  Accord United States v. Riverside Bayview Homes, Inc., 474 U.S.

23  121, 129 n.6 (1985) (stating that if a federal government action

24  operated as a taking of plaintiff's property, the proper course

25          [4]  The court expresses no opinion at this time whether
26  this suit would be a proper vehicle for obtaining compensation
    from the State, though the court notes that the First Amended
27  Complaint only seeks declaratory and injunctive relief with
    respect to the Fifth Amendment takings claim.  (See, e.g., First
28  Am. Compl. ¶¶ 79-80.)

1   was to initiate a suit for compensation in the Court of Federal

2   Claims).  Accordingly, plaintiffs have not met their burden of

3   showing their entitlement to a preliminary injunction based on

4   their takings claim.

5          C.   Vagueness Claim

6          The Fifth Amendment also provides that "[n]o person

7   shall . . . be deprived of life, liberty, or property, without

8   due process of law."  U.S. Const. amend. V.  The government

9   violates due process when it deprives an individual of life,

10  liberty, or property pursuant to an "unconstitutionally vague"

11  criminal statute.  Johnson v. United States, 135 S. Ct. 2551,

12  2557 (2015).  A statute is unconstitutionally vague when it

13  "fails to provide a person of ordinary intelligence fair notice

14  of what is prohibited, or is so standardless that it authorizes

15  or encourages seriously discriminatory enforcement."  United

16  States v. Williams, 553 U.S. 285, 304 (2008).

17         First, plaintiffs claim that the ban is vague because

18  SB 1446 and Proposition 63 created two different versions of

19  California Penal Code § 32406, and it is not clear which version

20  applies.  SB 1446 exempts six classes of individuals/entities--

21  (1) honorably retired law enforcement officers, (2) historical

22  societies and museums, (3) persons who find and deliver large

23  capacity magazines to law enforcement agencies, (4) forensic

24  laboratories, (5) trustees and executors, and (6) persons in

25  lawful possession of a firearm acquired prior to 2000 that is

26  only compatible with a large capacity magazines--from the

27  prohibition on possession of these magazines.  In contrast, the

28  Proposition 63 version only exempts honorably retired law

18

1    enforcement officers.  (See Pls.' Req. for Judicial Notice, Exs.

2    C (SB 1446 Version of Cal. Penal Code § 32406), and D

3    (Proposition 63 Version of Cal. Penal Code § 32406).)  In their

4    view, it is not clear what conduct the ban prohibits, given these

5    dual versions of section 32406.

6              However, plaintiffs do not cite, and the court is

7    unaware of, any case that has held an enactment to be void for

8    vagueness because it conflicts with another enactment and it is

9    not clear which enactment controls.  The only case of which the

10   court is aware where that argument was made held that such

11   enactments were not void for vagueness.  See Karlin v. Foust, 188

12   F.3d 446, 469 (7th Cir. 1999) (holding that the question before

13   the court was whether one enactment impliedly repealed the other,

14   not whether the enactments are void for vagueness).

15             Even if the court were to depart from Karlin and

16   consider plaintiffs' vagueness challenge on grounds of

17   conflicting enactments, that challenge would fail.  Under

18   California law, where two conflicting versions of the same

19   statute are enacted at different times, the later-enacted version

20   controls.  People v. Bustamante, 57 Cal. App. 4th 693, 701 (2d

21   Dist. 1997) (citing County of Ventura v. Barry, 202 Cal. 550, 556

22   (1927) and People v. Dobbins, 73 Cal. 257, 259 (1887)).  It is

23   not beyond the capacity of individuals with ordinary intelligence

24   to look up the enactment dates of Proposition 63 and SB 1446 and

25   see that Proposition 63 was enacted after SB 1446.  As

26   Proposition 63 was passed after SB 1446, its version of

27   California Penal Code § 32406 is controlling.  Accordingly, the

28   court rejects plaintiffs' claim that the large capacity magazine

19

1   ban is unconstitutionally vague on account of the passage of both

2   SB 1446 and Proposition 63.

3          Second, plaintiffs contend that the ban is vague

4   because while it exempts possession for retired law enforcement

5   officers, and in the case of SB 1446, trustees or administrators

6   of estates, it does not exempt these individuals from prosecution

7   for manufacturing, importing, keeping for sale, offering for

8   sell, giving, lending, buying, or receiving large capacity

9   magazines.[5]  See Cal. Penal Code § 32310(a).  According to

10  plaintiffs, this "results in a paradoxical situation that retired

11  law enforcement officers [and trustees and executors] are

12  supposedly entrusted with the right to possess large-capacity

13  magazines," but "cannot bring into the state, nor even receive

14  these magazines."  (Docket No. 28-1 at 42-43.)

