1   XAVIER BECERRA, State Bar No. 118517
     Attorney General of California
2   TAMAR PACHTER, State Bar No. 146083
     Supervising Deputy Attorney General
3   JOHN D. ECHEVERRIA, State Bar No. 268843
     Deputy General
4   ALEXANDRA ROBERT GORDON, State Bar No. 207650
     Deputy Attorney General
5    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
6   Telephone: (415) 703-5509
     Fax: (415) 703-5480
7   E-mail:  Alexandra.RobertGordon@doj.ca.gov
     *Attorneys for Defendants*

8

9                IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11                  SACRAMENTO DIVISION

12

| | |
|---|---|
| 13   **WILLIAM WIESE, et al.,** | 2:17-cv-00903-WBS-KJN |
| 14                   Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION** |
| 15 | **AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT** |
| 16       v. | **TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| 17   **XAVIER BECERRA, et al.,** | |
| 18               Defendants. | Date:          November 6, 2017 <br> Time:        1:30 p.m. |
| 19 | Courtroom:   5, 14th Floor <br> Judge:       Hon. William B. Shubb <br> Trial Date:   None Set |
| 20 | Action Filed:  April 28, 2017 |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

INTRODUCTION ....................................................................................................... 2

BACKGROUND ......................................................................................................... 3

I.   Relevant Law and Procedural History ............................................. 3

     A.   Section 32310 ...................................................................... 3

     B.   Procedural History .............................................................. 5

II.  The Allegations of the Second Amended Complaint ....................... 6

ARGUMENT ............................................................................................................... 7

I.   Legal Standard .................................................................................. 7

II.  Plaintiffs Have Failed to State Viable Claims for Relief as a Matter of Law ......... 7

     A.   Plaintiffs' Second Amendment Claim Fails ........................ 9

     B.   Plaintiffs' Takings Clause Claims Fail ............................. 12

          1.   Section 32310 Is Not a Physical Taking ................ 13

          2.   Section 32310 Is Not a Regulatory Taking ............ 15

     C.   Plaintiffs' Vagueness Claim Fails ..................................... 17

     D.   Plaintiffs' Overbreadth Claim Fails .................................. 20

     E.   Plaintiffs' Equal Protection Clause Claim Fails ............... 21

     F.   To the Extent the SAC Alleges a Section 1983 Claim, this Claim Fails ............. 23

CONCLUSION ......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

CASES

*Akins v. United States*
    82 Fed. Cl. 619 (2008) ...................................................................................14

*Anderson v. Holder*
    673 F.3d 1089 (9th Cir. 2012)............................................................................3

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...........................................................................1, 7, 10

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ...................................................................1, 7, 10, 14

*Burns v. Mukasey*
    No. CIVS090497MCECMK, 2009 WL 3756489 (E.D. Cal. Nov. 6, 2009) ............14

*Cal. Teachers Ass'n v. State Bd. of Educ.*
    271 F.3d 1141 (9th Cir. 2001)..........................................................................18

*Chaudhry v. City of Los Angeles*
    751 F.3d 1096 (9th Cir. 2014)..........................................................................21

*Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*
    958 F.2d 941 (9th Cir. 1992).............................................................................8

*Chevron USA, Inc. v. Cayetano*
    224 F.3d 1030 (9th Cir. 2000)....................................................................14, 15

*Chi., B. & Q. R. Co. v. Illinois*
    200 U.S. 561 (1906) .......................................................................................14

*City of Cleburne v. Cleburne Living Ctr.*
    473 U.S. 432 (1985) .......................................................................................21

*Ctr. for Competitive Politics v. Harris*
    784 F.3d 1307 (9th Cir. 2015)............................................................................8

*Customer Co. v. City of Sacramento*
    10 Cal. 4th 368 (1995) ...................................................................................13

*Daniels-Hall v. National Educ. Ass'n*
    629 F.3d 992 (9th Cir. 2010).............................................................................7

*District of Columbia v. Heller*
    554 U.S. 570 (2008) .........................................................................................9

ii

1

# TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Everard's Breweries v. Day*
   265 U.S. 545 (1924)......................................................................................................14

4

*Fesjian v. Jefferson*
   399 A.2d 861 (D.C. Ct. App. 1979)..........................................................................14

5

6

*Fields v. Legacy Health Sys.*
   413 F.3d 943 (9th Cir. 2005)................................................................................21, 22

7

*Flanagan v. Harris*
   No. LACV1606164JAKASX, 2017 WL 729788 (C.D. Cal. Feb. 23, 2017)..........................22

8

9

*Foti v. City of Menlo Park*
   146 F.3d 629 (9th Cir. 1998)........................................................................................8

10

*Friedman v. City of Highland Park*
   784 F.3d 406 (7th Cir.)..........................................................................................10, 11

11

12

*Fyock v. City of Sunnyvale*
   779 F.3d 991 (9th Cir. 2015).......................................................................3, 9, 10, 11

13

14

*Grutter v. Bollinger*
   539 U.S. 306 (2003)....................................................................................................21

15

16

*Gun South, Inc. v. Brady*
   877 F.2d 858 (11th Cir. 1989)....................................................................................14

17

18

*Hall v. Garcia*
   No. C 10-03799 RS, 2011 WL 995933 (N.D. Cal. Mar. 17, 2011) ...........................12

19

*Heller v. District of Columbia*
   670 F.3d 1244 (D.C. Cir. 2011) ..............................................................................9, 11

20

21

*Heller v. Doe*
   509 U.S. 312 (1993)....................................................................................................22

22

23

*HFH Ltd. v. Superior Court*
   15 Cal. 3d 508 (1975) ................................................................................................13

24

*Hightower v. City of Boston*
   693 F.3d 61 (1st Cir. 2012) ..........................................................................................9

25

26

*Honolulu Weekly, Inc. v. Harris*
   298 F.3d 1037 (9th Cir. 2002).....................................................................................22

27

28

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Horne v. Dept. of Agric.*
135 S. Ct. 2419 (2015) ...................................................................................14

*Hotel & Motel Ass'n of Oakland v. City of Oakland*
344 F.3d 959 (9th Cir. 2003) ..........................................................................16

*Hoye v. City of Oakland*
653 F.3d 835 (9th Cir. 2011) ............................................................................8

*Kachalsky v. Cnty. of Westchester*
701 F.3d 81 (2d Cir. 2012) .............................................................................20

*Karlin v. Foust*
188 F.3d 446 (7th Cir. 1999) ..........................................................................18

*Kolbe v. Hogan*
849 F.3d 114 (4th Cir. 2017) .......................................................................9, 10

*Kwong v. Bloomberg*
723 F.3d 160 (2d Cir. 2013) ...........................................................................22

*Levald, Inc. v. City of Palm Desert*
998 F.2d 680 (9th Cir. 1993) .....................................................................13, 16

*Lingle v. Chevron U.S.A., Inc.*
544 U.S. 528 (2005) ...................................................................................12, 14

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
416 F.3d 940 (9th Cir. 2005) ............................................................................7

*Loretto v. Teleprompter Manhattan CATV Corp.*
458 U.S. 419 (1982) ........................................................................................12

*Lucas v. South Carolina Coastal Council*
505 U.S. 1003 (1992) ......................................................................................15

*Mahoney v. Sessions*
No. 14-35970, 2017 WL 4126943 (9th Cir. Sept. 19, 2017) ..........................12

*McDonald v. City of Chi.*
561 U.S. 742 (2010) ..........................................................................................9

*Members of City Council of L.A. v. Taxpayers for Vincent*
466 U.S. 789 (1984) ........................................................................................20

iv

1

2

### TABLE OF AUTHORITIES
#### (continued)

**Page**

3

*MHC Fin. Ltd. P'ship v. City of San Rafael*

4
    714 F.3d 1118 (9th Cir. 2013)................................................................16

5
*Mugler v. Kansas*
    123 U.S. 623 (1887).........................................................................14

6

7
*Navarro v. Block*
    250 F.3d 729 (9th Cir. 2001).............................................................7

8
*New York State Rifle & Pistol Ass'n v. Cuomo*

9
    804 F.3d 242 (2d Cir. 2015)........................................................10, 11

10
*New York v. Ferber*
    458 U.S. 747 (1982)..........................................................................20

11

12
*Nichols v. Harris*
    17 F. Supp. 3d 989 (C.D. Cal. 2014) ...............................................17

