1   XAVIER BECERRA, State Bar No. 118517
    Attorney General of California
2   TAMAR PACHTER, State Bar No. 146083
    Supervising Deputy Attorney General
3   JOHN D. ECHEVERRIA, State Bar No. 268843
    Deputy Attorney General
4   ALEXANDRA ROBERT GORDON, State Bar No.
    207650
5   Deputy Attorney General
    455 Golden Gate Avenue, Suite 11000
6   San Francisco, CA  94102-7004
    Telephone: (415) 703-5509
7   Fax: (415) 703-5480
    E-mail:  Alexandra.RobertGordon@doj.ca.gov
8   *Attorneys for Defendants*

9                          IN THE UNITED STATES DISTRICT COURT

10                         FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14   **WILLIAM WIESE, et al.,**                    2:17-cv-00903-WBS-KJN

15                                Plaintiff,    **DEFENDANTS' REPLY IN SUPPORT OF**
                                               **MOTION TO DISMISS SECOND**
16                     v.                       **AMENDED COMPLAINT PURSUANT TO**
                                               **FEDERAL RULE OF CIVIL**
17                                             **PROCEDURE 12(b)(6)**
     **XAVIER BECERRA, et al.,**
18                                             Date:          February 5, 2018
                                 Defendant.    Time:          1:30 p.m.
19                                             Courtroom:     5, 14th Floor
                                               Judge:         Hon. William B. Shubb
20                                             Trial Date:    None Set
                                               Action Filed:  April 28, 2017
21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

    I.     Plaintiffs Have Not Stated a Claim for Relief Under the Second
          Amendment ....................................................................................................... 1

    II.    Plaintiffs Have Not Stated a Claim for Relief Under the Takings Clause .............. 7

         A.     Section 32310 Is Not a Physical Taking ................................................. 7

         B.     Section 32310 Is Not a Regulatory Taking ............................................. 11

    III.   Plaintiffs Have Failed to State a Plausible Vagueness Claim .............................. 13

    IV.   Plaintiffs Have Failed to State a Plausible Overbreadth Claim ............................ 15

    V.    Plaintiffs Have Not Stated a Claim for Relief Under the Equal Protection
          Clause .............................................................................................................. 16

CONCLUSION .......................................................................................................................... 17

1

**TABLE OF AUTHORITIES**

2

**Page**

3   CASES

4   *Acadia Tech., Inc. v. United States*
5       458 F.3d 1327 (Fed. Cir. 2005)...................................................................9

6   *AmeriSource Corp. v. United States*
        525 F.3d 1149 (Fed. Cir. 2008)................................................................8, 9

7
    *Andrus v. Allard*
8       444 U.S. 51 (1979)...................................................................................12

9   *Ashcroft v. Iqbal*
10      556 U.S. 662 (2009)................................................................................11

11  *Bauer v. Becerra*
        858 F.3d 1216 (9th Cir. 2017)....................................................................4

12
    *Bennis v. Michigan*
13      516 U.S. (1996)......................................................................................8, 9

14  *Cal. Teachers Ass'n v. State Bd. of Educ.*
        271 F.3d 1141 (9th Cir. 2001)..................................................................15
15
    *Chaudhry v. City of Los Angeles*
16      751 F.3d 1096 (9th Cir. 2014)..................................................................15

17  *Chevron USA, Inc. v. Cayetano*
18      224 F.3d 1030 (9th Cir. 2000)..............................................................8, 12

19  *Chi., B. & Q. R. Co. v. Illinois*
        200 U.S. 561 (1906)..................................................................................7
20
    *Customer Co. v. City of Sacramento*
21      10 Cal. 4th 368 (1995) ..............................................................................7

22  *District of Columbia v. Heller*
        554 U.S. 570 (2008)..........................................................................*passim*
23
    *Dore v. United States*
24      97 F. Supp. 239 (Ct. Cl. 1951)................................................................10

25  *Edward P. Stahel & Co. v. United States*
        78 F. Supp. 800 (Ct. Cl. 1948)................................................................10
26
27  *Fyock v. City of Sunnyvale*
28      779 F.3d 991 (9th Cir. 2015)..................................................................3, 4

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*Hall v. Garcia*
 No. C 10-03799 RS, 2011 WL 995933 (N.D. Cal. Mar. 17, 2011) ...........................7

*Heller v. District of Columbia*
 670 F.3d 1244 (D.C. Cir. 2011) ................................................................ *passim*

*Heller v. Doe*
 509 U.S. 312 (1993) .........................................................................................16

*Horne v. Department of Agriculture.*
 135 S. Ct. 2419 (2015) .....................................................................................10

*Hotel & Motel Ass'n of Oakland v. City of Oakland*
 344 F.3d 959 (9th Cir. 2003) .......................................................................12, 13

*Jackson v. City and Cty. of S.F.*
 746 F.3d 953 (9th Cir. 2014) ......................................................................1, 4, 6

*Kachalsky v. Cty. of Westchester*
 701 F.3d 81 (2d Cir. 2012) ................................................................................6

*Kelo v. City of New London*
 125 S. Ct. 2655 (2005) .......................................................................................8

*Kolender v. Lawson*
 461 U.S. 352 (1983) .........................................................................................14

*Lingle v. Chevron U.S.A., Inc.*
 544 U.S. 528 (2005) .....................................................................................7, 12

*Loretto v. Teleprompter Manhattan CATV Corp.*
 458 U.S. 419 (1982) ...........................................................................................7

*Mahoney v. Sessions*
 871 F.3d 873 (9th Cir. 2017) .............................................................................6

*McDonald v. City of Chicago, Ill.*
 561 U.S. 742 (2010) .....................................................................................4, 10

*MHC Fin. Ltd. P'ship v. City of San Rafael*
 714 F.3d 1118 (9th Cir. 2013) .........................................................................12

*Mugler v. Kansas*
 123 U.S. 623 (1887) ...........................................................................................8

Defendants' Reply in Support of Motion to Dismiss (2:17-cv-00903-WBS-KJN)

