1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12   WILLIAM WIESE, an individual;      Civ. No.  2:17-903 WBS KJN
     JEERMIAH MORRIS, an individual;
13   LANCE COWLEY, an individual;
     SHERMAN MACASTON, an individual;
14   CLIFFORD FLORES, individually      MEMORANDUM & ORDER RE: MOTION
     and as trustee of the Flores       TO DISMISS
15   Family Trust; L.Q. DANG, an
     individual; FRANK FEDEREAU, an
16   individual; ALAN NORMANDY, an
     individual; TODD NIELSEN, an
17   individual; THE CALGUNS
     FOUNDATION; FIREARMS POLICY
18   COALITION; FIREARMS POLICY
     FOUNDATION; and SECOND AMENDMENT
19   FOUNDATION,

20            Plaintiffs,

21        v.

22   XAVIER BECERRA, in his official
     capacity as Attorney General of
23   California; and MARTHA SUPERNOR,
     in her official capacity as
24   Acting Chief of the Department
     of Justice Bureau of Firearms,
25
              Defendants.
26

27                        ----oo0oo----

28
                              1

Before the court is defendants' Motion to dismiss plaintiffs' Second Amended Complaint. (Docket No. 61.) The court held a hearing on the Motion on February 5, 2018.

I.   Factual and Procedural History

This case concerns a challenge to California's prohibition on the possession of gun magazines that can hold more than ten bullets, or "large capacity" magazines ("LCM").[1] Although California had banned the purchase, sale, transfer, receipt, or manufacture of such magazines since 2000, it did not ban the possession of these magazines. Fyock v. City of Sunnyvale, 779 F.3d 991, 994 (9th Cir. 2015). In effect, Californians were allowed to keep large capacity magazines they had obtained prior to 2000, but no one, with a few exceptions such as law enforcement officers, has been allowed to obtain new large capacity magazines since 2000.

On July 1, 2016, California enacted Senate Bill 1446 ("SB 1446"), which amended California Penal Code § 32310, criminalizing the possession of large capacity magazines as of July 1, 2017, regardless of when the magazines were obtained. Then, on November 8, 2016, the California electorate approved Proposition 63, which largely mirrors SB 1446. The amended version of Section 32310 enacted by Proposition 63 requires that anyone possessing a large capacity magazine either remove the magazine from the state, sell the magazine to a licensed firearms

---

[1]     Large capacity magazines are defined under California Penal Code § 16740 as any ammunition-feeding device with the capacity to accept more than ten rounds, though this section specifically excludes from this definition any "ammunition feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds."

2

dealer, or surrender the magazine to a law enforcement agency for its destruction prior to July 1, 2017.  Cal. Penal Code § 32310(d).  The amended version of Section 32310 enacted by Proposition 63 also provides that possession of a large capacity magazine as of July 1, 2017 constitutes an infraction or a misdemeanor punishable by a fine not to exceed $100 per large capacity magazine and/or imprisonment in a county jail not to exceed one year.  Id. at § 32310(c).

On April 28, 2017, plaintiffs filed the instant action alleging that Section 32310 is unconstitutional.  After the original Complaint was amended, the court denied plaintiffs' request for a temporary restraining order and then denied plaintiffs' request for a preliminary injunction.  (Docket Nos. 45, 52.)  In denying a preliminary injunction, the court held that injunctive relief was not warranted because, among other things, (1) the ban survived intermediate scrutiny under the Second Amendment; (2) a complete ban on personal property deemed by the state to be harmful to the public is likely not a taking for public use requiring compensation; (3) the ban was not void for vagueness because the version of the ban enacted by Proposition 63 controlled, as it was enacted after the passage of SB 1446; (4) the ban was not void for vagueness because it is not paradoxical to exempt possession of large capacity magazines for certain individuals while not allowing these individuals to manufacture, import, sell, transfer, or receive the magazines; and (5) the ban was not unconstitutionally overbroad because the overbreadth doctrine does not apply in the Second Amendment context and the law does not prohibit a substantial amount of

constitutionally protected conduct.  The court further noted that
injunctive relief is generally not available for takings claims
and that plaintiffs had not shown that the balance of hardships
or public interest weighed in favor of injunctive relief.[2]

Plaintiffs then filed their Second Amended Complaint
("SAC"), which expands on their previously asserted claims and
which adds (1) an Equal Protection claim under the U.S. and
California Constitutions, based on the exemption for large
capacity magazines used as props in movies and television; (2) an
allegation that the ban operates as a taking under the California
Constitution; and (3) allegations regarding SB 1446's alleged
"preamendment" of Proposition 63 in support of their claim that
the ban is void for vagueness because of the differences in the
two versions of the ban.  (Docket No. 59.)

