1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  MARK R. BECKINGTON, State Bar No. 126009
   Supervising Deputy Attorney General
3  JOHN D. ECHEVERRIA, State Bar No. 268843
   Deputy Attorney General
4    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013
5    Telephone:  (213) 269-6249
     Fax:  (213) 897-5775
6    E-mail:  John.Echeverria@doj.ca.gov
   *Attorneys for Attorneys for Defendants*

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10                   SACRAMENTO DIVISION

11

12

   **WILLIAM WIESE, et al.,**          2:17-cv-00903-WBS-KJN
13
                          Plaintiffs,
14
        v.                           **DEFENDANTS' REPLY IN SUPPORT**
15                                   **OF MOTION TO DISMISS THIRD**
                                     **AMENDED COMPLAINT**
16  **XAVIER BECERRA, et al.,**
                                     Date:        February 19, 2019
17                        Defendants. Time:        1:30 p.m.
                                     Courtroom:   5, 14th Floor
18                                   Judge:       Hon. William B. Shubb
                                     Trial Date:  None Set
19                                   Action Filed: April 28, 2017

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

    I.    Plaintiffs Have Failed to State a Plausible Claim for Relief Under the Second Amendment. ................................................................................ 1

        A.    Intermediate Scrutiny Applies to California's LCM Possession Ban. ........ 2

        B.    California's LCM Possession Ban Satisfies Intermediate Scrutiny. ........... 5

        C.    Plaintiffs' Second Amendment Claim Is Subject to Dismissal. ................ 10

    II.    Plaintiffs Have Failed to State a Plausible Takings Claim. ................................ 11

    III.    Plaintiffs Have Failed to State a Plausible Vagueness Claim. ............................ 15

    IV.    Plaintiffs Have Failed to State a Plausible Overbreadth Claim. ......................... 17

    V.    Plaintiffs Have Failed to State a Plausible Equal Protection Claim. .................... 18

CONCLUSION ................................................................................................................. 19

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..........................................................................................9

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General N.J.*
    910 F.3d 106 (3d Cir. 2018) ...................................................................8, 10, 12, 13

*Bauer v. Becerra*
    858 F.3d 1216 (9th Cir. 2017) ...........................................................................2, 4

*Bezet v. United States*
    276 F. Supp. 3d 576 (E.D. La. 2017) .....................................................................11

*Cal. Teachers Ass'n v. State Bd. of Educ.*
    271 F.3d 1141 (9th Cir. 2001) ..............................................................................15

*Chafin v. Chafin*
    568 U.S. 165 (2013) ..........................................................................................6

*Coal. for Sustainable Delta v. John McCamman*
    725 F. Supp. 2d 1162 (E.D. Cal. 2010) ..................................................................13

*Customer Co. v. City of Sacramento*
    10 Cal. 4th 368 (1995) .......................................................................................11

*District of Columbia v. Heller*
    554 U.S. 570 (2008) .................................................................................. *passim*

*Duncan v. Becerra*
    265 F. Supp. 3d 1106 (S.D. Cal. 2017) .............................................................9, 17

*Fyock v. City of Sunnyvale*
    25 F. Supp. 3d 1267 (N.D. Cal. 2014) ...................................................................3

*Fyock v. Sunnyvale*
    779 F.3d 991 (9th Cir. 2015) .......................................................................2, 3, 7, 8

*Hall v. Garcia*
    No. C 10-03799 RS, 2011 WL 995933 (N.D. Cal. Mar. 17, 2011) .........................10

*Hart v. Massanari*
    266 F.3d 1155 (9th Cir. 2001) ...........................................................................9, 17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Heller v. District of Columbia*
670 F.3d 1244 (D.C. Cir. 2011) ................................................................. *passim*

4

5

*Heller v. Doe*
509 U.S. 312 (1993) ..........................................................................................18

6

*Hotel & Motel Ass'n of Oakland v. City of Oakland*
344 F.3d 959 (9th Cir. 2003) ...........................................................................15

7

8

*Jackson v. City & Cnty. of San Francisco*
746 F.3d 953 (9th Cir. 2014) .............................................................................5

9

*Kachalsky v. Cty. of Westchester*
701 F.3d 81 (2d Cir. 2012) ................................................................................6

10

11

*Karlin v. Foust*
188 F.3d 446 (7th Cir. 1999) ...........................................................................17

12

13

*Kolbe v. Hogan*
849 F.3d 114 (4th Cir. 2017) .............................................................................7

14

15

*Lingle v. Chevron U.S.A., Inc.*
544 U.S. 528 (2005) ..........................................................................................11

16

*Loretto v. Teleprompter Manhattan CATV Corp.*
458 U.S. 419 (1982) ..........................................................................................11

17

18

*Mahoney v. Sessions*
871 F.3d 873 (9th Cir. 2017) ...........................................................................10

19

*Martin v. Hunter's Lessee*
14 U.S. 304 (1816) .............................................................................................6

20

21

*McDonald v. City of Chi.*
561 U.S. 742 (2010) ....................................................................................12, 18

22

23

*MHC Fin. Ltd. P'ship v. City of San Rafael*
714 F.3d 1118 (9th Cir. 2013) .........................................................................14

24

*N.Y. State Rifle & Pistol Ass'n v. City of New York*
883 F.3d 45 (2d Cir. 2018) ..............................................................................10

25

26

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*
804 F.3d 242 (2d Cir. 2015) .........................................................................7, 10

27

28

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*
    700 F.3d 185 (5th Cir. 2012).................................................................................4

*Nordyke v. King*
    681 F.3d 1041 (9th Cir. 2012)............................................................................18

*Pena v. Lindley*
    898 F.3d 969 (9th Cir. 2018).............................................................................5, 6

*Penn Central Transp. Co. v. City of New York*
    438 U.S. 104 (1978).........................................................................................14

*People v. Bustamante*
    57 Cal. App. 4th 693 (2d Dist. 1997)..................................................................16

*Peruta v. Cty. of San Diego*
    824 F.3d 919 (9th Cir. 2016)................................................................................5

*S.F. Veteran Police Officers v. City & Cty. of San Francisco*
    18 F. Supp. 3d 997 (N.D. Cal. 2014) ..................................................................3

*Silvester v. Harris*
    843 F.3d 816 (9th Cir. 2016)........................................................................ passim

*Stimmel v. Sessions*
    879 F.3d 198 (6th Cir. 2018)...........................................................................8, 11

*Turner Broad. Sys., Inc. v. FCC*
    520 U.S. 180 (1997)..........................................................................................5

*Turner Broad. Sys., Inc. v. FCC*
    512 U.S. 622 (1994)........................................................................................6, 7

*United States v. Chovan*
    735 F.3d 1127 (9th Cir. 2013)..........................................................................3, 5

*United States v. Post*
    607 F.2d 847 (9th Cir. 1979)..............................................................................10

*Wilson v. Lynch*
    835 F.3d 1083 (9th Cir. 2016)............................................................................10

*Worman v. Healey*
    293 F. Supp. 3d 251 (D. Mass. 2018) .................................................................9

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

STATUTES

California Government Code
    § 9605.................................................................................................................15

