ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
ROBERT L. MEYERHOFF
Deputy Attorney General
State Bar No. 298196
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6177
  Fax:  (916) 731-2144
  E-mail: Robert.Meyerhoff@doj.ca.gov
*Attorneys for Defendants Rob Bonta in his official
capacity as Attorney General of the State of
California and Allison Mendoza in her Official
Capacity as Director of the Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **WILLIAM WIESE, et al.,** | 2:17-cv-00903-WBS-KJN |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF COUNTER-MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **ROB BONTA, et al.,** | Date:    July 10, 2023<br>Time:    1:30 p.m.<br>Courtroom:5, 14th Floor<br>Judge:    Hon. William B. Shubb |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

Introduction ..................................................... 1

Argument ......................................................... 3

    I.    Plaintiffs Mischaracterize the Bruen Test. ........... 3

    II.   Plaintiffs' Proposed Course of Conduct Is Not Protected by the Second Amendment's Plain Text. ...... 6

        A.   LCMs Are Accessories, Not Arms, and Are Not Essential to the Operation of Any Firearm for Self-Defense. .................................... 6

        B.   LCMs Are Not Commonly Used in Self-Defense. ..... 9

    III. LCM Restrictions Fall Within the History and Tradition of Firearms Regulation. ................... 12

        A.   A More Nuanced Approach at Stage Two Is Required in this Case. ........................ 12

        B.   Defendants Have Identified Relevantly Similar Analogues as Bruen Requires ................... 15

    IV.  Judgment Should Be Entered in Defendants' Favor on Plaintiffs' Takings, Due Process, and Equal Protection Claims. ................................... 18

    V.   The Court Should Grant Defendants Leave to Conduct Discovery Pursuant to Rule 56(d) Before Granting Plaintiffs' Summary Judgment Motion. ................ 21

Conclusion ...................................................... 22

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akins v. United States*
  82 Fed. Cl. 619 (2008).......................................19

*Bevis v. City of Naperville, Illinois*
  2023 WL 2077392 (N.D. Ill. Feb. 17, 2023)............. 4, 5, 17

*Burch v. Regents of Univ. of California*
  433 F. Supp. 2d 1110 (E.D. Cal. 2006) (Shubb, J.).......11, 19

*Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*
  944 F.2d 1525 (9th Cir. 1991)................................ 8

*Defense Distributed v. Bonta*
  2022 WL 15524977 (C.D. Cal. Oct. 21, 2022)................... 7

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec. (DSSA)*
  2023 WL 2655150 (D. Del. Mar. 27, 2023)................. *passim*

*Duncan v. Bonta*
  19 F.4th 1087 (2021) (en banc)......................... *passim*

*Fesjian v. Jefferson*
  399 A.2d 861 (D.C. Ct. App. 1979)..........................19

*Fried v. Garland*
  2022 WL 16731233 (N.D. Fla. Nov. 4, 2022)...................14

*Hanson v. District of Columbia*
  2023 WL 3019777 (D.D.C. Apr. 20, 2023).............. 10, 16, 17

*Hartford v. Ferguson*
  2023 WL 3836230 (W.D. Wash. June 6, 2023)............. *passim*

*Herrera v. Raoul*
  2023 WL 3074799 (N.D. Ill. Apr. 25, 2023)..................17

*Jackson v. City & Cnty. of San Francisco*
  746 F.3d 953 (9th Cir. 2014)................................ 7

*Lingle v. Chevron U.S.A. Inc.*
  544 U.S. 528 (2005).........................................19

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lucas v. S.C. Coastal Council*
   505 U.S. 1003 (1992) ....................................... 19

*McGlinchy v. Shell Chem. Co.*
   845 F.2d 802 (9th Cir. 1988) ............................... 20

*Miller v. Garland*
   2023 WL 3692841 (E.D. Va. May 26, 2023) ..................... 7

*Nat'l Rifle Ass'n v. Bondi*
   61 F.4th 1317 (11th Cir. 2023) ................... 5, 14, 15, 16

*Nordyke v. King*
   681 F.3d 1041 (9th Cir. 2012) .............................. 21

*Ocean State Tactical, LLC v. State of Rhode Island*
   2022 WL 17721175 (D.R.I. Dec. 14, 2022) ................... 4, 7

*Oregon Firearms Fed'n, Inc. v. Brown*
   2022 WL 17454829 (D. Or. Dec. 6, 2022) ................ *passim*

*San Remo Hotel, L.P. v. City & County of San Francisco*
   27 Cal. 4th 643 (2002) ..................................... 19

*Teixeira v. Cnty. of Alameda*
   873 F.3d 670 (9th Cir. 2017) ............................... 7

*United States v. Alaniz*
   ___ F.3d ___ (9th Cir. June 13, 2023) ................. *passim*

*United States v. Bartucci*
   2023 WL 2189530 (E.D. Cal. Feb. 23, 2023) ............... 3, 14

*United States v. Jackson*
   2023 WL 2499856 (D. Md. Mar. 13, 2023) ..................... 15

*United States v. Jackson*
   622 F. Supp. 3d 1063 (W.D. Okla. 2022) ..................... 14

*United States v. Kelly*
   2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022) ............... 14

*United States v. Ryno*
   2023 WL 3736420 (D. Alaska May 31, 2023) ................. 14

Defendants' Reply ISO Counter-Motion for Summary Judgment
(Case No. 2:17-cv-00903-WBS-KJN)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Slye*
   2022 WL 9728732 (W.D. Pa. Oct. 6, 2022)......................14

*Weinberg v. Whatcom Cnty.*
   241 F.3d 746 (9th Cir. 2001)................................20

Constitutional Provisions

Second Amendment ......................................... *passim*

iv

**INTRODUCTION**

In their Opposition to Defendants' Counter-Motion for Summary Judgment, Plaintiffs argue that all magazines, no matter how large their capacity, are an integral part of modern, semiautomatic firearms. According to Plaintiffs, if the State is permitted to prohibit possession of any type of magazine, the Second Amendment's right to bear arms would be "meaningless." Opp'n at 9. If the Court were to grant Defendants' Counter-Motion, Plaintiffs seem to say, then the State "could strip away integral components of a firearm" until there was nothing left to the "Arms" protected by the Second Amendment but an unusable piece of metal. *Id.* at 5.

