George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:    (415) 979-0511

Raymond M. DiGuiseppe
(SBN 228457)
law.rmd@gmail.com
**THE DIGUISEPPE LAW FIRM, P.C.**
116 N. Howe Street, Suite A
Southport, North Carolina 28461
Phone: (910) 713-8804
Fax: (910) 672-7705

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WIESE, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>ROB BONTA, in his official capacity as Attorney General of California, et al.,<br><br>　　　　　　　Defendants. | Case No. 2:17-cv-00903-WBS-KJN<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST FOR DISCOVERY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(D)**<br><br>[FRCP 56]<br><br>Date:　July 10, 2023<br>Time:　1:30 p.m.<br>Courtroom 5, 14th Floor<br>Judge:　Hon. William B. Shubb |

　　　　Plaintiffs respectfully submit the following to response to the "Declaration of Robert L. Meyerhoff re: Defendants' Request for Discovery Pursuant to Federal Rule of Civil Procedure 56(d)" ("Decl."), consistent with this Court's order of June 9, 2023, concerning the nature and scope of any discovery that Defendants should be permitted to conduct at this time. Dkt. No. 128.

**A.     The Nature and Scope of Defendants' Requested Discovery**

Defendants seek to depose all Plaintiffs who have submitted declarations—i.e., L.Q. Dang, Frank Federau, Clifford W. Flores, Alan Gottlieb, Gene Hoffman, Sherman Macaston, Jeremiah Morris, Todd Nielsen, Alan Normandy, Jeff Silvester, and William Wiese. Decl. ¶ 8. Defendants seek up to four hours for each such deposition—that is, up to 44 hours of total deposition time for these 11 plaintiffs. Decl. ¶ 15. Defendants claim this time is necessary to do the following:

(1) Question Dang, Flores, Macaston, Morris, Nielsen, and Wiese on their individual "standing to bring these claims."

(2) Question Morris, Nielsen, and Wiese about their statements that Penal Code section 32310 "adversely affect[s] [their] right to keep and bear arms for self-defense and other lawful purposes."

(3) Question Federau, Gottlieb, Hoffman, Normandy, and Silvester "on the standing of the organizations of which [they are] part to bring these claims."

(4) Question Federau, Gottlieb, Hoffman, Normandy, and Silvester about their statements that Penal Code section "adversely affects" their respective organizations' members "in the exercise of their right to keep and bear arms for self-defense and other lawful purposes in the State."

(5) Question Federau, Gottlieb, Hoffman, Normandy, Silvester, Morris, and Wiese about their statements that an LCM is "both independently valuable and a necessary part of a functional firearm."

(6) Question Flores about his statement that his LCM "has substantial historical and financial value, and is irreplaceable," and that his LCM is "an inherent" part of his firearm.

(7) Question Dang about his statements that "the magazines that I have for the Steyr GB pistol were the only magazines made for that pistol," that "I am not aware of the existence of any subsequently-manufactured ten round magazines compatible with this particular pistol," that "[w]ithout these magazines, I have no way of operating this pistol," that the LCMs "in my possession have substantial value, as irreplaceable items," and that "it would likely cost me substantial amounts to replace the magazines with functional equivalents."

(8) Question Macaston about his statements that "the magazines that I have for the Smith & Wesson Model 59 pistol were the original magazines that were issued with, or sold with, that pistol," that "no ten-round magazines were ever produced by the original manufacturer (Smith & Wesson) specifically for use with that pistol," that "subsequently-manufactured ten-round magazines may (I am told) be compatible with this particular pistol," that the LCMs "in my possession have substantial value, as

irreplaceable items," and that "it would likely cost me substantial amounts to replace the magazines with functional equivalents."

Decl. ¶ 16(a)-(m).

Thus, the categories of information that Defendants seek to explore through depositions of the individual plaintiffs and representatives of the organizational plaintiffs fall into three basic types: categories (1) through (4) concern whether the individual plaintiffs and the members of the organizational plaintiffs have Article III standing vis-à-vis the "adverse effects" they claim; category (5) concerns whether a LCM is an independently valuable, integral part of a functional firearm, as a general matter; and categories (6) through (8) concern whether the LCMs owned by Flores, Dang, and Macaston are independently valuable, integral parts of their firearms.

Defendants also seek to depose D. Allen Youngman and James Curcuruto regarding "their opinions and the bases thereof," Decl. ¶ 9, and "to confirm the accuracy and reliability of their testimony," Decl. ¶ 14. Defendants seek up to seven hours for each deposition—up to 14 hours total. Decl. ¶ 15. For both Gen. Youngman and Mr. Curcuruto, Defendants claim this time is necessary to examine each "on his background and qualifications." Decl. ¶ 16(a) & (b). For Gen. Youngman, Defendants say they need to explore "his statements regarding the role of the magazine in the modern semi-automatic firearm, the prevalence of LCMs, and the used magazine resale market." Decl. ¶ 16(a). For Mr. Curcuruto, they claim they must examine him about "his statements regarding the standards and methods of research conducted by NSSF, the prevalence of and market for LCMs, specific research NSSF has conducted concerning LCMs, and assumptions and estimations regarding LCM manufacture and possession." Decl. ¶ 16(b).

