ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
ROBERT L. MEYERHOFF
Deputy Attorney General
State Bar No. 298196
　300 South Spring Street, Suite 1702
　Los Angeles, CA  90013-1230
　Telephone:  (213) 269-6177
　Fax:  (916) 731-2144
　E-mail: Robert.Meyerhoff@doj.ca.gov
*Attorneys for Defendants Rob Bonta in his official capacity as Attorney General of the State of California and Allison Mendoza in her Official Capacity as Director of the Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **WILLIAM WIESE, et al.,**<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>**ROB BONTA, et al.,**<br><br>　　　　　　　　　　　　Defendants. | Case No. 2:17-cv-00903-WBS-KJN<br><br>**DEFENDANTS' STATEMENT OF DISPUTED FACTS IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　　October 30, 2023<br>Time:　　　　1:30 p.m.<br>Courtroom:　5, 14th Floor<br>Judge:　　　Hon. William B. Shubb |

1    In accordance with Local Rule 260 and this Court's procedures, Defendants Rob Bonta, Attorney General of the State of California, and Allison Mendoza, Director of the Bureau of Firearms, sued in their official capacities ("Defendants"), submit the following Statement of Disputed Fact in support of their Opposition to Plaintiffs' Motion for Summary Judgment and Counter-Motion for Summary Judgment, filed concurrently herewith (Defendant's Opposition and Counter-Motion).

While Defendants dispute certain material facts herein, resolution of these facts does not require trial. *See, generally,* Defendants' Opposition and Counter-Motion. In addition, Defendants object that Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Summary Judgment, Dkt. 123-1, makes numerous factual assertions which were not included in Plaintiffs' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment, 123-2, and which have no supporting evidence for them. *See* Defendants' Opposition and Counter-Motion, 15-19.

|   | **Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law** | **Defendants' Response** |
|---|---|---|
| 1 | Defendant Rob Bonta is the head of the California Department of Justice ("DOJ") which, along with its Bureau of Firearms, regulates and enforces state law related to the sales, transfer, possession and ownership of firearms. | Undisputed. |
| 2 | Defendant Allison Mendoza is sued in her official capacity as the Acting Director of the Bureau of Firearms. | Undisputed. |
| 3 | California law defines a "large capacity magazine" ("LCM") as "any ammunition feeding device with the capacity to accept | Disputed.  The complete definition of a "large-capacity magazine" ("LCM") is set forth in California Penal Code section 16740: "'[L]arge-capacity magazine' means any ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include any of the following: (a) A feeding device that has been |

| | | |
|---|---|---|
| | more than 10 rounds" of ammunition. | permanently altered so that it cannot accommodate more than 10 rounds. (b) A .22 caliber tube ammunition feeding device. (c) A tubular magazine that is contained in a lever-action firearm." |
| 4 | Since 1999, through passage of Sen. Bill 23, California prohibited the manufacture, importation, sale, or receipt of LCMs. | Disputed. 1999 Cal. Stat. 1781, §§ 3, 3.5 (S.B. 23), became effective in 2000. *See Duncan v. Bonta*, 19 F.4th 1087, 1141 (9th Cir. 2021) (Bumatay, J., dissenting). S.B. 23 prohibited any person from manufacturing or causing to be manufactured, importing into the State, keeping for sale, offering to expose for sale, giving, or lending any LCM, subject to exceptions. |
| 5 | California law did not prohibit persons from acquiring LCMs that had been legally acquired, prior to Jan. 1, 2000. | Disputed. California Penal Code section 32310 (formerly section 12020) prohibited the manufacture, importation, sale, keeping for sale, offering or exposing for sale, giving, and lending of any large-capacity magazines. *Id*. at (a). Prior to 2017, California Penal Code section 32310 did not prohibit persons from possessing LCMs that they had legally acquired prior to January 1, 2000. |
| 6 | In 2016, the Legislature passed Sen. Bill 1446, which amended Pen. Code § 32310(b) to make it a criminal offense to possess a LCM, effective Jan. 1, 2017. | Undisputed. |
| 7 | Proposition 63, a measure banning the possession of LCMs, was approved by the voters in an election on November 9, 2016. | Disputed. The election in question was held on November 8, 2016. https://www.sos.ca.gov/elections/prior-elections/statewide-election-results/general-election-november-8-2016. Proposition 63 was approved by 63.1% of the vote. https://elections.cdn.sos.ca.gov/sov/2016-general/sov/06-sov-summary.pdf. |
| 8 | Proposition 63 amended Pen. Code § 32310 to impose criminal penalties on persons possessing LCMs on or after July 1, 2017. | Undisputed. |
| 9 | Plaintiffs Wiese, Morris, Cowley, Macaston, Flores, Dang, Federau, Normandy, and Nielsen ("Individual Plaintiffs") all acquired | Undisputed, except to the extent that there is no Plaintiff Cowley in this case. |