15         Given the court's determination that the Proposition 63

16         [5]     In addition to this concern, plaintiffs contend that
17  absence of clarification from the California Department of
    Justice as to a number of questions having to do with application
18  of the magazine ban—those having to do with disposal of
    magazines, modification of magazines, and magazines which may
19  accommodate different size shells—raise additional "vagueness
    concerns."  (See Docket No. 47 at 23-24.)  The court declines to
20  consider such concerns in deciding plaintiffs' request for a
    preliminary injunction because the concerns were not raised in
21  plaintiffs' moving papers.  See Zamani v. Carnes, 491 F.3d 990,
22  997 (9th Cir. 2007) ("The district court need not consider
    arguments raised for the first time in a reply brief.") (citation
23  omitted).  Even if the court were inclined to consider such
    concerns, it is not persuaded that the concerns amount to
24  anything more than marginal questions existing alongside a
    statute whose application is clear in the vast majority of
25  intended applications.  See Cal. Teachers Ass'n v. State Bd. of
26  Educ., 271 F.3d 1141, 1151 (9th Cir. 2001) ("[U]ncertainty at a
    statute's margins will not warrant facial invalidation if it is
27  clear what the statute proscribes 'in the vast majority of its
    intended applications.'") (quoting Hill v. Colorado, 530 U.S.
28  703, 733 (2000)).

1   version of the statute is controlling, SB 1446's exemption for

2   possession of large capacity magazines by trustees or

3   administrators of estates is no longer in effect.  Looking to the

4   ban's exemption for possession by retired law enforcement

5   officers, the court rejects plaintiffs' contention that it is

6   "paradoxical" to allow these individuals to possess these

7   magazines but prohibit them from manufacturing, importing into

8   the state, keeping for sale, offering for sale, giving, lending,

9   buying, or receiving them.  It is entirely possible to possess a

10  large capacity magazine without engaging in those other

11  activities.  Because there is no "paradox" in the application of

12  the 'retired officer' exemption to California Penal Code section

13  32310(a), this exemption does not support plaintiffs' vagueness

14  claim.

15          In sum, plaintiffs have not shown a likelihood of

16  success on the merits as to their vagueness claim.  Moreover, for

17  the same reasons discussed above in connection with the Second

18  Amendment claim, plaintiffs have not shown that the balance of

19  hardships or public interest weigh in favor of granting a

20  preliminary injunction.  Accordingly, the court will deny

21  plaintiffs' request for a preliminary injunction as to their

22  vagueness claim.

23          D.   Overbreadth Claim

24          Plaintiffs argue that the large capacity magazine ban

25  is unconstitutionally overbroad because there is no evidence that

26  application of the ban to current owners of large capacity

27  magazines would further the objectives of reducing mass shootings

28  and the harm inflicted during those shootings.

21

1    First, the court is unaware of any cases applying the

2 overbreadth doctrine in the Second Amendment context.  See United

3 States v. Chester, 628 F.3d 673, 688 (4th Cir. 2010) (Davis, J.,

4 concurring) ("[I]mporting the overbreadth doctrine . . . into the

5 Second Amendment context would be inappropriate."); cf. United

6 States v. Salerno, 481 U.S. 739, 745 (1987) ("[W]e have not

7 recognized an 'overbreadth' doctrine outside the limited context

8 of the First Amendment." (citation omitted)).  Plaintiffs provide

9 no reason for the court to expand the overbreadth doctrine to the

10 Second Amendment.

11    Second, challenging a law on overbreadth grounds

12 requires a showing that the law prohibits "a substantial amount"

13 of constitutionally protected conduct.  Powell's Books, Inc. v.

14 Kroger, 622 F.3d 1202, 1208 (9th Cir. 2010).  Plaintiffs fail to

15 show what constitutionally protected conduct the law

16 substantially prohibits.  Plaintiffs argue that the law is

17 overbroad because there is no evidence that current owners of

18 large capacity magazines "have ever been involved in mass

19 shootings, gun crimes, or in anything other than purely lawful

20 activities," (Pls.' Mot. 44).  However, because plaintiffs have

21 not shown a likelihood of success on their Second Amendment claim

22 they are similarly unlikely to succeed on their claim that the

23 law prohibits a substantial amount of constitutionally protected

24 conduct.

25    Further, for the reasons discussed above in connection

26 with the Second Amendment claim, plaintiffs have not shown that

27 the balance of hardships or public interest weigh in favor of

28 granting a preliminary injunction. Accordingly, the court will

22

1  deny plaintiffs' request for a preliminary injunction as to their

2  overbreadth claim.

3          IT IS THEREFORE ORDERED that plaintiffs' Renewed Motion

4  for Issuance of Preliminary Injunction (Docket No. 28) be, and

5  the same hereby is, DENIED.

6  Dated:   June 29, 2017

7  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28