13
*Palazzolo v. Rhode Island*

14
    533 U.S. 606 (2001).........................................................................16

15
*Penn Central Transp. Co. v. City of N.Y.*
    438 U.S. 104 (1978)....................................................................12, 16

16

17
*Penn. Coal Co. v. Mahon*
    260 U.S. 393 (1922).........................................................................16

18
*People v. Bustamante*

19
    57 Cal. App. 4th 693 (2d Dist. 1997)................................................18

20
*Robertson v. Dean Witter Reynolds, Inc.*
    749 F.2d 530 (9th Cir. 1984)..............................................................7

21

22
*Romer v. Evans*
    517 U.S. 620 (1996).........................................................................21

23
*Rose Acre Farms, Inc. v. United States*

24
    373 F.3d 1177 (Fed. Cir. 2004)........................................................16

25
*S.F. Veteran Police Officers Ass'n v. City of S.F.*
    18 F. Supp. 3d 997 (N.D. Cal. 2014) ...............................................11

26
*San Remo Hotel, L.P. v. City & Cnty. of S.F.*

27
    27 Cal. 4th 643 (2002) .....................................................................13

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Serrano v. Priest*
    18 Cal. 3d 728 (Cal. 1976)......................................................................22

*Suitum v. Tahoe Regional Planning Agency*
    520 U.S. 725 (1997)..............................................................................13

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*
    535 U.S. 302 (2002)..............................................................................13

*United States v. Carolene Prods. Co.*
    304 U.S. 144 (1938)..............................................................................22

*United States v. Chester*
    628 F.3d 673 (4th Cir. 2010)................................................................20

*United States v. Chovan*
    735 F.3d 1127 (9th Cir. 2013).................................................................9

*United States v. Purdy*
    264 F.3d 809 (9th Cir. 2001)................................................................17

*United States v. Salerno*
    481 U.S. 739 (1987)..........................................................................8, 20

*Van Buskirk v. Cable News Network, Inc.*
    284 F.3d 977 (9th Cir. 2002)................................................................3, 7

*Walgreen Co. v. City & County of San Francisco*
    185 Cal. App. 4th 424 (2010)...............................................................22

*Wash. State Grange v. Wash. State Republican Party*
    552 U.S. 442 (2008)................................................................................8

*Wiese v. Becerra*
    __ F. Supp. 3d __, No. CV 2:17-903 WBS KJN, 2017 WL 2813218 (E.D. Cal. June 29, 2017).......................................................................................5

*Wilson v. Lynch*
    835 F.3d 1083 (9th Cir. 2016)..............................................................12

*Zucco Partners, LLC v. Digimarc Corp.*
    552 F.3d 981 (9th Cir. 2009)...................................................................7

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

California Penal Code
  § 16740 ............................................................................................................4, 17, 18
  § 32310 .................................................................................................................. *passim*
  § 32390 ...........................................................................................................................3
  § 32406 .........................................................................................................................18
  § 32425 .........................................................................................................................15
  § 32445 .........................................................................................................................22
  § 108010 .........................................................................................................................3

California Stats.
  1999, Chapter 129 § 3 .....................................................................................................3
  1999, Chapter 129 § 3.5 ..................................................................................................3
  2013, Chapter 728 § 1 .....................................................................................................3
  2016, Chapter 55 ...........................................................................................................19
  2016, Chapter 58 § 1 .......................................................................................................4

United States Code
  Title 18 § 922 .................................................................................................................3
  Title 42 § 1983 .............................................................................................................23

**CONSTITUTIONAL PROVISIONS**

California Constitution
  Article I, § 7 .............................................................................................................8, 22
  Article I, § 19 ........................................................................................................6, 8, 13

United States Constitution
  First Amendment ......................................................................................................17, 20
  Second Amendment ...................................................................................................... *passim*
  Fifth Amendment ........................................................................................................ *passim*
  Fourteenth Amendment ................................................................................................ *passim*

**COURT RULES**

Federal Rule of Civil Procedure
  rule 12 .....................................................................................................................1, 2, 7
  rule 25 .............................................................................................................................1

Federal Rule of Evidence
  rule 201 .........................................................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**OTHER AUTHORITIES**

Safety for All Act of 2016.................................................................................................4

Violent Crime Control and Law Enforcement Act ............................................................3

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on November 6, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable William B. Shubb in Courtroom 5 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California 95814, defendants Attorney General Xavier Becerra and Bureau of Firearms Chief Stephen Lindley,[1] will move this Court to dismiss plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion to dismiss is brought on the grounds that (1) the Second Amended Complaint fails to satisfy the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); and (2) the Second Amended Complaint fails to state a claim upon which relief can be granted under the Second Amendment, the Takings Clauses of the United States or California Constitution, the Due Process Clause, or the Equal Protection Clause of the United States or California Constitution.  This motion is based on this Notice, the Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the papers and pleadings on file in this action, this Court's June 29, 2017 Order Denying Preliminary Injunction, and upon such matters as may be presented to the Court at the time of the hearing.

Dated:  September 27, 2017

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General

*/s/ Alexandra Robert Gordon*

ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendants*

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Chief Stephen Lindley, in his official capacity, is substituted for Acting Chief Martha Supernor.

1

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

### INTRODUCTION

3
4
5
6
7
8
9
10
11
12
13

 In the wake of escalating mass-shootings and gun violence, the Legislature and the people of California have enacted a ban on the possession of magazines holding more than ten rounds of ammunition.  These large-capacity magazines (LCMs) are disproportionately used in crime, and feature prominently in some of the most serious crime, including mass shootings and the killings of law enforcement officers.  When LCMs are used to commit crime, more shots are fired, more victims are wounded, and there are more wounds per victim.  This in turn leads to more injuries, more lethal injuries, and higher rates of death than crimes involving firearms with conventional magazines.  Because LCMs are so dangerous, federal and state law have restricted their manufacture, importation, and sale for decades.  In order to strengthen these restrictions, and close a loophole that allowed for the continued proliferation of LCMs, California Penal Code Section 32310 (Section 32310) prohibits the possession of LCMs by private citizens.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

 Plaintiffs challenge this important public safety legislation and allege that it violates the Second Amendment and the Takings and Equal Protection Clauses, and that it is unconstitutionally vague and overbroad.  The Second Amended Complaint should be dismissed in its entirety because, even after amendment, plaintiffs do not allege sufficient facts in support of their constitutional claims.  Rather, the Second Amended Complaint is comprised of little more than boilerplate legal conclusions that fail to satisfy the pleading burden under Federal Rule of Civil Procedure 12(b).  Moreover, of greater significance, and as this Court already has held, the law furthers the government's important interests in reducing the incidence and lethality of mass shootings, is likely not a taking of property for public use requiring compensation, and is not vague or overbroad.  Plaintiff's equal protection claim is duplicative of their Second Amendment claim and also fails on the merits.  Because plaintiffs cannot demonstrate that Section 32310 is unconstitutional, they cannot state a claim upon which relief can be granted.  Accordingly, defendants respectfully request that this Court dismiss the Second Amended Complaint with prejudice.

28

1

**BACKGROUND**

2

**I.    RELEVANT LAW AND PROCEDURAL HISTORY**

3

**A.    Section 32310.**

4    Because they are particularly lethal and are disproportionately used in mass shootings and

5    other crime, LCMs have been extensively regulated in the United States for decades.  In the wake

6    of numerous gun massacres during the 1980s and early 1990s, Congress passed the Violent Crime

7    Control and Law Enforcement Act (the Federal Ban) in 1994.  H.R. Rep. 103-489, at 32-33

8    (1994).  The Federal Ban prohibited the possession or transfer of all "large-capacity ammunition

9    feeding devices," defined as those with the capacity to accept more than ten rounds.  *See* Pub. L.

10    103-322, Sept. 13, 1994, 108 Stat. 1796, 1998-2000 (formerly codified at 18 U.S.C. § 922(w)).