1

### TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*

4

 700 F.3d 185 (5th Cir. 2012).................................................................5

5

*Nordyke v. King*

6

 644 F.3d 776 (9th Cir. 2011)..........................................................4, 16

7

*Orin v. Barclay*

 272 F.3d 1207 (9th Cir. 2001).............................................................16

8

*Penn Central Transp. Co. v. City of N.Y.*

9

 438 U.S. 104 (1978)..................................................................7, 8, 12

10

*People v. Sakai*

11

 56 Cal. App. 3d 531 (1976)....................................................................9

12

*Peruta v. Cty. of San Diego*

 824 F.3d 919 (9th Cir. 2016)..................................................................5

13

*S.F. Veteran Police Officers v. City & Cty. of San Francisco*

14

 18 F. Supp. 3d 997 (N.D. Cal. 2014) ....................................................3

15

*Silvester v. Harris*

16

 843 F.3d 816 (9th Cir. 2016)..................................................................4

17

*Skilling v. United States*

 561 U.S. 358 (2010)..............................................................................14

18

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*

19

 535 U.S. 302 (2002).................................................................................7

20

*Teixeira v. Cty. of Alameda*

21

 873 F.3d 670 (9th Cir. 2017)..................................................................4

22

*Turner Broad. Sys., Inc. v. FCC*

 512 U.S. 622 (1994)..................................................................................6

23

*Turner Broad. Sys., Inc. v. FCC*

24

 520 U.S. 180 (1997)..................................................................................6

25

*United States v. Chovan*

 735 F.3d 1127 (9th Cir. 2013).......................................................1, 3, 6

26

*United States v. Purdy*

27

 264 F.3d 809 (9th Cir. 2001)................................................................13

28

iv

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*United States v. Riverside Bayview Homes, Inc.*
    474 U.S. 121 (1985) ...................................................................................................12

4

*Wiese v. Becerra*

5
    263 F. Supp. 3d 986 (E.D. Cal. 2017) ................................................................. *passim*

6

*Wilson v. Lynch*

7
    835 F.3d 1083 (9th Cir. 2016) ........................................................................................7

8

STATUTES

9

California Penal Code

10
    § 16740 ..........................................................................................................................15
    § 18010 ..........................................................................................................................11

11
    § 32310 ................................................................................................................. *passim*
    § 32390 ..........................................................................................................................11

12
    § 32406 ..........................................................................................................................14
    § 32425 ..........................................................................................................................11

13
    § 32445 ..........................................................................................................................16

14

California Stats.

15
    2010 c. 711 § 6 ..............................................................................................................16

16

CONSTITUTIONAL PROVISIONS

17

United States Constitution
    First Amendment ...................................................................................................13, 15

18
    Second Amendment ............................................................................................ *passim*

19
    Fifth Amendment ...................................................................................7, 8, 9, 10
    Fourteenth Amendment ................................................................................................16

20

OTHER AUTHORITIES

21

Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683, 697-
    98 (2007) ..........................................................................................................................4

22

23

24

25

26

27

28

v

**INTRODUCTION**

Plaintiffs have not meaningfully addressed, let alone refuted, the arguments raised or the legal authorities cited in defendants' Opening Memorandum of Points and Authorities.  Rather, much like the Second Amended Complaint (SAC), plaintiffs' opposition rests largely on conclusions that have no legal or factual support.  This Court already has held that California Penal Code Section 32310 (Section 32310) furthers the government's important interests in reducing the incidence and lethality of mass shootings, is likely not a taking of property for public use requiring compensation, and is not vague or overbroad.  Plaintiff's equal protection claim is duplicative of their Second Amendment claim and also fails as a matter of law.  Because plaintiffs cannot demonstrate that Section 32310 is unconstitutional, they cannot state a claim upon which relief can be granted.  This Court should thus dismiss the Second Amended Complaint and enter judgment for defendants.

**ARGUMENT**

**I.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF UNDER THE SECOND AMENDMENT**

Plaintiffs Second Amendment claim must fail as a matter of law.  In evaluating state regulation under the Second Amendment, the Ninth Circuit employs a two-step inquiry.  *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).  First, the court "asks whether the challenged law burdens conduct protected by the Second Amendment." *Id*.  If not, the challenged law does not implicate the Second Amendment and is valid.  *See id*. at 1138.  If a Second Amendment right is implicated, the court then selects an appropriate level of scrutiny.  *Id.* at 1136.  To determine the appropriate level of scrutiny, the Ninth Circuit, along with the other circuits, employs a two-step inquiry that considers "(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Jackson v. City and Cty. of S.F.*, 746 F.3d 953, 960-61 (9th Cir. 2014).  Here, and as this Court has held, because "the prohibition of . . . large-capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves," intermediate scrutiny is the appropriate standard.  *Wiese v. Becerra*, 263 F. Supp. 3d 986, 991 (E.D. Cal. 2017) (quoting

1

*Heller v. District of Columbia*, 670 F.3d 1244, 1262 (D.C. Cir. 2011) ("*Heller II*") and *Fyock v. City of Sunnyvale*, 779 F.3d 991, 999 (9th Cir. 2015)); *see also Wiese*, 670 F.3d. at 992 (stating that "virtually every other court to examine large capacity magazine bans has found that intermediate scrutiny is appropriate, assuming these magazines are protected by the Second Amendment.").

As this Court has determined, because there is a "reasonable fit" between Section 32310 and California's "important objectives" of reducing the incidence and harm of mass shootings and easing enforcement of the state's existing law regarding large-capacity magazines (LCMs), the statute passes intermediate scrutiny and is constitutional. *Wiese*, 263 F. Supp. 3d at 993. Plaintiffs point to no allegation in the SAC, and there is none, that addresses or undermines this holding. In fact, Plaintiffs appear to concede that there are no cognizable allegations in the SAC regarding Section 32310's substantial relationship to important government interests. Instead, plaintiffs continue to assert, largely based on a vast over reading of *District of Columbia v. Heller*, 554 U.S. 570 (2008), that simply because LCMs may be protected under the Second Amendment, they are immune from any type of regulation and consequently, that any statute restricting any LCM is unconstitutional. *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 71 (Opposition), 8-20. Plaintiffs devote 18 pages to arguing, largely without reference to the SAC, that under *Heller*: (1) Section 32310 is a categorical ban that is invalid, *id.* at 8-23; (2) at a minimum, this Court must apply strict scrutiny to Section 32310, *id.* at 23-26; and (3) defendants cannot meet their "evidentiary burden" under "*actual* intermediate scrutiny," which does not involve "interest balancing," *id.* at 20-23 (emphasis in the original). This Court, along with many others, already has rejected most of these arguments and they all fail for lack of legal and factual support.