II. Discussion

A.    Second Amendment Challenge

To evaluate a Second Amendment claim, the court asks
whether the challenged law burdens conduct protected by the
Second Amendment, and if so, what level of scrutiny should be
applied.  Fyock, 779 F.3d at 996 (citing United States v. Chovan,
735 F.3d 1127, 1136 (9th Cir. 2013)).

a.    Burden on Conduct Protected by the Second
Amendment

Plaintiffs have alleged, and there is no dispute in

---

[2]    Soon after the court's order, the ban on possession of
grandfathered large capacity magazines was enjoined by Judge
Roger T. Benitez in Duncan v. Becerra, 265 F. Supp. 3d 1106 (S.D.
Cal. 2017).  Judge Benitez's injunction remains in effect as of
the date of this Order.

this case, that many people inside and outside of California have for many years lawfully possessed large capacity magazines for purposes such as self-defense, target shooting, and hunting. (See SAC ¶¶ 32-34, 46, 48-49, 57; see also Heller v. District of Columbia, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("Heller II") (finding that magazines holding more than ten rounds were in "common use")). Thus, notwithstanding California's existing ban on the purchase, sale, transfer, receipt, or manufacture of such magazines since 2000, plaintiffs have alleged that California's ban on large capacity magazines burdens conduct protected by the Second Amendment. See Fyock, 779 F.3d at 998 (district court did not clearly err in finding that a regulation on large capacity magazines burdens conduct falling within the scope of the Second Amendment). But see Kolbe v. Hogan, 849 F.3d 114, 135-37 (4th Cir. 2017) (en banc), cert. denied, 138 S. Ct. 469 (2017) (large capacity magazines are not protected by the Second Amendment because they are weapons most useful in military service).[3]

b. Appropriate Level of Scrutiny

In determining what level of scrutiny applies to the ban on large capacity magazines, the court considers (1) how closely the law comes to the core of the Second Amendment right, which is self-defense, and (2) how severely, if at all, the law burdens that right. Fyock, 779 F.3d at 998-99 (citing Chovan, 735 F.3d at 1138). Intermediate scrutiny is appropriate if the

---

[3] Because the court holds that California's large capacity magazine ban burdens conduct protected by the Second Amendment because these magazines are commonly possessed by law-abiding citizens for lawful purposes, the court does not examine whether the ban resembles longstanding provisions historically exempted from the Second Amendment. See Fyock, 779 F.3d at 997.

regulation does not implicate the core Second Amendment right or if the regulation does not place a substantial burden on that right.  Id. at 998-99 (citing Jackson v. City & County of San Francisco, 746 F.3d 953, 964 (9th Cir. 2014)).

Here, as discussed in the court's prior order, intermediate scrutiny is appropriate because "the prohibition of . . . large capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves."  See Heller II, 670 F.3d at 1262; Fyock, 779 F.3d at 999 (quoting Heller II).  The ban may implicate the core of the Second Amendment because it restricts the ability of law-abiding citizens to possess large capacity magazines within their homes for self-defense.  See Fyock, 779 F.3d at 999.  However, the ban "does not affect the ability of law-abiding citizens to possess the 'quintessential self-defense weapon'--the handgun.  Rather, [it] restricts possession of only a subset of magazines that are over a certain capacity."  Id. (quoting District of Columbia v. Heller, 554 U.S. 570, 629 (2008) ("Heller I")).

Indeed, virtually every other court to examine large capacity magazine bans has found that intermediate scrutiny is appropriate, assuming these magazines are protected by the Second Amendment.  See Fyock, 779 F.3d at 999; Kolbe, 849 F.3d at 138-139; N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 258-60 (2d Cir. 2015); Heller II, 670 F.3d at 1261-62; S.F. Veteran Police Officers Ass'n v. City & County of San Francisco, 18 F. Supp. 3d 997, 1002-04 (N.D. Cal. 2014).  But see Friedman v. City of Highland Park, 784 F.3d 406 (7th Cir. 2015) (upholding municipal ban on assault weapons and large capacity magazines but

declining to determine what level of scrutiny applied).[4]

Accordingly, because California's ban does not substantially burden individuals' ability to defend themselves, intermediate scrutiny is appropriate.