California Penal Code
    § 16740...............................................................................................................15
    § 16740(a)....................................................................................................12, 13
    § 32310...........................................................................................................*passim*
    § 32310(c)....................................................................................................12, 13
    § 32310(d)....................................................................................................12, 13
    § 32310(d)(3)......................................................................................................12
    § 32406.....................................................................................................15, 16
    § 32425...............................................................................................................13
    § 32445...............................................................................................................18
    § 32450(a)..........................................................................................................18

N.J. Stat. Ann.
    § 2C:39-3(j).......................................................................................................12
    § 2C:39-19(b)....................................................................................................12
    § 2C:39-20.........................................................................................................13
    § 2C:39-20(a)(1)................................................................................................13

United States Code
    42 U.S.C. § 1983..............................................................................................19

CONSTITUTIONAL PROVISIONS

United States Constitution
    U.S. Const. art. III..............................................................................................6
    U.S. Const. amend. I.........................................................................................15
    U.S. Const. amend. II..................................................................................*passim*

# INTRODUCTION

Plaintiffs fail to meaningfully address the irremediable pleading deficiencies in the Third Amended Complaint (the "TAC"), deficiencies identical to those that plagued Plaintiffs' earlier pleadings.  This Court thoroughly described these deficiencies in prior rulings denying Plaintiffs' request for preliminary injunctive relief (the "PI Order") (Dkt. No. 52) and dismissing the Second Amended Complaint (the "MTD Order") (Dkt. No. 74).  Yet nowhere in their 57-page opposition do Plaintiffs explain how the few new allegations in the TAC are "consistent with th[e MTD] Order" and state any plausible claim for relief.  MTD Order at 23:20-21.  The TAC and the opposition ignore this Court's prior rulings.

The fundamental premise of Plaintiffs' opposition—that they "have alleged and are here prepared to prove at trial that legally-owned (grandfathered) LCMs have not been involved in California mass shootings since the original ban was enacted in 2000," Pls.' Opp'n to Defs.' Mot. to Dismiss TAC ("Opp'n") at 9:5-8—has already been rejected by this Court.  *See* PI Order at 10:8-17.  Under intermediate scrutiny, even if "there is no evidence that any [public mass shootings in California] involved grandfathered [LCMs]," California's LCM possession ban is constitutional.  *Id.* at 10:10-11.  This Court has held that, even assuming the truth of Plaintiffs' allegations, California's LCM possession ban satisfies intermediate scrutiny under the Second Amendment, is not a taking of private property for public use requiring just compensation, is not vague or overbroad, and does not violate the Equal Protection Clause.  The Court should do so again and dismiss the TAC without leave to amend.

# ARGUMENT

## I.   PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE CLAIM FOR RELIEF UNDER THE SECOND AMENDMENT.

As the Court has held, Plaintiffs' Second Amendment claim must fail as a matter of law.  *See* MTD Order at 9:21-10:5.  Under the Ninth Circuit's two-step analysis for Second Amendment claims, which asks (1) "whether the challenged law burdens conduct protected by the Second Amendment," and (2) if so, whether the law satisfies the applicable level of scrutiny,

1    *Fyock v. Sunnyvale*, 779 F.3d 991, 996 (9th Cir. 2015) (quoting *United States v. Chovan*,

2    735 F.3d 1127, 1136 (9th Cir. 2013)), Plaintiffs' allegations in the TAC fail to state a claim that

3    the LCM possession ban violates the Second Amendment.[1]

4        **A.**    **Intermediate Scrutiny Applies to California's LCM Possession Ban.**

5        As this Court has held, because "the prohibition of . . . large-capacity magazines does not

6    effectively disarm individuals or substantially affect their ability to defend themselves,"

7    intermediate scrutiny is the appropriate standard.  MTD Order at 6:5-9 (quoting *Heller v. District*

8    *of Columbia* (*Heller II*), 670 F.3d 1244, 1262 (D.C. Cir. 2011) and *Fyock*, 779 F.3d at 999); *see*

9    *also id.* at 6:19-22 ("[V]irtually every other court to examine large capacity magazine bans has

10   found that intermediate scrutiny is appropriate, assuming these magazines are protected by the

11   Second Amendment.").  Plaintiffs' arguments to the contrary, attempting to revisit this question,

12   are unavailing.

13       ***First***, Plaintiffs wrongly contend that California Penal Code section 32310[2] "amounts to a

14   prohibition on a significant category of firearms forbidden under *Heller* as a matter of law."

15   Opp'n at 11:24-25; *see also id.* at 9:14-16:16.  What is "forbidden" under *Heller* is regulation that

16   amounts to a complete ban on the possession of handguns, which the Court characterized as the

17   "the quintessential self-defense weapon."  *District of Columbia v. Heller*, 554 U.S. 570, 629

18   (2008).  Section 32310 does not ban any category of firearms nor does it ban the majority of

19   ammunition magazines that an individual may possess.  Section 32310 merely "restricts

20   possession of only a subset of magazines that are over a certain capacity."  MTD Order at 6:15-17

21   (quoting *Fyock*, 779 F.3d at 999); *accord* PI Order at 6:23-26.  Even if magazines are an integral

22   part of firearms, *see* TAC ¶ 32, California law does not prohibit all magazines and, thus, "does

23   not prevent residents of California from defending themselves using magazines capable of

24   holding no more than ten rounds, and handguns compatible with these [10-round] magazines,"

25           [1] This Court may assume, for purposes of this motion, that the LCM possession ban
     implicates the Second Amendment, because it is constitutional under intermediate scrutiny.  *See*
26   *Bauer v. Becerra*, 858 F.3d 1216, 1221 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 982 (2018);
     *Silvester v. Harris*, 843 F.3d 816, 826-27 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 945 (2018).

27           [2] All subsequent statutory references are to the California Penal Code, unless otherwise
28   noted.

MTD Order at 7 n.4.  Therefore, California's LCM possession ban is not subject to "categorical invalidation" under *Heller*, and remains subject to intermediate scrutiny.  *See Fyock*, 779 F.3d at 999 (stating that municipal ban on LCMs "is simply not as sweeping as the complete handgun ban at issue in *Heller* and does not warrant a finding that it cannot survive constitutional scrutiny of any level"); *S.F. Veteran Police Officers v. City & Cty. of San Francisco*, 18 F. Supp. 3d 997, 1002 (N.D. Cal. 2014) ("Given that the San Francisco rule [banning possession of LCMs] is not a total ban on self-defense at home or in public, there is no occasion whatsoever to apply the 'categorical' prohibition advanced by plaintiffs, even if such a 'categorical' test had ever been adopted by our appellate courts (which has not occurred).").