Plaintiffs are tilting at windmills. California Penal Code section 32310 ("Section 32310"), the law they actually challenge, does not ban all magazines. Instead, it restricts only those magazines capable of holding more than ten rounds. In their Counter-Motion, Defendants put forward evidence establishing undisputed material facts sufficient for this Court to grant summary judgment in their favor at either stage of the *Bruen* analysis. At the textual stage, Plaintiffs' proposed course of conduct (*i.e.*, the possession of LCMs) is not covered by the plain text of the Second Amendment because (a) LCMs are not weapons protected as "Arms" by the Second Amendment, nor are they accessories necessary for the use of any such firearm for self-defense, and (b) regardless, they are not commonly used (or suitable) for self-defense. In their Opposition, Plaintiffs submit no evidence to meet their burden of proof or controvert Defendants' evidence, and thus judgment should be entered at this threshold stage.[1]

At the historical analysis stage of the analysis, Plaintiffs fail to counter Defendants' evidentiary showing that Section 32310 is consistent with the Nation's tradition of weapons regulation. Defendants have submitted declarations establishing that LCMs in

---

[1] Along with their Opposition, Plaintiffs submitted a Reply to Defendants' Responses to Plaintiffs' Statement of Disputed Facts in Support of Plaintiffs' Motion for Summary Judgment [Dkt. No. 127-1]. Nothing in Local Rule 260 (governing motions for summary judgment) authorizes a party to file a reply in support of its separate statement of facts, and as such Plaintiffs' filing at Dkt. No. 127-1 should be stricken or otherwise not considered by this Court in ruling on either Plaintiffs' Motion or Defendants' Counter-Motion.

1

1   fact represent a dramatic technological change from the firearm technologies available

2   during the Founding and Reconstruction eras, Counter-Mot. at 25-32, and that Section

3   32310 addresses the unprecedented social problem of mass shootings, *id.* at 32-34.

4   Plaintiffs do not challenge either conclusion in their Opposition. As a result, this case

5   calls for *Bruen*'s more "nuanced approach" to the historical analysis*,* which requires

6   district courts to consider "comparable burdens" and "comparable justifications" in

7   assessing whether historical analogues are relevantly similar to the challenged law.

8   Consistent with the determinations of numerous other district courts evaluating a

9   historical record similar to the one presented here, the burdens imposed by Section

10  32310 are comparable to those imposed by the historical analogues identified by

11  Defendants, and those burdens are comparably justified; thus, Section 32310 fits within

12  the text, history, and tradition of the Second Amendment and is constitutional under

13  *Bruen.*

14         Judgment should be entered for Defendants on Plaintiffs' other claims as well. The

15  Opposition provides no new argument or evidence for this Court to consider on the

16  Takings claim, and thus there is no reason for this Court to abandon its prior ruling,

17  echoed in *Duncan v. Bonta*, 19 F.4th 1087 (2021) (en banc), rejecting this claim. And

18  Plaintiffs admit that their Due Process claim rises (and thus should fall) with its Takings

19  Claim. As for Plaintiffs' Equal Protection claim, California's restrictions on LCMs do not

20  violate the Second Amendment (or any other constitutional provision) and easily pass

21  rational basis review.

22         Finally, Plaintiffs argue that the Court should deny Defendants' request for

23  discovery (if the Court is inclined to enter judgment for Plaintiffs) because the Court

24  should only consider "legislative facts" submitted through historical citations and judicial

25  notice. But Plaintiffs' failure to produce evidence supporting their claims contradicts

26  *Bruen*'s command that trial courts decide Second Amendment challenges based on the

27  *evidentiary* records assembled by the parties.

28

2

1    Far from establishing that they are entitled to summary judgment, Plaintiffs'

2    Opposition (along with their Motion) reveals that they have no evidence to support their

3    claims, and none to contradict the voluminous evidentiary submissions of Defendants

4    meeting their burden on every issue of material fact. As such, Plaintiffs' Motion should be

5    denied, Defendants' Counter-Motion should be granted, and judgment should be entered

6    for Defendants.

7    **ARGUMENT**

8    **I.    PLAINTIFFS MISCHARACTERIZE THE *BRUEN* TEST.**

9    As explained in the Counter-Motion, *Bruen* sets forth a two-part test for evaluating

10   Second Amendment challenges: (1) Plaintiffs must first satisfy a threshold, plain text

11   analysis, *i.e.*, that their proposed course of conduct is covered by the text of the Second

12   Amendment; and (2) if Plaintiffs can meet that burden, then Defendants must show that

13   the challenged regulation is consistent with the Nation's historical tradition of firearm

14   regulations. Counter-Mot. at 12-13 (citing *Bruen*, 142 S. Ct. at 2129-30). Ignoring *Bruen*,

15   Plaintiffs attempt to collapse the *Bruen* test into a single issue: in their view, if the "Arm"

16   in question is "in common use," that conclusion "obviate[s] the need for any further

17   historical analysis." Opp'n at 8. But Plaintiffs incorrectly assume that if an item is in

18   common use for any lawful purpose, then any regulation of that item is necessarily

19   prohibited by the Second Amendment. At the textual stage of the *Bruen* analysis,

20   however, Plaintiffs must demonstrate that the item they wish to possess "is in common

21   use today for self-defense." *United States v. Alaniz*, ___ F.3d __, 2023 WL 3961124, at

22   *3 (9th Cir. June 13, 2023) ("*Bruen* step one involves a threshold inquiry," including

23   whether, *inter alia*, "the weapon at issue is in common use for self-defense."). And even

24   if Plaintiffs can meet that burden, which they have not done, that would lead to stage two

25   of the *Bruen* analysis, where the burden would shift to "the Government to show that [the

26   challenged law] is consistent with the Nation's historical traditions of firearm regulation."

27   *United States v. Bartucci*, 2023 WL 2189530, at *6 (E.D. Cal. Feb. 23, 2023). As courts

28   have observed, even if a plaintiff can "demonstrate that their proposed conduct . . . is

3

covered by the Second Amendment," the Constitution only "presumptively protects that conduct," and this "presumption can be overcome." *Hartford v. Ferguson*, 2023 WL 3836230, at *3 (W.D. Wash. June 6, 2023); *see also Oregon Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829, at *12 (D. Or. Dec. 6, 2022), *appeal dismissed*, 2022 WL 18956023 (9th Cir. Dec. 12, 2022) (stating that the government must "demonstrate that the regulation is part of the historical tradition delimiting the outer bounds of the right to keep and bear arms" if "the Constitution presumptively protects" plaintiff's course of conduct); *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.* (*DSSA*), 2023 WL 2655150, at *8 (D. Del. Mar. 27, 2023) (rejecting the argument that a finding of "common use" "is the end of the matter"), *appeal docketed*, No. 23-1641 (3d Cir. Apr. 7, 2023).

Plaintiffs also misunderstand both stages of the text and history analysis. With respect to the textual inquiry, Plaintiffs further confuse the *Bruen* test when they argue that "nothing in the *plain text* of the Second Amendment would allow the State to prohibit a type of arm based on its ammunition capacity." Opp'n at 6 (emphasis added). At stage one, the plain text burden is one that Plaintiffs, not Defendants, must satisfy. *See* Counter-Mot. at 12-13 (citing *Bruen*, 142 S. Ct. at 2129-30); *see also Bevis v. City of Naperville, Illinois*, 2023 WL 2077392, at *9 (N.D. Ill. Feb. 17, 2023), *injunction denied pending appeal*, 2023 WL 3190470 (9th Cir. Apr. 18, 2023), *injunction denied pending appeal*, ___ S. Ct. ___, 2023 WL 3485430 (May 17, 2023); *Ocean State Tactical, LLC v. State of Rhode Island*, 2022 WL 17721175, at *12 (D.R.I. Dec. 14, 2022). And it is Plaintiffs who must point to the plain text of the Second Amendment to demonstrate that the text protects their proposed course of conduct, not Defendants who must identify language in the plain text that would authorize the challenged restriction. As explained in the Counter-Motion and below, Plaintiffs have not met their burden.