So basically, Defendants claim they must examine Gen. Youngman and Mr. Curcuruto about the prevalence of and market for LCMs in terms of their general availability and use by the public.

**B.    The Discovery Defendants Seek is Neither Necessary Nor Proper.**

Rule 56(d) itself expressly states that the exercise of the court's discretion to permit a party to conduct discovery in response to a motion for summary judgment is appropriate when the party shows "it cannot present facts *essential* to justify its opposition." Fed. R. Civ. P. 56(d)(2) (italics

added); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (this rule permits discovery "where the nonmoving party has not had the opportunity to discover information that is *essential* to its opposition") (italics added). None of Defendants' requests can be squared with this basic standard. Their own briefing repeatedly insists they have already developed abundant and voluminous evidence in support of their opposition, evidence which they further insist compels summary judgment in their favor and thus necessarily a denial of summary judgment for Plaintiffs.

Most notably, *after* filing this request claiming the need to conduct the discovery being sought in order to justify their opposition, Defendants repeatedly push these assertions in their reply brief in support of their counter-motion for summary judgment, showboating all the evidence *already* in the record as (supposedly) demonstrating total victory for them and total defeat for Plaintiffs:

> "Defendants *put forward evidence* establishing undisputed material facts sufficient for this Court to grant summary judgment in their favor at either stage of the *Bruen* analysis." Def. Reply in Support of Counter-Motion for Summary Judgment ("MSJ Reply") at 1 (italics added).

> "At the historical analysis stage of the analysis, Plaintiffs fail to counter Defendants' *evidentiary showing* that Section 32310 is consistent with the Nation's tradition of weapons regulation." MSJ Reply at 1-2 (italics added).

> "Far from establishing that they are entitled to summary judgment, Plaintiffs' Opposition (along with their Motion) reveals that they have no evidence to support their claims, and none to contradict the *voluminous evidentiary submissions* of Defendants meeting their burden on every issue of material fact. As such, Plaintiffs' Motion should be denied, Defendants' Counter-Motion should be granted, and judgment should be entered for Defendants." MSJ Reply at 3 (italics added).

This hardly sounds like a party that "has not had the opportunity to discover information that is *essential* to its opposition." In fact, Defendants' own arguments demonstrate the absence of any need or justification for further discovery on the specific matters for which they seek permission to conduct dozens of hours of depositions. They show that Defendants have either already conducted all the investigation necessary to mount their defense or that the evidence they seek to develop is *irrelevant* to their defense and thus wholly unnecessary to prevail under their theory.

For example, Defendants argue, "[a]s to the threshold textual inquiry, Defendants explained in their Counter-Motion that the evidence submitted by both Defendants and Plaintiffs establishes LCMs are accessories, not 'Arms' within the meaning of the Second Amendment." MSJ Reply at 6. And, because "LCMs are not themselves 'Arms' under the Second Amendment," so the theory goes, they "are not necessary to the operation of any protected firearm for self-defense." *Id.* at 9. And Defendants insist this is based on their uncontroverted evidence "establishing that LCMs are not necessary to use of any firearm." *Id.* at 7, 8. For this reason, they contend that LCMs necessarily are not and cannot be "integral component parts of a firearm," as Plaintiffs contend. *Id.* at 8.

Similarly, Defendants argue, "[m]agazines capable of holding more than ten rounds (*i.e.*, LCMs) are not commonly used in self-defense and thus are not protected by the Second Amendment." MSJ Reply at 9. Here, Defendants highlight their "evidence that LCMs are rarely, if ever, used for self-defense." *Id.* at 10. They boast about having "made a detailed showing establishing that LCMs are not commonly used in self-defense." *Id.* at 12.

Under Defendants' theory then, neither LCMs nor the ancillary of conduct acquiring, possessing, and using LCMs in the exercise of the right to keep and bear arms is even protected under the Second Amendment, thereby ending the constitutional inquiry. Under this theory, the individual plaintiffs and members of the institutional plaintiffs *necessarily* have no cognizable Second Amendment claim, regardless of any "adverse impacts" they may claim to suffer based on any "integral" value they may claim LCMs possess in keeping and bearing arms. It follows that the eight categories of information about which Defendants seek to depose Plaintiffs—which all concern Plaintiffs' claim to standing based on the law's adverse effects and any value of LCMs as integral parts of functional firearms generally or as to any of the plaintiffs—are wholly irrelevant and unnecessary to Defendants' defense of the law. Conducting 11 depositions over Plaintiffs' assertions that a LCM is "both independently valuable and a necessary part of a functional firearm," or "has substantial historical and financial value, and is irreplaceable," etc., makes little sense when Defendants would just turn around and disregard all such evidence as irrelevant.