| | | |
|---|---|---|
| | LCMs for firearms, in California, prior to 2000. | |
| 10 | Individual Plaintiffs would otherwise acquire additional LCMs for their existing firearms for lawful purposes. | Undisputed. |
| 11 | A magazine is a receptacle for a firearm that holds cartridges or shells under spring pressure preparatory for feeding into the chamber of a firearm. | Undisputed. |
| 12 | Magazines may take many forms, such as box, drum, rotary, or tubular, and may be fixed or removable. | Undisputed. |
| 13 | Modern, semi-automatic firearms today are designed to be used, and are sold with magazines. | Undisputed. |
| 14 | A magazine is an inherent operating part of a functioning firearm. | Disputed. *See, e.g.,* Busse Decl., ¶¶ 74, 82 (many functioning firearms do not have magazines). |
| 15 | Many new handguns sold by retailers in California cannot be fired without a magazine inserted, according to California law. | Undisputed. |
| 16 | In most other states, firearms, including many of the most popular pistols and rifles, are sold with standard capacity magazines. | Disputed. Many semiautomatic firearms sold in other states are sold with magazines capable of holding more than ten rounds. *See* Statement of Undisputed Facts, No. 17, *infra*. Magazines do not have a "standard capacity." |
| 17 | Examples of such firearms include: the Glock 17 pistol (with 17-round magazines); the Glock 19 pistol (with 15-round magazines), the SIG Sauer P226 pistol (with 15-round 9mm magazines), and the Beretta 92-series pistol (with 15, or 17-round magazines). | Undisputed. |
| 18 | The most popular rifle in American history is the AR-15 platform, a | Disputed. The cited source does not provide evidentiary support for this assertion. *See* David B. Kopel, *The History of Firearm Magazines and Magazine* |

| | | |
|---|---|---|
| | semiautomatic rifle with standard magazines of twenty or thirty rounds. | *Prohibitions*, 88 Alb. L. Rev. 849, 859 n.90 (2015). In addition, the original AR-15 was sold with a five-round magazine. *See* Klarevas Decl., ¶ 49. |
| 19 | A study by the National Shooting Sports Foundation (NSSF) estimated that there were over 24 million "modern sporting rifles" (MSRs) in circulation in the United States as of 2022. | Disputed.<br><br>Plaintiffs have not authenticated this document, nor have they presented any evidence as to the reliability or veracity of it. James Curcuruto, a declarant of Plaintiffs who once worked at NSSF, left the organization in January of 2021, *see* Meyerhoff Decl., Ex. H (Curcuruto Depo., 50:20–23), prior to the issuance of this report.<br><br>Plaintiffs' estimate includes assault rifles acquired by law enforcement. (Pls. Exh. 17 at 2 ("An important note: The NSSF report includes weapons produced for law enforcement.").) |
| 20 | A 2022 NSSF survey of MSR owners showed that over half (52%) of MSR owners reported they possessed magazines with 30 round capacities, followed by 17% who said they owned magazines with 20 round capacities. When asked why they chose their respective capacity, most frequent responses were related to their popularity/standard and being readily available. | Disputed.<br><br>Plaintiffs have not authenticated this document, nor have they presented any evidence as to the reliability or veracity of it. James Curcuruto, a declarant of Plaintiffs who once worked at NSSF, left the organization in January of 2021, *see* Meyerhoff Decl., Ex. H (Curcuruto Depo., 50:20–23), prior to the issuance of this report.<br><br>The survey does not claim that 52% of respondents reported that they possessed magazines with 30 round capacities, or that 17% said they owned magazines with 20 round capacities. Instead, the survey claims that 52% of respondents reported that the "magazine capacity" of their most recently-purchased rifle was 30 rounds, and that another 17% reporter that the "magazine capacity" of their most recently-purchased rifle was 20 rounds. *See* Lee Decl., Ex. F at 31. Moreover, the rifles discussed in the survey do not themselves have a magazine capacity, as they are capable of using magazines capable of holding 10 or fewer rounds, *see* Busse Decl. ¶¶ 28-29, so this statement is unclear and ambiguous. |
| 21 | Magazines holding more than 10 rounds of ammunition are, in virtually every other state of the Union, in common use by | Disputed. Whether a weapon accessory is in "common use" for self-defense is a question of law. LCMs are not in common use for self-defense. *See, e.g.*, Allen Decl. ¶¶ 11, 18 (individuals rarely fire more than 10 rounds in self-defense, with the average being approximately 2.2 rounds). Numerous courts have held that they are not, |