11    In 2000, California adopted its own legislation prohibiting the manufacture, import, keeping or

12    offering for sale, giving, or lending of LCMs.  Cal. Stats. 1999, ch. 129, §§ 3, 3.5, presently

13    codified at Cal. Penal Code § 32310.[2]  In 2013, California enacted a ban on the purchase or

14    receipt of LCMs.  Cal. Stats. 2013, ch. 728 (A.B. 48) § 1 (amending § 32310(a)).  California also

15    declared unlawfully possessed LCMs to be a "nuisance."  §§ 108010, 32390.  Thus, though the

16    Federal Ban expired in 2004, LCMs have remained illegal to buy, sell, or import in California.

17    Combined, both the federal and state law have made LCMs unavailable to the vast majority of

18    Californians for over two decades.

19    Although California banned the manufacture, sale, and transfer of LCMs in 2000, it initially

20    did not ban possession of these LCMs, instead grandfathering in possession of LCMs obtained

21    before 2000.  *See Fyock v. City of Sunnyvale*, 779 F.3d 991, 994 (9th Cir. 2015).  Rather than

22    serving as a limited exception, the grandfathering provision made the prior version of Section

23    32310 "very difficult to enforce."  SAC, Ex. B at 8 (Sen. Bill No. 1446, 3d reading Mar. 28, 2016

24    (2015-2016 Reg. Sess.) (Cal. 2016)).[3]  Specifically, because LCMs lack identifying marks to

25

26    [2] All subsequent statutory references are to the California Penal Code, unless otherwise noted.

27    [3] In evaluating a motion to dismiss, this Court may consider exhibits attached to the Complaint.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  This Court may also take judicial notice of the legislative history of state laws.  *See Anderson v.*

28    (continued…)

3

indicate when they were manufactured or sold, there has been no reliable way for law

enforcement to determine which LCMs were properly grandfathered and which had been illegally

smuggled and purchased or were the product of "magazine conversion kits" that enabled people

to evade the law.  *Id.*  In an effort to close what proved to be a dangerous loophole and address

the proliferation of LCMs in California despite a ban on their sale or transfer, both the Legislature

and the people separately enacted substantially similar prohibitions on the possession of LCMs.

*See id.*; Prop. 63, § 2, ¶ 5, as approved by voters (Gen. Elec. Nov. 8, 2016) (uncodified findings

and declarations of the people of California), attached as Exhibit B to the accompanying RJN.

On July 1, 2016, the Legislature enacted Senate Bill (SB) 1446, which prohibits the

possession of LCMs (defined under Section 16740 as "a feeding device with the capacity to

accept more than 10 rounds") beginning on July 1, 2017.  Cal. Stats. 2016, ch. 58 (SB 1446) § 1,

attached as Exhibit A to the accompanying RJN.  SB 1446, which went into effect on January 1,

2017, amended Section 32310 to state that, beginning on July 1, 2017, any person possessing an

LCM, with exemptions not relevant here, would be guilty of an infraction punishable by a fine

starting at $100 for the first offense.  *Id.* (amending Section 32310 to add a new subdivision (c)).

The law also provided that anyone possessing an LCM may, prior to July 1, 2017, dispose of the

magazine by any of the following means: (1) removing it from the state; (1) selling it to a licensed

firearms dealer; (3) destroying it; or (4) surrendering it to a law enforcement agency for

destruction.  Cal. Stats. 2016, ch. 58 (S.B. 1446) § 1 (amending Section 32310 to add a new

subdivision (d)).

On November 8, 2016, California voters passed Proposition (Prop.) 63, the "Safety for All

Act of 2016."  Prop. 63, § 1 (RJN, Ex. B).  The measure contained a number of provisions,

including amendments to Section 32310, intended to close "loopholes that leave communities

throughout the state vulnerable to gun violence and mass shootings."  *Id.*, § 2, ¶ 5.  Prop. 63's

amendments to Section 32310 largely mirror those made under SB 1446.  Both provisions

---

(…continued)
*Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).  Accordingly, relevant portions of the history of
SB 1446 and Proposition 63 are attached as exhibits to the concurrently filed Request for Judicial
Notice in Support of Motion to Dismiss (RJN).

4

1  prohibit the possession of LCMs on or after July 1, 2017, and list options for the disposal of

2  LCMs before that date.  *Id.*  Prop. 63 eliminated some of the exceptions contained in SB 1446 and

3  increased the potential consequence for violations of the possession ban, from an infraction to an

4  infraction or a misdemeanor.  *Id.*, § 6.1.[4]

5      **B.    Procedural History**

6      On April 28, 2017, plaintiffs filed their original complaint, alleging that Section 32310, as

7  amended by Proposition 63, violates their rights under the Second Amendment, Takings Clause,

8  and Due Process Clause.  Dkt. No. 1.  On June 5, 2017, plaintiffs filed a First Amended

9  Complaint, adding three plaintiffs as well as a claim that Section 32310, as amended, is

10  unconstitutionally overbroad.  Dkt. No. 7.  Shortly thereafter, plaintiffs filed a motion for a

11  temporary restraining order and preliminary injunction on June 12, which was denied.  Dkt. No.

12  26.  By order dated June 16, 2017, this Court denied plaintiffs' renewed motion for a temporary

13  restraining order based on an insufficient showing of irreparable harm and plaintiffs' delay in

14  filing suit and the fact that plaintiffs' injunction motion would be heard before the ban on

15  possession went into effect on July 1.  Dkt. No 45.

16      By order dated June 29, 2017, this Court denied plaintiffs' renewed motion for preliminary

17  injunction.  In so doing, this Court determined that plaintiffs had failed to show a likelihood of

18  success on the merits of their Second Amendment, takings, vagueness, and overbreadth claims.

19  This Court further held that plaintiffs also did not demonstrate irreparable injury or that the

20  balance of harms or public interest required injunctive relief.  *See Wiese v. Becerra*,

21  __ F. Supp. 3d __, No. CV 2:17-903 WBS KJN, 2017 WL 2813218, at *2-*9 (E.D. Cal. June 29,

22  2017).

23      Plaintiffs' Second Amended Complaint was filed on August 16, 2017.  Dkt. No. 59.

24  _____

25      [4] As this Court has stated, because Proposition 63's amendments were enacted after SB
1446, under California law, they are the governing provisions.  Memorandum and Order re:

26  Motion for Preliminary Injunction, Dkt. No. 52, (Order) at 19 (citing *People v. Bustamante*, 57
Cal. App. 4th 693, 701 (2d Dist. 1997)).  Therefore, references to Section 32310 in this brief are

27  to the statute as amended by Proposition 63.

28

## II.    THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiffs Wiese, Morris, Cowley, Macaston, Flores, Dang, and Federau (Individual Plaintiffs) are residents of California who currently possess LCMs acquired before 2000.  SAC ¶¶ 8-14.[5]  Plaintiffs the Calguns Foundation, Inc., Firearms Policy Coalition, Inc., Firearms Policy Foundation, Inc., and Second Amendment Foundation are non-profit organizations that engage in education and advocacy about gun laws and defend and protect the civil rights of gun owners.  *Id.*, ¶¶ 17-20.  The Individual Plaintiffs bring this action "on behalf of themselves, and as representatives of the class of similar individuals consisting of law-abiding California residents, who are not otherwise prohibited or nor exempt, who lawfully and have legally possessed Large-Capacity Magazines in this state, prior to December 31, 1999." *Id.*, ¶ 21.  Plaintiff Flores is also suing as the trustee of a trust created under California law.  *Id.*, ¶ 22.  Plaintiffs allege that Section 32310's ban on possession of LCMs: (1) violates the Second Amendment; (2) is an unconstitutional taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution; (3) is an unconstitutional taking in violation of article I, section 19 of the California Constitution; (4) is unconstitutionally vague and overbroad; and (5) violates the Equal Protection Clause under the United States and California Constitution.  *Id.*, ¶¶ 56-116.[6]  The SAC seeks declaratory and injunctive relief.  *Id.* at 33-34.

---

[5] The SAC also names plaintiffs Normandy and Nielson, who are residents of Arizona and Utah, respectively, who visit family in California and attend trainings and shooting competitions. SAC, ¶¶ 15-16.

[6] The SAC alleges that the Individual Plaintiffs as well as many members of the Organizational Plaintiffs also "seek to acquire, and would acquire, additional large-capacity magazines . . . but they would be further prevented from doing so by the Large-Capacity Magazine Ban, if it is enforced." SAC, ¶ 23.  However, the SAC only challenges Section 32310(c), as amended by SB 1446 and Proposition 63, which requires the dispossession of LCMs that were acquired before 2000.  *Id.*, ¶ 1.  Regardless of whether Section 32310(c) is enforced, Section 32310(a), which is not here at issue, prohibits, and has prohibited since 2000, the manufacture, importation, sale, purchase, or receipt of LCMs.  § 32310(a).  The SAC is devoid of any allegations regarding Section 32310(a).