Plaintiffs wrongly contend that because Section 32310 bans an "entire category" of "integral firearm parts" the statute is "forbidden" under *Heller*. Opposition 10, 15, 23-27. What is "forbidden" by *Heller*, however, is (regulation comparable to) a complete ban on possession of handguns, the "the quintessential self-defense weapon." 554 U.S. at 629. Section 32310 does not ban any class of firearms nor does it ban the majority of ammunition magazines that an individual

2

may possess.  Rather, it prohibits a particularly dangerous subset of magazines that have been

illegal for sale in California for more than twenty years.[1]  *Wiese*, 263 F. Supp. 3d at 991–92.

Section 32310, which does not "burden" a Second Amendment right, let alone cause its complete

destruction, bears no resemblance to the ban struck down in *Heller*, and thus is not subject to

categorical invalidation.  *See Fyock*, 779 F.3d at 999 (stating that municipal ban on LCMs "is

simply not as sweeping as the complete handgun ban at issue in *Heller* and does not warrant a

finding that it cannot survive constitutional scrutiny of any level."); *S.F. Veteran Police Officers*

*v. City & Cty. of San Francisco*, 18 F. Supp. 3d 997, 1002 (N.D. Cal. 2014) ("Given that the San

Francisco rule [banning possession of LCMs] is not a total ban on self-defense at home or in

public, there is no occasion whatsoever to apply the "categorical" prohibition advanced by

plaintiffs, even if such a "categorical" test had ever been adopted by our appellate courts (which

has not occurred).").

Plaintiffs' related argument that because LCMs are in "common use," Section 32310

is presumptively invalid is unavailing.  Opposition 12-15.  Plaintiffs appear to conflate the

Supreme Court's discussion in *Heller* of "common use," which bears on whether conduct

receives any protection at all under the Second Amendment, with the level of scrutiny that

applies to regulation of protected conduct.  *See Heller*, 554 U.S. at 628-29.[2]  These are

distinct inquires.  *See Chovan*, 735 F.3d at 1136.  Even overlooking the fact that LCMs

have been unavailable to the vast majority of Californians since 1994 and thus are not likely

to be "commonly used" in this State,[3] the fact that LCMs may be popular or that people feel

---

[1] While plaintiffs assert that Section 32310 renders firearms "inoperable," its support for this seems to be that most firearms require magazines to hold ammunition.  Opposition at 24, 30 & n.10.  There is no allegation, however, that the entire class of firearms needed for self-defense require LCMs, and in fact they do not.  As plaintiffs acknowledge, magazines may be "substituted" for magazines that comply with longstanding state law.  *See* Opposition at 24.  In the rare case where this is not so, individuals may acquire other firearms that do accept 10-round magazines.

[2] Plaintiffs' discussion of the history and tradition of LCMs, Opposition at 10-11, even accepted as true, suffers from the same failing.

[3] Notably, plaintiffs do not allege that individuals who did not possess an LCM before the federal or state ban on LCMs were enacted in 1994 and 2000 respectively, and thus have not had one for decades, have been unable to defend themselves.

3

1   they need them for self-defense do not render LCM bans presumptively impermissible.  *See*

2   *Fyock*, 779 F.3d at 999; *Jackson*, 746 F.3d at 963-64; *cf. Teixeira v. Cty. of Alameda*, 873

3   F.3d 670, 680 (9th Cir. 2017) (en banc) ("[T]he Second Amendment does not elevate

4   convenience and preference over all other considerations.").  Indeed, plaintiffs' view that

5   the subjective determination of (enough) people about what is desirable for self-defense

6   alone is sufficient to insulate weapons and ammunition, no matter how dangerous, from

7   regulation contravenes governing precedent, *see Nordyke v. King*, 644 F.3d 776, 784 (9th

8   Cir. 2011), *on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012), and cannot be reconciled with

9   the assurances of the Supreme Court that "[s]tate and local experimentation with reasonable

10   firearms regulations will continue under the Second Amendment," *McDonald v. City of*

11   *Chicago, Ill.*, 561 U.S. 742, 785 (2010) (plurality); *Heller*, 554 U.S. at 626-29.

12   Plaintiffs are also incorrect that following *Heller*, Section 32310 must, at a minimum, be

13   evaluated under strict scrutiny.  Opposition at 23-26.  As noted above, because Section 32310

14   does not restrict the ability of individuals to use "the quintessential self-defense weapon," for

15   purposes of defending their homes, *Heller*, 554 U.S. at 629, this Court, the Ninth Circuit,[4] and

16   every other court to consider similar bans, has held that intermediate scrutiny applies.  *Wiese*, 263

17   F. Supp. 3d at 992 (citing cases); *see also Bauer v. Becerra*, 858 F.3d 1216, 1222–23 (9th Cir.

18   2017) (noting that the Ninth Circuit has "repeatedly applied intermediate scrutiny in [Second

19   Amendment] cases"); *Silvester v. Harris*, 843 F.3d 816, 823 (9th Cir. 2016) ("There is

20   accordingly near unanimity in the post-*Heller* case law that when considering regulations that fall

21   within the scope of the Second Amendment, intermediate scrutiny is appropriate.").[5]  This

22   [4] Plaintiffs' assertion that because the ban in *Fyock* only involved a municipal ordinance,

23   this Court should not follow the Ninth Circuit's determination that intermediate scrutiny applies
to LCM prohibitions is baseless.  Opposition at 23.  The Ninth Circuit's determination that
intermediate scrutiny was appropriate was not based on the geographic scope of the ordinance.

24   Rather, intermediate scrutiny applied because the complete ban on LCMs, like Section 32310,
was not as sweeping as a complete ban on handguns and "restricts possession of only a subset of

25   magazines that are over a certain capacity.  It does not restrict the possession of magazines in
general," "nor does it restrict the number of magazines that an individual may possess."  *Fyock*,

26   779 F.3d at 999.  The same reasoning applies here.