### c. Application of Intermediate Scrutiny

Intermediate scrutiny requires "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." Fyock, 779 F.3d at 1000 (quoting Chovan, 735 F.3d at 1139). This test does not require that the government's regulation is the least restrictive means of achieving its interests. Rather, the government need only show that the regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." Id. (citation omitted). In reviewing the fit between the government's stated objective and the regulation, the court may consider legislative history as well as studies in the record or applicable case law. Id. The evidence need only "fairly support" the state's rationale, and in making this determination, courts "afford substantial deference to the predictive judgments of the legislature." N.Y. State Rifle, 804 F.3d at 261 (citations omitted); see also Kolbe, 849 F.3d at 140 (court must

---

[4] The court recognizes plaintiffs' allegation that magazines are an integral part of firearms. However, the fact that plaintiffs or all Californians may not be able to use certain magazines, or even certain firearms for which large capacity magazines are the only available magazines, does not prevent residents of California from defending themselves using magazines capable of holding no more than ten rounds, and handguns compatible with these magazines.

7

give substantial deference to the legislature, because "it is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments") (citations omitted).

One stated objective of California's large capacity magazine ban is to reduce the incidence and harm of mass shootings.[5] (Defs.' Request for Jud. Notice Gordon Decl., Ex. B at 164 § 2, ¶¶ 11-12; § 3, ¶ 8 (Docket No. 61-3).)[6] There can be no serious argument that this is not a substantial government interest, especially in light of the mass shootings involving large capacity magazines, including the 2012 Aurora movie theater shooting and the 2012 Sandy Hook school shooting, which were discussed in Proposition 63. (Id.)

Further, multiple courts have found a reasonable fit between similar bans with similar stated objectives. See Kolbe, 849 F.3d at 139-41 (reasonable fit between assault weapon and LCM

---

[5] On plaintiffs' request for a preliminary injunction, the court also considered the government's stated objective that the ban on possession was intended to ease enforcement of California's existing ban on the purchase, sale, transfer, receipt, or manufacture of large capacity magazines. The text of Proposition 63 does not specifically refer to this objective and the court does not consider it in deciding the instant Motion to Dismiss.

[6] The court takes judicial notice of the text of Senate Bill 1446, Proposition 63, the California Official Voter Information Guide for Proposition 63, the California Department of Justice Finding of Emergency and Notice of Proposed Emergency Action regarding Proposition 63, the version of California Penal Code § 32406 enacted by SB 1446, and the version of § 32406 enacted by Proposition 63, as the text of these documents is not subject to reasonable dispute, the documents were previously attached to pleadings in this case, and the court may take judicial notice of legislative history reports when ruling on a motion to dismiss. See, e.g., In re Google, Inc. Gmail Litig., No. 13-MD-02430-LHK, 2013 WL 5423918, *6 (N.D. Cal. Sept. 26, 2013) (citations omitted).

8

ban and interest in reducing harm caused by criminals and
preventing unintentional misuse by otherwise law-abiding
citizens); Fyock, 779 F.3d at 1000-01 (reasonable fit between LCM
ban and interests in reducing the harm of intentional and
accidental gun use and reducing violent crime); N.Y. State Rifle,
804 F.3d at 263-64 (reasonable fit between assault weapon and LCM
ban and interest in controlling crime); Heller II, 670 F.3d at
1262-64 (reasonable fit between assault weapon and LCM ban and
interest in protecting police officers and controlling crime);
S.F. Veteran Police Officers, 18 F. Supp. 3d at 1003-04
(reasonable fit between LCM ban and goals of protecting public
safety and reducing injuries from criminal use of LCMs).