　　　　**Second**, in a related point, Plaintiffs also argue that California's LCM possession ban is categorically invalid, as was the handgun ban in *Heller*, due to "tradition" and the "common use" of LCMs.  Opp'n at 13:4-16:16.  These arguments, however, conflate the Supreme Court's discussion in *Heller* of "common use," which bears on whether conduct receives any Second Amendment protection at all, *see Heller*, 554 U.S. at 628-29, with the application of traditional levels of scrutiny to regulation of protected conduct.  These are distinct inquires.  *See Chovan*, 735 F.3d at 1136 (adopting the two-step Second Amendment inquiry).  The cases cited by Plaintiffs noted that LCMs are in common use at the first step of the analysis, but then proceeded to uphold the challenged laws at the second step under intermediate scrutiny.  *See* Opp'n at 14:18-15:9 (citing cases); *see also Heller II*, 670 F.3d at 1261-32;[3] *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1276-81 (N.D. Cal. 2014).  And that is precisely how this Court proceeded in evaluating Plaintiffs' Second Amended Complaint.  *See* MTD Order at 5:7-11 (holding that "plaintiffs have alleged that California's ban on large capacity magazines burdens conduct protected by the Second

---

　　　　[3] Notably, the D.C. Circuit in *Heller II* clarified that "we cannot be certain whether these weapons are commonly used or are useful specifically for self-defense or hunting and therefore whether the prohibitions of certain semi-automatic rifles and magazines holding more than ten rounds meaningfully affect the right to keep and bear arms."  *Heller II*, 670 F.3d at 1261.  The court merely assumed that the challenged prohibitions implicated the Second Amendment because they satisfied intermediate scrutiny.  *Id.*

3

Amendment").  That determination, however, did not save their Second Amendment claim from dismissal at the second step of the analysis.  *Id.* at 9:27-10:5.

*Third*, Plaintiffs erroneously contend that the application of intermediate scrutiny to any regulation of firearms would constitute the kind of "interest-balancing test" proposed by Justice Breyer in his *Heller* dissent, 554 U.S. at 689 (Breyer, J., dissenting), and rejected by the majority, *id.* at 634.  Opp'n at 16:17-22:1.  *Heller*, however, described the impermissible "interest-balancing test" as something other than the levels-of-scrutiny test commonly employed in constitutional cases.  *See Heller*, 554 U.S. at 634 (noting that Justice Breyer "proposes . . . none of the traditionally expressed levels (strict scrutiny, intermediate scrutiny, rational basis), but rather a judge-empowering 'interest-balancing inquiry' . . . ."); *see also Heller II*, 670 F.3d at 1265 ("If the Supreme Court truly intended to rule out any form of heightened scrutiny for all Second Amendment cases, then it surely would have said at least something to that effect."). Therefore, *Heller* does not foreclose the application of intermediate scrutiny to firearms regulations.  *See Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 197 (5th Cir. 2012) ("[B]y taking rational basis review off the table, and by faulting a dissenting opinion for proposing an interest-balancing inquiry *rather than* a traditional level of scrutiny, the [*Heller*] Court's language suggests that intermediate and strict scrutiny are on the table.").

*Fourth*, Plaintiffs also erroneously argue that, if a levels-of-scrutiny approach applies, California's LCM possession ban must be evaluated under strict scrutiny.  Opp'n at 25:13-29:5. As noted above, however, because section 32310 does not restrict the ability of individuals to use "the quintessential self-defense weapon" for purposes of defending their homes, *Heller*, 554 U.S. at 629, this Court, the Ninth Circuit, and every other court to have applied a level of scrutiny to LCM restrictions has held that intermediate scrutiny applies.  *See* MTD Order at 6:19-7:4 (citing cases); *see also Bauer*, 858 F.3d at 1222–23 (noting that the Ninth Circuit has "repeatedly applied intermediate scrutiny in [Second Amendment] cases"); *Silvester*, 843 F.3d at 823 ("There is accordingly near unanimity in the post-*Heller* case law that when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate.").  This

4

1    conclusion is entirely consistent with *Heller*, in which the Supreme Court emphasized that the

2    Second Amendment right is "not unlimited," and is not a "right to keep and carry any weapon

3    whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626;

4    *Peruta v. Cty. of San Diego*, 824 F.3d 919, 928 (9th Cir. 2016) (en banc) ("The Court in *Heller*

5    was careful to limit the scope of its holding."), *cert. denied sub nom. Peruta v. California*,

6    137 S. Ct. 1995 (2017).  While the Supreme Court declined to specify what level of scrutiny

7    should apply in Second Amendment cases, it ruled out only rational basis scrutiny, *see Heller*,

8    554 U.S. at 628 & n.27, "thus signaling that courts must at least apply intermediate scrutiny,"

9    *Silvester*, 843 F.3d at 820 (citation omitted).  Plaintiffs' allegations in the TAC do not undermine

10   the conclusion that intermediate scrutiny applies to California's LCM possession ban as a matter

11   of law.  *See* MTD Order at 7:2-4.

12        **B.    California's LCM Possession Ban Satisfies Intermediate Scrutiny.**

13        In addition to arguing that intermediate scrutiny should not apply, Plaintiffs contend that the

14   courts applying intermediate scrutiny, including this Court, are doing so incorrectly.  *See* Opp'n

15   at 24:18-25:12.  Intermediate scrutiny requires the government to demonstrate that (1) its

16   objective in enacting a firearms regulation is significant, substantial, or important, and (2) there is

17   a "reasonable fit" between the regulation and the asserted objective.  *Chovan*, 735 F.3d at 1139.

18   Intermediate scrutiny does not require the fit between the challenged regulation and the stated

19   objective to be "perfect," *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir. 2018), *petition for cert.*

20   *docketed sub nom. Pena v. Horan*, No. 18-843 (U.S. Jan. 3, 2019), nor does it require that the

21   regulation be the least restrictive means of serving the interest, *see Jackson v. City & Cnty. of San*

22   *Francisco*, 746 F.3d 953, 969 (9th Cir. 2014).

23        Where a regulation does not severely burden the core Second Amendment right,

24   intermediate scrutiny affords governments "a reasonable opportunity to experiment with solutions

25   to admittedly serious problems." *Jackson*, 746 F.3d at 969-70 (quoting *City of Renton v. Playtime*

26   *Theatres, Inc.*, 475 U.S. 41, 52 (1986)).  Where governments engage in such experimentation,

27   under intermediate scrutiny, courts "afford substantial deference to the predictive judgments of

28   [the legislature]." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997).  Even if Plaintiffs

5

1   could introduce evidence that conflicts with Defendants' evidence, "it is the legislature's job, not

2   [the courts'], to weigh conflicting evidence and make policy judgments."  MTD Order at 8:1-3

3   (quoting *Kolbe v. Hogan*, 849 F.3d 114, 140 (4th Cir. 2017) (en banc)).  Deferential review is

4   particularly appropriate "[i]n the context of firearm regulation" because "the legislature is 'far

5   better equipped than the judiciary' to make sensitive public policy judgments (within

6   constitutional limits) concerning the dangers in carrying firearms and the manner to combat those

7   risks." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (quoting *Turner Broad.*

8   *Sys., Inc. v. FCC* (*Turner I*), 512 U.S. 622, 665 (1994) (plurality)).  Therefore, the judiciary's

9   narrow role under intermediate scrutiny is to "assure that, in formulating its judgments, [the

10  government] has drawn reasonable inferences based on substantial evidence." *Turner I*, 512 U.S.

11  at 666.  That "evidence need only 'fairly support[]' [the government's] conclusions." *Pena*,

12  898 F.3d at 982 (quoting *Jackson*, 746 F.3d at 969).