Finally, Plaintiffs incorrectly describe the historical analysis that *Bruen* contemplates.  Plaintiffs contend that courts must look only to the Founding-era in identifying historical analogues. *See, e.g.*, Opp'n at 13, 15. That is wrong. *See Bruen*,

1    142 S. Ct. at 2132 ("The regulatory challenges posed by firearms today are not always

2    the same as those that preoccupied the Founders in 1791 *or the Reconstruction*

3    *generation in 1868*." (emphasis added)); *id.* at 2133 (describing a review of the "historical

4    record . . . [of] 18th- and *19th-century* 'sensitive places'" (emphasis added)). And the

5    Ninth Circuit has treated post-1791 evidence as relevant under *Bruen*. *See Alaniz*, 2023

6    WL 3961124, at *4 (finding that a "historical tradition is well-established" based on the

7    fact that "several States enacted [analogous] laws throughout the 1800s"); *see also Nat'l*

8    *Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1321 (11th Cir. 2023), *pet. for en banc rehearing*

9    *pending*, March 30, 2023 (holding that "the Reconstruction Era historical sources are the

10   most relevant . . . because those sources reflect the public understanding of the right to

11   keep and bear arms at the very time the states made that right applicable to the state

12   governments").

13        In fact, *Bruen* does not prohibit consideration of 20th century regulations, except

14   where those "laws that are *inconsistent* with the original meaning of the constitutional

15   text." *Bruen*, 142 S. Ct. at 2137. Indeed, numerous courts, across the Nation, have

16   considered laws from the 20th century in analyzing historical analogues where those

17   "arms restrictions, including bans and restrictions on carrying, arose from the same

18   historical pattern" as 18th- and 19th-century laws, *Hartford*, 2023 WL 3836230, at *5,

19   and thus are not inconsistent with the Second Amendment's original meaning. *Id.*

20   (relying in part of 20th century restrictions on "Tommy guns" in denying a preliminary

21   injunction of assault weapons restrictions); *see also Bevis*, 2023 WL 2077392, at *12

22   (finding that, "[n]otably, semiautomatic weapons themselves, which assault weapons fall

23   under, were directly controlled in the early 20th century," in refusing to enjoin assault

24   weapons and LCM restrictions); *Del. State Sportsmen's Ass'n, Inc.*, 2023 WL 2655150,

25   at *12 (declining to "disregard machine gun regulations as irrelevant" because "these

26   later regulations are consistent with the earlier regulations that Defendants provide").

27        Thus, contrary to Plaintiffs' assertions, the *Bruen* analysis is bifurcated—Plaintiffs

28   bear the burden on stage one, and at stage two the government can show that a

5

1   restriction on a weapon in common use for self-defense is nonetheless constitutional if it

2   fits within the Nation's tradition of firearms regulation. And, with a proper understanding

3   of the *Bruen*, as explained below, judgment can and should be entered for Defendants at

4   either stage of the analysis.

5   **II.   PLAINTIFFS' PROPOSED COURSE OF CONDUCT IS NOT PROTECTED BY THE SECOND AMENDMENT'S PLAIN TEXT.**

6

7   **A.   LCMs Are Accessories, Not Arms, and Are Not Essential to the Operation of Any Firearm for Self-Defense.**

8   As to the threshold textual inquiry, Defendants explained in their Counter-Motion

9   that the evidence submitted by both Defendants and Plaintiffs establishes LCMs are

10   accessories, not "Arms" within the meaning of the Second Amendment. *See* Counter-

11   Mot. at 15 (citing Busse Decl., ¶ 13 (magazines are "containers which hold

12   ammunition")); *see* Lee Decl. [Dkt. No. 123-4], Ex. A (Youngman Decl.), ¶¶ 5-6

13   (magazines are "ammunition feeding devices" and a magazine is "simply a receptacle for

14   a firearm that holds a plurality of cartridges or shells under spring pressure preparatory

15   for feeding into the chamber" (quotation omitted)). In their Opposition, Plaintiffs provide

16   no evidence in response to Mr. Busse's Declaration or that of Dennis Baron (Dkt. No.

17   126-1), a historian who provided testimony establishing that the original public meaning

18   of the term "Arms" referred to "weapons such as swords, knives, rifles, and pistols," and

19   did not include "accoutrements," like "ammunition containers, flints, scabbards, holsters,

20   or 'parts' of weapons." Baron Decl., ¶ 8.

21   Though they did not argue that magazines are "Arms" in their Motion, Plaintiffs now

22   argue that Section 32310 prohibits "Arms" protected by the Second Amendment.

23   *Compare* Mot. at 9 (describing magazines as a "component part"), *with* Opp'n at 5

24   (arguing that Section 32310 "prohibits 'Arms' protected by the Second Amendment"

25   (emphasis omitted)). But characterizing LCMs as arms would not comport with the

26   Supreme Court precedent. Counter-Mot. at 16-17 (quoting language from *Bruen*, *Heller*,

27   *Caetano*, and *McDonald* to show that "the Court has always equated 'Arms' with

28   weapons, not accessories or other incidents necessary to use them"). And Plaintiffs have

6

1    put forward no evidence that LCMs are themselves "used in a way that 'cast[s] at or

2    strike[s] another,'" as weapons are. *Ocean State Tactical, LLC*, 2022 WL 17721175, at

3    *12. As such, LCMs, are not protected "Arms" under the Second Amendment.

4         A recent post-*Bruen* decision affirming the constitutionality of the federal ban on

5    silencers is instructive. In *United States v. Saleem*, the district court first noted that *Heller*

6    and *Bruen* make clear that the Second Amendment's right to keep and bear arms

7    "protects an individual's right to carry or possess a bearable weapon for self-defense."

8    2023 WL 2334417, at *9 (W.D.N.C. Mar. 2, 2023). Under that logic, the court easily

9    determined that a silencer was not an "Arm" because, in part, it "cannot, on its own,

10   cause any harm, and it is not useful independent of its attachment to a firearm." *Id*; *see*

11   *also Miller v. Garland*, 2023 WL 3692841, at *10 (E.D. Va. May 26, 2023) (holding that

12   "laws that regulate the use of firearm accessories or attachments do not generally

13   implicate the Second Amendment").

14        Moreover, the Second Amendment only protects "ancillary rights *necessary* to the

15   realization of the core right to possess a firearm for self-defense." *Teixeira v. Cnty. of*

16   *Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (emphasis added); *Jackson v. City & Cnty.*

17   *of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (finding that "the right to possess

18   firearms for protection implies a corresponding right to obtain the bullets *necessary* to

19   use them" (emphasis added)). It thus only protects accessories that keep firearms

20   "useful" and "functional," and which prevent them from falling "into disrepair and

21   inoperability, precluding their protected use for self-defense." *Saleem*, 2023 WL

22   2334417, at *10. Were it otherwise, potential plaintiffs could seek to expand the Second

23   Amendment's protection to a "penumbra" of covered activities beyond keeping and

24   bearing arms (where no such penumbra exists). *Defense Distributed v. Bonta*, 2022 WL

25   15524977, at *4 (C.D. Cal. Oct. 21, 2022).