In a similar vein, Defendants highlight their existing evidence to argue that "whether a particular size magazine is 'original' to a firearm is irrelevant, because the question is not whether an LCM was 'made for' a particular firearm, but whether an LCM is necessary for that firearms' use in self-defense." MSJ Reply at 8. If this is *irrelevant* to Defendants' theory of the case, then there can be no point deposing Dang and Macaston about their "original" magazines, as Defendants claim they should be able to do. They also readily discard Dang's testimony as inherently unreliable and "not entitled to any evidentiary weight" because "he has not been qualified as an expert in firearms (or any relevant topic for that matter)." MSJ Reply at 8. He won't be "qualified as an expert" for purposes of any deposition either, meaning Defendants would just continue to disregard anything he has to say in pushing this legal theory that avoids constitutional scrutiny.

The same is true of Defendants' request to depose Youngman and Curcuruto about the prevalence of and market for LCMs in terms of their availability and use by the public. They claim a need to examine Youngman and Curcuruto on these subjects, while at the same time pushing a legal theory that sidelines anything they might say as inapplicable or misguided because, Defendants say, they wrongly focus their analysis on "common use" instead of "common ownership." MSJ Reply at 11-12. Indeed, they disregard Youngman's testimony concerning the prevalence of LCMs as "unsubstantiated" and say it "should not be given any weight at summary judgment," *id.* at 11, and they similarly discard Curcuruto's conclusions as speculative, *id.* at 12. And regardless, Defendants make clear they intend to cling to their theory that LCMs are not "commonly used in self-defense" based on their "detailed" evidence on that point. *Id.* at 10, 12.

From start to finish, the battle lines in this case drawn along the lines of *legal* issues as to which all the necessary and appropriate investigation has already been completed. Defendants' arguments illustrate this throughout their analysis. They boast about having "put forward abundant evidence in the form of declarations from some of the nation's leading historians," MSJ Reply at 13, and they conclude their argument with the claim that the law is "consistent with the Nation's tradition of firearm regulation" based on the evidence they have already developed. *Id.* at 18. They even do this within the body of their request for discovery, where they argue that "judgment can and should be entered in Defendants' favor on the *existing* record." Decl. ¶ 15 (italics added).

1   Again, and as Defendants' own briefing highlights, the only facts relevant to resolution of this case are "legislative facts" regarding the history of magazine regulation in this country, and as such all facts and history are subject to historical citations and judicial notice as set forth in the parties' briefing and argument, without the need for expert or other evidence adduced through traditional party discovery methods. *See Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). Indeed, no discovery was necessary even in the landmark cases of *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *New York State Rifle & Pistol Association v. Bruen*, __ U.S. __, 142 S.Ct. 2111 (2022), or in *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam), as in each case the Supreme Court looked solely to legislative facts, publicly available information, and the holdings of other courts in resolving the claims.

In any event, no discovery is necessary or appropriate on the subjects that Defendants seek it, for all the reasons outlined above. The court generally "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: [¶] (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [¶] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). Defendants have developed everything they need to develop to advance their theory of the case. The discovery they claim to need now would not change the trajectory of their argument; nor would it change the trajectory of the claims' adjudication. It would only unnecessarily prolong and expand the costs of the litigation, while inconveniencing numerous individuals along the way. Defendants' request for discovery should be denied.

It should be noted that before the Defendants submitted Mr. Meyerhoff's declaration, Plaintiffs offered to stipulate to limit party-related facts to issues regarding standing, their ownership of pre-ban LCMs, and specifically offered to stipulate that "[t]he declarations of the Individual Plaintiffs are not being offered as expert testimony." (Counsel's email of June 14, 2023.) Defendants rejected this offer and instead wish to proceed with the discovery as listed above.

//

//

It should also be noted that in *Duncan v. Bonta*, S.D. Cal. No. 3:17-cv-01017-BEN-JLB, the State has now submitted tens of thousands of pages of expert declarations, purported historical citations and source material, and supplemental briefing on the historical questions presented, following remand by the Ninth Circuit following *Bruen*, all without the benefit and supposed need to conduct any individual party discovery or expert depositions in that matter.

Dated: June 23, 2023

THE DIGUISEPPE LAW FIRM, P.C.

/s/ *Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe

SEILER EPSTEIN LLP

/s/ *George M. Lee*
George M. Lee
*Attorneys for Plaintiffs*