| | | |
|---|---|---|
| | law-abiding for lawful purposes. | based on substantially similar records. *See, e.g.*, *Hanson v. District of Columbia*, __ F. Supp. 3d __, 2023 WL 3019777, at *10-12 (N.D. Ill. Apr. 20, 2023) (holding that LCMs "are not in fact commonly used for self-defense" or "typically possessed for self-defense"); *Ocean State Tactical, LLC v. State of Rhode Island*, 2022 WL 17721175, at *15 (D.R.I. Dec. 14, 2022) ("[P]laintiffs have failed to establish that they have a likelihood of success in demonstrating that LCMs are weapons of self-defense, such that they would enjoy Second Amendment protection."); *Or. Firearms Fed'n, Inc. v. Brown*, __ F. Supp. 3d __, 2022 WL 17454829, at *11 (D. Or. Dec. 6, 2022) ("Plaintiffs have not shown that large-capacity magazines are weapons 'in common use . . . for lawful purposes like self-defense' such that they fall within the plain text of the Second Amendment." (citation omitted)); *see also Or. Firearms Fed'n, Inc.*, 2022 WL 17454829, at *11 ("The Ninth Circuit has noted, without explicitly holding, that there is 'significant merit' to the argument that large-capacity magazines are not firearms commonly used for lawful purposes like self-defense, and therefore are not covered by the plain text of the Second Amendment." (quoting *Duncan v. Bonta*, 19 F.4th 1087, 1102 (9th Cir. 2021) (en banc)). |
| 22 | It is generally well-known, well-accepted, and generally indisputable that magazines capable of holding more than 10 rounds are commonly owned by millions of persons in the United States, for a variety of lawful purposes, including recreational target shooting, competition, home defense, collecting and hunting. | Disputed. The cited source does not provide evidentiary support for this assertion. *See* Youngman Decl. ¶ 9 (Dkt. 11); *see also* Meyerhoff Decl., Ex. F (Youngman Depo., 86:3–17) (admitting that General Youngman consulted no documents and spoke with no persons in coming to this conclusion, but instead simply relied on "just common knowledge within the -- the larger firearms community"); Klarevas Decl., ¶ 40 ("The current number of LCMs in American society is unknown."). |
| 23 | The NSSF estimated that between 1990 and 2015 there were 230 million pistol and rifle magazines in the possession of United States consumers generally, and that magazines capable of holding more than 10 | Disputed. Mr. Curcuruto acknowledges that the NSSF estimate is "based on extrapolation from indirect sources and cannot be confirmed as unequivocally accurate." Lee Decl., Ex. B ¶ 13; *see also* Klarevas Decl., ¶¶ 40-49 (identifying numerous flaws in Plaintiffs' assertions). Moreover, to the extent the NSSF Magazine Chart was based on ATF AFMER or ITC reports, those reports do not exclude production of firearms for purchase by law |