6

1

**ARGUMENT**

2

**I.    LEGAL STANDARD**

3        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for

4   failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule

5   12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

6   2001).  Dismissal is proper where there is no cognizable legal theory or there are insufficient facts

7   alleged to support a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d

8   530, 534 (9th Cir. 1984).  To defeat a Rule 12(b)(6) motion, the plaintiff must allege "enough

9   facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S.

10   544, 570 (2007); that is, the plaintiff must allege facts that consist of "more than a sheer

11   possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

12   plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements

13   of a cause of action will not do," instead, the plaintiff must allege facts sufficient to "raise a right

14   to relief above the speculative level." *Twombly*, 550 U.S. at 555.

15        In deciding a Rule 12(b)(6) motion, a court must assume the plaintiff's allegations of fact

16   are true and must draw all reasonable inferences in his or her favor.  *See Daniels-Hall v. National*

17   *Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "the tenet that a court must accept as

18   true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*,

19   556 U.S. at 678.  While the court generally looks only to the face of the complaint and its

20   exhibits, *Van Buskirk*, 284 F.3d at 980, the court may also consider documents that are proper

21   subjects of judicial notice, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir.

22   2009).  A court may dismiss a complaint pursuant to Rule 12(b)(6) without leave to amend if "it

23   is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon*

24   *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

25

**II.    PLAINTIFFS HAVE FAILED TO STATE VIABLE CLAIMS FOR RELIEF AS A MATTER OF
LAW.**

26

27        Plaintiffs bring a facial challenge to Section 32310 on the grounds that it violates the

28   Second Amendment, as well as the Takings, Due Process, and Equal Protection Clauses of United

7

1    States Constitution, and article I, sections 7 and 19 of the California Constitution.[7]  In order to

2    succeed on a facial challenge, plaintiffs "must establish that no set of circumstances exists under

3    which the [regulation or statute] would be valid."  *United States v. Salerno*, 481 U.S. 739, 745

4    (1987); *see also Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 943 (9th Cir. 1992).

5    To support a finding of facial unconstitutionality, voiding a statute or regulation as a whole,

6    plaintiffs cannot prevail by suggesting that in some future hypothetical situation constitutional

7    problems may possibly arise as to the particular *application* of the statute.  Rather, they must

8    show that the statute is unconstitutional in *all* of its applications.  *See Wash. State Grange v.*

9    *Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  Where, as here, a statute has a "plainly

10   legitimate sweep," a facial challenge must fail.  *Id.* at 449 (citation and internal quotations

11   omitted).  Plaintiffs have not met the "heavy burden" to show that the Section 32310 facially

12   violates the Second Amendment, the Takings, Due Process, and Equal Protection Clauses.

13   *Salerno*, 481 U.S at 745.  Indeed, plaintiffs have failed to allege sufficient facts to state a cause of

14   action under these provisions, let alone facts demonstrating a total and fatal conflict with their

15   prohibitions.  *See id.*

16

17

18   ---

     [7] Although plaintiffs claim to bring both a facial and an as-applied challenge to Section
     32310, *see* SAC ¶ 1, their claims are facial because the relief that they seek in permanently
     enjoining the statute would benefit other LCM owners.  *See Ctr. for Competitive Politics v.*
19   *Harris*, 784 F.3d 1307, 1314 (9th Cir. 2015) (noting that plaintiff's First Amendment claim was
     facial, and not as-applied, because the relief they seek would "reach[] beyond the particular
20   circumstances of these plaintiffs," and thus plaintiffs must "satisfy [the] standards for a facial
     challenge to the extent of that reach" (citation omitted)), *cert. denied*, 136 S. Ct. 480 (2015).
21   Moreover, the SAC alleges no facts to support an as-applied challenge.  Specifically, there are no
     allegations suggesting that the "law is unconstitutional as applied to [the plaintiffs'] particular . . .
22   activity, even though the law may be capable of valid application to others."  *Foti v. City of*
     *Menlo Park*, 146 F.3d 629, 635 (9th Cir.), *as amended on denial of reh'g* (1998).  The SAC
23   contains no allegations that Section 32310 has been applied or enforced against plaintiffs at all,
     (nor could there be as it has been enjoined and is not in effect) let alone in an impermissible or
24   selective manner.  *See Hoye v. City of Oakland*, 653 F.3d 835, 854-56 (9th Cir. 2011) (stating that
     an as-applied challenge challenges a specific application of a facially valid statute to an individual
25   or group of individuals or the future application of the statute in the allegedly impermissible
     manner in which it has been applied in the past).  To the extent that allegations in the SAC are
26   specific to individual plaintiffs, *see, e.g.*, SAC ¶ 88 (stating that plaintiff Flores possesses a rare
     LCM for himself and on behalf of a family trust), these allegations are derivative of plaintiffs'
27   facial challenge and fail for the same reasons discussed herein.

28

**A.    Plaintiffs' Second Amendment Claim Fails.**

Count I of the SAC alleges that Section 32310 violates the Second Amendment.  SAC ¶¶ 56-69.  The Supreme Court held, in *District of Columbia v. Heller*, 554 U.S. 570, 622 (2008), that the Second Amendment confers an individual right to keep and bear arms.  The Court stated that the Second Amendment has "the core lawful purpose of self-defense" and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 630, 635.  This right is incorporated against the states through the Fourteenth Amendment.  *McDonald v. City of Chi.*, 561 U.S. 742, 790-91 (2010) (plurality).

The Second Amendment, however, does not provide "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. Rather, the right to keep and bear arms, like other constitutional rights, is limited in scope and subject to regulation.  *Id*. at 626-28.  Thus, the Supreme Court has emphasized that the Second Amendment "does not imperil every law regulating firearms" and that "state and local experimentation with reasonable firearms regulation will continue under the Second Amendment." *McDonald*, 561 U.S. at 785; *see also Heller*, 554 U.S. at 626-29.

In evaluating whether the Second Amendment permits such state regulation, the Ninth Circuit employs a two-step inquiry.  *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).  First, the court "asks whether the challenged law burdens conduct protected by the Second Amendment." *Id*.  If not, the challenged law does not implicate the Second Amendment and is valid.  *See id*. at 1138.  If a Second Amendment right is implicated, the court then selects an appropriate level of scrutiny.  *Id*. at 1136.  Even assuming that LCMs, which are unusually dangerous, designed to "kill or disable the enemy," "clearly most useful in military service" and not commonly used for self-defense, *see Kolbe v. Hogan*, 849 F.3d 114, 137 (4th Cir. 2017) (en banc); *Hightower v. City of Boston*, 693 F.3d 61, 66, 71 (1st Cir. 2012), fall within the purview of the Second Amendment, this Court has determined that Section 32310 is subject to intermediate scrutiny.[8]  *See* Order at 6-7; *see also Fyock*, 779 F.3d at 999 (Evaluating challenge to LCM ban

_____

[8] Plaintiffs' bald assertion that strict scrutiny should apply to Section 32310, *see* SAC, ¶ 68, is incorrect.  Not only has the Ninth Circuit determined that intermediate scrutiny is the

(continued…)

9

1   and stating "Consistent with the reasoning of our sister circuit, we also agree that intermediate

2   scrutiny is appropriate."); *Kolbe*, 849 F.3d at 138 (applying intermediate scrutiny to LCM ban);

3   *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 260-61 (2d Cir. 2015), *cert denied*

4   *sub nom*, *Shew v. Malloy*, 136 S. Ct. 2486 (2016) (*NYSRPA*) (same); *Friedman v. City of*

5   *Highland Park*, 784 F.3d 406, 410 (7th Cir.), *cert. denied*, 136 S. Ct. 447 (2015) (same); *Heller II*,

6   670 F.3d at 1264 (same).  It has further held that Section 32310 satisfies intermediate scrutiny, as

7   "California's stated interests of reducing the incidence and harm of mass shootings and easing

8   enforcement of the state's existing ban 'would be achieved less effectively absent the regulation,'

9   and thus there is a reasonable fit between [Section 32310] and California's important objectives."

10   Order at 10 (citing *Fyock*, 779 F.3d at 1000).  There are no allegations in the SAC that address

11   and/or undermine this holding.