27   [5] *See also* Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683,
697-98 (2007) ("It simply is not true that every right deemed 'fundamental' triggers strict

28

4

1   conclusion is entirely consistent with *Heller*, in which the Supreme Court emphasized that the

2   Second Amendment right is, by its nature, "not unlimited," and is not a "right to keep and carry

3   any weapon whatsoever in any manner whatsoever and for whatever purpose."  554 U.S. at 626;

4   *Peruta v. Cty. of San Diego*, 824 F.3d 919, 928 (9th Cir. 2016) (en banc) ("The Court in *Heller*

5   was careful to limit the scope of its holding."), *cert. denied sub nom.*, *Peruta v. California*, 137 S.

6   Ct. 1995 (2017). [6]

7        Similarly, plaintiffs erroneously contend that the application of intermediate scrutiny to any

8   regulation of firearms is to engage in the kind of "interest-balancing test" proposed by Justice

9   Breyer in dissent in *Heller*, 554 U.S. at 689 (Breyer, J., dissenting), and rejected by the majority,

10  *id.* at 634.  Opposition at 15-20.  *Heller*, however, identified the "interest-balancing test" as

11  something other than a traditional tier of scrutiny.  554 U.S. at 634.  (Justice Breyer "proposes ...

12  none of the traditionally expressed levels (strict scrutiny, intermediate scrutiny, rational basis),

13  but rather a judge-empowering 'interest-balancing inquiry' ...."); *see also Heller II*, 670 F.3d at

14  1265 (if the Supreme Court had intended to rule out the traditional tiers of scrutiny, "then it surely

15  would have said at least something to that effect.").  *Heller* does not foreclose the application of

16  intermediate scrutiny to firearms regulations.  *See Nat'l Rifle Ass'n of Am., Inc. v. Bureau of*

17  *Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 197 (5th Cir. 2012) ("[B]y taking

18  rational basis review off the table, and by faulting a dissenting opinion for proposing an interest-

19  balancing inquiry rather than a traditional level of scrutiny, the [*Heller*] Court's language

20  suggests that intermediate and strict scrutiny are on the table.").

21        In addition to arguing that intermediate scrutiny is not the appropriate standard, plaintiffs

22  contend that every court to apply intermediate scrutiny is doing so incorrectly.  Opposition 16-17.

23  While plaintiffs might prefer a different formulation, under controlling precedent intermediate

24  scrutiny requires that: (1) the government's stated objective must be significant, substantial, or

25

26  scrutiny," for "[e]ven among those incorporated rights that do prompt strict scrutiny, such as the
    freedom of speech and of religion, strict scrutiny is only occasionally applied.").

27        [6] The Supreme Court in *Heller* expressly declined to establish what standard of review
    was appropriate in Second Amendment cases, only ruling out "rational basis" review.  *Heller*, 554
28  U.S. at 628 & n. 27.

5

1  important; and (2) there must be a "reasonable fit" between the challenged regulation and the

2  asserted objective.  *Chovan*, 735 F.3d at 1139.  Intermediate scrutiny does not require the fit

3  between the challenged regulation and the stated objective to be perfect, nor does it require that

4  the regulation be the least restrictive means of serving the interest.  *Jackson*, 746 F.3d at 969.

5  Rather, the government "must be allowed a reasonable opportunity to experiment with solutions

6  to admittedly serious problems."  *Id.* at 969-70 (quoting *City of Renton v. Playtime Theatres, Inc.*,

7  475 U.S. 41, 52 (1986)).  In determining whether a law survives intermediate scrutiny, courts

8  "afford substantial deference to the predictive judgments of the legislature."  *Turner Broad. Sys.,*

9  *Inc. v. FCC*, 520 U.S. 180, 195 (1997).  Deferential review is particularly apt "[i]n the context of

10  firearm regulation," where "the legislature is 'far better equipped than the judiciary' to make

11  sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying

12  firearms and the manner to combat those risks." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81,

13  97 (2d Cir. 2012) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994) (plurality)

14  (*Turner I*)).  The courts' narrow role is to "assure that, in formulating its judgments, [the State]

15  has drawn reasonable inferences based on substantial evidence."  *Turner I*, 512 U.S. at 666.  As

16  this Court has determined, Section 32310 passes scrutiny under this framework.  *See Wiese*, 263

17  F. Supp. 3d at 993.

18      Finally, plaintiffs argue that because defendants have the "evidentiary burden" under

19  intermediate scrutiny, this Court cannot dismiss their Second Amendment claim.  Opposition at

20  21-23.[7]  However, courts can and do determine whether a statute passes intermediate scrutiny on

21  the pleadings.  Where, as here, it is clear from the complaint that a statute is reasonably related to

22  a sufficiently important governmental interest, dismissal is warranted.  *Mahoney v. Sessions*, 871

23  F.3d 873, 883 (9th Cir. 2017) (affirming dismissal of Second Amendment claim where policy

24  "survives intermediate scrutiny and is, therefore, constitutional under the Second Amendment"),

25      [7] Plaintiffs apparently misunderstand defendants' argument with respect to the Second
26  Amendment claim.  Defendants do not contend that plaintiffs have the burden to prove at trial that
    Section 32310 does not advance the State's compelling interests in protecting civilians and law
27  enforcement from gun violence and protecting the public safety.  Rather, plaintiffs have the
    burden to allege a plausible claim that Section 32310 is not substantially related to an important
28  government interest.  Plaintiffs have not met, and cannot meet, this burden.

6

1   *petition for cert. filed*, Case No. 17-905 (Dec. 26, 2017); *Wilson v. Lynch*, 835 F.3d 1083, 1094-

2   95 (9th Cir. 2016) (same); *Hall v. Garcia*, No. C 10-03799 RS, 2011 WL 995933, at *5 (N.D.

3   Cal. Mar. 17, 2011) (dismissing Second Amendment claim where official action "bears a

4   substantial relationship to important objective."). The Court should thus dismiss Count I of the

5   SAC.

6   **II.   PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF UNDER THE TAKINGS
7         CLAUSE**

8          Plaintiffs' takings claims under the United States and the California Constitutions also fail

9   as a matter of law. As discussed in defendants' Memorandum of Points and Authorities, ECF No.