        As discussed in the court's order denying a preliminary
injunction, reasonable minds will differ as to the best way to
reduce the incidence and harm of mass shootings.  However,
defendants are only required to show a reasonable fit between the
ban and this important objective, and courts give substantial
deference to the predictive judgments of the voters that passed
Proposition 63.  See Fyock, 779 F.3d at 1000; N.Y. State Rifle,
804 F.3d at 261 (citations omitted); Kolbe, 849 F.3d at 140.
Thus, notwithstanding plaintiffs' allegations that the ban will
not in fact reduce the incidence and harm of mass shootings,
California's stated interest of reducing the incidence and harm
of mass shootings "would be achieved less effectively absent the
regulation," Fyock, 779 F.3d at 1000, and there is a reasonable
fit between the ban and California's important objectives.
Because of this reasonable fit, plaintiffs have not sufficiently
alleged that the large capacity magazine ban fails intermediate

scrutiny, and the court will dismiss the Second Amendment claim.
See, e.g., Mahoney v. Sessions, 871 F.3d 873, 883 (9th Cir. 2017)
(affirming dismissal of Second Amendment claim because the policy
at issue survived intermediate scrutiny and was therefore
constitutional).

B.    Takings Clause/Due Process Challenge

The Fifth Amendment prohibits the taking of private
property for public use without just compensation.  U.S. Const.
amend. V.  The Takings Clause prohibits both "physical" takings
and "regulatory" takings.  Lingle v. Chevron U.S.A. Inc., 544
U.S. 528, 537-38 (2005).  A per se physical taking occurs where
the government physically invades or takes title to property
either directly or by authorizing someone else to do so, while a
per se regulatory taking occurs where a regulation of private
property is "so onerous that its effect is tantamount to a direct
appropriation or ouster."  Loretto v. Teleprompter Manhattan CATV
Corp., 458 U.S. 419, 426 (1982); Lingle, 544 U.S. at 537-38.

While the Takings Clause of the California Constitution
does "protect[] a somewhat broader range of property values than"
its federal counterpart, the two clauses have generally been
interpreted the same by the California Supreme Court.  See San
Remo Hotel, L.P. v. City & County of San Francisco, 27 Cal. 4th
643, 664 (2002) (noting that art. I § 19 of the California
Constitution includes damage to property, but that aside from
this difference, "we appear to have construed the clauses
congruently") (citations and internal punctuation omitted);
Customer Co. v. City of Sacramento, 10 Cal. 4th 368, 379-80
(1995) ("It seems apparent that the addition of the words 'or

damaged' to the 1879 [California] Constitution was intended to clarify that application of the just compensation provision . . . encompasses special and direct damage to adjacent property resulting from the construction of public improvements" and "[t]here is nothing that indicates the provision was intended to expand compensation outside the traditional realm of eminent domain . . . .").

Plaintiffs argue that the magazine ban operates as an unconstitutional taking under the Fifth and Fourteenth Amendments and the California Constitution because they will have to physically turn over their magazines for destruction or, in the alternative, they will be completely deprived of all beneficial use of their magazines, without just compensation.

Notwithstanding plaintiffs' allegations, California's large capacity magazine ban does not operate as a physical taking. The ban does not require that owners turn over their magazines to law enforcement – they may alternatively sell the magazines to licensed gun dealers, remove them from the state, or permanently modify the magazines so that they no longer accept more than 10 rounds. The impracticality of any particular option, such as the alleged lack of a market for these magazines, the burden in removing these magazines from the state, or the lack of guidance on what constitutes a permissible permanent modification does not transform the regulation into a physical taking. Nor does the court accept plaintiffs' assertion that permanently modifying a magazine to accept no more than ten rounds "destroys the functionality" of the magazine, given that plaintiffs do not allege that owners of these magazines will not

be able to use their modified magazines, which would then simply have a lower capacity than before the modification.[7]  Because of these alternatives to turning the magazines over to law enforcement, plaintiffs do not plausibly allege that the ban operates as government appropriation of private property for government or public use.

Nor does the large capacity magazine ban operate as a regulatory taking, for similar reasons.  In the context of real property, the Supreme Court has explained that a regulation does not operate as a compensable taking unless the regulation "completely deprive[s] an owner of all economically beneficial use of her property."  <u>Lingle</u>, 544 U.S. at 528 (citing <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003, 1019 (1992)) (internal punctuation omitted).[8]  Because owners may sell their magazines

---

[7]  The court similarly rejects plaintiffs' assertion that requiring large capacity magazines owners to modify the magazine to allow fewer than 11 rounds constitutes "damage" within the meaning of the California Constitution's taking clause, given the California Supreme Court's pronouncements that takings under the United States Constitution and the California Constitution are generally equivalent, notwithstanding the addition of the word "damage" in the California Constitution, which was intended to cover damage to adjacent property resulting from the construction of public improvements.  <u>See</u> <u>San Remo Hotel</u>, 27 Cal. 4th at 664; <u>Customer Co.</u>, 10 Cal. 4th at 379-80.