13          Plaintiffs contend that the intermediate-scrutiny approach employed by the courts, and

14  adopted by this Court, would lead to a "slippery-slope" in which "States could (and *would*, in

15  places like California) eventually succeed in banning everything except *single* round capacity

16  firearms."  Opp'n at 22:16-19.  Such slippery-slope concerns do not save Plaintiffs' Second

17  Amendment claim from dismissal because, under Article III of the U.S. Constitution, the courts

18  focus on the constitutionality of the law being challenged, not possible future extensions that may

19  pose constitutional problems. *See Chafin v. Chafin*, 568 U.S. 165, 171 (2013) (noting that Article

20  III limits jurisdiction to actual "cases and controversies" and that "[f]ederal courts may not . . .

21  give 'opinion[s] advising what the law would be upon a hypothetical state of facts" (citations

22  omitted)); *Martin v. Hunter's Lessee*, 14 U.S. 304, 345 (1816) ("It is always a doubtful course, to

23  argue against the use or existence of a power, from the possibility of its abuse.").  In any event,

24  the Court's two-step approach for selecting an appropriate level of scrutiny can address such

25  slippery-slope concerns in future cases, because strict scrutiny may apply if some future capacity

26  restriction goes too far and constitutes a severe burden on the core Second Amendment right. *See*

27  *Silvester*, 843 F.3d at 821 ("A law that implicates the core of the Second Amendment right and

28  severely burdens that right warrants strict scrutiny." (citing *Chovan*, 735 F.3d at 1138)).

                                                    6

As this Court has determined, California's LCM possession ban satisfies intermediate scrutiny, as that standard has actually been applied by the Ninth Circuit and other courts. *See* MTD Order at 8:4-10:5. "One stated objective of California's large capacity magazine ban is to reduce the incidence and harm of mass shootings," and this Court has observed that "[t]here can be no serious argument that this is not a substantial government interest, especially in light of the mass shootings involving large capacity magazines, including the 2012 Aurora movie theater shooting and the 2012 Sandy Hook school shooting, which were discussed in Proposition 63." *Id.* at 8:4-12. Plaintiffs do not dispute the importance of this government interest. Rather, Plaintiffs claim that the LCM possession ban lacks a reasonable fit to that objective because, in their view, Defendants have the burden of demonstrating "that the ban *will* reduce the incidence or lethality of mass shootings." Opp'n at 22:10-14 (emphasis added). That, however, is not Defendants' burden under intermediate scrutiny. Defendants need only show that the LCM possession ban "promotes a 'substantial government interest that would be achieved less effectively absent the regulation.'" *Fyock*, 779 F.3d at 1000 (citation omitted). "The test is not a strict one." *Silvester*, 843 F.3d at 827. Here, the people have "drawn [a] reasonable inference" that LCMs pose a significant public safety risk, even those that have been grandfathered under the prior law, "based on substantial evidence." *See Turner I*, 512 U.S. at 666. This Court has found a reasonable fit between the LCM possession ban and the State's admittedly important interests based on the prevalence of LCMs in public mass shootings, which were mentioned in Proposition 63 itself. MTD Order at 8:7-12.[4]

This Court also cited "multiple courts [that] have found a reasonable fit between similar bans with similar stated objectives." MTD Order at 8:13-9:12 (citing *Kolbe*, 849 F.3d at 139-41; *Fyock*, 779 F.3d at 1000-01; *NYSRPA*, 804 F.3d at 263-64; *Heller II*, 670 F.3d at 1262-64; and

---

[4] While Plaintiffs dispute that "LCMs 'are disproportionately used in crime,'" Opp'n at 7:4-5, courts upholding LCM restrictions have made that observation. *See N.Y. State Rifle & Pistol Ass'n v. Cuomo* (*NYSRPA*), 804 F.3d 242, 263 (2d Cir. 2015) ("Large-capacity magazines are disproportionately used in mass shootings, like the one in Newton, in which the shooter used multiple large-capacity magazines to fire 154 rounds in less than five minutes."); *Kolbe*, 849 F.3d at 126-27 (citing "[o]ne study of sixty-two mass shootings between 1982 and 2012" that "found that the perpetrators were armed with assault rifles in 21% of the massacres and with large-capacity magazines in 50% or more").

1  *S.F. Veteran Police Officers Ass'n v. City & County of San Francisco*, 18 F. Supp. 3d at

2  1003-04).  Under intermediate scrutiny, the Court may rely on "studies in the record or *cited in*

3  *pertinent case law*." *Fyock*, 779 F.3d at 1000 (emphasis added).  As observed by the most recent

4  federal circuit court to uphold LCM restrictions under intermediate scrutiny, "LCMs have been

5  used in numerous mass shootings" and their use in such shootings "results in increased fatalities

6  and injuries." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General N.J.* (*ANJRPC*), 910

7  F.3d 106, 112 (3d Cir. 2018).  It is a matter of common sense that LCMs enable a shooter to fire

8  more rounds in a given period of time than smaller magazines, which "gives individuals much

9  less opportunity to either escape or to try to fight back or for police to intervene." *Id.*  The Court

10  is permitted to credit such common-sense rationales proffered by Defendants in defending the

11  State's LCM restrictions.  *See Silvester*, 843 F.3d at 828; *see also Stimmel v. Sessions*, 879 F.3d

12  198, 207-08 (6th Cir. 2018) (noting that "the government may 'rely on a wide range of sources,

13  including legislative history, empirical evidence, case law, *and even common sense*' in

14  discharging its burden" under intermediate scrutiny (emphasis added)).

15      In response to this Court's dismissal of the Second Amended Complaint, Plaintiffs claim

16  that the "amendments [in the TAC] directly allege, [and] make it clear that they intend to prove

17  and can prove, the ultimate fact that the LCM ban *would not* reduce the incidence or lethality of

18  mass shootings."  Opp'n at 8:13-15 (emphasis added).  These are not new allegations.  This Court

19  has already concluded that California's LCM possession ban satisfies intermediate scrutiny,

20  "notwithstanding plaintiffs' allegations that the ban will not in fact reduce the incidence and harm

21  of mass shootings."  MTD Order at 9:21-22.  Moreover, the various arguments that Plaintiffs

22  make in support of their allegation are all unavailing.   First, Plaintiffs state that the TAC

23  "clarifies" that the expressed purpose of California's LCM possession ban is "the supposed

24  prevention of mass shootings, and in likewise calling the grandfathered possession exemption a

25  'loophole,'" Opp'n at 8:15-17, but it is unclear how that clarification helps Plaintiffs state a claim.