26        Applying that standard, "an LCM is not necessary to operate any firearm, much

27   less any firearm commonly used for self-defense." Counter-Mot. at 18 (citing *See* Busse

28   Decl., ¶ 18; *Or. Firearm Fed'n*, 2022 WL 17454829, at *9). In an effort to create a dispute

7

of material fact on that point, Plaintiffs point not to an firearms expert with a conflicting

opinion (nor could they, because they submit no expert opinion or evidence on the topic)

but to the declarations of two of the named Plaintiffs, which they contend establish that

"their legally-acquired magazines were the only ones ever made for their particular

firearms." Opp'n at 2 n.1. But whether a particular size magazine is "original" to a firearm

is irrelevant, because the question is not whether an LCM was "made for" a particular

firearm, but whether an LCM is necessary for that firearms' use in self-defense. *See*

Macaston Decl., ¶ 6 (admitting that "subsequently-manufactured ten-round magazines

may (I am told) be compatible with" his firearm). And Plaintiff Dang's statement that he is

"not aware of the existence of any . . . ten-round magazines compatible with" his firearm,

Dang Decl., ¶ 5, is not evidence that no such magazine exists, given that he has not

been qualified as an expert in firearms (or any relevant topic for that matter), and

certainly does not controvert Ryan Busse's expert opinion to the contrary. Busse Decl., ¶

18. In any event, both declarants made these statements on "information and belief,"

Dang Decl., ¶ 5; Macaston Decl., ¶ 6, and thus those statements are not entitled to any

evidentiary weight. *See Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944

F.2d 1525, 1529 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993) (holding that a declaration

based "on information and belief . . . does not raise a triable issue of fact").

     Plaintiffs also contend that magazines generally are "integral parts of modern

arms." Opp'n at 1-2. But even if true as a general statement, Section 32310 does not

ban all magazines—only those that hold more than ten rounds of ammunition. As such,

Plaintiffs' argument that Section 32310 bans "integral component parts of a firearm," *id.*

at 5, is not correct, nor can it be credited given their failure to produce any evidence

controverting Defendants' evidence establishing that LCMs are not necessary to use of

any firearm.[2]

---

[2] Plaintiffs' assertion that "a firearm magazine is an inherent part of, and *inseparable* from, a functioning firearm," Opp'n at 5 (emphasis added), cannot be squared with their own contention elsewhere in the Opposition that Section 32310 is an effort to prohibit the possession of "*detachable* magazines," *id.* at 2 (emphasis added). And, as Defendants'

8

1  Plaintiffs wrongly contend that there is no "limiting principle" and "[u]nder the

2  State's theory, it could simply prohibit the possession of all detachable magazines in

3  California." Opp'n at 2 (emphasis omitted). That is untrue. Magazines capable of holding

4  more than ten rounds (*i.e.*, LCMs) are not commonly used in self-defense and thus are

5  not protected by the Second Amendment. *See* Counter-Mot. at 19-23. Thus, the limiting

6  principle is clear: only possession of accessories necessary to operate "Arms" for the

7  purposes of self-defense are protected by the Second Amendment as an ancillary right.

8  *Id.* at 17-18. In any event, the challenged statute does not restrict any magazines

9  capable of holding ten rounds or less, *see* Penal Code §§ 32310, 16740(a). It is

10  Plaintiffs' theory that has no limiting principle; in their view, manufacturers could produce

11  magazines capable of holding 50 or 100 or 1000 bullets and no regulation would pass

12  constitutional muster because the magazines are, under Plaintiffs' understanding of the

13  Second Amendment, "Arms."

14  In sum, Plaintiffs have not shown that their proposed course of conduct—

15  acquisition and possession of LCMs—is within the protections guaranteed by the

16  Second Amendment.  To the contrary, LCMs are not themselves "Arms" under the

17  Second Amendment and are not necessary to the operation of any protected firearm for

18  self-defense. Under Rule 56, the Court should thus find that there is no genuine dispute

19  that Plaintiffs' proposed course of conduct is not protected by the Second Amendment

20  and enter judgment in Defendants' favor on the Second Amendment claim.

21  **B.    LCMs Are Not Commonly Used in Self-Defense.**

22  Even if this Court were to determine that LCMs are arms themselves or could

23  otherwise be subject to protection under an ancillary right theory, judgment should be

24  entered for Defendants on the Second Amendment claim at stage one of the *Bruen*

25  analysis for another reason: only firearms commonly used for self-defense are protected

26  by the Second Amendment, and LCMs are not commonly used for that purpose.

27  evidence establishes, it is in part the fact that most LCMs are detachable that renders
them a dramatic technological change. *See* Counter-Mot. at 22 (citing Tucker Decl., ¶

28  16).

9

1    Defendants have presented evidence that LCMs are rarely, if ever, used for self-

2    defense. Counter-Mot. at 20-21; *see, e.g.,* Suppl. Allen Decl., ¶¶ 10-19 (finding that an

3    analysis of one dataset revealed on average, only 2.2 shots were fired by defenders,

4    and that analysis of another dataset found no incidents where the defender was reported

5    to have fired more than 10 bullets and that in 97.3% of incidents the defender fired 5 or

6    fewer shots). Defendants also presented evidence that while not being well-suited to

7    self-defense, LCMs were in fact designed and are well-suited for military use in combat

8    situations, "increas[ing] killing efficiency by significantly reducing reload time." Tucker

9    Decl., ¶ 16.

10    In their Opposition, Plaintiffs put forward no expert testimony or any other evidence

11    to counter Defendants' evidence. Instead, they cite merely studies from individuals who,

12    unlike Defendants' experts, have not provided sworn testimony regarding their

13    conclusions. Opp'n at 9 n. 3. These studies, far from showing, as Plaintiffs claim, that

14    LCMs are commonly used in self-defense, establish that it is rare for individuals who

15    have firearms to discharge them at all in self-defense. *Id.* (claiming that only 0.9% of self-

16    defense gun use even involved a discharge of a firearm). Plaintiffs claim that Ms. Allen's

17    work has been "discredited" (*id.* at 10), but that ignores the fact that courts continue to

18    rely on her analysis post-*Bruen* in answering the "common use" question. *See, e.g.,*

19    *Hanson v. District of Columbia*, 2023 WL 3019777, at *10 (D.D.C. Apr. 20, 2023) (citing

20    approvingly one of the same studies that Ms. Allen's declaration relies on in this case);

21    *Or. Firearms Fed'n*, 2022 WL 17454829, at *10 (same). In any event, Ms. Allen's

22    supplemental declaration in this case contains an analysis of a second dataset using

23    "Factiva, an online news reporting service and archive owned by Dow Jones, Inc. that

24    aggregates news content from nearly 33,000 sources" (Suppl. Allen Decl., ¶¶ 13-14),

25    which Plaintiffs do not contest the accuracy of.