6

| | | |
|---|---|---|
| | rounds of ammunition accounted for approx. 115 million, or half of all magazines owned, during this time period. | enforcement, and they do not provide manufacturing data on ammunition magazines. *See* Meyerhoff Decl., Ex. H (Curcuruto Depo., 124:15–129:17). <br><br>Objection: Speculative testimony. Fed. R. Evid. 702. |
| 24 | It is likely that tens of millions of magazines capable of holding 10 or more rounds were in the hands of United States consumers generally between 1990 and 2015. | Disputed. Mr. Curcuruto acknowledges that the NSSF estimate is "based on extrapolation from indirect sources and cannot be confirmed as unequivocally accurate." Lee Decl., Ex. B ¶ 13; *see also* Klarevas Decl., ¶¶ 40-49 (identifying numerous flaws in Plaintiffs' assertions). Moreover, to the extent Mr. Curcuruto's NSSF source was based on ATF AFMER or ITC reports, *see id.*, Ex. A (NSSF Magazine Chart), those reports do not exclude production of firearms for purchase by law enforcement, and they do not provide manufacturing data on ammunition magazines. *See* Meyerhoff Decl., Ex. H (Curcuruto Depo., 124:15–129:17). <br><br>Objection: Speculative testimony. Fed. R. Evid. 702. |
| 25 | An analysis of a survey performed in 2021 found that 48% of gun owners in the United States have at one point or another owned magazines that are capable of holding more than 10 rounds. | Disputed. Whatever the percentage of gun owners who reported owning an LCM, only 3.56% of respondents to the survey reported being in "a situation . . . in which it would have been useful for defensive purposes to have a firearm with a magazine capacity in excess of 10 rounds" (550 out of 15,450 respondents). Lee Decl., Ex. C at 26-28; *see also* Klarevas Decl., ¶¶ 40-49 (identifying numerous flaws in Plaintiffs' assertion). And in 81.9% of defensive incidents, no shots were fired. *Id.* at 13. <br><br>Objection: Hearsay. Fed. R. Evid. 801. |
| 26 | According to the *Survey*, approx. 39 million Americans have at some point owned at least one magazine that holds more than 10 rounds. | Disputed. <br><br>Whatever the percentage of gun owners who reported owning an LCM, only 3.56% of respondents to the survey reported being in "a situation . . . in which it would have been useful for defensive purposes to have a firearm with a magazine capacity in excess of 10 rounds" (550 out of 15,450 respondents). Lee Decl., Ex. C at 26-28; *see also* Klarevas Decl., ¶¶ 40-49 (identifying numerous flaws in Plaintiffs' assertion). And in 81.9% of defensive incidents, no shots were fired. *Id.* at 13. <br><br>Objection: Hearsay. Fed. R. Evid. 801. |

7

| | | |
|---|---|---|
| 27 | According to the *Survey*, American gun owners have owned as many as 269 million handgun magazines that hold over 10 rounds. | Disputed.<br><br>Whatever the percentage of gun owners who reported owning an LCM, only 3.56% of respondents to the survey reported being in "a situation . . . in which it would have been useful for defensive purposes to have a firearm with a magazine capacity in excess of 10 rounds" (550 out of 15,450 respondents). Lee Decl., Ex. C at 26-28; *see also* Klarevas Decl., ¶¶ 40-49 (identifying numerous flaws in Plaintiffs' assertion). And in 81.9% of defensive incidents, no shots were fired. *Id.* at 13.<br><br>Objection: Hearsay. Fed. R. Evid. 801. |
| 28 | According to the *Survey*, American gun owners have owned as many as 273 million rifle magazines that hold over 10 rounds. | Disputed.<br><br>Whatever the percentage of gun owners who reported owning an LCM, only 3.56% of respondents to the survey reported being in "a situation . . . in which it would have been useful for defensive purposes to have a firearm with a magazine capacity in excess of 10 rounds" (550 out of 15,450 respondents). Lee Decl., Ex. C at 26-28; *see also* Klarevas Decl., ¶¶ 40-49 (identifying numerous flaws in Plaintiffs' assertion). And in 81.9% of defensive incidents, no shots were fired. *Id.* at 13.<br><br>Objection: Hearsay. Fed. R. Evid. 801. |
| 29 | According to the *Survey*, individuals who own magazines that hold more than 10 rounds most commonly cite the following as the reasons for owning such devices: recreational target shooting, home defense, hunting, and defense outside the home. | Disputed.<br><br>Self-defense is not the primary reason cited for owning an LCM. *See* Klarevas Decl., ¶¶ 40-49 (identifying numerous flaws in Plaintiffs' assertion).<br><br>Objection: Hearsay. Fed. R. Evid. 801. |
| 30 | In California, the California DOJ estimated that as of December 16, 2016, "[t]here are likely hundreds of thousands of large capacity magazines in California at this time." | Undisputed. |