12       To the contrary, many of the allegations in the SAC are unsupported legal conclusions, *see*

13   SAC, ¶¶ 43, 47, 54, 65, that do not satisfy plaintiffs' pleading burden and are insufficient to state

14   a cause of action.  *See Iqbal*, 556 U.S. at 680-81; *Twombly*, 550 U.S. at 557.  The remainder of

15   plaintiffs' Second Amendment allegations are directed solely at the first part of the two-step

16   inquiry, that is, whether LCMs burden conduct protected by the Second Amendment.  Plaintiffs

17   allege that: (1) LCMs "are an intrinsic part of all semi-automatic firearms, which were designed,

18   developed, produced and sold in large quantities starting in the early 20th Century and continuing

19   through today," SAC, ¶ 32; (2) many millions of magazines have existed lawfully within the

20   United States and are used by Americans for self-defense, competition, training, and sport, *id*., ¶¶

21   33, 46-47, 49, 57; (3) LCMs are the sorts of "lawful weapons in common use that law-abiding

22   people possess at home for lawful purposes – and exactly what they would bring to service in

23   militia duty should such cause be necessary," *id*., ¶ 46; (4) the need for and usefulness of LCMs

24   for self-defense is demonstrated by the fact that civilian law enforcement officers and armored

_____

26   (…continued)
    applicable standard, *see Fyock*, 779 F.3d at 999, but, as this Court has noted, "intermediate

27   scrutiny is appropriate because "the prohibition of . . . large capacity magazines does not
    effectively disarm individuals or substantially affect their ability to defend themselves."  Order at

28   6 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1262 (D.C. Cir. 2011) (*Heller II*)).

1  vehicle companies and their employees can use LCMs; *id.*, ¶¶ 53, 58; (5) criminals will still use

2  LCMs and thus law-abiding citizens need them for self-defense, *id.*; and (6) any person who owns

3  firearms with LCMs as the only feeding device would have to acquire reduced capacity

4  magazines, the financial burden of which "disarms the owner of the use of such firearms until a

5  suitable  replacement magazine can be found," *id.*, ¶ 63.  Even accepting these allegations as true,

6  all this suggests is that is that Section 32310 is subject to intermediate scrutiny under the Second

7  Amendment, which, as this Court has determined, it passes.  *See* Order at 6 (concluding that

8  intermediate scrutiny applies because the Section 32310 "does not affect the ability of law-

9  abiding citizens to possess the 'quintessential self-defense weapon'—the handgun.  Rather, [it]

10  restricts possession of only a subset of magazines that are over a certain capacity." (quoting

11  *Fyock*, 779 F.3d at 999)).

12       The SAC does not, and cannot, allege that Section 32310 does not advance the State's

13  compelling interests in protecting civilians and law enforcement from gun violence and protecting

14  the public safety.  Section 32310 furthers these interests by eliminating a particularly lethal subset

15  of magazines, LCMs, that are designed to cause greater fatalities and injuries and are

16  disproportionately used in mass shootings and the killing of law enforcement officers.  Order

17  at 8-11; *Fyock*, 779 F.3d at 1000.  In addition to common sense, which suggests that the most

18  effective way to eliminate the threat of death, injury, and destruction caused by LCMs is to

19  prohibit their possession, the evidence shows that banning possession of LCMs has the greatest

20  potential to "prevent and limit shootings in the state over the long run."  *NYSRPA*, 804 F.3d

21  at 264; *see also* Order at 9-10.  Banning possession of grandfathered LCMs also eliminates

22  obstacles to enforcement of the existing ban on the purchase, sale, transfer, or importation of

23  LCMs.  Order at 9-10.  Accordingly, "there is a reasonable fit between the ban and California's

24  important objectives," Order 10-11, and thus Section 32310 does not violate the Second

25  Amendment.  *See NYSPRA*, 804 F.3d at 263-64; *Friedman*, 784 F.3d at 411-12; *Heller II*, 670

26  F.3d at 1260-64; *S.F. Veteran Police Officers Ass'n v. City of S.F.*, 18 F. Supp. 3d 997, 1002-06

27  (N.D. Cal. 2014).

28

1    Because Section 32310 survives intermediate scrutiny and is constitutional, plaintiffs'

2    Second Amendment claim fails as a matter of law.  The Court should thus dismiss Count I of the

3    SAC.  *See Mahoney v. Sessions*, No. 14-35970, 2017 WL 4126943, at *7 (9th Cir. Sept. 19, 2017)

4    (affirming dismissal of Second Amendment claim where policy "survives intermediate scrutiny

5    and is, therefore, constitutional under the Second Amendment"); *Wilson v. Lynch*, 835 F.3d 1083,

6    1094-95 (9th Cir. 2016) (same); *Hall v. Garcia*, No. C 10-03799 RS, 2011 WL 995933, at *5

7    (N.D. Cal. Mar. 17, 2011) (dismissing Second Amendment claim where official action "bears a

8    substantial relationship to important objective.").

9        **B.    Plaintiffs' Takings Clause Claims Fail.**

10       Plaintiffs also fail to allege a plausible takings claim under either the United States or the

11   California Constitution.  The Takings Clause of the Fifth Amendment, made applicable to the

12   states through the Fourteenth Amendment, provides that private property shall not "be taken for

13   public use, without just compensation."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536

14   (2005).  Its purpose is to prohibit "[g]overnment from forcing some people alone to bear public

15   burdens which, in all fairness and justice, should be borne by the public as a whole."  *Penn*

16   *Central Transp. Co. v. City of N.Y.*, 438 U.S. 104, 123 (1978) (internal quotations and citations

17   omitted).  Takings claims are divided into two classes: physical and regulatory takings.  A

18   physical taking occurs when the government physically invades or takes title to property either

19   directly or by authorizing others to do so.  *Loretto v. Teleprompter Manhattan CATV Corp.*, 458

20   U.S. 419, 426 (1982).  In contrast to a physical taking, a regulatory taking occurs where

21   "government regulation of private property [is] so onerous that its effect is tantamount to a direct

22   appropriation or ouster."  *Lingle*, 544 U.S. at 537.  In the context of real property, government

23   regulation that "completely deprives an owner of all economically beneficial use of her property"

24   is generally deemed to be a taking compensable under the Fifth Amendment.  *Id.* at 528.

25       The California Constitution provides: "Private property may be taken or damaged for a

26   public use and only when just compensation, ascertained by a jury unless waived has first been

27   paid to, or into court for, the owner."  Cal. Const. art. I, § 19(a).  The California Supreme Court

28   has acknowledged the "broader protections granted landowners by the addition of 'or damaged'

                                              12

1   to the language of our state's compensation clause," *HFH Ltd. v. Superior Court*, 15 Cal. 3d 508,

2   517-18 (1975), but has generally construed the federal and state takings clauses "congruently,"

3   *San Remo Hotel, L.P. v. City & Cnty. of S.F.*, 27 Cal. 4th 643, 664 (2002) (collecting cases).[9]

4        Physical and regulatory takings are further divided into facial and as-applied challenges.

5   *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993).  In a facial takings

6   challenge, a party attacking a statute must demonstrate that its "mere enactment" constitutes a

7   taking and deprives the owner of all viable use of the property as issue.  *Tahoe-Sierra*

8   *Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 318 (2002).  The

9   Supreme Court has stated that facial takings challenges "face an 'uphill battle' since it is difficult

10  to demonstrate that 'mere enactment' of a piece of legislation 'deprived [the owner] of

11  economically viable use of [his] property."  *Suitum v. Tahoe Regional Planning Agency*, 520 U.S.

12  725, 736 n.10 (1997) (internal and external citations omitted).[10]  Plaintiffs have failed to allege

13  facts sufficient to make this showing.