10  61 (Memorandum) at 13-17, there are no plausible allegations in the SAC that Section 32310

11  causes a physical invasion or occupation of private property by the government or its agents. *See*

12  *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982). The SAC is also

13  devoid of plausible allegations that Section 32310, on its face, "completely deprives an owner of

14  all economically beneficial use of her property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528,

15  537 (2005). The SAC thus does not establish that Section 32310 effects a per se physical or

16  regulatory taking. To the extent, that plaintiffs are attempting to allege a "partial regulatory"

17  taking challenge subject to the ad hoc factual analysis set forth in *Penn Central Transp. Co. v.*

18  *City of N.Y.*, 438 U.S. 104, 124 (1978), even if such a claim were ripe, the SAC does not allege

19  either a sufficient loss of value from Section 32310 or any meaningful interference with distinct

20  investment-backed expectations in LCMs that were acquired decades ago.[8]

21     **A.   Section 32310 Is Not a Physical Taking**

22          Fundamentally, because Section 32310 is an exercise of the State's police power to protect

23  the public by eliminating the dangers posed by LCMs, plaintiffs cannot adequately allege a

24  physical taking.[9] *See Lingle*, 544 U.S. at 536; *Chi., B. & Q. R. Co. v. Illinois*, 200 U.S. 561, 593-

25  ───────────────

26          [8] Section 32310 also does not "damage" property within the meaning of the Takings
    Clause of the California Constitution. *See Customer Co. v. City of Sacramento*, 10 Cal. 4th 368,
    379 (1995).

27          [9] Although plaintiffs discuss physical and regulatory takings interchangeably, *see*
28  Opposition at 29-35, 37-40, the two claims are distinct and require different analyses. *See Tahoe-*

594 (1906); *Mugler v. Kansas*, 123 U.S. 623, 668-69 (1887); *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1034 (9th Cir. 2000); *see also Wiese*, 263 F. Supp. 3d at 995 (stating that "Plaintiffs have not cited, and the court is unaware of, any case holding that a complete ban on personal property deemed harmful to the public is a taking for public use which requires compensation.").

Plaintiffs insist that because Section 32310 bans possession of LCMs and because under Section 32310(d), individuals may divest themselves of LCMs by surrendering them to law enforcement for destruction or by selling them out-of-state, the statute is "paradigmatic" taking. Opposition at 28-35. This argument continues to ignore the fundamental distinction for Takings Clause purposes between the government's exercise of its power of eminent domain to appropriate property for public use and government action pursuant to its police power that may result in the permanent loss of private property. *See* Memorandum at 13-15; *Kelo v. City of New London*, 125 S. Ct. 2655, 2685 (2005) (Thomas, J., dissenting) ("whether the State can take property using the power of eminent domain is ... distinct from the question whether it can regulate property pursuant to the police power" and warning against "conflat [ing] these two categories"). While the eminent domain power is used to confer benefits upon the public (by the taking of private property for public use), the police power is used to prevent harm. *See Penn Central*, 438 U.S. at 123. In contrast to property acquired through the exercise of eminent domain power, "property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008). Further, the government is not "required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. at 442, 452 (1996).

Indeed, in addition to those cases cited in defendants' Memorandum of Points and Authorities, *see* Memorandum at 14, there are numerous examples of exercises of police power that, though resulting in the taking of property, do not implicate the Takings Clause. In *Bennis v.*

---

*Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 323 (2002) (cautioning that it is "inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa."). Accordingly, they are addressed separately here.

1    *Michigan*, for example, the Supreme Court found no constitutional taking, where the state seized

2    a car under its forfeiture laws after the petitioner's husband, without her knowledge, engaged in

3    illegal criminal activity in the car.  516 U.S. at 446.  The Court stated that the car, though literally

4    taken, was nonetheless not "taken for public use" within the meaning of the Takings Clause.  *Id.*

5    The forfeiture's purposes, rather, were punitive and deterrent: "'preventing further illicit use of

6    the [property] and [] imposing an economic penalty, thereby rendering illegal behavior

7    unprofitable.'"  *Id.* (quoting *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 687

8    (1974)).

9    Similarly, in *AmeriSource*, an innocent owner, whose property had been seized for use in a

10   criminal prosecution and rendered worthless as a result, argued that he was entitled to just

11   compensation under the Takings Clause.  The court declined to find a taking, explaining that the

12   owner incorrectly assumed that "'public use,' encompassed any government use of private

13   property aimed at promoting the common good."  525 F.3d at 1153.  "In the context of the

14   Takings Clause, ... 'public use' has a narrower meaning because courts have construed it in

15   harmony with the police power."  *Id.*  The court concluded that, because the seizure of the

16   property was "clearly within the bounds of the police power," it was "not seized for public use

17   within the meaning of the Fifth Amendment" and no unconstitutional taking had occurred.  *Id.* at

18   1154 (internal quotation marks and citations omitted); *see also Acadia Tech., Inc. v. United

19   States*, 458 F.3d 1327 (Fed. Cir. 2005) (stating that the "seizure of goods suspected of bearing

20   counterfeit marks is a classic example of the government's exercise of the police power to

21   condemn contraband or noxious goods, an exercise that has not been regarded as a taking for

22   public use for which compensation must be paid."); *People v. Sakai*, 56 Cal. App. 3d 531, 538-39

23   (1976) (holding that statute banning the selling or possessing with intent to sell certain whale

24   meat or other food or products was a reasonable and proper exercise of the police power and thus

25   not a taking).

26   Plaintiffs' reliance on cases that involve the exercise of the eminent domain power and

27   acquisition of private property for public use or forcing the sale of private property to a

28   government designee to use for a public purpose is misplaced.  For example, plaintiffs cite to

9

1   *Horne v. Department of Agriculture.*, 135 S. Ct. 2419 (2015), in which the Supreme Court held

2   that a reserve requirement set by the federal government's Raisin Administrative Committee,

3   whereby raisin growers were required to "give a percentage of their crop to the Government, free

4   of charge," constituted a categorical physical taking.  135 S. Ct. at 2424.  The analysis turned on

5   the fact that under the program "[a]ctual raisins [were] transferred from the growers to the

6   Government. Title to the raisins passe[d] to the Raisin Committee." *Id.* at 2428.  By contrast,

7   Section 32310 does not transfer title of plaintiffs' LCMs to the government nor does it involve

8   government appropriation of "private property for its own use" or public purpose. *Id.* at 2419.