[8]  Contrary to plaintiffs' assertion, it is not clear that this rule applies in the context of personal property.  <u>See</u> <u>Lucas</u>, 505 U.S. at 1027-28 ("[I]n the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [o]ne ought to be aware of the possibility that a new regulation might even render his property economically worthless (at least if the property's only economically productive use is sale or manufacture for sale).").  For the purposes of this motion, however, the court assumes, without deciding, that the <u>Lucas</u> court's "beneficial use" test applies in the context of personal property.

to licensed dealers or remove them from the state, or even retain the magazines if they are permanently modified to accept fewer than 11 rounds, plaintiffs have not plausibly alleged that the large capacity magazine ban completely deprives them of all economically beneficial use of their property.[9]  Accordingly, plaintiffs have not sufficiently alleged that California's large capacity magazine ban operates as a taking requiring just compensation under the Fifth and Fourteenth Amendments and the California Constitution, and the court will dismiss Count II of the Second Amended Complaint.[10]

C.   Vagueness Claims[11]

The Fifth Amendment also provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The government

---

[9]   Further, plaintiffs have not plausibly alleged that the large capacity magazine ban operates as a partial regulatory taking under Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124 (1978), given the alternatives for disposal or modification, the state's substantial interest, and the Second Amended Complaint's absence of any plausible facts that the ban interferes with plaintiffs' distinct investment-backed expectations.

[10]   Because the court determines that the large capacity magazine ban does not operate as a physical or regulatory taking given the options for disposal or modification, it does not decide whether a complete ban on personal property deemed harmful by the state may be a compensable taking, notwithstanding the court's prior discussion in its order denying a preliminary injunction.

[11]   Plaintiffs claim the large capacity magazine ban is void for vagueness on multiple grounds, which are alleged in Count III and Count IV.  The court discusses all of plaintiffs' vagueness contentions in this section.

violates due process when it deprives an individual of life, liberty, or property pursuant to an unconstitutionally vague criminal statute.  <u>Johnson v. United States</u>, 135 S. Ct. 2551, 2556-57 (2015).  A statute is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." <u>United States v. Williams</u>, 553 U.S. 285, 304 (2008).

Plaintiffs claim that the large capacity magazine ban is void for vagueness on multiple grounds: (1) SB 1446 and Proposition 63 created two different versions of California Penal Code § 32406, and it is not clear which version applies;[12] (2) the ban exempts possession by certain individuals but does not allow such individuals to give, receive, or bring these magazines into the state; and (3) the options for compliance with the ban, other than turning the magazine over to the state, are not practical and have not been properly defined.[13]

_____

[12]   SB 1446 exempts six classes of individuals/entities-- (1) honorably retired law enforcement officers, (2) historical societies and museums, (3) persons who find and deliver large capacity magazines to law enforcement agencies, (4) forensic laboratories, (5) trustees and executors, and (6) persons in lawful possession of a firearm acquired prior to 2000 that is only compatible with a large capacity magazine--from the prohibition on possession of these magazines.  In contrast, the Proposition 63 only exempts honorably retired law enforcement officers.

[13]   The Second Amended Complaint also contains a brief allegation that it is unclear whether a magazine is prohibited by the ban where the magazine accepts different types of ammunition and is capable of holding more than ten rounds of one type of ammunition, but the firearm for which the magazine is used does not accept that ammunition.  However, even if the magazine holds less than 11 rounds when used with a particular firearm, as

14

As discussed by the court in its order denying a preliminary injunction, plaintiffs do not cite, and the court is unaware of, any case that has held an enactment to be void for vagueness because it conflicts with another enactment and it is not clear which enactment controls. The only case of which the court is aware where that argument was made held that such enactments were not void for vagueness. See Karlin v. Foust, 188 F.3d 446, 469 (7th Cir. 1999) (holding that the question before the court was whether one enactment impliedly repealed the other, not whether the enactments are void for vagueness). Moreover, under California law, where two conflicting versions of the same statute are enacted at different times, the later-enacted version controls. People v. Bustamante, 57 Cal. App. 4th 693, 701 (2d Dist. 1997) (citing County of Ventura v. Barry, 202 Cal. 550, 556 (1927) and People v. Dobbins, 73 Cal. 257, 259 (1887)).