26  If anything, the stated purpose of the LCM possession ban in Proposition 63—"to reduce the

27  incidence and harm of mass shootings," MTD Order at 8:4-6—demonstrates that the people

28  enacted the measure to further important government interests.  Second, Plaintiffs claim that that

8

1    TAC alleges that "[grandfathered] LCMs have not been used in mass shootings in California

2    since the prohibition was enacted," as was "stated and discussed at length in connection with

3    [Plaintiffs'] motion for preliminary injunction." Opp'n at 8:17-19.  But the Court, in denying

4    Plaintiffs' motion for a preliminary injunction, held that Defendants did not need to show that any

5    prior mass shootings involved grandfathered LCMs to justify the LCM possession ban under

6    intermediate scrutiny.  *See* PI Order at 10:8-17.  Finally, Plaintiffs state the TAC "clarif[ies] their

7    assertion that actual intermediate scrutiny, to the extent that it must be applied, requires the State

8    to prove a reasonable fit between the law and the substantial objective that it ostensibly advances,

9    and that the State has failed to carry this burden." Opp'n at 9:1-4.  Those allegations, however,

10   are legal assertions that are not entitled to any presumption of truth on this motion.  *See Ashcroft*

11   *v. Iqbal*, 556 U.S. 662, 678 (2009).[5]

12        Since the dismissal of the Second Amended Complaint, two federal courts have joined the

13   growing consensus that 10-round LCM restrictions are constitutional.  Plaintiffs contend that

14   *Worman v. Healey*, 293 F. Supp. 3d 251 (D. Mass. 2018), is distinguishable because the plaintiffs

15   in that case "challenged merely an 'enforcement notice'" that "presented no demonstrable threat

16   of actual enforcement." Opp'n at 25 n.8.  While Plaintiffs are correct that Count Two in *Worman*

17   challenged the enforcement notice, and was rejected by the court on ripeness grounds, the court

18   also ruled in favor of the state on Count One, which "challenge[d] the constitutionality of the Act

19   itself" under the Second Amendment.  *Worman*, 293 F. Supp. 3d at 260.  Plaintiffs also attempt to

20   distinguish the Third Circuit's recent opinion upholding New Jersey's revised LCM restrictions

21   by noting that the New Jersey law contained an exception that is not present in California's LCM

22   possession ban.  Opp'n at 25 n.8.  That exception, however, had no bearing on the court's holding

23   _____

24        [5] Plaintiffs also rely heavily on the order granting a preliminary injunction in *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1139-40 (S.D. Cal. 2017), to claim that this Court cannot dismiss

25   the TAC.  *See* Opp'n at 8 n.2, 24:11-17, 47:22-48:3.  This Court was fully apprised of the *Duncan* decision when it dismissed Plaintiffs' Second Amended Complaint, *see* MTD Order at 4 n.2, and

26   in any case, this Court is free to exercise independent judgment in assessing the sufficiency of Plaintiffs' allegations in this case.  It is axiomatic that while "[a] district judge may not

27   respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court," *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001), a district judge may

28   certainly disagree with another district judge in the absence of binding authority.

9

1    that New Jersey's LCM restrictions satisfied intermediate scrutiny under the Second Amendment.

2    *See ANJRPC*, 910 F.3d at 115-24 (discussing Second Amendment claim).

3         In support of their claims, Plaintiffs also seize on the Supreme Court's recent grant of a

4    petition for writ of certiorari in *New York State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d

5    45 (2d Cir. 2018), *cert. granted*, __ S. Ct. __, 2019 WL 271961 (U.S. Jan. 22, 2019)

6    (No. 18-280).  Opp'n at 20:22-21:1.  But the Supreme Court's decision to grant certiorari in

7    another case has no bearing on whether Plaintiffs have stated a claim in this case, which is

8    governed by the prevailing legal standard adopted by the Ninth Circuit.  Notwithstanding the

9    grant of certiorari, this Court must apply intermediate scrutiny in accordance with Ninth Circuit

10   precedent "until the Supreme Court rules otherwise."  *United States v. Post*, 607 F.2d 847,

11   851 n.5 (9th Cir. 1979).  Moreover, the *New York State Rifle & Pistol Ass'n* case is entirely

12   inapposite; it concerns an ordinance prohibiting individuals from removing their handguns from

13   the address listed on a "premises license," unless the individual is transporting the handgun to an

14   authorized shooting range, and only if the handgun is unloaded, in a locked container, and stored

15   separately from ammunition.  *See N.Y. State Rifle & Pistol Ass'n*, 883 F.3d at 51-52.  Such an

16   ordinance bears no resemblance to the LCM restrictions at issue in this case.

17        **C.    Plaintiffs' Second Amendment Claim Is Subject to Dismissal.**

18        Plaintiffs argue that because Defendants have the "evidentiary burden" under intermediate

19   scrutiny, this Court cannot dismiss their Second Amendment claim at the pleadings stage.  *See*

20   Opp'n at 22:2-25:12.  It is Plaintiffs' initial burden, however, to plead a *plausible* cause of action,

21   even in the context of a Second Amendment claim, and courts can and do determine whether a

22   statute passes intermediate scrutiny at the pleadings stage.  Where, as here, it is clear from the

23   complaint—and the overwhelming weight of the case law—that a statute is reasonably related to

24   a sufficiently important governmental interest, dismissal is warranted.  *See Mahoney v. Sessions*,

25   871 F.3d 873, 883 (9th Cir. 2017) (affirming dismissal of Second Amendment claim where policy

26   "survives intermediate scrutiny and is, therefore, constitutional under the Second Amendment"),

27   *cert. denied*, 138 S. Ct. 1441 (2018); *Wilson v. Lynch*, 835 F.3d 1083, 1094-95 (9th Cir. 2016)

28   (same); *Hall v. Garcia*, No. C 10-03799 RS, 2011 WL 995933, at *5 (N.D. Cal. Mar. 17, 2011)

10

1  (dismissing Second Amendment claim where official action "bears a substantial relationship to

2  [an] important objective" and thus does not violate the Second Amendment); *see also Bezet v.*

3  *United States*, 276 F. Supp. 3d 576, 612-13 (E.D. La. 2017) (granting motion to dismiss Second

4  Amendment claim where "the 'practical impact' and burden of the laws on the core purposes and

5  rights of the Second Amendment are minimal, and the laws are reasonably fitted to the

6  Government's purpose"); *Stimmel*, 879 F.3d at 207-11 (affirming dismissal of Second

7  Amendment challenge to domestic violence misdemeanant possession ban, a question of first

8  impression for the Sixth Circuit, based on a finding that the law satisfied intermediate scrutiny

9  "[i]n accordance with the unanimous view of those circuits that have addressed the question").

10  Because California's LCM possession ban satisfies intermediate scrutiny as a matter of law, the

11  Court should dismiss Count I of the TAC.

12  **II.    PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE TAKINGS CLAIM.**

13       Plaintiffs' takings claims under the United States and the California Constitutions also fail

14  as a matter of law.  There are no plausible allegations in the TAC that California's LCM

15  possession ban causes a physical invasion or occupation of private property by the government or

16  its agents.  *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982).  The

17  TAC is also devoid of plausible allegations that the challenged statutes, on their face, "completely

18  deprive an owner of '*all* economically beneficial us[e]' of her property," *Lingle v. Chevron*

19  *U.S.A., Inc.*, 544 U.S. 528, 537 (2005) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003,

20  1019 (1992)), as would be required to state a regulatory takings claim.  The TAC thus does not

21  establish that section 32310 effects a per se physical or regulatory taking.[6]

22       In light of the various compliance options, in addition to the surrender of LCMs to a law

23  enforcement agency, Plaintiffs have failed to state a plausible per se or regulatory takings claim.