26    Importantly, the applicable test is common use for self-defense, not merely

27    common ownership. *Alaniz*, 2023 WL 3961124, at *3 (holding that one of the threshold

28    inquiries at step one is whether "the weapon at issue is 'in *common use*' today for self-

10

1   defense" (emphasis added)); *see also Bruen*, 142 S. Ct. at 2156 (describing the Second

2   Amendment's "right to bear *commonly used* arms" (emphasis added)). Plaintiffs

3   nonetheless contend that "*Heller* spoke of common use in the context of possession."

4   Opp'n at 10. But it was *Heller* itself that established that "common use," rather than

5   common ownership, was the relevant test, 554 U.S. at 627, and found that the

6   challenged regulation in that case was unconstitutional because the law made it

7   impossible for "citizens to *use* them," *i.e.*, firearms, "for the core lawful purpose of self-

8   defense." *Id.* at 630 (emphasis added).

9       Adopting Plaintiffs' proposed test would permit mere popularity to control the

10   meaning of the Second Amendment. *See* Opp'n at 7 (arguing that because, supposedly,

11   the "American people have spoken, overwhelmingly, in favor of higher capacity

12   firearms," they are protected by the Second Amendment). This Court should reject

13   Plaintiffs' proposed "popularity test." *Or. Firearms Fed'n*, 2022 WL 17454829, at *10 n.13

14   ("The Second Amendment . . . requires a court to not only consider the prevalence of a

15   particular firearm, but also the nature of that firearm's use among civilians."); *Duncan*, 19

16   F.4th at 1127 (Berzon, J., concurring) ("*Heller* focused not just on the prevalence of a

17   weapon, but on the primary use or purpose of that weapon.").

18       Equally problematic for Plaintiffs is their failure to put forth any testimony that LCMs

19   are commonly owned, much less used, for self-defense. Plaintiffs cite the previously filed

20   declarations of D. Allen Youngman and James Curcuruto in support of that conclusion,

21   but General Youngman's declaration merely concludes that it "is generally well-known,

22   well-accepted, and generally indisputable that so-call 'large capacity magazines' are

23   commonly owned by millions of person in the United States, for a variety of law

24   purposes." Youngman Decl., ¶ 9. Putting aside that "common use," not "common

25   ownership," is the relevant analysis at stage one of *Bruen*, *see supra*, Section I, General

26   Youngman points to no documents or sources of information that support his

27   unsubstantiated conclusion, and thus that statement should not be given any weight at

28   summary judgment. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110,

11

1119 (E.D. Cal. 2006) ("[L]egal conclusions, or argumentative statements, are not *facts*

and likewise will not be considered on a motion for summary judgment") (Shubb, J.).

Like General Youngman's declaration, the declaration of James Curcuruto was first

filed in 2017 and was reattached to an attorney declaration in support of Plaintiffs'

Motion. Dkt. No. 28-3; Lee Decl. [Dkt. No. 123-4], Ex. B (Curcuruto Decl.).[3] Like General

Youngman, Mr. Curcuruto does not even address the relevant inquiry of "common use,"

instead merely discussing ownership statistics. *See, e.g.,* Curcuruto Decl., ¶ 13

(discussing the "number of such [large-capacity] magazines in United States consumers'

hands). Further, Mr. Curcuruto's conclusions are based on speculation, not hard

evidence. *See id.* (describing his conclusion on the number of LCMs in the United States

to be "an estimation based on extrapolation from indirect sources" that "cannot be

confirmed as unequivocally correct").

In sum, Defendants have made a detailed showing establishing that LCMs are not

commonly used in self-defense, and Plaintiffs have put forward no admissible evidence

to the contrary. As such, this Court should enter judgment in Defendants' favor because

Plaintiffs' proposed course of conduct is not covered by the Second Amendment's plain

text.

## III.   LCM RESTRICTIONS FALL WITHIN THE HISTORY AND TRADITION OF FIREARMS REGULATION.

### A.   A More Nuanced Approach at Stage Two Is Required in this Case.

*Bruen* contemplates two types of cases: those in which "historical analogies . . .

are relatively simple to draw"; and those "implicating unprecedented societal concerns or

dramatic technological changes [which] may require a more nuanced approach." 142 S.

Ct. at 2132. The evidence submitted here establishes that this case is the latter.

*Hartford*, 2023 WL 3836230, at *5 (rapid firing capacity and accompanying mass

---

[3] Defendants rely on two of the declarants whose declarations they relied in 2017 in resisting Plaintiffs' motion for a temporary restraining order and preliminary injunction: Lucy Allen [Dkt. No. 42] and John Donohue [Dkt. No. 36]. Unlike Plaintiffs, however, Defendants have provided supplemental declarations from both Ms. Allen [Dkt. 125-5] and Professor Donohue [Dkt. No. 125-9], which include updated facts and conclusions.

1    shootings are a dramatic technological change and an unprecedented societal concern,

2    respectively); *Or. Firearms Fed'n*, 2022 WL 17454829, at *13 (same); *Del. State*

3    *Sportsmen's Ass'n, Inc.*, 2023 WL 2655150, at *10 (same). Under that more nuanced

4    approached, Defendants have met their stage two burden of showing that Section 32310

5    fits within the nation's tradition of weapons regulation.

6        First, LCMs represent dramatic technological change. In their Counter-Motion,

7    Defendants put forward abundant evidence in the form of declarations from some of the

8    nation's leading historians establishing that LCMs do indeed represent a dramatic

9    technological change from the firearms technology that existed in 1791 and 1868. *See*

10   Counter-Mot. at 25-32 (citing Cornell Decl. [Dkt. No. 125-7]; DeLay Decl. [Dkt. No. 125-

11   8]; Rivas Decl. [Dkt. No. 125-11]; Sweeney Decl. [Dkt. No. 125-14]; Vorenberg Decl.

12   [Dkt. No. 125-16]). Second, mass shootings represent an "unprecedented societal

13   problem," as the voluminous evidence submitted by Defendants establishes. *See*

14   Counter-Mot. at 32-34 (noting that there are "no known shooting incidents involving ten

15   or more fatalities before 1949"); *see also* Suppl. Donohue Decl. [Dkt. No. 125-9];

16   Klarevas Decl. [Dkt. No. 125-10]; Roth Decl. [Dkt. No. 125-12]). In Plaintiffs' Opposition,

17   they do not dispute either point.