8

| | | | |
|---|---|---|---|
| | 31 | The DOJ expected that "many gun owners" would be affected by a new ban on LCMs. | Undisputed. |
| | 32 | Prior to passage of SB 1446, the Senate Public Safety Committee considered and rejected the idea that the LCM ban would constitute a "takings" under the Fifth Amendment's Takings Clause. | Undisputed. |
| | 33 | Under the new law, owners of LCMs in the State of California, unless exempt, must: (1) Remove the large-capacity magazine from the state; (2) Sell the large-capacity magazine to a licensed firearms dealer; or (3) Surrender the large-capacity magazine to a law enforcement agency for destruction. | Disputed. Owners of LCMs may continue to possess them if they modify the magazines permanently to no longer hold more than ten rounds of ammunition. *See* Cal. Penal Code Section 17460; *see also Duncan v. Bonta*, 19 F.4th 1087, 1113 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), *vacated and remanded*, 49 F.4th 1228 (9th Cir. 2022). |
| | 34 | The law does not offer to compensate owners of LCMs for their surrender to a LCM for destruction. | Undisputed. |
| | 35 | Individual Plaintiffs are unwilling to destroy or surrender their lawfully-acquired LCMs in their possession. | Undisputed. |
| | 36 | Unless enjoined, enforcement of Pen. Code § 32310(c) will cause Individual Plaintiffs to suffer permanent physical deprivation of their personal property. | Undisputed. |
| | 37 | Some Individual Plaintiffs have "pre-ban" magazines of substantial value, either intrinsically or because they have historical value. | Disputed. Plaintiffs have put forward no evidence quantifying the purported substantial value of any "pre-ban" magazines they have possess. At summary judgment, a Takings claim requires "proof that the regulatory action caused deprivation of all economic use." |

| | | |
|---|---|---|
| | | *See Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 752 (9th Cir. 2001); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) ("Summary judgment is appropriate where appellants have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages."). |
| 38 | Some of these magazines are the only magazines that these Individual Plaintiffs may have for that particular firearm. | Undisputed. |
| 39 | Some of these magazines are the only magazines that were ever made for that particular firearm. | Disputed.<br><br>Plaintiffs have put forward no competent evidence that some of the LCMs they possess are the only magazines that were ever made for that particular firearm. Plaintiff Dang's statement that he is "not aware of the existence of any . . . ten-round magazines compatible with" his firearm, Dang Decl., ¶ 5, is not evidence that no such magazine exists, given that he has not been qualified as an expert in firearms (or any relevant topic for that matter), and certainly does not controvert Ryan Busse's expert opinion to the contrary. Busse Decl., ¶ 18. In any event, this statement was made on "information and belief," Dang Decl., ¶ 5, and thus is not entitled to any evidentiary weight. *See Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), aff'd, 508 U.S. 49 (1993) (holding that a declaration based "on information and belief . . . does not raise a triable issue of fact"). At his deposition, Plaintiffs Dang could only testify that he was unaware of the existence of other magazines made for that particular firearm, not that no such magazines existed. *See* Meyerhoff Decl., Ex. I (Dang Depo., 28:15–29:18).<br><br>Firearms that use LCMs are capable of operating with magazines holding ten rounds or less. *See* Busse Decl. ¶¶ 28-29. |

| | | |
|---|---|---|
| 1 | Dated: August 18, 2023 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | MARK R. BECKINGTON<br>Supervising Deputy Attorney General |
| 4 | | JOHN D. ECHEVERRIA<br>Deputy Attorney General |
| 5 | | |
| 6 | | |
| 7 | | /s/ Robert L. Meyerhoff<br>ROBERT L. MEYERHOFF |
| 8 | | Deputy Attorney General<br>*Attorneys for Defendants Rob Bonta in his* |
| 9 | | *official capacity as Attorney General of the*<br>*State of California and Allison Mendoza in* |
| 10 | | *her Official Capacity as Director of the*<br>*Bureau of Firearms* |
| 11 | S | |