14        **1.    Section 32310 Is Not a Physical Taking.**

15        Insofar as plaintiffs have attempted to allege physical taking claim, they have not

16  succeeded.  The SAC alleges that because the options set forth in Section 32310(d) to store an

17  LCM out of state or sell it to a licensed dealer are "illusory," the only way to dispose of an LCM

18  is to "surrender" it to law enforcement for destruction.  SAC ¶¶ 61, 97-98.  It further alleges that

19  to the extent that Section 32310 allows an LCM owner to modify an LCM to bring it into

20  compliance with the law, this "destroys the functionality" of an LCM and amounts to both a

21

22  _____

        [9] The California Supreme Court has explained that the addition in 1879 of the term "or
23  damaged" to article I, section 19 "was not intended to expand the scope of the constitutional
    compensation provision beyond the ambit of eminent domain and public improvements.  It
24  appears, instead, that the words 'or damaged' were added to clarify that the government was
    obligated to pay just compensation for property damaged in connection with the construction of
25  public improvements, even if the government had not physically invaded the damaged property."
    *Customer Co. v. City of Sacramento*, 10 Cal. 4th 368, 379 (1995).  Section 32310 thus does not
26  "damage" property within the meaning of the California Constitution.

        [10] An as-applied takings challenge "involves a claim that the particular impact of a
27  government action on a specific piece of property requires the payment of just compensation."
    *Levald*, 998 F.2d at 686 (quoting *Keystone Bituminous Coal Ass'n v. Benedictis*, 480 U.S. 470,
28  494 (1987)).

1   physical invasion of and damage to property requiring compensation. *Id.*, ¶ 79. As a threshold

2   matter, these allegations are not supported by fact or logic and do not "state a claim to relief that

3   is plausible on its face." *Twombly*, 550 U.S. at 570. Further, they do not establish that Section

4   32310 is a physical taking.

5         In a physical taking, the government exercises its eminent domain power to take private

6   property for "public use." S*ee Lingle*, 544 U.S. at 536; *Chevron USA, Inc. v. Cayetano*, 224 F.3d

7   1030, 1034 (9th Cir. 2000). By contrast, where, as here, the government acts pursuant to its

8   police power to protect the safety, health, and general welfare of the public, a prohibition on

9   possession of property declared to be a public nuisance is not a physical taking. *See Chi., B. & Q.*

10   *R. Co. v. Illinois*, 200 U.S. 561, 593-594 (1906) ("It has always been held that the legislature may

11   make police regulations, although they may interfere with the full enjoyment of private property

12   and though no compensation is given."); *Akins v. United States*, 82 Fed. Cl. 619, 622 (2008)

13   ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the

14   context of the Takings Clause."); *see also Everard's Breweries v. Day*, 265 U.S. 545, 563 (1924);

15   *Mugler v. Kansas*, 123 U.S. 623, 668-69 (1887).

16         Recognizing this distinction, a number of courts have rejected Takings Clause challenges to

17   laws banning the possession of dangerous weapons. *See Akins*, 82 Fed. Cl. at 623-24 (restrictions

18   on sale and possession of machine guns not a taking); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C.

19   Ct. App. 1979) (ban on machine guns not a taking); *cf. Gun South, Inc. v. Brady*, 877 F.2d 858,

20   869 (11th Cir. 1989) (suspension on importation of assault weapons not a taking); *cf. Burns v.*

21   *Mukasey*, No. CIVS090497MCECMK, 2009 WL 3756489, at *5 (E.D. Cal. Nov. 6, 2009), *report*

22   *and recommendation adopted*, No. 209CV00497MCECMK, 2010 WL 580187 (E.D. Cal.

23   Feb. 12, 2010) (stating that because the firearm seized was "not taken in order to be put to public

24   use," "the Takings Clause simply does not apply").

25         Unlike in cases where the government has physically occupied or appropriated private

26   property for its own use (either directly or through agents), *see Lingle*, 544 U.S. at 536; *Horne v.*

27   *Dept. of Agric.*, 135 S. Ct. 2419, 2427-29 (2015), Section 32310 is an exercise of the State's

28   police power to protect the public by eliminating the dangers posed by LCMs. Regardless of how

1    plaintiffs choose to divest themselves of an LCM to comply with Section 32310, the purpose of

2    the statute is to remove LCMs from circulation, not to transfer title to the government or an agent

3    of the government for use in service of the public good.  Accordingly, it does not amount to a

4    physical taking.

5              **2.      Section 32310 Is Not a Regulatory Taking.**

6              The SAC also fails to allege a plausible claim that Section 32310 is a regulatory taking.

7    The SAC sets forth conclusory allegations that Section 32310 "would completely deprive the

8    owners of all economically beneficial uses of their lawfully-owned property, and therefore,

9    constitutes a regulatory taking."  SAC ¶ 77.  As a threshold matter, the rule that the deprivation of

10   all economically beneficial use of property constitutes a taking has not been applied outside of the

11   land use context and it is not clear that it is applicable here.  *See Lucas v. South Carolina Coastal*

12   *Council*, 505 U.S. 1003, 1027 (1992) ("[I]n the case of personal property, by reason of the State's

13   traditionally high degree of control over commercial dealings, [one] out to be aware of the

14   possibility that new regulation might even render his property economically worthless (at least if

15   the property's only economically productive use is sale or manufacture for sale).).

16             Moreover, and regardless, plaintiffs' claim is belied by the face of the statute.  As plaintiffs

17   acknowledge, until July 1, 2017, Section 32310 provides that LCM owners can protect or realize

18   the economic value of their LCMs by storing them out-of-state or selling them to a licensed

19   firearms dealer.  *See* § 32310(d); SAC ¶¶ 61, 75, 96-98.  It is also possible to modify an LCM so

20   it can only accept a maximum of ten rounds.  *See* § 32425(a) (exempting from Section 32310 the

21   giving of an LCM to "a gunsmith, for the purposes of maintenance, repair, or modification of that

22   large-capacity magazine").  Accordingly, and despite plaintiffs' unsupported allegations that

23   these methods are "illusory," *see, e.g.*, SAC, ¶ 61, Section 32310, on its face, does not deprive

24   plaintiffs of all economically beneficial uses of their property and thus plaintiffs cannot state a

25   facial regulatory takings claim.  *See Lucas*, 505 U.S. at 1019; *Chevron USA, Inc.*, 224 F.3d at

26   1041-42.

27

28

1    Plaintiffs also have not sufficiently alleged an as-applied or "partial regulatory" taking

2    challenge. Even assuming that any such claim is ripe,[11] the SAC does not allege facts

3    demonstrating that Section 32310 is a taking in light of: (1) its economic impact on plaintiffs;

4    (2) the extent to which Section 32310 interferes with "distinct investment-backed expectations";

5    and (3) the "character of the government action." *Penn Central*, 438 U.S. at 124. The SAC

6    alleges that "many of California's gun owners, including some members and constituents of the

7    organization plaintiffs, own many magazines, worth substantial amounts of value, for many

8    different types of firearms" and that the financial impact of the loss of "these intrinsic firearm

9    parts would be substantial." SAC, ¶ 38. It also alleges that plaintiff Flores possesses LCMs that,

10    as part of an antique pistol, have "substantial historical and financial value, and [are]

11    irreplaceable." *Id.*, ¶ 12. Even overlooking that plaintiffs cannot meaningfully explain why they

12    cannot protect the value of their LCMs by storing them out-of-state, selling, or modifying them,

13    in accordance with Section 32310, the SAC does not allege either a sufficient loss of value from

14    Section 32310 nor any meaningful interference with distinct investment-backed expectations in

15    LCMs that were acquired decades ago. *See Penn Central*, 438 U.S. at 123; *MHC Fin. Ltd. P'ship*

16    *v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (81 percent value loss "not . . .

17    sufficient . . . to constitute a taking"); *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177,

18    1195 (Fed. Cir. 2004) (judicial insistence on "severe economic deprivation" stems from nature of

19    regulatory taking claim as arguing that regulatory interference is so severe as to equate to

20    condemnation or appropriation); *cf. Penn. Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922)

21    ("Government hardly could go on if to some extent values incident to property could not be

22    diminished without paying for every such change in the general law."); *Hotel & Motel Ass'n of*

23    *Oakland v. City of Oakland*, 344 F.3d 959, 967 (9th Cir. 2003) ("public interest in preventing

24

25    _____

      [11] Even if plaintiffs are not required to exhaust administrative remedies and seek
26    compensation from the State, *see Levald*, 998 F.2d at 686, the statute has not been applied and
      thus there are insufficient facts about the effect of Section 32310 to properly analyze an as-
27    applied claim. A "court cannot determine whether a regulation goes 'too far' [so as to constitute
      a taking] unless it knows how far the regulation goes." *Palazzolo v. Rhode Island*, 533 U.S. 606,
      622 (2001).