9   Plaintiffs' other cases are similarly inapt. *See, e.g.*, *Dore v. United States*, 97 F. Supp. 239, 242

10  (Ct. Cl. 1951) (rice milling companies' forced sales of rice to the government for public use in

11  compliance with government orders, made in exercise of wartime powers, constituted taking of

12  rice for public use, so as to entitle companies to just compensation under Fifth Amendment);

13  *Edward P. Stahel & Co. v. United States*, 78 F. Supp. 800, 804 (Ct. Cl. 1948) (priority order of

14  October 16, 1941, made by War Production Board requiring owners of silk to fill orders of

15  contractors having contracts with government for manufacture of parachutes and orders of

16  Defense Supplies Corporation constituted a taking of property for public use).

17        Plaintiffs' argument that the Supreme Court's decision in *District of Columbia v. Heller*,

18  544 U.S. 570 (2008), rendered the regulation of LCMs an invalid exercise of police power,

19  Opposition at 35-37, is unfounded.  *Heller* recognized a core Second Amendment right of

20  individuals to possess an operable handgun in the home for self-defense, but affirmed the

21  longstanding police power of the States to enact reasonable gun regulations.  *Heller*, 554 U.S. at

22  626-29; *McDonald v. City of Chi.* 561 U.S. 742 785 (2010).  As this Court has noted, *Heller* "said

23  nothing which could be interpreted as suggesting that a city or state's ban of a previously lawful

24  firearm or firearm component would require compensation to existing owners of those firearms or

25  components." *Wiese*, 263 F. Supp. 3d at 995 (citing *Heller*, 554 U.S. at 626-27).[10]

26

27        [10] Plaintiffs' attempt to distinguish the cases cited by defendant rejecting Takings Clause
     challenges to laws banning the possession of dangerous weapons on the basis that they predate
28  *Heller*, *see* Opposition at 35-37, thus fails.

10

1    Similarly mistaken is the assertion that the State's authority to ban the possession of LCMs

2    is undermined by the Supreme Court's admonition in *Lucas* that the government's justification of

3    "prevention of harmful use," standing alone, "cannot be the basis for departing from our

4    categorical rule that total regulatory takings must be compensated."  505 U.S. at 1026.  In *Lucas,*

5    the Court held that where government regulation "goes beyond what the relevant background

6    principles would dictate," and completely eliminates the economically productive or beneficial

7    uses of land, a "total [regulatory] taking occurs."  *Id.* at 1030.  Even if applicable here, *Lucas* does

8    not transform the exercise of police power to eliminate a harmful weapon into a taking.  *See id.*

9    at 1027 ("[I]n the case of personal property, by reason of the State's traditionally high degree of

10   control over commercial dealings, [one] ought to be aware of the possibility that new regulation

11   might even render his property economically worthless (at least if the property's only

12   economically productive use is sale or manufacture for sale).").  Section 32310's ban on

13   possession of LCMs was a valid exercise of the State's police power.  LCMs had been declared a

14   nuisance subject to confiscation and destruction under state law, §§ 32390, 18010(a)(20), and

15   thus the ban on possession of LCMs—including LCMs that were grandfathered under the prior

16   law—is entirely consistent with the relevant "background principles" concerning the nuisance

17   status of LCMs.

18       **B.    Section 32310 Is Not a Regulatory Taking**

19   The SAC does not allege a plausible claim that Section 32310 is a regulatory taking.  It sets

20   forth only conclusory allegations that Section 32310 "would completely deprive the owners of all

21   economically beneficial uses of their lawfully-owned property, and therefore, constitutes a

22   regulatory taking."  SAC ¶ 77.  In addition to being insufficient to satisfy their pleading burden,

23   *see Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009), plaintiffs' claim is belied by the face of the

24   statute.  As plaintiffs acknowledge, until July 1, 2017, Section 32310 provides that LCM owners

25   can protect or realize the economic value of their LCMs by storing them out-of-state or selling

26   them to a licensed firearms dealer.  *See* § 32310(d); SAC ¶¶ 61, 75, 96-98.  It is also possible to

27   modify an LCM so it can only accept a maximum of ten rounds.  *See* § 32425(a).  Accordingly,

28   and despite plaintiffs' unsupported allegations that these methods are "illusory," *see, e.g.*, SAC, ¶

11

61, Section 32310, on its face, does not deprive plaintiffs of all economically beneficial uses of their property and thus plaintiffs cannot state a per se regulatory takings claim. *See Lucas*, 505 U.S. at 1019; *Chevron USA, Inc.*, 224 F.3d at 1041-42.[11]

Plaintiffs also have not sufficiently alleged an as-applied or "partial regulatory" taking challenge. The SAC does not allege facts demonstrating that Section 32310 is a taking in light of: (1) its economic impact on plaintiffs; (2) the extent to which Section 32310 interferes with "distinct investment-backed expectations"; and (3) the "character of the government action." *Penn Central*, 438 U.S. at 124. *See* Memorandum at 16-17. The SAC does not allege either a sufficient loss of value from Section 32310 nor any meaningful interference with distinct investment-backed expectations in LCMs that were acquired decades ago. *See Penn Central*, 438 U.S. at 123; *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013); *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 967 (9th Cir. 2003). Plaintiffs argue that the character of the government's action does not offset the "severe burdens" caused by Section 32310 as "there can be no substantial or legitimate justification for the retroactive confiscation of large-capacity magazines that are now at least 17 years old, and in many cases, even older." Opposition at 41-42. Even overlooking that the SAC does not plausibly allege that Section 32310 causes "severe burdens" or lacks a "legitimate public purpose," *see Penn Central*, 438 U.S. at 125, this Court has acknowledged that the stated objectives in enacting Section 32310 – namely, reducing the incidence and harm of mass shootings and improving the enforcement of existing LCM regulations – are "substantial," *Wiese*, 263 F. Supp. 3d at 992. Plaintiffs thus fail to allege that Section 32310 presents one of the "extreme circumstances" in which a regulation is found to be a taking under the *Penn Central* factors. *Lingle*, 544 U.S. at 539; *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 126 (1985).