Plaintiffs argue that the "later-in-time" rule is merely a presumption and that California law has a seemingly conflicting presumption that "absent clear evidence to the contrary, the later enactment of a law is not intended to repeal or supplant earlier laws on the same subject and instead both statutes are intended to be enforced." (Mot. Opp'n 46 (Docket No. 71) (citing People v. Carter, 131 Cal. App. 177, 181 (1933); W. Mobilehome Ass'n v. County of San Diego, 16 Cal. App. 3d 941, 948 (4th Dist. 1971).)

However, plaintiffs have not sufficiently alleged why

stated by Cal. Penal Code § 16740, if the magazine "has a capacity to accept more than 10 rounds," it is prohibited under the plain language of the statute, and the ban is not void for vagueness based on this alleged ambiguity.

the normal presumption that a later enacted version of a law controls does not apply. The cases relied on by plaintiffs explain that a later enacted statute supersedes the earlier statute if either (1) it is clear that the later statute is intended as a complete revision or substitute for the earlier statute, or (2) if the "object or purpose of the quasi-repealing statute is identical with that of the statute to be so repealed" or there is a "real, or at least apparent, conflict or inconsistency between the two statutes." See Carter, 131 Cal. App. at 181; W. Mobilehome, 16 Cal. App. 3d at 948. Here, Proposition 63's omission of various exceptions for possession, as well as a harsher penalty for noncompliance,[14] shows that the object of the two versions of the ban are identical and that the versions are inconsistent, and thus the later enacted version, the version enacted by Proposition 63, is controlling.

Moreover, the Voter Information Guide attached to Proposition 63 included a legislative analysis explaining that "recently enacted law" beginning July 2017, which obviously refers to SB 1446, exempts various individuals, and that "Proposition 63 eliminates several of these exemptions," and "increases the maximum penalty for possessing large capacity magazines." (Mot. Ex. B at 87.) In other words, California voters were told before they passed Proposition 63 that

---

[14]    SB 1446 provided that possession of a large capacity magazine in violation of the statute constituted an infraction punishable by fine, while Proposition 63 provided that possession in violation of the statute constitutes an infraction punishable by fine or a misdemeanor punishable by a fine, imprisonment in a county jail not to exceed one year, or both.

Proposition 63 would replace the version of the large capacity

magazine ban enacted by SB 1446, such that it is clear that

Proposition 63 was intended to replace SB 1446's version of the

ban.[15]  Under these circumstances, plaintiffs have not

sufficiently pled that the large capacity magazine ban is

unconstitutionally vague on account of the passage of both SB

1446 and Proposition 63.

Plaintiffs once again allege that the large capacity

magazine ban is vague because (1) it is an "absurdity" to exempt

possession for retired law enforcement officers, and in the case

of SB 1446, certain other individuals, while prohibiting them

from bringing such magazines into the state or giving or

receiving them, and (2) the options for disposal, with the

exception of turning the magazines over to the state, are

"illusory."  (SAC ¶¶ 95-101.)  As discussed in the court's denial

of the preliminary injunction, any ambiguity on these issues are

at most marginal questions regarding a statute whose application

---

[15]  Further, plaintiffs' "preamendment" argument, that SB
1446 "preamended" Proposition 63, is not persuasive because
neither the text nor the legislative history of SB 1446 discussed
anything about preamending Proposition 63, notwithstanding the
statement of the California Department of Justice in the Finding
of Emergency, which was later withdrawn, that SB 1446 was
intended to preamend Proposition 63.  Notably, the California
Legislature included express language in a related bill that the
bill would amend the Safety for All Act of 2016 if the Act was
enacted by voters.  See 2016 Cal. Stats. ch. 55 (SB 1235)
(preamending Proposition 63's requirements regarding the sale of
ammunition).  The fact that this language was omitted from SB
1446 tends to show that while the California Legislature was
aware of the possible future passage of Proposition 63, SB 1446
did not preamend Proposition 63 – the legislature intended to ban
possession of large capacity firearms regardless of whether
Proposition 63 passed.

is clear in the vast majority of intended applications.  See Cal. Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1151 (9th Cir. 2001) ("[U]ncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'") (quoting Hill v. Colorado, 530 U.S. 703, 733 (2000)).