24  *See* MTD Order at 12:2-8.[7]  Plaintiffs insist that California's LCM possession ban is a

25          [6] Section 32310 also does not "damage" property within the meaning of the Takings

26  Clause of the California Constitution.  *See Customer Co. v. City of Sacramento*, 10 Cal. 4th 368, 379-80 (1995); MTD Order at 12 n.7.

27          [7] In addition, California's LCM possession ban is not a taking because it was a proper

28  exercise of the State's police power.  *See* Defs.' Mem. of Points & Auth. in Supp. of Mot. to

1   "paradigmatic taking" because section 32310(d) "*provides* for the direct physical appropriation of

2   tangible property by the government through forced physical surrender." Opp'n at 31:4, 32:5-13.

3   Even if Plaintiffs are correct that "the only economically viable option for the vast majority of

4   California pre-ban magazine holders to remain in compliance with the law" is to surrender an

5   LCM to a law enforcement agency for destruction in accordance with section 32310(d)(3), Opp'n

6   at 22:21-22, such LCM owners still have the option to modify their magazines under section

7   16740(a). As this Court has already determined, the option to modify an LCM allows owners of

8   grandfathered LCMs to comply with the section 32310(c) while retaining ownership of their

9   magazines. MTD Order at 11:20-12:6. This option does not "destroy[] the functionality" of their

10  magazines, "given that plaintiffs do not allege that owners of these magazines will not be able to

11  use their modified magazines, which would then simply have a lower capacity than before the

12  modification." *Id.* at 11:27-12:2.

13      Plaintiffs rely on *ANJRPC* to argue that "California's ban does *not* expressly provide for

14  LCM owners to 'modify their LCMs "to accept ten rounds or less" or to "register their firearms

15  with LCMs that cannot be modified to accommodate ten rounds or less,"['] like the New Jersey

16  ban at issue in the *ANJRPC* case." Opp'n at 32:13-16. This argument suggests that California's

17  LCM possession ban constitutes a taking because the various compliance options, including

18  modification of an LCM, are not included in the enumerated options listed in section 32310(d).

19  However, contrary to Plaintiffs' claim that the "New Jersey ban . . . specifically carves out such

20  exceptions within the text of the ban itself," *id.* at 32:16-17, the exceptions to New Jersey's LCM

21  ban are contained in different statutes than the ban itself, *see ANJRPC*, 910 F.3d at 110-11; *see*

22  *also* N.J. Stat. Ann. §§ 2C:39-3(j) (banning LCMs), 2C:39-19(b) (exempting LCMs that have

23

24  Dismiss TAC ("Mem.") at 18 n.13; PI Order at 13:28-14:10. Plaintiffs' suggestion that the
    Supreme Court's decision in *Heller*, 544 U.S. 570, rendered the regulation of LCMs an invalid

25  exercise of police power, Opp'n at 38:16-40:12, is unfounded. *Heller* recognized a core Second
    Amendment right of individuals to possess an operable handgun in the home for self-defense, but

26  affirmed the longstanding police power of the states to enact reasonable gun regulations. *Heller*,
    554 U.S. at 626-29; *McDonald v. City of Chi.*, 561 U.S. 742, 785 (2010) (plurality). *Heller* "said

27  nothing which could be interpreted as suggesting that a city or state's ban of a previously lawful
    firearm or firearm component would require compensation to existing owners of those firearms or

28  components." PI Order at 14:3-10 (citing *Heller*, 554 U.S. at 626-27).

12

1   been permanently modified to accept ten rounds or less), 2C:39-20(a)(1), (2) (exempting

2   registered firearms with a fixed LCM that cannot be modified or that can only accept a detachable

3   LCM that cannot be modified).  Thus, even New Jersey's law fails to satisfy Plaintiffs' exacting

4   standards.  Here, in addition to the three options listed in section 32310(d), California's LCM

5   restrictions *do* expressly provide for LCM owners to comply with section 32310(c) if they (1)

6   permanently modify the magazine to accept no more than ten rounds, which would then remove

7   the magazine from the Penal Code's definition of a "large-capacity magazine," § 16740(a), or (2)

8   give an LCM to a gunsmith "for the purposes of maintenance, repair, or *modification* of that

9   large-capacity magazine," § 32425 (emphasis added).  While Plaintiffs may wish for the Court to

10  consider only the exceptions listed in section 32310(d), the various provisions of California's

11  LCM restrictions should be read together.  *See Coal. for Sustainable Delta v. John McCamman*,

12  725 F. Supp. 2d 1162, 1199 (E.D. Cal. 2010) ("Courts have 'a duty to construe statutes

13  harmoniously' whenever possible." (citation omitted)).

14       Even if New Jersey's LCM restrictions were "less burdensome than the ban at issue here,"

15  Opp'n at 25 n.8 (citing *ANJRPC*, 910 F.3d at 111), New Jersey's registration option appears to be

16  an *additional* reason why New Jersey's LCM restrictions do not effect a taking.  *See ANJRPC*,

17  910 F.3d at 125 ("A gun owner may *also* retain a firearm [that has or requires an LCM that

18  cannot be modified] so long as the firearm is registered." (emphasis added)).[8]  In fact, the Third

19  Circuit favorably cited this Court's order dismissing Plaintiffs' takings claim, even though

20  California does not include a similar exception.  *See id.* at 124 ("With these alternatives, '[t]he

21  ban does not require that owners turn over their magazines to law enforcement.'" (quoting *Wiese*

22  *v. Becerra*, 306 F. Supp. 3d 1190, 1198 (E.D. Cal. 2018)))); *see also id.* at 124-25.  In any event,

23  none of the individual Plaintiffs are alleged to own a firearm with a fixed LCM that cannot be

24

25       [8] It should be noted that New Jersey's registration exception is for the firearm, not the
magazine.  *See* N.J. Stat. Ann. § 2C:39-20 (permitting registration of "a *firearm* with a fixed
magazine capacity holding up to 15 rounds which is incapable of being modified to accommodate
26  10 or less rounds" and registration of "a *firearm* which only accepts a detachable magazine with a
capacity of up to 15 rounds which is incapable of being modified to accommodate 10 or less
27  rounds" (emphasis added)).  Thus, it does not appear that New Jersey allows an LCM owner to
register and retain a detachable LCM merely because it cannot be modified; the owner would
28  have to register a firearm that requires such an LCM to function.

13

1    modified or a firearm that only accepts a detachable LCM that cannot be modified.  *See*

2    TAC ¶¶ 8-16.  Because all owners of grandfathered LCMs have the options to "sell their

3    magazines to licensed dealers or remove them from the state," in addition to modification or

4    surrender, Plaintiffs cannot "plausibly allege that the ban operates as government appropriation of

5    private property for government or public use," MTD Order at 12:2-6, nor can they "plausibly

6    allege[] that the large capacity magazine ban completely deprives them of all economically

7    beneficial use of their property," *id.* at 12:14-13:5.  Accordingly, the TAC fails to state a plausible

8    per se or regulatory takings claim.