18       Contrary to Plaintiffs' assertions that the more nuanced approach is "interest

19   balancing by another name," Opp'n at 13, it is an approach that *Bruen* expressly

20   countenances, enabling Defendants to draw analogies between Section 32310 and laws

21   that are not firing capacity restrictions, and applying analogical reasoning to dramatic

22   technological changes and unprecedented societal problems. Indeed, the *Bruen*

23   framework expressly contemplates that "regulatory challenges posed by firearms today

24   are not always the same as those that preoccupied the Founders in 1791 or the

25   Reconstruction generation in 1868." 142 S. Ct. at 2132.

26       Thus, Plaintiffs' argument that Section 32310 cannot stand because Defendants

27   "cite[] no founding-era regulations on firing capacity restrictions," Opp'n at 13, fails for

28   two reasons. First, as explained above, nothing in *Bruen* restricts the period in which

13

courts may look for relevant analogues to 1791. 142 S. Ct. 2111, 2132. Second, and more to the point, *Bruen* does not require that Defendants, in defending a hardware ban (*i.e.*, a ban on LCMs), identify another restriction on a similar or the same type of hardware as part of a "wholly abstract game of spot-the-analogy-across-the-ages." *United States v. Kelly*, 2022 WL 17336578, at *6 (M.D. Tenn. Nov. 16, 2022) (finding that *Bruen* permits courts to reason that "heavy restrictions are typically more problematic than light ones . . . in order to bridge historical gaps"); *United States v. Jackson*, 622 F. Supp. 3d 1063, 1067 (W.D. Okla. 2022) (finding that a mere "desire for greater specificity" in the analogy between the modern and historical regulations is not dispositive for the *Bruen* analysis); *United States v. Slye*, 2022 WL 9728732, at *2 (W.D. Pa. Oct. 6, 2022) ("In *Bruen*, the Court acknowledged that determining whether a regulation comports with the Nation's historical tradition can be difficult in some cases and requires flexibility . . . .").

This is particularly true in cases involving dramatic technological change and unprecedented societal concerns (which Plaintiffs do not dispute this case presents). Indeed, in similar circumstances, numerous courts have pushed back against the "historical twin" or "dead ringer" requirement that *Bruen* rejected. *See Alaniz*, 2023 WL 3961124, at *3 (rejecting the contention that the government's "analogues are not sufficiently similar" because the modern restriction challenged was "animated by unprecedented contemporary concerns"); *Bondi*, 61 F.4th at 1321 ("[W]e look for a historical analogue—not a historical 'dead ringer,'—of the challenged law."); *United States v. Ryno*, 2023 WL 3736420, at *2 (D. Alaska May 31, 2023) (affirming challenged regulation despite "the lack of a distinctly similar firearm regulation" because "American legal history and tradition indicates that lawmakers, both at the time of ratification and well into the 20th century, simply did not recognize" the regulated conduct as a "societal problem"); *Bartucci*, 2023 WL 2189530, at *10 (holding that although the challenged regulation "may not be a 'dead ringer for historical precursors,' this Court finds that it is sufficiently analogous to pass constitutional muster"); *Fried v. Garland*, 2022 WL

16731233, at *5 (N.D. Fla. Nov. 4, 2022) (holding that "if there is a tradition of regulation that is relevantly similar to the challenged laws, Plaintiffs have not stated a plausible Second Amendment claim," and rejecting plaintiffs' arguments as "demand[ing] too much specificity in the historical tradition"). Indeed, "*Bruen*'s guidance forecloses simply comparing the modern law under review with the laws of a couple of centuries ago, like a redline comparison in a word processing application." *United States v. Jackson*, 2023 WL 2499856, at *12 (D. Md. Mar. 13, 2023). "That is because a list of the laws that happened to exist in the founding era is, as a matter of basic logic, not the same thing as an exhaustive account of what laws would have been theoretically believed to be permissible by an individual sharing the original public understanding of the Constitution." *Id.*

## B. Defendants Have Identified Relevantly Similar Analogues as *Bruen* Requires

In *Bruen*, the Court pointed to the "how" and "why" a regulation burdens the right to bear arms as the central inquiry at stage two. *Id.* at 2133. In other words, *Bruen* asks whether "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* Despite acknowledging that the *Bruen* test turns on the "how" and "why" of the modern regulation and historical regulations, Opp'n at 14, nowhere in their Opposition do Plaintiffs even mention "comparable burden" or "comparable justification."

But that analysis of comparable burdens and justifications is the very core of stage two of the *Bruen* analysis. *Alaniz*, 2023 WL 3961124, at *5 (affirming challenged statute because the statute "imposes a 'comparable burden' to the historical analogues and is 'comparably justified'" (quoting *Bruen*, at 2133)). For example, in *Bondi*, the Eleventh Circuit concluded that a modern age restriction on firearm purchases (but not their possession and use) was "relevantly similar" in burden to historical laws banning sales of certain weapons because the burdens imposed by the historical restrictions (*i.e.*, restriction on the possession on a type by anyone of any age) were greater than a

15

restriction on merely the purchase, but not the possession or use, of weapons. 61 F.4th at 1325 (finding that "regulations from the Reconstruction Era burdened law-abiding citizens' rights to armed self-defense to an even greater extent" than the challenge regulation). And the court in *Bondi* found that both the modern statute and the historical analogue both "aim[ed] to improve public safety, and thus have "an analogous 'why.'" *Id.* at 1331.

Applying the "relevantly similar" analysis, district courts post-*Bruen* have concluded that LCM restrictions are consistent with the Nation's history of firearms regulation. *See Or Firearms Fed'n, Inc.*, 2022 WL 17454829, at *13 (finding that Oregon's restrictions on LCMs imposed a comparable burden to and had a comparable justification as analogous historical restrictions because the burden imposed by an LCM ban is "minimal" and "does not impose a greater burden on the right to self-defense than did analogous historical regulations" and that the "public safety concerns of today" are comparable to the justifications of "this Nation's earlier legislatures in imposing historical restrictions"); *Hanson*, 2023 WL 3019777, at *15 (finding that the challenged modern regulation is relevantly similar to the identified historical regulations "in that the burden it places on an individual's right of self-defense is relatively light"); *Del. State Sportsmen's Ass'n, Inc.*, 2023 WL 2655150, at *12 (finding that historical restrictions and Delaware's modern LCM restrictions imposed a comparable burden because LCM restrictions imposed a "slight" burden while the historical restrictions cited "were blanket restrictions on the carry of entire categories of weapons" and that both the modern and historical regulations were enacted "in response to pressing public safety concerns regarding weapons determined to be dangerous").  Plaintiffs offer no basis to reach a different conclusion in this case.

In the Counter-Motion, Defendants identified three types of historical regulations that are sufficiently analogous to Section 32310: (1) gunpowder and loaded-weapons restrictions, Counter-Mot. at 45-46; (2) dangerous weapons laws, *id.* at 46; and (3) prohibitions on trap guns, *id.* at 47. For each, Defendants explained how the burdens

16

1    and justifications of those laws were comparable to those of Section 32310. *See, e.g.*, *id*.