28

1   activities similar to public nuisances is a substantial one that rarely results in a taking (citation

2   omitted)).

3       Because Section 32310 does not impose any physical invasion or appropriation of private

4   property for public use and does not facially deprive plaintiffs of all economically beneficial use

5   of their LCMs, it is neither a physical nor a regulatory taking and plaintiffs cannot state a

6   plausible takings claim.  The Court should thus dismiss Count II of the SAC.

7       **C.    Plaintiffs' Vagueness Claim Fails.**

8       Plaintiffs do not and cannot state a vagueness claim.[12]  Their facial vagueness claim is not

9   cognizable because, outside of the First Amendment context, courts "do not consider whether the

10  statute is unconstitutional on its face," but rather "'whether the [statute] is impermissibly vague *in*

11  *the circumstances of this case*.'" *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001)

12  (quoting *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977)) (emphasis in original);

13  *see also Nichols v. Harris*, 17 F. Supp. 3d 989, 1012 (C.D. Cal. 2014) (rejecting plaintiff's facial

14  challenge to California's open carry regulations on vagueness grounds because "facial challenges

15  on the ground of unconstitutional vagueness that do not involve the First Amendment are not

16  cognizable." (citation omitted)), *appeal docketed*, No. 14-55873 (9th Cir. May 29, 2014).

17  Because plaintiffs' challenge can only be facial in scope, and because no facial vagueness

18  challenge is cognizable in this case, plaintiffs cannot state a vagueness claim as a matter of law.

19      Even if a vagueness claim could be made in this case, the LCM ban is not

20  unconstitutionally vague.  There can be no question that Section 32310 reasonably apprises the

21  public as to what conduct is prohibited under the statute.  Section 32310 prohibits the possession

22  of LCMs, and Section 16740 defines LCMs as "any ammunition feeding device with the capacity

23  to accept more than 10 rounds, but shall not be construed to include any of the following: (a) A

24  feeding device that has been permanently altered so that it cannot accommodate more than 10

25  rounds.  (b) A .22 caliber tube ammunition feeding device.  (c) A tubular magazine that is

26  _____

27      [12] Counts III (Vagueness) and IV (Vagueness and Overbreadth) both challenge the LCM ban on vagueness grounds, albeit with slightly different allegations.  The vagueness allegations in both counts will be discussed together.

28

17

1    contained in a lever-action firearm." § 16740.  There is nothing unconstitutionally vague about

2    the regulatory scope of the LCM ban.  *See Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d

3    1141, 1151 (9th Cir. 2001).

4        Despite the clear scope of the LCM ban, the SAC alleges that it is "hopelessly vague and

5    ambiguous."  SAC, ¶ 3.  Plaintiffs' vagueness challenge rests in large part on the chaptering of

6    two parallel versions of Section 32406, which sets forth certain exemptions to the LCM ban.  *Id.*,

7    ¶¶ 83-89, 100-01.[13]  Plaintiffs allege that there is some confusion as to whether SB 1446 pre-

8    amended Proposition 63 with respect to the exceptions to the LCM ban because Section 32406 (as

9    amended by SB 1446) contains several exemptions that are omitted from Section 32406 (as

10   amended by Proposition 63), including, *inter alia*, the exemptions for trustees and persons in

11   possession of a pre-2000 LCM "if no magazine that holds 10 or fewer rounds of ammunition is

12   compatible with that firearm and the person possess the [LCM] solely for use with that firearm."

13   SAC, ¶¶ 85-89 (citing § 32406(e), (f)).  But, as this Court has noted, Order at 19, even if there

14   were some ambiguity as to which version of Section 32406 is operative—and, as discussed below,

15   there is not—Section 32406 (or the LCM ban as a whole) would not be rendered void-for-

16   vagueness merely because a court may be required to determine which version of the statute

17   applies in a given case.  *See Karlin v. Foust*, 188 F.3d 446, 469 (7th Cir. 1999) ("[W]hile

18   plaintiffs are correct that the two statutes operate to impose conflicting standards on a physician's

19   decision to perform an emergency abortion on a minor, this conflict does not render AB 441 void

20   for vagueness. . . .  Instead, the conflicting provisions in the two statutes concerning emergency

21   abortions for minors creates a question of implied repeal under Wisconsin law.").

22       Regardless, and as this Court already has determined, there is no ambiguity because the

23   amendments of Proposition 63, enacted *after* SB 1446, take precedence over those contained in

24   SB 1446.  *See* Order at 19; *Bustamante*, 57 Cal. App. 4th at 701 ("Where two laws on the same

25       [13] Plaintiffs also allege that the LCM ban is unconstitutionally vague due to some
26   purported ambiguity concerning the "options for disposal" of LCMs and the alleged
     impracticality of some of those options.  *See, e.g.*, SAC, ¶¶ 90-91, 97.  Any alleged impracticality
27   of compliance, however, would not render the LCM vague, and any vagueness on the margins of
     the statute would not render the statue as a whole vague.  *See Cal. Teachers Ass'n*, 271 F.3d at
     1151.
28

1   subject, passed at different times, are inconsistent with each other, the later act prevails."

2   (citations omitted)).  Prior to the passage of Proposition 63 by California voters, the Official

3   Voter Information Guide explained that Proposition 63 would modify certain exceptions to the

4   LCM ban contained in SB 1446:

5           Beginning July 2017, recently enacted law [SB 1446] will prohibit most of these
            individuals [who acquired their LCMs before 2000] from possessing these magazines.
6           Individuals who do not comply are guilty of an infraction.  However, there are various
            individuals who will be exempt from this requirement—such as an individual who owns a
7           firearm (obtained before 2000) *that can only be used with a large-capacity magazine*.
            Proposition 63 *eliminates several of these exemptions*, as well as increases the maximum
8           penalty for possessing large-capacity magazines.

9

10  (Cal. Secretary of State, Official Voter Information Guide, at 87, attached as Exhibit C to the

11  accompanying RJN, *also available at* http://vig.cdn.sos.ca.gov/2016/general/en/pdf/complete-

12  vig.pdf.)[14]

13          In an attempt to support their vagueness allegations, plaintiffs attach as Exhibit A to the

14  SAC the Department of Justice's Finding of Emergency, filed with the Office of Administrative

15  Law ("OAL") in connection with proposed LCM regulations that were later withdrawn on

16  December 29, 2016.[15]  The Finding of Emergency mentions that, "[i]n anticipation of

17  [Proposition 63's] passages [sic], the Legislature pre-amended Proposition 63 with the passage of

18  Senate Bill 1446."  SAC, Ex. A, at 1.  The Finding of Emergency, however, *does not* state that

19  SB 1446 pre-amended Proposition 63 in any respect that is material to this litigation.  When the

20  Legislature intended to pre-amend Proposition 63, it stated so explicitly in the statute, as was the

21  case when the Legislature passed Senate Bill 1235 (SB 1235)—on the same day as SB 1446—to

22  pre-amend Proposition 63's ammunition sale requirements.  *See* Cal. Stats. 2016, ch. 55

23  (SB 1235) ("This bill would, if [Proposition 63] is enacted by the voters at the November 8, 2016,

24

25          [14] The Court may take judicial notice of the Official Voter Information Guide, as it is an
    official government document obtained from a source "whose accuracy cannot reasonably be
26  questioned."  Fed. R. Evid. 201.

27          [15] OAL, Amended Notice of Withdrawal (Dec. 29, 2016), *available at*
    https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/regs/lcmp-withdrawal.pdf.

28

1   statewide general election, amend the act . . . .).  In contrast to SB 1235, neither the text of SB

2   1446 nor its legislative history disclose any intention to pre-amend Proposition 63.

3        For these reasons, Plaintiffs have failed to state a vagueness challenge to the LCM ban and

4   the Court should dismiss Counts III and IV of the SAC.

5        **D.    Plaintiffs' Overbreadth Claim Fails.**

6        Plaintiffs' overbreadth claim also fails.  As a threshold matter, the overbreadth doctrine

7   simply does not apply outside of the First Amendment context and, thus, is inapplicable in this

8   case.  *See, e.g.*, Order at 22; *Salerno*, 481 U.S. at 745 ("[W]e have not recognized an

9   'overbreadth' doctrine outside the limited context of the First Amendment." (citation omitted));

10  *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 101 (2d Cir. 2012) ("Overbreadth challenges are

11  generally limited to the First Amendment context." (citing *Salerno*, 481 U.S. at 745)); *United*

12  *States v. Chester*, 628 F.3d 673, 688 (4th Cir. 2010) ("[I]mporting the over-breadth doctrine . . .