---

[11] Plaintiffs mistakenly rely on cases such as *Andrus v. Allard*, 444 U.S. 51 (1979), in support of their argument that Section 32310 is a regulatory taking. *Andrus* involved the prohibition on commercial transactions of eagle feathers. In determining that the prohibition was not a taking, the Court stated that although the law did prevent the most profitable use of plaintiffs' property, because Plaintiffs could continue to possess the artifacts, they had not been deprived of all economic benefit. *Id.* at 66-67. Nothing in *Andrus* suggests that a ban on possession of LCMs is a per se taking. Further, and as discussed herein, Section 32310 does not deprive plaintiffs of all economic benefit of their LCMs.

1    Because Section 32310 is a legitimate exercise of the police power that does not impose

2    any physical invasion or appropriation of private property for public use and does not facially

3    deprive plaintiffs of all economically beneficial use of their LCMs, it is neither a physical nor a

4    regulatory taking and plaintiffs cannot state a plausible takings claim.  The Court should thus

5    dismiss Count II of the SAC.

6    **III.        PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE VAGUENESS CLAIM**

7    Plaintiffs' attempts to salvage their vagueness claim are unavailing, and the claim must be

8    dismissed as a matter of law.[12]  As discussed in defendants' Memorandum, a vagueness claim is

9    cognizable outside of the First Amendment context only on an as-applied basis, *United States v.*

10   *Purdy*, 264 F.3d 809, 811 (9th Cir. 2001), and plaintiffs' vagueness claim in this action is only

11   facial in nature because the relief they seek in invalidating the challenged laws would benefit

12   others who are not parties to this action.  *See* Memorandum at 17-18; *see also id.* at 8 n.7 (citing

13   *e.g.*, *Ctr. For Competitive Politics v. Harris*, 784 F.3d 1307, 1314 (9th Cir. 2015)).  But even if a

14   facial vagueness claim were cognizable outside of the First Amendment context, there is nothing

15   unconstitutionally vague on the face of the challenged statutes, and the authority cited by

16   plaintiffs supports dismissal of the claim.  In *Hotel & Motel Ass'n of Oakland v. City of Oakland*,

17   344 F.3d 959, the Ninth Circuit stated that, "a party challenging the facial validity of an ordinance

18   on vagueness grounds outside the domain of the First Amendment must demonstrate that 'the

19   enactment is impermissibly vague in all of its applications.'" *Id.* at 972.  Plaintiffs cannot

20   credibly argue that the statute is unconstitutionally vague in all of its applications.

21   As the cases cited by plaintiffs demonstrate, a statute can be void-for-vagueness only when

22   it fails to provide fair public notice of the proscribed conduct and encourages arbitrary and

23

24   _____

   [12] In a footnote, plaintiffs claim that defendants did not "address" plaintiffs' purported as-
applied vagueness challenge and that this purported omission constitutes a concession that "the
25   SAC does indeed sufficiently state a case for unconstitutional vagueness as-applied to Plaintiffs."
Opposition at 44 n.15.  Plaintiffs are wrong.  Defendants moved to dismiss the SAC in its
26   entirety, including any as-applied vagueness claim, and after arguing that "plaintiffs challenge
can only be facial in scope," defendants proceeded to argue that dismissal is warranted "[e]ven if
27   a vagueness claim could be made in this case."  Memorandum at 17-19.  The arguments
supporting dismissal apply whether plaintiffs characterize their vagueness claim as facial or as-
28   applied.

1    discriminatory enforcement.  *See Skilling v. United States*, 561 U.S. 358, 412 (2010) ("[V]oid-for-

2    vagueness doctrine addresses concerns about (1) fair notice and (2) arbitrary and discriminatory

3    prosecutions."); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness

4    doctrine requires that a penal statute define the criminal offense with sufficient definiteness that

5    ordinary people can understand what conduct is prohibited and in a manner that does not

6    encourage arbitrary and discriminatory enforcement.").  Section 32310 does neither.  *See*

7    Memorandum at 17-18.[13]

8           Faced with the absence of any inherent ambiguity in the text of the challenged statutes,

9    plaintiffs principally rest their claim on the existence of two chaptered versions of Section 32406,

10   enacted first by SB 1446 and later by Proposition 63, which contain some different exceptions to

11   Section 32310.  Plaintiffs devote a significant portion of their opposition to asserting that the

12   version of Section 32406 enacted by SB 1446 is still operative notwithstanding the later

13   enactment of Proposition 63 and its more limited version of Section 32406.  *See* Opposition at 45-

14   50.  This Court already has rejected that argument.  *Wiese*, 263 F. Supp. 3d at 997 (stating that the

15   later-enacted version of Section 32310 by Proposition 63 controls).[14]  Moreover, and as this Court

16   has suggested, even if there is some ambiguity regarding which version of Section 32406 is

17   operative, such an ambiguity would give rise to a question of statutory construction rather than a

18          [13] Plaintiffs incorrectly claim that defendants "completely ignore[d]" the Department of
19   Justice's Finding of Emergency (SAC, Ex. A), which plaintiffs characterize as "compelling
     evidence" that the LCM ban is unconstitutionally vague.  Opposition at 44-45.  The Attorney
20   General did address the Finding of Emergency, noting that it did not state that SB 1446 pre-
     amended Proposition 63 in any way relevant to this case and that, in any event, it was withdrawn.
21   Memorandum at 19-20.  Plaintiffs selectively quote from the Finding of Emergency to claim that
     the Department of Justice "effectively declared the LCM ban unconstitutionally vague and
22   ambiguous."  Opposition at 45.  The Finding of Emergency did no such thing.  The only potential
     ambiguity discussed in that document concerned the permanent alteration of an LCM.  *See* SAC,
23   Ex. A at 1 ("If a gun owner chooses to permanently reduce the capacity of their large-capacity
     magazines, these emergency regulations provide guidance for doing so with what the Department
24   has determined to be the acceptable minimum level of permanence.").