Further, the court once again rejects plaintiffs' contention that it is absurd to allow these individuals to possess these magazines but prohibit them from manufacturing, importing into the state, keeping for sale, offering for sale, giving, lending, buying, or receiving them.  It is entirely possible to possess a large capacity magazine without engaging in those other activities.  Moreover, the court is unaware of, and plaintiffs have cited no authority holding, that a statute is unconstitutionally vague where one or more methods of compliance are impractical but another method of compliance is not impractical.  Any difficulty plaintiffs or the public might have in seeking to sell their magazines to a licensed gun dealer or remove them from the state is not grounds to invalidate the ban as unconstitutionally vague, when it is clear that individuals may comply with the ban by surrendering them to a law enforcement agency for destruction.

Because plaintiffs have not sufficiently alleged that the large capacity magazine ban is void for vagueness, the court will dismiss plaintiffs' vagueness claims in Count III and Count IV.

D.   Overbreadth Claim

Plaintiffs allege that the large capacity magazine ban

18

is unconstitutionally overbroad because there is no evidence that application of the ban to current owners of large capacity magazines would further the objectives of reducing mass shootings and the harm inflicted during those shootings, as well as making the current regulations less difficult to enforce.  (SAC ¶ 103.)

However, as the court discussed on plaintiffs' Motion for Preliminary Injunction, the court is unaware of any cases applying the overbreadth doctrine in the Second Amendment context, and plaintiffs have provided no authority compelling the court to expand the overbreadth doctrine to the Second Amendment. See United States v. Salerno, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." (citation omitted)); Kachalsky v. County of Westchester, 701 F.3d 81, 101 (2d Cir. 2012) ("Overbreadth challenges are generally limited to the First Amendment context."); United States v. Chester, 628 F.3d 673, 688 (4th Cir. 2010) (Davis, J., concurring) ("[I]mporting the overbreadth doctrine . . . into the Second Amendment context would be inappropriate.").[16]

---

[16]    Plaintiffs' cited cases are not to the contrary.  In Powell's Books, Inc. v. Kroger, 622 F.3d 1202, 1207 (9th Cir. 2010), a bookstore and other plaintiffs brought an overbreadth challenge to Oregon's law criminalizing the provision of sexually explicit material to minors, where the court found the statute "swe[pt] up a host of material entitled to constitutional protection" under the First Amendment.  The other two cases cited by plaintiffs involved both vagueness and overbreadth challenges but the courts addressed only the vagueness claims.  While the petitioner in Phelps v. United States, 831 F.2d 897, 898 (9th Cir. 1987), brought both a vagueness and overbreadth challenge to a federal statute regarding the release of persons adjudged not guilty by reason of insanity, the court addressed only the vagueness argument, finding the statute was not unconstitutionally vague because the standard set forth in the

1      Moreover, challenging a law on overbreadth grounds

2  requires a showing that the law prohibits "a substantial amount"

3  of constitutionally protected conduct, <u>Powell's Books, Inc. v.</u>

4  <u>Kroger</u>, 622 F.3d 1202, 1208 (9th Cir. 2010), and plaintiffs fail

5  to allege what constitutionally protected conduct the law

6  substantially prohibits.  Because plaintiffs have failed to

7  sufficiently allege that the law violates the Second Amendment,

8  they have similarly failed to sufficiently allege that the law

9  prohibits a substantial amount of constitutionally protected

10  conduct.  Accordingly, the court will dismiss plaintiffs'

11  overbreadth claim.

12      E.    Equal Protection Claim

13      Plaintiffs' final claim is that the large capacity

14  magazine ban violates the Equal Protection Clause of the U.S.

15  Constitution and the California Constitution because it exempts

16  the use, purchase, or possession of large capacity magazines for

17  use solely as a prop for motion picture, television, or video

18  production, which favors actors and other individuals affiliated

19  with them over other California residents and visitors.  (SAC ¶¶

20  107-115.)