9         To the extent that Plaintiffs are also attempting to allege a "partial regulatory" taking

10   challenge subject to the ad hoc factual analysis set forth in *Penn Central Transportation Co. v.*

11   *City of New York* (*Penn Central*), 438 U.S. 104, 124 (1978), Plaintiffs have failed to state a

12   plausible claim for relief.  *See* MTD Order at 13 n.9.  The TAC does not allege facts

13   demonstrating that section 32310 is a taking in light of (1) its economic impact on Plaintiffs;

14   (2) the extent to which it interferes with "distinct investment-backed expectations"; and (3) the

15   "character of the government action."  *Penn Central*, 438 U.S. at 124.  The TAC does not allege

16   either a sufficient loss of value caused by section 32310 nor any meaningful interference with

17   distinct investment-backed expectations in LCMs that were acquired decades ago.  *See id.* at 123;

18   *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013).  Plaintiffs argue

19   that the character of the government's action does not offset the "severe burdens" purportedly

20   caused by section 32310, asserting "there can be no substantial or legitimate justification for the

21   retroactive confiscation of large-capacity magazines that are now at least 17 years old, and in

22   many cases, even older."  Opp'n at 44:21-24.  Even overlooking that the TAC does not plausibly

23   allege that section 32310 causes "severe burdens" or lacks a "legitimate public purpose," *see*

24   *Penn Central*, 438 U.S. at 125, the stated objectives in enacting section 32310—namely, reducing

25   the incidence and harm of mass shootings—are substantial government interests.  "Given the

26   alternatives for disposal or modification, the state's substantial interest, and the [TAC's] absence

27   of any plausible facts that the ban interferes with plaintiffs' distinct investment-backed

28

                                                    14

1   expectations," Plaintiffs have also failed to state a partial regulatory takings claim under *Penn*

2   *Central*.  MTD Order 13 n.9.  The Court should dismiss Count II of the TAC.

3   **III.    PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE VAGUENESS CLAIM.**

4          As with most of Plaintiffs' opposition, the arguments raised in defense of their vagueness

5   claim are nearly identical to those that this Court has already rejected.  *See* MTD Order

6   at 18:23-26.  These arguments do not overcome the fundamental principle that "a party

7   challenging the facial validity of an ordinance on vagueness grounds outside the domain of the

8   First Amendment must demonstrate that 'the enactment is impermissibly vague in all of its

9   applications.'"  *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir.

10   2003).  Plaintiffs do not allege or argue that section 32310 is unconstitutional in *all of its*

11   *applications*.[9]

12          With no inherent ambiguity in the text of the challenged statutes that could plausibly give

13   rise to a vagueness claim, Plaintiffs principally rest their claim on the existence of two chaptered

14   versions of section 32406, enacted by SB 1446 and Proposition 63, respectively, which contain

15   some different exceptions to section 32310.  Plaintiffs devote a significant portion of their

16   opposition to their argument that the version of section 32406 enacted by SB 1446 is still

17   operative notwithstanding the later enactment of Proposition 63 and its more limited version of

18   section 32406.  *See* Opp'n at 48:4-51:9.  Plaintiffs again argue that the rule that a later-enacted

19   law prevails over an earlier, inconsistent law is a rebuttable presumption.  *Id.* at 48:17-49:1.  And

20   yet the TAC does not allege any facts to rebut that presumption.  *See* Cal. Gov. Code § 9605 ("In

21   the absence of any express provision to the contrary in the statute which is enacted last, it shall be

22   *conclusively presumed* that the statute which is enacted last is intended to prevail over statutes

23   ───────────────────

24          [9] Plaintiffs claim that "many citizens will be left not even knowing whether their
    particular magazines fall within the LCM ban in the first place," pointing to a magazine owned by
    one of the individual Plaintiffs that holds no more than 10 rounds of a particular caliber of

25   ammunition, even though the magazine "*could* hold more than 10 rounds of a *different* caliber
    ammunition."  Opp'n at 52:7-18.  If the magazine in this example is capable of accepting more

26   than 10 rounds of ammunition, it qualifies as an LCM under section 16740.  *See* MTD Order at
    14 n.13.  And even if Plaintiffs can allege that there are some examples in which the statute's

27   application is unclear, "uncertainty at a statute's margins will not warrant facial invalidation if it
    is clear what the statute proscribes 'in the vast majority of its intended applications.'"  *Cal.*

28   *Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001).

15

1   that are enacted earlier at the same session . . . ." (emphasis added)); *People v. Bustamante*,

2   57 Cal. App. 4th 693, 701 (2d Dist. 1997).  As this Court has found, Plaintiffs' "preamendment"

3   argument is not persuasive .because "neither the text nor the legislative history of SB 1446

4   discussed anything about preamending Proposition 63."  MTD Order at 17 n.15.

5       Plaintiffs again point to the Finding of Emergency that the Department of Justice withdrew

6   as evidence that SB 1446 preamended Proposition 63.  Opp'n at 49:13-19.  This argument,

7   however, did not save the vagueness claim in the Second Amended Complaint from dismissal.

8   MTD Order at 17 n.15.  If there were any question as to which version would govern after the

9   enactment of Proposition 63 (there is not), the Official Voter Information Guide explained to

10  voters before the November 2016 General Election that SB 1446, which at that time was set to go

11  into effect on January 1, 2017, will exempt various individuals from the LCM possession ban and

12  that "Proposition 63 *eliminates* several of these exemptions, as well as *increases* the maximum

13  penalty for possessing [LCMs]."  Defs.' Req. for Judicial Notice, Ex. 2 at 5 (Prop. 63, Analysis

14  by the Legis. Analyst) (emphasis added) (Dkt. No. 95-3).  Plaintiffs contend that the Voter

15  Information Guide's "description of the SB 1446 version in terms of its *future* application . . .

16  indicates that the initiative backers also contemplated a simultaneous operation of these laws."

17  Opp'n at 51 n.16.  This argument is refuted by the text of the Voter Information Guide itself,

18  which states that Proposition 63 *eliminates* some of the exemptions in the SB 1446 version (that

19  was going to go into effect at the time the Voter Guide was distributed) and that Proposition 63

20  *increases* penalties for possessing LCMs.  RJN, Ex. at 5.  There is no way that these statements

21  support Plaintiffs' argument that the version of section 32406 enacted by Proposition 63 was

22  intended to operate simultaneously with the SB 1446 version.

23      Plaintiffs also argue that SB 1446 remains in effect notwithstanding the passage of

24  Proposition 63 because, in their view, the SB 1446 version is more preferable.  Plaintiffs claim

25  that "[o]ne could scarcely argue that [the exemptions in the SB 1446 version] should not exist and

26  that people in possession of LCMs under such circumstances *should* be subject to criminal

27  sanction for that possession."  Opp'n at 50:8-10.  Defendants, however, are not arguing whether

28  the SB 1446 exemptions "should" or "should not" exist; Defendants are arguing that any

16

1  ambiguity as to whether the exemptions preferred by Plaintiffs *do exist* and survive the enactment

2  of Proposition 63 simply does not give rise to a vagueness claim.  Such an ambiguity would give

3  rise to a question of statutory construction and implied repeal rather than a vagueness claim.  *See*

4  *Karlin v. Foust*, 188 F.3d 446, 469 (7th Cir. 1999); *see also* MTD Order at 15:5-10; PI Order at

5  19:9-14.  Plaintiffs again ignore this holding in *Karlin*, and instead quote an innocuous passage

6  from the opinion about the importance of avoiding vague laws that may confuse the public or lead

7  to arbitrary or discriminatory enforcement.  Opp'n at 46:5-26.[10]  Far from being "palpable,"

8  Opp'n at 53:2, Plaintiffs' vagueness allegations again fail to state a claim.  The Court should

9  dismiss the vagueness claims asserted in Counts III and IV of the TAC.

10  **IV.   PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE OVERBREADTH CLAIM.**

11       In support of their overbreadth claim, Plaintiffs characterize Defendants' arguments as

12  "conclusory" and "surface-level," and assert that Defendants have "made no effort to meet any of

13  the specific allegations in this count."  Opp'n at 53:22-24, 54:1-2.  But Plaintiffs fail to appreciate

14  that Defendants' arguments were based on this Court's prior orders and legal analysis, finding

15  Plaintiffs' overbreadth allegations to be woefully insufficient.  *See* Mem. at 21:5-7 (citing MTD

16  Order at 19:6-19 and PI Order at 22:1-10); *id.* at 21:24-22:2 (quoting MTD Order at 20:4-6).

17  Even if an overbreadth claim could be cognizable here, *see* MTD Order at 19:7-9 & n.16 ("[T]he

18  court is unaware of any cases applying the overbreadth doctrine in the Second Amendment

19  context . . . ."), Plaintiffs do not allege or explain how the challenged statutes "improperly sweep

20  up 'a substantial amount of constitutionally protected conduct' under the guise of a legislative

21  goal that 'does not match the text of the statutes.'"  Opp'n at 53:14-17 (quoting *Powell's Books,*

22  *Inc. v. Kroger*, 622 F.3d 1202, 1207 (9th Cir. 2010) (internal quotation marks and citation

23

24       [10] In support of their vagueness claim, Plaintiffs again cite to the preliminary injunction
order in *Duncan v. Becerra*, arguing that the *Duncan* court's discussion about the complexity of

25  California's firearms laws somehow demonstrates that Plaintiffs have stated a vagueness claim
here.  Opp'n at 47:22-48:3 (quoting *Duncan*, 265 F. Supp. 3d at 1111).  Even though the *Duncan*

26  court prefaced its order by claiming that California law is "so vague that men of common
intelligence must necessarily guess at its meaning," *Duncan*, 265 F. Supp. 3d at 1111, that

27  statement was dicta and did not relate specifically to California's LCM restrictions or the
possession ban in particular.  In any case, this Court is not bound by that court's views on the

28  relatively complexity of California's firearms laws.  *See Hart*, 266 F.3d at 1170; *see also supra*
note 8.

1  omitted)).  Plaintiffs argue that the LCM possession "ban is unconstitutionally overbroad because,

2  as they will demonstrate at trial, the retroactive application of the LCM possession ban to current,

3  legal owners of such magazines in no way advances the stated objectives of the law," Opp'n at

4  54:16-20 (citing TAC ¶ 106), confirming that their overbreadth claim is dependent on their

5  Second Amendment claim, which fails as a matter of law.  Because Plaintiffs have failed to

6  plausibly allege that the LCM possession ban "improperly sweep[s] up 'a substantial amount of

7  constitutionally protected conduct,'" Opp'n at 53:14-17, they have failed to plead an overbreadth

8  claim.  The Court should dismiss Count IV of the TAC.

9  **V.      PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE EQUAL PROTECTION CLAIM.**

10        Plaintiffs argue that heightened scrutiny should apply to their equal protection challenge to

11  sections 32445 and 32450(a), which exempt LCMs used solely as props for motion pictures,

12  television, or video production, because the Second Amendment protects a fundamental right.

13  Opp'n at 55:9-10, 56:1-10.  Even though the Supreme Court has recognized the Second

14  Amendment as protecting a fundamental right, *McDonald*, 561 U.S. at 766-78, rational basis

15  scrutiny applies if, as here, the challenged law does not violate that right.  *See Nordyke v. King*,

16  681 F.3d 1041, 1043 n.2 (9th Cir. 2012).  Plaintiffs do not even address this Court's prior

17  determination that rational basis scrutiny applies to their equal protection claim because the LCM

18  possession ban satisfies intermediate scrutiny under the Second Amendment.  *See* MTD Order

19  at 22:9-14 (citing *Nordyke*, 681 F.3d at 1043 n.2).

20        Plaintiffs claim that "the State offers absolutely no justification whatsoever for the

21  differential treatment under [sections 32445 and 32450(a)]."  Opp'n at 56:24-25.  However, as

22  Defendants explained in their opening memorandum—citing this Court's prior order dismissing

23  the equal protection claim—"the Legislature and the electorate 'could have rationally believed

24  that [LCMs] used solely as props were not at risk of being used in mass shootings and that such

25  an exception would benefit an important sector of the California economy.'"  Mem. at 23:4-7

26  (quoting MTD Order at 23:8-12).  Under rational basis, it is Plaintiffs' burden, not Defendants',

27  "to negative every conceivable basis which might support" the differential treatment.  *Heller v.*

28  *Doe*, 509 U.S. 312, 320 (1993) (quotation omitted).  They have failed to do so.  The TAC fails to

plausibly allege the absence of any rational basis for the LCM-prop exceptions, and the TAC's allegations that the exceptions favor a politically powerful class of people, even if assumed to be true, fail as a matter of law under rational basis scrutiny.  *See* Mem. at 23:7-12 (citing *Gallinger v. Becerra*, 898 F.3d 1012, 1021 (9th Cir. 2018) ("Accommodating one interest group is not equivalent to intentionally harming another.")).  The Court should thus dismiss Count V of the TAC.[11]

## CONCLUSION

For the foregoing reasons, and those discussed in the opening memorandum, Defendants respectfully request that the Court dismiss the Third Amended Complaint in its entirety without leave to amend and dismiss this action with prejudice.

Dated:  February 12, 2019                    Respectfully Submitted,

                                     XAVIER BECERRA
                                     Attorney General of California
                                     MARK R. BECKINGTON
                                     Supervising Deputy Attorney General


                                     /s/ John D. Echeverria
                                     JOHN D. ECHEVERRIA
                                     Deputy Attorney General
                                     *Attorneys for Defendants*

---

[11] Because Plaintiffs have failed to adequately allege any constitutional violation for the reasons set forth above, any claim under 42 U.S.C. § 1983 should be dismissed.  *See* Mem. at 10 n.10.  Plaintiffs do not respond to this argument in their opposition.

19

# CERTIFICATE OF SERVICE

Case Name:    **William Wiese, et al.  v.**        Case No.:    **2:17-cv-00903-WBS-KJN**
             **Xavier Becerra, et al.**

I hereby certify that on <u>February 12, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>February 12, 2019</u>, at Los Angeles, California.

|   Colby Luong   |   /s/ Colby Luong   |
| :---: | :---: |
| Declarant | Signature |

SA2017106942
63132536.docx