2    at 47 (noting that the burden imposed by trap gun restrictions and Section 32310 are

3    comparably minimal because neither prohibited any firearm, only their manner of use,

4    and that the justifications for trap gun restrictions and Section 32310 were comparable

5    because both sought to prevent unnecessary gunshot injuries and death).[4]

6         In their Opposition, Plaintiffs do not dispute the existence of any of the laws (or

7    categories of laws) identified by Plaintiffs, but nevertheless argue that these regulations

8    are "neither analogous nor relevant to" Section 32310. Opp'n at 13. Plaintiffs' only

9    explanation for why these regulations are not "relevantly similar" under *Bruen* is that they

10   do not restrict firing capacity. *Id.* (contending that Defendants "fails to identify any

11   analogue from the relevant (founding) era that restricted firearm capacity"). But there is

12   no "dead ringer" requirement.  And numerous courts have properly concluded that these

13   restrictions are sufficiently analogous to modern regulations on LCMs. *See Or. Firearms

14   Fed'n,*, 2022 WL 17454829, at *13 (finding that 19th century restrictions on "Bowie

15   knives, blunt weapons, slungshots, and trap guns" were analogous to modern LCM

16   restrictions because those early weapons were dangerous weapons commonly used for

17   criminal behavior and not for self-defense); *Herrera v. Raoul*, 2023 WL 3074799, at *6

18   (N.D. Ill. Apr. 25, 2023) (finding that "the regulatory history of Bowie knives, clubs, [and]

19   trap guns" was analogous to that of modern restrictions on LCMs); *Bevis*, 2023 WL

20

_____

21   [4] The declaration of Robert Spitzer [Dkt. No. 125-13] explains that the "pattern of criminal
violence and concerns for public safety leading to weapons restrictions is not new; in
fact, it can be traced back to the Nation's beginnings" because "[w]hile the particular

22   weapons technologies and public safety threats have changed over time, governmental
responses to the dangers posed by certain weapons have remained constant." *Id.* at ¶

23   47. Thus, "[c]urrent restrictions on assault weapons and detachable ammunition
magazines are historically grounded" because they are "part of a pattern in America's

24   history of legislative restrictions on particular weapons stretching back centuries." *Id.*
Professor Spitzer's conclusions and the underlying basis for them have been credited by

25   numerous post-*Bruen* courts. *See, e.g., Hartford*, 2023 WL 3836230, at *4 (citing
Professor Spitzer, and another of Defendants' experts in this case, Dr. Brennan Rivas,

26   approvingly for the proposition that "when new weapons proliferated and resulted in a
rise in criminal violence that terrorized the public . . . [,] it was then that States historically

27   stepped in and regulated those dangerous weapons"); *Hanson*, 2023 WL 3019777, at
*15 (citing a declaration from Professor Spitzer in that case to show that "the states
confronted the public safety issues of their time with vigor").

28

2077392, at *11 (holding that restrictions on Bowie knives, slugshots, billies, and other melee weapons "establish[] that governments enjoy the ability to regulate highly dangerous arms (and related dangerous accessories)" including LCMs; *see also Hartford*, 2023 WL 3836230, at *4 (W.D. Wash. June 6, 2023) (holding that "regulations on trap guns, bowie knives, clubs, [and] slungshots," among others, are sufficiently analogous to modern restrictions on assault weapons).

In sum, Defendants have put forward uncontroverted evidence establishing the following material facts: (1) this case involves dramatic technological change and unprecedented societal concerns, either of which is sufficient to implicate the "more nuanced approach" outlined in *Bruen*; and (2) gunpowder and loaded-weapon restrictions, dangerous weapons laws, and restrictions on trap guns imposed similar burdens and had similar justifications as Section 32310. In light of that evidence, this court should find, in accordance with numerous district courts to consider the question, that restrictions on LCMs such as Section 32310 are consistent with the Nation's tradition of firearm regulation.

### IV. JUDGMENT SHOULD BE ENTERED IN DEFENDANTS' FAVOR ON PLAINTIFFS' TAKINGS, DUE PROCESS, AND EQUAL PROTECTION CLAIMS.

In their Counter-Motion, Defendants explain that Section 32310 effects neither a *per se* taking nor a regulatory taking. Counter-Mot. at 47-50 (citing *Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180, 1188 (9th Cir. 2012)). Defendants point out that the en banc opinion in *Duncan*, which was vacated on Second Amendment grounds as a result of the *Bruen* decision, rejected the argument that Section 32310 violated the Takings Clause, and nothing in *Bruen* undermines that conclusion. Counter-Mot. at 48, 50; *see also* See *Or. Firearms*, 2022 WL 17454829, at *16 (relying on the Ninth Circuit's en banc opinion in *Duncan* and finding on a preliminary injunction that Oregon's LCM ban does not give rise to a takings claim). Defendants have also identified cases rejecting Takings Clause challenges to firearms restrictions specifically. Counter-Mot. at 49 (citing *Ass'n of New Jersey Rifle & Pistol Clubs, Inc.*, 910 F.3d 106, 124 n. 32 (3rd

18

1    Cir. 2018)); *Akins v. United States*, 82 Fed. Cl. 619, 623-24 (2008); *Fesjian v. Jefferson*,

2    399 A.2d 861, 865-66 (D.C. Ct. App. 1979)).

3        Although Plaintiffs criticize "dystopian language in the en banc decision in *Duncan*,"

4    Opp'n at 17, they do not explain how *Bruen* would alter that analysis or what subsequent

5    case law exists which challenges the conclusions therein. Nor do Plaintiffs identify

6    anything that would alter the conclusion this Court previously reached that Section

7    32310 does not effect a taking. Order re: MTD [Dkt No. 74] at 10-13.[5] Indeed, this Court

8    cited to many of the same cases, including *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528

9    (2005), *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992), *San Remo Hotel, L.P.*

10   *v. City & County of San Francisco*, 27 Cal. 4th 643, 664 (2002), in holding that Plaintiffs

11   had failed to state a Takings claim that Plaintiffs nonetheless cite in the Opposition as

12   support for their claim. *Compare* Order re: MTD at 10-13 *with* Opp. at 16-21.

13       Moreover, even if there was a possible legal basis for bringing a Takings claim

14   under the facts alleged in this case, Plaintiffs have put forward no admissible evidence in

15   support of that claim. The declarations of the named Plaintiffs contain the legally

16   conclusory statement that Section 32310 would cause "a physical deprivation of property

17   that is . . . independently valuable." *See, e.g.,* Dkt. No. 123-6 [Morris Decl.], ¶ 8; Dkt. No.

18   123-9 [Dang Decl., ¶ 8 (contending that the LCMs "in my possession have substantial

19   value, as irreplaceable items"). But "statements in declarations based on speculation or

20   improper legal conclusions, or argumentative statements, are not *facts* and likewise will

21   not be considered on a motion for summary judgment." *Burch*, 433 F. Supp. 2d at 1119

22   (E.D. Cal. 2006).

23   ───────────────
[5] This Court dismissed Plaintiffs' Takings claim on Defendants' motion to dismiss the
24   second amended complaint. Dkt. No. 74 at 10-13. The *Duncan* panel, in a decision
     subsequently reversed by the Ninth Circuit en banc, affirmed the district court's
25   injunction against Section 32310. *See* Counter-Mot. at 9-10. Before the en banc
     decision, this Court then ruled on Defendants' motion to dismiss the third amended
26   complaint, Dkt. No. 103, and found that the panel decision in *Duncan* was "hard to
     reconcile" with existing Ninth Circuit precedent but nonetheless held that that decision
27   "compels this court to deny the motion to dismiss" as to the Takings claim. But given that
     this Court is now not compelled by the subsequently-reversed *Duncan* panel decision, its
28   thorough analysis of Plaintiffs' Takings claim, Dkt. No. 74, should apply with renewed
     force on this Motion and Counter-Motion.

                                                     19

1    Plaintiffs do not put forward any evidence on the actual value, even approximate, of

2    the LCMs they possess, and in fact their own purported expert, General Youngman,

3    states in his declaration that there is "no market, or would be no market," for the sale of

4    used magazines that pre-date 2000. *See* Lee Decl., Ex. B, ¶ 10; *id.* (declaring that "there

5    is or would be very little demand" for such magazines). That conclusion would likely

6    apply with similar force to used magazines that post-date 2000 as well, given General

7    Youngman's statement that "new magazines are relatively inexpensive, and are

8    inherently reliable," while "used magazines, from unknown sources, may suffer from

9    defects such as worn springs, followers and feed lips, which may greatly impair their

10   reliability." *Id.*

11   Plaintiffs' failure to produce "competent evidence of damage" on their Takings

12   claim is independently fatal to that claim because, at summary judgment, a takings claim

13   requires "proof that the regulatory action caused deprivation of all economic use." *See*

14   *Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 752 (9th Cir. 2001); *see also McGlinchy v.*

15   *Shell Chem. Co.,* 845 F.2d 802, 808 (9th Cir. 1988) ("Summary judgment is appropriate

16   where appellants have no expert witnesses or designated documents providing

17   competent evidence from which a jury could fairly estimate damages.").

18   As to their Due Process claim, Plaintiffs claim that it is based on "all the same

19   essential reasons" as their Takings claim. Opp. at 21. For all the same reasons outlined

20   in the Counter-Motion and herein, judgment should be entered for Defendants on that

21   claim.[6] And as to their equal protections claim, Plaintiffs merely repeat that it should be

22   subject to strict scrutiny because Section 32310 "interferes with the exercise of a

23   fundamental right." Opp'n at 22 (quotation omitted). But because Section 32310 does

24   not interfere with the exercise of the Second Amendment, *see supra*, Sections II-III,

25   ────────────

     [6] Similar to the procedural history of Plaintiffs' Takings claim, this Court dismissed the
26   equal protection claim on the motion to dismiss the second amended complaint and
     denied the motion to dismiss the third amended complaint because the *Duncan* panel
27   decision "compel[led]" it to. Dkt. 103 at 6. Just as with the Takings claim, *see supra*, note
     5, the Court should readopt its analysis in its order on the motion to dismiss the second
28   amended complaint on the equal protection claim.

1    rational basis review applies and is easily satisfied here. *See Nordyke v. King*, 681 F.3d

2    1041, 1043 (9th Cir. 2012). Thus, judgment should be entered for Defendants on the

3    Equal Protections claim.[7]

4    **V.    THE COURT SHOULD GRANT DEFENDANTS LEAVE TO CONDUCT DISCOVERY
         PURSUANT TO RULE 56(D) BEFORE GRANTING PLAINTIFFS' SUMMARY JUDGMENT**

5    **MOTION.**

6         Before entering judgment for Plaintiffs on any of their claims, Defendants are

7    entitled to discovery pursuant to Federal Rule of Civil Procedure 56(d). Plaintiffs contend

8    that the Court should refuse Defendants' request for further discovery because "[t]he

9    only facts relevant to resolution of this case are 'legislative facts' regarding the history of

10   magazine regulation in this country," and all such "facts and history are subject to

11   historical citations and judicial notice . . . without the need for expert or other evidence

12   adduced through traditional party discovery methods." Opp'n at 22-23.[8] However, *Bruen*

13   did not alter the Federal Rules of Evidence or Federal Rule of Civil Procedure 56's

14   standards for summary judgment, and instead directed district courts to "follow the

15   principle of party presentation" and "decide a case based on the historical record

16   compiled by the parties," *id.* at 2130 n.6, and to do so by advising the parties to construct

17   a record just like any other in our adversarial system of adjudication—by following

18   "'various evidentiary principles and default rules' to resolve uncertainties." *Id.* (citation

19

20   [7] In their Counter-Motion, Defendants requested that, if the Court were inclined to enter
     judgment in Plaintiffs' favor, it stay any such judgment pending appeal. Counter-Mot. at
21   54. In their Opposition, Plaintiffs merely accuse Defendants of "a preemptive strike
     against the judgment" based on the "'important public-safety' purposes" of Section
22   32310, but do not conduct any analysis under the applicable factors. Opp. at 23. Given
     that Plaintiffs do not actually refute Defendants' contention that Defendants will likely
23   suffer irreparable harm in the absence of a stay, that the balance of equities tip in
     Defendants' favor, and that a stay is in the public interest, Counter-Mot. at 54-56, this
24   Court should stay any judgment against Defendants pending appeal.

25

26   [8] Plaintiffs' attempted use of the "legislative facts" doctrine in place of actually building an
     evidentiary record appears to be without limit, as they suggest that even their Article III
27   standing is a "legislative fact." *See* Dkt. No. 127-1 at 4-5 (suggesting that the "fact" that
     the Individual Plaintiffs "all acquired LCMs for firearms, in California, prior to 2000," is a
28   "legislative fact" because "the only facts relevant to the resolution of this case are
     'legislative facts'").

omitted). Granting summary judgment to Plaintiffs despite their failure to put forward evidence to support their claims would be antithetical to, rather than consonant with, the Court's decision in *Bruen*. If this Court believes that Plaintiffs are entitled to judgment in their favor on the existing record, the Court should permit Defendants to take depositions of Plaintiffs' declarants. *See* Meyerhoff Decl. [Dkt. No. 129], ¶ 16 (outlining the depositions Defendants request to take and the rationales for doing so).

## CONCLUSION

For the reasons stated herein and in the Counter-Motion, this Court should grant Defendants' Counter-Motion and enter judgment in Defendants' favor on all of Plaintiffs' claims.

Dated:  June 21, 2023                         Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General


/s/ Robert L. Meyerhoff
ROBERT L. MEYERHOFF
Deputy Attorney General
*Attorneys for Defendants Rob Bonta in his official capacity as Attorney General of the State of California and Allison Mendoza in her Official Capacity as Director of the Bureau of Firearms*

## CERTIFICATE OF SERVICE

Case
Name:     **Wiese, et al. v. Bonta, et al.**          No.   **2:17–cv–00903–WBS–KJN**

I hereby certify that on June 21, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF COUNTER-MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on June 21, 2023, at Los Angeles, California.

Robert Leslie Meyerhoff
Declarant

RobertM
Signature