13  into the Second Amendment context would be inappropriate.").[16]  Because they have not alleged

14  a First Amendment challenge to the law, overbreadth doctrine does not apply, and plaintiffs

15  cannot state a claim that the LCM ban is unconstitutionally overbroad.

16       Even if the doctrine were applicable in this case, plaintiffs' overbreadth claim would be

17  redundant of their Second Amendment claim.  A statute is unconstitutionally overbroad only

18  when it infringes upon or would have the tendency to chill constitutionally protected activity.

19  *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984) ("There

20  must be a realistic danger that the statute itself will significantly compromise recognized First

21  Amendment protections . . . for it to be facially challenged on overbreadth grounds.").  Plaintiffs

22  contend that Section 32310 is overbroad because "its provisions capture a substantial amount of

23  constitutionally-protected activity, the prohibition of which does not advance the stated

24  justification for the ban, and the law is not readily susceptible to a limiting construction that

25  would render it constitutional."  SAC, ¶ 4; *see also id.*, ¶ 103 (alleging that "the ban sweeps up a

26  _____

27       [16] Even in the First Amendment context, overbreadth doctrine has been recognized as "strong medicine" and is employed by the courts "with hesitation."  *New York v. Ferber*, 458 U.S. 747, 769 (1982).

28

1    substantial amount of constitutionally-protected conduct under the Second Amendment").

2    Plaintiffs' overbreadth claim is contingent on—and duplicative of—their Second Amendment

3    claim and does not provide separate or independent grounds for relief.  *See Chaudhry v. City of*

4    *Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) (holding that claim is not duplicative and

5    subject to dismissal if it would entitle plaintiff to additional relief unavailable in connection with

6    other claims).

7        Accordingly, plaintiffs cannot state an overbreadth claim as a matter of law in this case.

8    The Court should thus dismiss Count IV of the SAC.

9        **E.    Plaintiffs' Equal Protection Clause Claim Fails.**

10        Plaintiffs' barely-elaborated equal protection claim is particularly inadequate.  The Equal

11    Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any

12    person within its jurisdiction the equal protection of the laws,' which is essentially a direction that

13    all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*,

14    473 U.S. 432, 439 (1985).  Legislative provisions that arbitrarily or irrationally create discrete

15    classes cannot withstand constitutional scrutiny under the Equal Protection Clause.  *Romer v.*

16    *Evans*, 517 U.S. 620, 623 (1996).  However, courts must balance this principle with the "practical

17    necessity that most legislation classifies for one purpose or another, with resulting disadvantage

18    to various groups or persons."  *Id*. at 631 (citations omitted).  In an attempt to reconcile the

19    promise of equal protection with the reality of lawmaking, courts apply the most searching

20    constitutional scrutiny to those laws that burden a fundamental right or target a suspect class, such

21    as those based on race, national origin, or religion.  *Id*.  With respect to protected classifications,

22    the government is required to demonstrate that the classification is narrowly tailored to further

23    compelling government interests.  *See Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).  Laws that

24    do not burden a protected class or infringe on a constitutionally protected fundamental right are

25    subject to rational basis review.  *Romer*, 517 U.S. at 631.  Under the deferential rational basis test,

26    statutes are generally "presumed valid" and upheld if the classification drawn by the statute is

27    rationally related to a legitimate state interest.  *Fields v. Legacy Health Sys*., 413 F.3d 943, 955

28

21

1   (9th Cir. 2005).  Such statutes must be "wholly irrational" to violate the Equal Protection Clause.

2   *Id.*[17]

3       The SAC alleges that Penal Code section 32445 provides an exception to Section 32310 for

4   LCMs that are loaned and used "solely as a prop for a motion picture, television, or video

5   production."  SAC, ¶ 110.  The SAC alleges this exception, which favors a "selected few

6   politically favored citizens" is discriminatory and violates equal protection.  *Id.*, ¶¶ 110-115.

7   Because Section 32310 does not implicate a suspect class of persons or infringe on a group's

8   fundamental rights with no valid justification,[18] plaintiffs' equal protection claim receives

9   rational-basis review.  *See Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002).

10  Challenged legislation survives rational basis review as long as, in enacting legislation, the

11  legislature is acting in pursuit of a permissible government interest that bears a rational

12  relationship to the means chosen to achieve that interest.  *Heller v. Doe*, 509 U.S. 312, 319

13  (1993).  Under rational basis review, when legislative judgment is called into question on equal

14  protection grounds and the issue is debatable, the decision of the legislature must be upheld if

15  "any state of facts either known or which could reasonably be assumed affords support for it."

16  *United States v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938).  "[T]he burden is on the one

17  attacking the legislative arrangement to negative every conceivable basis which might support it."

18  *Heller*, 509 U.S. at 319 (internal quotation marks omitted).

19

20      [17] Plaintiffs also allege that Section 32310 violates the Equal Protection Clause of the
    California Constitution, Cal. Const. art I, § 7.  The California Constitutional provisions granting
21  equal protection have been found " 'substantially the equivalent' of the equal protection clause of
    the Fourteenth Amendment to the federal Constitution."  *Serrano v. Priest*, 18 Cal. 3d 728, 763,
22  (Cal. 1976) s*upplemented*, 20 Cal. 3d 25 (Cal. 1977); *Walgreen Co. v. City & County of San
    Francisco*, 185 Cal. App. 4th 424, 434 n.7 (2010).

23      [18] To the extent that plaintiffs allege that Section 32310 impinges on the fundamental right
    to bear arms, these allegations are duplicative of plaintiffs' Second Amendment allegations and
24  should be rejected.  *See Kwong v. Bloomberg*, 723 F.3d 160, 170 n.19 (2d Cir. 2013) ("Like every
    Circuit to have addressed this issue, we simply conclude that plaintiffs should not be allowed to
25  use the Equal Protection Clause 'to obtain review under a more stringent standard' than the
    standard applicable to their Second Amendment claim." (quoting *Woollard v. Gallagher*, 712
26  F.3d 865, 873 n.4 (4th Cir. 2013))); *Flanagan v. Harris*, No. LACV1606164JAKASX, 2017 WL
    729788, at *5 (C.D. Cal. Feb. 23, 2017) ("An Equal Protection claim brought under the
27  Fourteenth Amendment that is the same as one brought simultaneously under a different
    constitutional provision cannot provide an independent basis for relief.").

28

1    The SAC does not allege that there is no conceivable basis for allowing individuals, having

2    obtained a permit, to use an empty LCM as a prop for a motion picture, television, or video

3    production while prohibiting people from possessing and using LCMs in generally.  The SAC

4    also does not allege that there is no rational relationship between Section 32310 and the

5    government's compelling interests in protecting the public safety and reducing the lethality and

6    incidence of mass shootings.  Moreover, given that this Court has found that Section 32310

7    survives intermediate scrutiny, Order at 9-11, any such claim must fail.  The Court should thus

8    dismiss Count V of the SAC.

9         **F.     To the Extent the SAC Alleges a Section 1983 Claim, this Claim Fails.**

10        Insofar as plaintiffs are alleging a claim under 42 United States Code section 1983, the SAC

11   does contain various allegations that defendants have acted in violation of section 1983 by

12   violating the Second Amendment and the Takings, Due Process, and Equal Protection Clauses.

13   *See, e.g.*, SAC, ¶ 67.  However, because plaintiffs have failed to adequately allege any

14   constitutional violation for the reasons set forth above, any section 1983 claim should be

15   dismissed.

16                                  **CONCLUSION**

17        For the foregoing reasons, defendants respectfully request that the Court dismiss the Second

18   Amended Complaint in its entirety with prejudice and without leave to amend.

19

20   Dated:  September 27, 2017                    Respectfully Submitted,

21                                                XAVIER BECERRA
                                                 Attorney General of California
22                                                TAMAR PACHTER
                                                 Supervising Deputy Attorney General
23                                                JOHN D. ECHEVERRIA
                                                 Deputy Attorney General

24                                                */s/ Alexandra Robert Gordon*

25                                                ALEXANDRA ROBERT GORDON
                                                 Deputy Attorney General
26                                                *Attorneys for Defendants*

27

28

                                         23