25          [14] Plaintiffs argue in a footnote that the Voter Information Guide for Proposition 63
     discusses SB 1446 in prospective terms, *i.e.*, "the effect the law *will* have beginning July 2017
26   and who *will* be exempt under it.  Opposition at 48 n.16.  But that should not be surprising
     because, at that time, SB 1446 was going to go into effect, and the Voter Information Guide did
27   not presume that Proposition 63 would be enacted by voters.  Plaintiffs do not dispute that the
     Voter Information Guide specifically stated that certain exceptions enacted by SB 1446 would be
28   eliminated by the enactment of Proposition 63, undermining any claim that SB 1446 pre-amended
     Proposition 63 with respect to those exceptions.

vagueness claim.  *See* Memorandum at 18 (citing *Karlin v. Foust*, 188 F.3d 446, 469 (7th Cir. 1999)); *see also Wiese*, 263 F. Supp. 3d at 997.

In a further attempt to demonstrate vagueness, plaintiffs claim that "many citizens will be left not even knowing whether their particular magazines fall within the LCM ban in the first place," pointing to a particular magazine owned by one of the plaintiffs that holds no more than 10 rounds of a particular caliber of ammunition, even though the magazine "could hold more than 10 rounds of a *different* caliber ammunition."  Opposition at 49-50.  If the magazine in this example is capable of accepting more than 10 rounds of ammunition (regardless of caliber), plaintiffs cannot plausibly be confused about whether this magazine satisfies the definition of an LCM under Penal Code section 16740 (which makes no reference to caliber).  Even if plaintiffs could plausibly allege that there are some examples in which the statute's application is unclear, and they have not, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'"  *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001).

Plaintiffs have failed to state a vagueness challenge to the LCM ban.  The Court should thus dismiss Count III of the SAC.

## IV.   PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE OVERBREADTH CLAIM

Plaintiffs have failed to demonstrate that the SAC states an overbreadth claim.  As an initial matter, plaintiffs have ignored the authority cited by defendants stating that the overbreadth doctrine is limited to First Amendment claims.  *See* Memorandum at 20; *see also Wiese*, 263 F. Supp. 3d at 999 ("Plaintiffs provide no reason for the court to expand the overbreadth doctrine to the Second Amendment").  But even if an overbreadth claim were cognizable outside of the First Amendment context, the SAC does not allege and plaintiffs cannot explain how the challenged statute prohibits "a substantial amount of constitutionally protected conduct."  *Wiese*, 263 F. Supp. 3d at 999 (quoting *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1207 (9th Cir. 2010)).  At best, plaintiffs' overbreadth claim appears to be duplicative of and dependent on their Second Amendment constitutional claim, *see Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014), and fails for the same reasons.

15

1    Plaintiffs cannot state an overbreadth claim as a matter of law.  The Court should thus

2    dismiss Count IV of the SAC.

3    **V.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF UNDER THE EQUAL
            PROTECTION CLAUSE**

4    Plaintiffs' equal protection claim fails as a matter of law.  To the extent that plaintiffs allege

5    that the exception to Section 32310 set forth in California Penal Code section 32445 for LCMs,

6    loaded with blank cartridges, *see* Cal. Stats. 2010, c. 711 (S.B.1080), § 6, that are loaned and used

7    "solely as a prop for a motion picture, television, or video production" violates their fundamental

8    rights, their equal protection claim is "subsumed by, and coextensive with" their Second

9    Amendment claim and "therefore not cognizable under the Equal Protection Clause. *Orin v.*

10   *Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001).  Insofar as plaintiffs' equal protection claim

11   can be considered independently, it is groundless.

12   Where as here, a regulation does not involve a suspect class or a fundamental right, rational

13   basis applies.  *Nordyke*, 681 F.3d at 1043 n.2.  Although plaintiffs fault the State for not offering a

14   justification for Penal Code section 32445, it is not the State's burden to do so.  Rather, "the

15   burden is on the one attacking the legislative arrangement to negative every conceivable basis

16   which might support it."  *Heller v. Doe*, 509 U.S. 312, 319 (1993) (internal quotation marks

17   omitted).  At most, plaintiffs claim that Section 32310 "cater[s] to [the] privileged, rich elite,

18   concentrating in film and television hubs in Hollywood and the Los Angeles Area." SAC ¶ 112.

19   But the SAC does not allege that there is no conceivable basis for the exception to Section 32310

20   allowing individuals, having obtained a permit, to use an empty LCM as a prop for a motion

21   picture, television, or video production while prohibiting people from possessing and using LCMs

22   in general.  *Heller*, 509 U.S. at 319.  The SAC also does not allege that there is no rational

23   relationship between Section 32310 and the government's compelling interests in protecting the

24   public safety and reducing the lethality and incidence of mass shootings and the murder of law

25   enforcement.  *Id.*  Accordingly, and because this Court has determined that Section 32310 passes

26

27

28

16

1   intermediate scrutiny, *Wiese*, 263 F. Supp. 3d at 993, plaintiffs cannot plausibly allege an equal

2   protection claim.  The Court should thus dismiss Count V of the SAC.[15]

3                                   **CONCLUSION**

4        For the foregoing reasons, defendants respectfully request that the Court dismiss the Second

5   Amended Complaint in its entirety with prejudice and without leave to amend.

6

7

8   Dated:  January 29, 2018                    Respectfully Submitted,

9                                               XAVIER BECERRA
                                                Attorney General of California
10                                              TAMAR PACHTER
                                                Supervising Deputy Attorney General
11                                              JOHN D. ECHEVERRIA
                                                Deputy Attorney General

12                                              */s/ Alexandra Robert Gordon*

13                                              ALEXANDRA ROBERT GORDON
                                                Deputy Attorney General
14                                              *Attorneys for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27   _____
        [15] Because plaintiffs have failed to adequately allege any constitutional violation for the
28   reasons set forth above, any section 1983 claim should be dismissed.

# CERTIFICATE OF SERVICE

Case Name: **Wiese, William, et al.  v.**     No.    **2:17-cv-00903-WBS-KJN**
                   **Xavier Becerra, et al.**

I hereby certify that on <u>January 29, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>January 29, 2018</u>, at San Francisco, California.


<table>
<tr><td align="center">N. Newlin</td><td align="center"><em>/s/ N. Newlin</em></td></tr>
<tr><td align="center">Declarant</td><td align="center">Signature</td></tr>
</table>

SA2017106942
21073482.docx