21      The Equal Protection Clause of the Fourteenth Amendment

22

23  statute was not too subjective and was applied regularly by
    judges in a variety of contexts.  Similarly, the defendant in
24  <u>United States v. Rodriguez-DeHaro</u>, 192 F. Supp. 2d 1031, 1038-39
    (E.D. Cal. 2002) (Wanger, J.), challenged an indictment which was
25  based in part on his prior conviction under a California domestic
    violence statute, raising both overbreadth and vagueness
26  arguments, but the court specifically addressed only the
    vagueness argument, finding that the California statute's
27  language was "capable of being understood by a person of ordinary
    intelligence." (citation omitted).
28

"directs that all persons similarly circumstanced shall be
treated alike." Plyer v. Doe, 457 U.S. 202, 216 (1982) (citation
and internal punctuation omitted).  The court applies strict
scrutiny where a law "targets a suspect class or burdens the
exercise of a fundamental right," but if the law "does not
concern a suspect or semi-suspect class or a fundamental right,"
the court applies rational basis review, asking whether the law
"is rationally-related to a legitimate government interest."
Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir.
2002) (citations omitted).  Where a law does not impermissibly
burden the Second Amendment, that law is subject to rational
basis review under the Equal Protection Clause.  Nordyke v. King,
681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (rational basis review
applied to plaintiffs' equal protection challenge to county
ordinance prohibiting possession of firearms on county property,
"because the ordinance does not classify shows or events on the
basis of a suspect class, and because we hold that the ordinance
does not violate either the First or Second Amendment").

Under rational basis review, the court asks whether the
ordinance is rationally related to a legitimate government
interest, and statutes are generally presumed valid.  Honolulu
Weekly, 298 F.3d at 1047; Fields v. Legacy Health Sys., 413 F.3d
943, 955 (9th Cir. 2005).  The burden is on the one attacking the
legislative arrangement to negative every conceivable basis which
might support it," and the classification "must be upheld against
equal protection challenge if there is any reasonably conceivable
state of facts that could provide a rational basis for the
classification."  Heller v. Doe, 509 U.S. 312, 319-20 (1993)

(internal punctuation omitted).

Equal protection claims under the U.S. Constitution are generally analyzed the same as equal protection claims under the California Constitution, and the rational basis test under California law is no more rigorous than under federal law. See Walgreen Co. v. City and County of San Francisco, 185 Cal. App. 4th 424, 434 n.7 (1st Dist. 2010); Serrano v. Priest, 18 Cal.3d 728, 763 (1976).

California's exemption for use of large capacity magazines as props for motion picture, television, or video production does not involve a suspect class, and the court has already determined that California's ban survives intermediate scrutiny under the Second Amendment. Accordingly, rational basis applies. See Nordyke, 681 F.3d at 1043 n.2; Kwong v. Bloomberg, 723 F.3d 160, 170 n.19 (2d Cir. 2013) ("[P]laintiffs should not be allowed to use the Equal Protection Clause 'to obtain review under a more stringent standard' than the standard applicable to their Second Amendment claim. . . . Put another way, an Equal Protection claim that is based on the alleged burdening of one's Second Amendment rights should not be reviewed in isolation; whether one's Second Amendment rights are impermissibly 'burdened' is necessarily informed by the underlying Second Amendment analysis.") (citation omitted); Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 700 F.3d 185, 211-12 (5th Cir. 2012) (federal laws banning handgun sales to individuals under 21 were subject to rational basis review because the laws did not impermissibly interfere with Second Amendment rights and because age was not a suspect

22

classification); <u>Hightower v. City of Boston</u>, 693 F.3d 61, 83
(1st Cir. 2012) ("Given that the Second Amendment challenge
fails, the equal protection claim is subject to rational basis
review.").

Applying rational basis review, plaintiffs have not
shown that there is no rational basis for California's exemption
for television, video, and movie props.  The court cannot know
for certain why this exemption was included.  Nevertheless, the
California electorate could have rationally believed that large
capacity magazines used solely as props were not at risk of being
used in mass shootings and that such an exception would benefit
an important sector of the California economy.  Thus, the
exemption survives rational basis review, and plaintiffs have not
sufficiently alleged that the exemption violates the Equal
Protection Clause of either the U.S. or California Constitution.
The court will therefore dismiss Count V.

IT IS THEREFORE ORDERED that defendants' Motion to
Dismiss (Docket No. 61) be, and the same hereby is, GRANTED.
Plaintiffs have twenty days from the date this Order is signed to
file a Third Amended Complaint, if they can do so consistent with
this Order.

Dated:  February 6, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE