ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
ROBERT L. MEYERHOFF
Deputy Attorney General
State Bar No. 298196
   300 South Spring Street, Suite 1702
   Los Angeles, CA  90013-1230
   Telephone:  (213) 269-6177
   Fax:  (916) 731-2144
   E-mail:  Robert.Meyerhoff@doj.ca.gov
*Attorneys for Defendants Rob Bonta in his official
capacity as Attorney General of the State of California
and Allison Mendoza in her Official Capacity as
Director of the Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **WILLIAM WIESE, et al.,** | Case No. 2:17-cv-00903-WBS-KJN |
| Plaintiffs, | |
| v. | **DECLARATION OF ROBERT L. MEYERHOFF IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND COUNTER-MOTION FOR SUMMARY JUDGMENT** |
| **ROB BONTA, et al.,** | |
| Defendants. | |
| | Date:            October 30, 2023 |
| | Time:            1:30 p.m. |
| | Courtroom:    5, 14th Floor |
| | Judge:           Hon. William B. Shubb |

1

1           **DECLARATION OF ROBERT L. MEYERHOFF**

2        I, Robert L. Meyerhoff, declare under penalty of perjury that the following is true and

3  correct:

4       1.   I am over the age of eighteen (18) years, competent to testify to the matters contained

5  in this declaration, and testify based on my personal knowledge and information.

6       2.   I am a Deputy Attorney General with the California Department of Justice, and serve

7  as counsel to Defendants Rob Bonta in his official capacity as Attorney General of the State of

8  California and Allison Mendoza in her Official Capacity as Director of the Bureau of Firearms

9  ("Defendants").

10      3.   On July 11, 2023, Defendants deposed Sherman Macaston. A true and correct copy of

11  relevant excerpts of the Reporter's Transcript of the Deposition of Sherman Macaston is attached

12  as Exhibit A.

13      4.   On July 12, 2023, Defendants deposed Todd Nielsen. A true and correct copy of

14  relevant excerpts of the Reporter's Transcript of the Deposition of Todd Nielsen is attached as

15  Exhibit B.

16      5.   On July 13, 2023, Defendants deposed Clifford Flores. A true and correct copy of

17  relevant excerpts of the Reporter's Transcript of the Deposition of Clifford Flores is attached as

18  Exhibit C.

19      6.   On July 14, 2023, Defendants deposed Frank Federau. A true and correct copy of

20  relevant excerpts of the Reporter's Transcript of the Deposition of Frank Federau is attached as

21  Exhibit D.

22      7.   On July 17, 2023, Defendants deposed Jeremiah Morris. A true and correct copy of

23  relevant excerpts of the Reporter's Transcript of the Deposition of Jeremiah Morris is attached as

24  Exhibit E.

25      8.   On July 18, 2023, Defendants deposed D. Allen Youngman. A true and correct copy

26  of relevant excerpts of the Reporter's Transcript of the Deposition of D. Allen Youngman is

27  attached as Exhibit F.

28

1       9.   On July 20, 2023, Defendants deposed William Wiese. A true and correct copy of

2   relevant excerpts of the Reporter's Transcript of the Deposition of William Wiese is attached as

3   Exhibit G.

4       10.  On August 3, 2023, Defendants deposed James Curcuruto. A true and correct copy of

5   relevant excerpts of the Reporter's Transcript of the Deposition of James Curcuruto is attached as

6   Exhibit H.

7       11.  On July 27, 2023, Defendants deposed Luang X. Dang. A true and correct copy of

8   relevant excerpts of the Reporter's Transcript of the Deposition of Luang X. Dang is attached as

9   Exhibit I.

10       I declare under penalty of perjury under the laws of the United States of America that the

11   foregoing is true and correct.

12       Executed on August 18, 2023, at Los Angeles, CA.

13

14                                       <u>/s/ Robert L. Meyerhoff</u>

15                                       Robert L. Meyerhoff

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Robert L. Meyerhoff
(Case No. 2:17-cv-00903-WBS-KJN)

# Exhibit A

# IN  THE  UNITED  STATES  DISTRICT  COURT
# FOR  THE  EASTERN  DISTRICT  OF  CALIFORNIA

WILLIAM WIESE, et al.,     )
         )
       Plaintiffs,     )
         )
     vs.     ) **CASE NO.**
         )   2:17-cv-00903-WBS-KJN
ROB BONTA, et al.,     )
         )
       Defendants.     )
_____ )

## DEPOSITION OF
### SHERMAN MACASTON

**DATE:**      Tuesday, July 11, 2023

**REPORTER:**      Lauren Jones Jackson, CSR No. 7007/RPR

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS

**INTERNATIONAL TOWER**
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION


WILLIAM WIESE, et al.,       )Case No. 2:17-cv-00903-WBS-KJN
                             )
         Plaintiffs,         )
                             )
     vs.                     )
                             )
ROB BONTA, et al.,           )
                             )
         Defendants.         )
_____)

REMOTE DEPOSITION OF

SHERMAN MACASTON


Tuesday, July 11, 2023


LAUREN JONES JACKSON
CERTIFIED SHORTHAND REPORTER NO. 7007, RPR

```
 1                 Deposition of SHERMAN MACASTON,

 2                 taken remotely via Zoom video

 3                 conferencing on behalf of the

 4                 Defendants on Tuesday,

 5                 July 11, 2023, at 9:05 A.M., before

 6                 Lauren Jones Jackson, CSR No. 7007.

 7
     APPEARANCES:
 8

 9       For the Plaintiffs:

10                 SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
                   BY:  GEORGE M. LEE, ESQ.
11                 601 Montgomery Street
                   Suite 2000
12                 San Francisco, California 94111
                   (415) 979-0500
13                 gml@seilerepstein.com

14                 And

15                 LAW OFFICES OF RAYMOND MARK DIGUISEPPE,
                   PLLC
16                 BY:  RAYMOND M. DIGUISEPPE, ESQ.
                   4002 Executive Park Boulevard
17                 Suite 600
                   Southport, North Carolina 28461
18                 (910) 713-8804
                   law.rmd@gmail.com
19

20       For the Defendants:

21                 CALIFORNIA DEPARTMENT OF JUSTICE
                   BY:  ROBERT L. MEYERHOFF, ESQ.
22                 300 South Spring Street
                   Suite 1702
23                 Los Angeles, California 90013
                   (213) 269-6177
24                 robert.meyerhoff@doj.ca.gov

25
```

1     A.  Correct.

2     Q.  So for the other nine firearms you possess, you

3  only own magazines that accept ten rounds or less?

4     A.  Correct.

5     Q.  On average, how many magazines do you own for

6  each of those nine firearms?

7     A.  On an average, would probably be ten.

8     Q.  So you own a total of 90 magazines or -- I'll

9  rephrase.

10     You own approximately 90 magazines that accept

11  ten rounds or less; correct?

12     A.  No.  I have approximately 55 to 60 magazines that

13  accept 10 rounds or less.

14     Q.  So for each firearm, you have an average around

15  seven magazines; correct?

16     A.  It would be more of a closer average to seven.

17  Some -- some of my --

18     Some of them, I only have three or four

19  magazines.  Others, I have twelve or fourteen.

20     Q.  And for these firearms, these nine firearms, why

21  do you not have large-capacity magazines?

22     A.  On several of them, large capacity -- to give you

23  an idea of 45 caliber pistols -- they -- the best -- the

24  highest capacity they come with is eight.

25     Q.  Why is that?

1    A.  The -- the butt of the gun is not big enough to

2    handle a magazine larger than that.

3    Q.  How many 45 caliber pistols do you own?

4    A.  Two.

5    Q.  And what do you use those 45 caliber pistols for?

6    A.  Target practice; shooting holes in paper;

7    self-defense.

8    Q.  And how do you use those 45 caliber pistols for

9    self-defense?

10   A.  Well, I haven't had to.  Thank you.  But if

11   necessary, I would be capable of it.

12   Q.  Are those 45 caliber pistols semiautomatic?

13   A.  Yes, they are.

14   Q.  And how would you use those pistols in

15   self-defense?

16           MR. LEE:  Objection.  Lacks foundation.

17   Calls for speculation.  I don't know that I understand

18   the question from counsel.

19   BY MR. MEYERHOFF:

20   Q.  Mr. Macaston, you testified that you could use an

21   eight --

22       You testified you could use a 45 caliber pistol

23   in self-defense; correct?

24   A.  Correct.

25   Q.  And 45 caliber pistols are only capable of

1    I, LAUREN JONES JACKSON, Certified Shorthand

2    Reporter qualified in and for the State of California,

3    do hereby certify:

4    That the foregoing transcript is a true and

5    correct transcription of my original stenographic notes.

6    I further certify that I am neither attorney or

7    counsel for, nor related to or employed by any of the

8    parties to the action in which this proceeding was

9    taken; and furthermore, that I am not a relative or

10   employee of any attorney or counsel employed by the

11   parties hereto or financially interested in the action.

12   IN WITNESS WHEREOF, I have hereunto set my hand

13   this 14th day of July, 2023.

14

15

16

17

18   _____
     LAUREN JONES JACKSON
19   CSR No. 7007

20

21

22

23

24

25

# Exhibit B

# IN  THE  UNITED  STATES  DISTRICT  COURT
# FOR  THE  EASTERN  DISTRICT  OF  CALIFORNIA

| | | |
|---|---|---|
| WILLIAM WIESE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **CASE NO.** |
| | ) | 2:17-cv-00903-WBS-KJN |
| ROB BONTA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEPOSITION OF
## TODD MICHAEL NIELSEN

**DATE:**      Wednesday, July 12, 2023

**REPORTER:**   Allison Wong, CSR No. 13963

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS
### INTERNATIONAL TOWER
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

```
 1

 2

 3              IN THE UNITED STATES DISTRICT COURT

 4

 5          FOR THE EASTERN DISTRICT OF CALIFORNIA

 6

 7                    SACRAMENTO DIVISION

 8

 9

10

11  WILLIAM WIESE, et al.,        )
                                  )
12             Plaintiffs,        )
                                  )
13       vs.                      ) Case No. 2:17-cv-00903-
                                  )              WBS-KJN
14  ROB BONTA, et al.,            )
                                  )
15             Defendants.        )
    _____)
16

17                    DEPOSITION OF

18                    TODD MICHAEL NIELSEN

19                    July 12, 2023

20                    9:31 a.m.

21

22                    via Zoom Videoconference

23

24

25
```

1              Deposition of TODD MICHAEL NIELSEN, called as a

2        witness by the Defendants, before ALLISON WONG,

3        Certified Shorthand Reporter Number 13963, for the

4        State of California, with principal office in the

5        County of Los Angeles, commencing at 9:31 a.m.,

6        July 12, 2023, via Zoom videoconference.

7                              * * *

8

9    APPEARANCES OF COUNSEL:

10

11          FOR THE PLAINTIFFS:

12                  THE DIGUISEPPE LAW FIRM, P.C.
                    BY:  RAYMOND MARK DIGUISEPPE, ESQ.
13                  Post Office Box 10790
                    Southport, North Carolina 28461
14                  (910)713-8804
                    LAW.RMD@gmail.com
15

16          FOR THE DEFENDANTS:

17

18                  CALIFORNIA DEPARTMENT OF JUSTICE
                    BY:  ROBERT L. MEYERHOFF, ESQ.
19                  300 South Spring Street
                    Suite 1702
20                  Los Angeles, California 90013-1256
                    (213)269-6177
21                  robert.meyerhoff@doj.ca.gov

22

23

24

25

1   BY MR. MEYERHOFF:

2       Q.  Did you do any research on whether there would

3   be a place you could store them outside of the state of

4   California?

5       A.  Yes.  I did.

6       MR. MEYERHOFF:  I'm going to shift gears a little

7   bit.  Do you need a break, Mr. Nielsen?  Or are you --

8   you okay?

9       THE WITNESS:  No.  I'm okay.

10      MR. MEYERHOFF:  Okay.

11          (Reporter inquiry.)

12      MR. MEYERHOFF:  Sorry, Ms. Wong.

13      MR. DIGUISEPPE:  Sure thing.

14      MR. MEYERHOFF:  Of course.  I'll just go on mute.

15          (Recess taken.)

16      MR. MEYERHOFF:  Are we back on the record?  Great.

17  BY MR. MEYERHOFF:

18      Q.  Mr. Nielsen, we spoke about, earlier, the times

19  that you've discharged your firearm, a firearm while on

20  duty.  I want to shift gears and ask a slightly

21  different question.

22      Have you ever discharged a firearm while not on

23  duty?

24      THE WITNESS:  No.

25      MR. DIGUISEPPE:  I'll insert an objection on

**HINES REPORTERS**                                    49

1    relevance grounds, the questions about the use of a

2    particular firearm or magazine or how many rounds have

3    been discharged in a given instance.

4         Other than that, you can answer.

5         THE WITNESS:  I have not discharged one off duty.

6    BY MR. MEYERHOFF:

7         Q.  Any type of firearm; correct?

8         A.  Other than training, no.

9         Q.  Have you ever been the victim of a crime?

10        A.  Several times.

11        Q.  What types of crimes?

12        A.  Assaults, batteries, assault with a deadly

13   weapon, burglary.

14        Q.  Have -- have any of these crimes occurred while

15   you were off duty?

16        A.  Yes.

17        Q.  How many of them?

18        A.  Total of about seven.

19        Q.  And why did you not discharge a firearm during

20   the course of any of these crimes?

21        MR. DIGUISEPPE:  Objection.  Irrelevant.

22        You can answer, if you can.

23        THE WITNESS:  In most of them, like the burglary, I

24   was not there.  The assaults, there wasn't a clean line

25   of fire for me to actually utilize my firearm.  And then

**H I N E S   R E P O R T E R S**                                    50

1   County of Los Angeles,  )

2   State of California,    )

3

4     I, Allison Wong, Certified Shorthand Reporter

5   licensed in the State of California, License No. 13963,

6   hereby certify that the deponent was by me first duly

7   sworn and the foregoing testimony was reported by me and

8   was thereafter transcribed with Computer-Aided

9   Transcription; that the foregoing is a full, complete,

10   and true record of said proceeding.

11     I further certify that I am not of counsel or

12   attorney for either or any of the parties in the

13   foregoing proceeding and caption named or in any way

14   interested in the outcome of the cause in said caption.

15   The dismantling, unsealing, or unbinding of the

16   transcript will render the reporter's certificates null

17   and void.

18     In witness whereof, I have hereunto set my hand

19   this day: 15th of July.

20     __X_ Read and Signing was requested.

21     ____ Reading and Signing was waived.

22     ____ Reading and Signing was not requested.

23

24   _____
     ALLISON WONG,

25     CSR No. 13963

# Exhibit C

# IN  THE  UNITED  STATES  DISTRICT  COURT
# FOR  THE  EASTERN  DISTRICT  OF  CALIFORNIA

| | | |
|---|---|---|
| WILLIAM WIESE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **CASE NO.** |
| | ) | 2:17-cv-00903-WBS-KJN |
| ROB BONTA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEPOSITION OF
CLIFFORD WAYNE FLORES

**DATE:**        Thursday, July 13, 2023

**REPORTER:**   Karen I. Pearson-Bell, CSR No. 3557

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS
### INTERNATIONAL TOWER
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

```
1

2

3                   UNITED STATES DISTRICT COURT

4              FOR THE EASTERN DISTRICT OF CALIFORNIA

5                        SACRAMENTO DIVISION

6
     WILLIAM WIESE, et al.,        )
7                                  )
                  Plaintiffs,      )
8                                  )
             vs.                   ) No. 2:17-CV-00903-WBS-KJN
9                                  )
     BOB BONTA, et al.,            ) Confidential section of
10                                 ) this transcript is
                  Defendants.      ) bound separately, Pages
11                                 ) 51-58

12

13

14        REMOTE DEPOSITION VIA ZOOM VIDEOCONFERENCE OF

15                     CLIFFORD WAYNE FLORES

16
             TAKEN WITH THE
17           DEPONENT LOCATED IN
             MILPITAS, CALIFORNIA
18
             THURSDAY, JULY 13, 2023
19
             KAREN I. PEARSON-BELL, CSR
20           CERTIFICATE NO. 3557

21

22

23

24

25
```

1    Remote deposition via Zoom Videoconference of
CLIFFORD WAYNE FLORES, called as a witness by the
2  defendants, before Karen I. Pearson-Bell, Certified
Shorthand Reporter for the State of California, with
3  principal office in the County of Riverside, commencing
at 11:06 a.m., Thursday, July 13, 2023, with the
4  deponent located in Milpitas California.

5    - - -

6  * APPEARANCES OF COUNSEL:

7

    For the Plaintiffs:
8

    SEILER EPSTEIN LLP
9    BY:  GEORGE M. LEE, ESQ.
    4 Embarcadero Center, 14th Floor
10    San Francisco, California 94111
    T: (415) 979-0500
11    F: (415) 979-0511
    E: gml@seilerepstein.com
12

13    For Defendants Rob Bonta in his official
    capacity as Attorney General of the State of
14    California, and Allison Mendoza in her
    official capacity as Director of the Bureau of
15    Firearms:

16    OFFICE OF THE ATTORNEY GENERAL OF CALIFORNIA
    BY:  ROBERT L. MEYERHOFF
17      Deputy Attorney General
    300 South Spring Street, Suite 1702
18    Los Angeles, California 90013-1230
    T: (213) 269-6177
19    F: (213) 731-2144
    E: robert.meyerhoff@doj.ca.gov
20

21    Also Present:

22    MARIE TRUBETSKAYA - Law Clerk

23

24  * Note:  All appearances in the deposition were via
      Zoom Videoconference except the deponent who
25      appeared via telephone only

**H I N E S   R E P O R T E R S**                    2

```
 1        Q.   Other than at the shooting range and the time
 2   that you shot the cat, have you ever discharged a
 3   firearm?
 4        A.   I don't really recall.
 5        Q.   Have you ever discharged a firearm at another
 6   person?
 7        A.   Never.  No.
 8        Q.   Have you ever discharged a firearm near
 9   another person in an effort to get them away from you?
10        A.   No.
11        Q.   Have you ever been the victim of a crime?
12        A.   No.
13        Q.   You testified previously that the largest
14   capacity magazine you own is 70 rounds.  Is that
15   correct?
16        A.   About 70 or 75, I believe, yeah.
17        Q.   And based on the fact that you are suing the
18   State of California relating to that magazine, is it
19   fair to say that you believe that 70-round magazine
20   should not be restricted under California law?
21        A.   Yes.
22        Q.   Do you believe that hundred-round magazines
23   should be restricted under California law?
24             MR. LEE:  Objection.  Calls for an opinion.
25             You may answer, Mr. Flores.
```

```
1    STATE OF CALIFORNIA    )
                            )
2    COUNTY OF RIVERSIDE    )

3

4              I, KAREN I. PEARSON-BELL, Certified Shorthand

5    Reporter in and for the State of California do hereby

6    certify under the laws of the State of California:

7              That the foregoing transcript is a true and

8    correct transcription of my original stenographic

9    notes.

10             I further certify that I am neither attorney

11   or counsel for, nor related to or employed by any of

12   the parties to the action; and, furthermore, that I am

13   not a relative or employee of any attorney or counsel

14   employed by the parties hereto or financially

15   interested in the action.

16

17             IN WITNESS WHEREOF, I have hereunto set my

18   hand this 14th day of July, 2023.

19

20

21

22

23             KAREN I. PEARSON-BELL
               CSR NO. 3557/RPR

24

25
```

**H I N E S   R E P O R T E R S**                                    61

# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM WIESE, et al.,      )
                             )
           Plaintiffs,    )
                             )

      vs.               )  **CASE NO.**
                             )    2:17-cv-00903-WBS-KJN

ROB BONTA, et al.,        )
                             )
          Defendants.    )
_____ )

## DEPOSITION OF
### FRANK FEDERAU

**DATE:**       Friday, July 14, 2023

**REPORTER:**   Cheryl S. Ortega, CSR No. 13709

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS
**INTERNATIONAL TOWER**
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE EASTERN DISTRICT OF CALIFORNIA

3             SACRAMENTO DIVISION

4

5  WILLIAM WEISE, ET AL,         )
                              )
6            PLAINTIFFS,     )
                              )
7    VS.                    )  NO.
                              )  2:17-CV-00903-WBS-
8  ROB BONTA, ET AL,         )  KJN
                              )
9            DEFENDANTS.     )
  _____)

10

11

12

13             ZOOM DEPOSITION OF

14              FRANK FEDERAU

15              JULY 14, 2023

16

17

18

19

20

21

22

23

24

25  REPORTED BY:  CHERYL S. ORTEGA, CSR NO. 13709

```
1                 IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF CALIFORNIA

3                       SACRAMENTO DIVISION

4

5   WILLIAM WEISE, ET AL,              )
                                       )
6                   PLAINTIFFS,        )
                                       )
7       VS.                            )   NO.
                                       )   2:17-CV-00903-WBS-
8   ROB BONTA, ET AL,                  )   KJN
                                       )
9                   DEFENDANTS.        )
    _____)
10

11

12

13

14

15

16       ZOOM DEPOSITION OF FRANK FEDERAU, TAKEN BEFORE

17   CHERYL S. ORTEGA, CSR NO. 13709, A CERTIFIED COURT

18   REPORTER FOR THE STATE OF CALIFORNIA, COMMENCING AT 9:55

19   A.M., FRIDAY, JULY 14, 2023.

20

21

22

23

24

25
```

```
 1      APPEARANCES OF COUNSEL:

 2

 3              For the Plaintiffs:

 4                  LAW OFFICES OF RAYMOND MARK DIGUISEPPE,
                    PLLC
 5                  4002 EXECUTIVE PARK BLVD
                    SUITE 600
 6                  SOUTHPORT, NORTH CAROLINA  28461
                    910-713-8804
 7                  LAW.RMD@GMAIL.COM
                    BY:  MARK DIGUISEPPE, ESQ.
 8
                For the Defendants:
 9
                    OFFICE OF THE ATTORNEY GENERAL
10                  300 SOUTH SPRING STREET
                    SUITE 1702
11                  LOS ANGELES, CALIFORNIA  90013
                    213.269.6177
12                  JERRY.YEN@DOJ.CA.GOV
                    BY:  JERRY YEN, ESQ.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          But you can answer the question if you can.

2          THE WITNESS:  The answer is no.

3    BY MR. YEN:

4      Q.   Have you ever discharged the firearm in

5    self-defense?

6      A.   No.

7          MR. DIGUISEPPE:  Same objection.

8          You got ahead of me on that question but the

9    objection is irrelevant when it comes to use of the arms

10   or the magazines.

11         You can continue.

12   BY MR. YEN:

13     Q.   Has anyone in your household ever discharged a

14   firearm in self-defense?

15         MR. DIGUISEPPE:  Same objection.

16         THE WITNESS:  No.

17         MR. DIGUISEPPE:  You can answer.

18         THE WITNESS:  No.

19   BY MR. YEN:

20     Q.   How many rounds would you think you need for

21   self-defense?

22         MR. DIGUISEPPE:  Objection.  Irrelevant.

23   Calling for speculation.

24         You can answer.

25         THE WITNESS:  As many as it needs.

```
 1

 2

 3

 4

 5

 6

 7     I, CHERYL ORTEGA, Certified Shorthand Reporter for the

 8     State of California, do hereby certify:

 9

10     That the proceeding was taken by me in machine shorthand

11     and later transcribed into typewriting, under my

12     direction, and that the foregoing contains a true record

13     of the testimony of the witness.

14

15     Dated:  This 14th of July, 2023 at San Bernardino,

16     California.

17

18

19

20

21                        Cheryl Ortega
                          CSR NO.  13709
22

23

24

25
```

# Exhibit E

# IN  THE  UNITED  STATES  DISTRICT  COURT
# FOR  THE  EASTERN  DISTRICT  OF  CALIFORNIA

WILLIAM WIESE, et al.,                    )
                                          )
                    Plaintiffs,           )
                                          )
          vs.                             ) **CASE NO.**
                                          )   2:17-cv-00903-WBS-KJN
ROB BONTA, et al.,                        )
                                          )
                    Defendants.           )
_____ )

## DEPOSITION OF
## JEREMIAH DANIEL MORRIS

**DATE:**          Monday, July 17, 2023

**REPORTER:**      Allison Wong, CSR No. 13963

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS

**INTERNATIONAL TOWER**
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

1

2

3                IN THE UNITED STATES DISTRICT COURT

4

5            FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7                       SACRAMENTO DIVISION

8

9

10

11    WILLIAM WIESE, et al.,          )
                                      )
12              Plaintiffs,           )
                                      )
13        vs.                         )  Case No. 2:17-cv-00903-
                                      )              WBS-KJN
14    ROB BONTA, et al.,              )
                                      )
15              Defendants.           )
      _____)

16

17                        DEPOSITION OF

18                   JEREMIAH DANIEL MORRIS

19                      July 17, 2023

20                      11:30 a.m.

21

22                   via Zoom Videoconference

23

24

25

1           Deposition of JEREMIAH DANIEL MORRIS, called as

2       a witness by the Defendants, before ALLISON WONG,

3       Certified Shorthand Reporter Number 13963, for the

4       State of California, with principal office in the

5       County of Los Angeles, commencing at 11:30 a.m.,

6       July 17, 2023, via Zoom videoconference.

7                                   * * *

8

9    APPEARANCES OF COUNSEL:

10

11          FOR THE PLAINTIFFS:

12              THE DIGUISEPPE LAW FIRM, P.C.
                BY:  RAYMOND MARK DIGUISEPPE, ESQ.
13              Post Office Box 10790
                Southport, North Carolina 28461
14              (910)713-8804
                LAW.RMD@gmail.com
15

16          FOR THE DEFENDANTS:

17

                CALIFORNIA DEPARTMENT OF JUSTICE
18              BY:  ROBERT L. MEYERHOFF, ESQ.
                300 South Spring Street
19              Suite 1702
                Los Angeles, California 90013-1256
20              (213)269-6177
                robert.meyerhoff@doj.ca.gov
21

22

23

24

25

```
 1   reason while you were a member of the Marines?

 2        A.  No.

 3        Q.  Outside of your service in the Marines, have

 4   you ever discharged a firearm?

 5        A.  Yes.

 6        Q.  Why?

 7        A.  Is the question why did I do it or what

 8   activities I was conducting?

 9        Q.  What activities were you conducting when you

10   discharged a firearm outside of your Marine service?

11        A.  Hunting, sport, target practice.

12        Q.  Are there any reasons, other than hunting,

13   sport, and target practice, that you've discharged a

14   firearm outside of your service in the Marines?

15        A.  Just, you know, additional CCW qualifiers.

16   That's about it.

17        Q.  Anything else?

18        A.  Not to my knowledge, no.

19        Q.  What is the difference between hunting and

20   sport?

21        A.  Hunting, you would be hunting a -- a live

22   animal.  Sport, you would be maybe, you know, like trap,

23   skeet, or something like that, a sporting clays event.

24        Q.  What type of live animals have you hunted?

25        MR. DIGUISEPPE:  Objection.  Irrelevant.
```

```
1           A.  Yes.
2           Q.  How many of those firearms accept detachable
3   magazines?
4           A.  Right over half, maybe.
5           Q.  Are the other half fixed magazines?
6           A.  Yes.
7           Q.  Do you own any revolvers?
8           A.  Yes.
9           Q.  How many revolvers do you own?
10          A.  I think three right now.
11          Q.  How many re- -- how many rounds are the
12  revolvers capable of firing before reloading?
13          A.  Depends on which one.  Actually -- yeah, so
14  just --
15          Q.  What's the largest?
16          A.  The largest is -- holds seven.
17          Q.  What about the others?
18          A.  Well, one's a six, and the other's a five.
19          Q.  What about the fixed-magazine firearms?  What's
20  the largest capacity of those?
21          A.  Goodness.  I don't -- I don't know.  I haven't
22  thought about that in a long time or even used some of
23  those in a while.  I really don't know.
24          Q.  Do you think any of those fixed-magazine
25  firearms are capable of firing more than ten rounds
```

1  without reloading?

2       A.  No.  They're not.

3       Q.  More than eight rounds without reloading?

4       A.  I don't think so.

5       Q.  Six rounds without reloading?

6       A.  Probably in there -- in there.

7       Q.  And for the detachable-magazine firearms you

8  possess, do you have large-capacity magazines for each

9  of those firearms?

10       A.  No.

11       Q.  So for some of the detachable-magazine firearms

12  you possess, the maximum magazine size is ten or less?

13       A.  Yes.

14       Q.  For those firearms, why have you not purchased

15  a large-capacity magazine?

16       A.  They're not offered for sale in California.

17       Q.  Why did you purchase the three revolvers you

18  own?

19       A.  It was a decision I made.

20       Q.  And what motivated that decision?

21       A.  I like them.

22       Q.  What do you like about them?

23       A.  What do I like about them?  Well, one, I didn't

24  purchase.  It was handed down through the family.  The

25  other -- the other two, I purchased because I -- one, I

1   Okay.

2        THE WITNESS:  Correct.

3        MR. DIGUISEPPE:  All right.  Thanks.

4   BY MR. MEYERHOFF:

5        Q.  How many years have you competed in the IDPA

6   for?

7        A.  I haven't competed in a number of years, but

8   when I was competing, it was probably four or

9   five years.

10       Q.  Does the IDPA only have competitions for

11  revolvers?

12       A.  No.

13       Q.  They have competition for detachable-magazine

14  firearms?

15       A.  Correct.

16       Q.  Why did you acquire the detachable-magazine

17  firearms you possess?

18       A.  Just as a collector.

19       Q.  Is there any reason, other than collection,

20  that you purchased your detachable-magazine firearms?

21       A.  Well, we already stated the self-defense, the

22  shooting, you know, the -- you know, the hunting and

23  stuff.

24       Q.  And those are the same reasons that you

25  purchased the fixed-magazine weapons?

1    A.  Correct.

2    Q.  Do you currently possess any

3  detachable-magazine firearms for which you only have a

4  large-capacity magazine?

5    A.  No.

6    Q.  I'm going to turn your attention to paragraph 8

7  of the declaration.

8    MR. MEYERHOFF:  And I'm not going to be asking

9  about the individual firearms anymore.  So I don't know

10  if you want to not mark the transcript as that at this

11  point.

12    Ray, do you have any objection to -- to not marking

13  or removing the provisional --

14    MR. DIGUISEPPE:  Oh.

15    MR. MEYERHOFF:  -- designation --

16    MR. DIGUISEPPE:  Yeah.  I think --

17    MR. MEYERHOFF:  -- moving forward?

18    MR. DIGUISEPPE:  I -- I think we can memor- --

19  memorialize the parties' understanding that we've left

20  the area of concern for purposes of potentially --

21  the -- the later potential agreement or stipulation or

22  protective order that may go into place as to the

23  questions about individual firearms.

24    So we'll move on from that, and -- and we'll be in

25  a different territory.

1  County of Los Angeles,  )

2  State of California,     )

3

4      I, Allison Wong, Certified Shorthand Reporter

5  licensed in the State of California, License No. 13963,

6  hereby certify that the deponent was by me first duly

7  sworn and the foregoing testimony was reported by me and

8  was thereafter transcribed with Computer-Aided

9  Transcription; that the foregoing is a full, complete,

10 and true record of said proceeding.

11     I further certify that I am not of counsel or

12 attorney for either or any of the parties in the

13 foregoing proceeding and caption named or in any way

14 interested in the outcome of the cause in said caption.

15 The dismantling, unsealing, or unbinding of the

16 transcript will render the reporter's certificates null

17 and void.

18     In witness whereof, I have hereunto set my hand

19 this day: 23rd of July.

20     __X_ Read and Signing was requested.

21     ____ Reading and Signing was waived.

22     ____ Reading and Signing was not requested.

23

24 _____
   ALLISON WONG,
   CSR No. 13963

25

**H I N E S   R E P O R T E R S**                    78

# Exhibit F

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

WILLIAM WIESE, et al.,         )
                                     )
            Plaintiffs,       )
                                     )
                                   ) **CASE NO.** 2:17-cv-00903-WBS-KJN
                                   )
ROB BONTA, et al.,          )
                                     )
            Defendants.      )
_____ )

## DEPOSITION OF
## GENERAL D. ALLEN YOUNGMAN

**DATE:**           Tuesday, July 18, 2023

**REPORTER:**     Allison Wong, CSR No. 13963

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS
**INTERNATIONAL TOWER**
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

1

2

                IN THE UNITED STATES DISTRICT COURT

4

            FOR THE EASTERN DISTRICT OF CALIFORNIA

6

                    SACRAMENTO DIVISION

8

9

10

WILLIAM WIESE, et al.,          )
                                )
          Plaintiffs,           )
                                )
     vs.                        )  Case No. 2:17-cv-00903-
                                )              WBS-KJN
ROB BONTA, et al.,              )
                                )
          Defendants.           )
_____)

                    DEPOSITION OF

                    GENERAL D. ALLEN YOUNGMAN

                    July 18, 2023

                    9:33 a.m.


                    via Zoom Videoconference

```
 1              Deposition of GENERAL D. ALLEN YOUNGMAN, called

 2       as a witness by the Defendants, before ALLISON WONG,

 3       Certified Shorthand Reporter Number 13963, for the

 4       State of California, with principal office in the

 5       County of Los Angeles, commencing at 9:33 a.m.,

 6       July 18, 2023, via Zoom videoconference.

 7                                    * * *

 8

 9    APPEARANCES OF COUNSEL:

10

11          FOR THE PLAINTIFFS:

12
               SEILER EPSTEIN LLP
13             BY:  GEORGE LEE, ESQ.
               4 Embarcadero Center
14             Floor 14
               San Francisco, California 94111-4164
15             (415)979-0500
               gml@seilerepstein.com
16

17
            FOR THE DEFENDANTS:
18

19             CALIFORNIA DEPARTMENT OF JUSTICE
               BY:  ROBERT L. MEYERHOFF, ESQ.
20             300 South Spring Street
               Suite 1702
21             Los Angeles, California 90013-1256
               (213)269-6177
22             robert.meyerhoff@doj.ca.gov

23

24

25
```

```
1        Q.  What did you advise them on?
2        A.  Primarily small unit tactics and operations.
3   To a certain extent, I would -- just general military
4   operations in the area of responsibility, which was in
5   the Mekong Delta.
6        Q.  Did you advise them on the types of weapons
7   they should be using?
8        A.  No.  That decision was far, far above my level.
9        Q.  Do you recall what types of weapons the South
10  Vietnamese army forces you advised possessed?
11       A.  Yes.  Primarily M16s, M60s, M79s, and 1911
12  pistols.
13       Q.  The M16s that the South Vietnamese forces you
14  advised possessed, do you recall the capacity of those
15  detachable magazines?
16       A.  They were nearly all 20.  Although, during my
17  tour, a number of 30-round magazines starting becoming
18  available.  But generally speaking, they were 20-round
19  magazines.
20       Q.  Do you know why 30-round magazines became
21  available?
22       A.  Because it was obviously advantageous to
23  increase the number of rounds that could be fired in
24  a -- an engagement with enemy forces.
25       Q.  Why is that advantageous?
```

1     particularly precise number at that time.  Tens of

2     millions maybe would come as close as we can get.

3          Q.  And is it fair to say that that estimate of

4     tens of millions of large-capacity magazines is not your

5     estimate?

6          A.  Yes.  I think that's a fair statement.  I think

7     that's just common knowledge within the -- the larger

8     firearms community.

9          Q.  And to be clear, you've reviewed no documents

10    that contain the conclusion that tens of millions of

11    large-capacity magazines are owned by Americans;

12    correct?

13         A.  That is correct.

14         Q.  Do you recall a specific individual who told

15    you that they had formed an opinion that tens of

16    millions of Americans owned large-capacity magazines?

17         A.  No.  I don't recall.

18         Q.  In paragraph 9, you say that "These,

19    quote/unquote, 'large-capacity magazines' are commonly

20    owned by millions of persons in the United States for a

21    variety of lawful purposes, including recreational

22    target shooting, competition, home defense, collecting,

23    and hunting."

24         Do you see that?

25         A.  Correct.  Yes.  I do.

```
 1          A.   No.   It would depend on their level of
 2   training.
 3          Q.   To the best --
 4          A.   I'd --
 5          Q.   -- of your knowledge, what is the maximum
 6   number of rounds that you believe someone with any
 7   amount of training could discharge within one minute,
 8   using that weapon and that magazine capacity?
 9          MR. LEE:   Objection.   Calls for speculation.   Lacks
10   foundation.
11          THE WITNESS:   I -- I'd have to do -- I'd have to do
12   the math on it.   I think usually we talk -- think about
13   semiautomatic fire, a sustained rate of, I think, 40 to
14   60 rounds a minute, I think.   I think -- or maybe it's
15   40 to 50 or -- round per second or a little bit over
16   that, I believe, is the sustained rate for semiautomatic
17   fire.   So it's, you know --
18   BY MR. MEYERHOFF:
19          Q.   When you say --
20          A.   -- whatever -- whatever the -- the math --
21          Q.   Oh, I'm sorry.   I interrupted you.
22          What were you going to say?
23          A.   It's whatever the math would work out to be on
24   the 200-round drum magazine, assuming a -- a -- a rate
25   of 40 to 50 rounds a minute of a sustained rate,
```

**H I N E S   R E P O R T E R S**                              **115**

1    sustained fire.

2        Q.  Does the sustained rate include the amount of

3    time it takes to reload?

4        A.  No.  That's just -- that's a function of the

5    firearm itself.

6        Q.  Taking the AR-15 as an example, along with the

7    30-round magazine, what is the maximum number of

8    magazines the average person could carry?

9        A.  An AR-15, how many magazines could you carry?

10       Q.  Yes.

11       MR. LEE:  Objection.  Lacks foundation.  Calls for

12    speculation.

13    BY MR. MEYERHOFF:

14       Q.  Yes.  That's correct.

15       A.  You're talking about putting them in a -- in a

16    backpack or a rucksack?  I would probably say 30 or 40.

17    Talking about in pouches?  Probably 18, somewhere in

18    that vicinity.

19       Q.  When you say "pouches," what do you mean?

20       A.  First example, in Vietnam, I -- I carried a

21    World War II vintage VAR magazine pouch that carried

22    eighteen 20-round magazines.  That was -- I carried it

23    in the field.  Each pouch -- it -- it was six different

24    pouches.  Each one carried three roun- -- three

25    magazines.

```
 1   County of Los Angeles,  )

 2   State of California,     )

 3

 4        I, Allison Wong, Certified Shorthand Reporter

 5   licensed in the State of California, License No. 13963,

 6   hereby certify that the deponent was by me first duly

 7   sworn and the foregoing testimony was reported by me and

 8   was thereafter transcribed with Computer-Aided

 9   Transcription; that the foregoing is a full, complete,

10   and true record of said proceeding.

11        I further certify that I am not of counsel or

12   attorney for either or any of the parties in the

13   foregoing proceeding and caption named or in any way

14   interested in the outcome of the cause in said caption.

15   The dismantling, unsealing, or unbinding of the

16   transcript will render the reporter's certificates null

17   and void.

18        In witness whereof, I have hereunto set my hand

19   this day: 25th of July.

20        __X_ Read and Signing was requested.

21        ____ Reading and signing was waived.

22        ____ Reading and signing was not requested.

23
                    _____
24                  ALLISON WONG,
                    CSR No. 13963
25
```

# Exhibit G

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM WIESE, et al.,                )
                                       )
                    Plaintiffs,        )
                                       )
          vs.                          ) **CASE NO.**
                                       )   2:17-cv-00903-WBS-KJN
ROB BONTA, et al.,                     )
                                       )
                    Defendants.        )
_____       )

## DEPOSITION OF
### WILLIAM M. WIESE

**DATE:**        Thursday, July 20, 2023

**REPORTER:**    Allison Wong, CSR No. 13963

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS
**INTERNATIONAL TOWER**
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

1

2

3               IN THE UNITED STATES DISTRICT COURT

4

5          FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7                     SACRAMENTO DIVISION

8

9

10

11   WILLIAM WIESE, et al.,        )
                                   )
12             Plaintiffs,         )
                                   )
13       vs.                       ) Case No. 2:17-cv-00903-
                                   )              WBS-KJN
14   ROB BONTA, et al.,            )
                                   )
15             Defendants.         )
     _____)

16

17                     DEPOSITION OF

18                     WILLIAM M. WIESE

19                     July 20, 2023

20                     2:42 p.m.

21

22                     via Zoom Videoconference

23

24

25

```
 1              Deposition of WILLIAM M. WIESE, called as a

 2       witness by the Defendants, before ALLISON WONG,

 3       Certified Shorthand Reporter Number 13963, for the

 4       State of California, with principal office in the

 5       County of Los Angeles, commencing at 2:42 p.m.,

 6       July 20, 2023, via Zoom videoconference.

 7                                  *  *  *

 8

 9    APPEARANCES OF COUNSEL:

10

11         FOR THE PLAINTIFFS:

12              SEILER EPSTEIN LLP
                BY:  GEORGE LEE, ESQ.
13              4 Embarcadero Center
                Floor 14
14              San Francisco, California 94111-4164
                (415)979-0500
15              gml@seilerepstein.com

16

17         FOR THE DEFENDANTS:

18
                CALIFORNIA DEPARTMENT OF JUSTICE
19              BY:  JERRY YEN, ESQ.
                300 South Spring Street
20              Suite 1702
                Los Angeles, California 90013-1256
21              (213)269-6177
                jerry.yen@doj.ca.gov
22

23          ALSO PRESENT:

24           Jenni Rosenberg

25
```

 1    situation, especially with multiple attackers, which is

 2    not uncommon.

 3        Q.  Why do you say it's not uncommon?

 4        A.  You can read the newspapers where there are

 5    home invasions with multiple perpetrators.

 6        Q.  So your testimony is that your ability to

 7    defend yourself with a firearm holding a magazine with

 8    ten rounds or less is less effective if -- in situations

 9    where there are more than one attacker?

10        A.  Yes.

11        Q.  Have you ever actually had to use LCMs in

12    self-defense?

13        MR. LEE:  Object to the form of the question.  The

14    term "use" is vague and ambiguous.

15        You may answer the question.

16        THE WITNESS:  I have never had to use a firearm of

17    any style or capacity in self-defense.

18    BY MR. YEN:

19        Q.  Has anyone in your household ever discharged a

20    firearm in self-defense?

21        A.  No.

22        Q.  Have you ever been the victim of a crime?

23        A.  Vandalism of vehicle.

24        Q.  Any other crimes that you've been a victim of?

25        A.  No.

```
 1   County of Los Angeles,  )

 2   State of California,    )

 3

 4       I, Allison Wong, Certified Shorthand Reporter

 5   licensed in the State of California, License No. 13963,

 6   hereby certify that the deponent was by me first duly

 7   sworn and the foregoing testimony was reported by me and

 8   was thereafter transcribed with Computer-Aided

 9   Transcription; that the foregoing is a full, complete,

10   and true record of said proceeding.

11       I further certify that I am not of counsel or

12   attorney for either or any of the parties in the

13   foregoing proceeding and caption named or in any way

14   interested in the outcome of the cause in said caption.

15   The dismantling, unsealing, or unbinding of the

16   transcript will render the reporter's certificates null

17   and void.

18       In witness whereof, I have hereunto set my hand

19   this day: 2nd of August.

20       __X_ Read and Signing was requested.

21       ____ Reading and Signing was waived.

22       ____ Reading and Signing was not requested.

23

24   _____
     ALLISON WONG,
25   CSR No. 13963
```

# Exhibit H

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM WIESE, et al.,     )
                             )
            Plaintiffs,     )
                             )
        vs.             ) **CASE NO.**
                             )   2:17-cv-00903-WBS-KJN
ROB BONTA, et al.,      )
                             )
        Defendants.     )
_____ )

## DEPOSITION OF
JAMES CURCURUTO

**DATE:**         Thursday, August 3, 2023

**REPORTER:**    Althea L Miller, CSR No. 33553/RPR/CCRR

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS
**INTERNATIONAL TOWER**
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

IN THE UNITED STATES DISTRICT COURT


FOR THE EASTERN DISTRICT OF CALIFORNIA


SACRAMENTO DIVISION


WILLIAM WIESE, et al.,          )
                                )
            Plaintiffs,         )
                                )
v.                              )   No. 2:17-cv-00903-WBS-KJN
                                )
ROB BONTA, et al.,              )
                                )
            Defendants.         )
_____)



        DEPOSITION OF:  JAMES CURCURUTO

        TAKEN ON:       August 3, 2023

   APPEARING REMOTELY FROM MIDDLEBURY, CONNECTICUT





STENOGRAPHICALLY REPORTED BY:
ALTHEA L. MILLER
CSR No. 3353, RPR, CCRR No. 149
File No. 107482
APPEARING REMOTELY FROM LOS ANGELES COUNTY,
CALIFORNIA

1          REMOTE DEPOSITION OF JAMES CURCURUTO,

2          taken on behalf of the Defendants, with

3          all parties, by agreement, attending the

4          deposition remotely in Los Angeles

5          and San Francisco counties, California, on

6          Thursday, August 3, 2023, at 9:33 A.M., before

7          Althea L. Miller, CSR No. 3353, RPR,

8          CCRR No. 149.

9

10   APPEARANCES:

11          For the Plaintiffs:

12             SEILER EPSTEIN LLP
               BY:  GEORGE M. LEE, ESQ.
13             Four Embarcadero Center
               14th Floor
14             San Francisco, California 94111
               (415) 979-0500
15             gml@seilerepstein.com

16

          For the Defendants:
17
               OFFICE OF THE ATTORNEY GENERAL
18             OF THE STATE OF CALIFORNIA
               BY:  ROBERT L. MEYERHOFF,
19                 Deputy Attorney General
                   JOHN D. ECHEVERRIA,
20                 Deputy Attorney General
               300 South Spring Street
21             Suite 1702
               Los Angeles, California 90013-1230
22             (213) 269-6177
               Robert.Meyerhoff@doj.ca.gov
23             John.Echeverria@doj.ca.gov

24

25   ///

1       Q   And these are executives of firearms

2  companies?

3       A   Correct.

4         The attendees of Shot Show were primarily

5  firearm manufacturers, ammunition manufacturers, and

6  any businesses that had to do with that market.

7  Retailers, ranges, parts manufacturers.

8       Q   Who did you report to in your role as

9  director of research and market development?

10      A   At the time I believe it was still

11  Randy Clark and I'm not sure of the time.

12        He had left the organization and then I had

13  reported to Chris Dolmack, and I'm not sure how --

14  how long I had reported to Randy in my new role and

15  then transferred over reporting to somebody else.

16      Q   Is it fair to say that the whole time you

17  were at NSSF, you were within the business

18  development division?

19      A   Correct.

20      Q   When was your last day of employment at

21  NSSF?

22      A   Early January 2021.  I don't recall the

23  specific date.

24      Q   Why did you leave NSSF?

25      A   They had staff reductions due to losing --

1  those should be unrestricted?

2      A    I do not have a strong opinion on that.

3      Q    Do you have a strong opinion on whether --

4  I'll just rephrase.

5          Do you have any opinion on whether

6  magazines capable of holding more than 100 rounds

7  should be restricted?

8      A    Again, I haven't really had any experience

9  with that, no personal or professional experience

10  firing or using that product or much knowledge of

11  that at all; so I don't have much of an opinion on

12  magazines holding more than 100 rounds.

13      Q    Do you have any opinion on them?

14      A    I -- I -- from the limited experience I

15  have with them, I -- I don't really -- I don't

16  really have an opinion at this time on those.

17      Q    In your opinion, would it be fair to

18  describe magazines as a firearm accessory?

19      A    Yes.

20      Q    Are you familiar with what are called

21  silencers?

22      A    Suppressor, silencer, I believe that just

23  gets connected to the top of the barrel for noise

24  abatement.  If so -- if that's your definition of

25  what you're talking about, yes, I do have knowledge

```
 1              "... the Chart further shows
 2         magazines capable of holding more
 3         than 10 rounds of ammunition
 4         accounted for approximately
 5         115 million or approximately half of
 6         all magazines owned"?
 7         Do you see that?
 8    A    I do.
 9    Q    And then in paragraph 9, you mention the
10  sources of information you used to reach that
11  conclusion; correct?
12            (The record was read.)
13            THE WITNESS:  Yes.  That is correct.
14  BY MR. MEYERHOFF:
15    Q    And the three sources of information you
16  used for this data are, 1, the ATF's AFMER report;
17  2, documents from the International Trade
18  Commission; and, 3, the opinions of firearm industry
19  professionals.  Correct?
20    A    Not documents from the ITC, but they had
21  a -- a data web that was -- so you could query the
22  system; so they weren't documents.  They were a
23  query system.
24    Q    Okay.  So the three sources of information
25  you relied on were the ATF AFMER report, information
```

**H I N E S   R E P O R T E R S**                                    124

1    from the U.S. ITC, and opinions of firearm industry

2    professionals; correct?

3        A    Correct.

4        Q    And in paragraph 10, you state:

5            "The ATF AFMER" report "data

6            provide historical figures for

7            pistols by caliber (i.e., the

8            specific ammunition cartridge for

9            which a firearm is chambered) and

10           rifles produced in the United States

11           for consumer purchase."

12           Do you see that?

13       A    Yes.

14       Q    So is it fair to say that AFMER data

15   includes the number of firearms by category that are

16   manufactured in a given year?

17       A    They do provide different categories.

18           U.S. manufacturers are required to report

19   their production to the ATF, and I believe the

20   categories are pistols, revolvers, shotguns, rifles,

21   miscellaneous.  I think those are the primary

22   categories within the AFMER reports.

23       Q    And the AFMER report deals specifically

24   with manufacture; correct?

25       A    U.S. manufacture; correct.

**H I N E S   R E P O R T E R S**                      125

 1          Q   And so it doesn't tell you how many

 2   firearms were actually purchased in a given year;

 3   correct?

 4          A   Correct.

 5          Q   And it doesn't tell you how many firearms

 6   were actually purchased by private individuals, does

 7   it?

 8          A   It does not.

 9          Q   So firearms that are manufactured in a

10   given year and cataloged in AFMER could come into

11   the possession of law enforcement agencies; correct?

12          A   I believe the AFMER report does not

13   include, like, military, but it would include some

14   law enforcement, but I'm a little -- I don't recall

15   if there was a threshold now, if they included all

16   firearms that could be purchased by law

17   enforcement -- certainly by an individual law

18   enforcement person -- but I'm not sure if it

19   included firearms produced for law enforcement

20   offices.

21          Q   So is it fair to say that firearms

22   manufactured in a given year and cataloged in AFMER

23   could come into the possession of some law

24   enforcement agencies; correct?

25          A   I believe so, yes.

1    Q   And firearms that are manufactured in a

2   given year and cataloged in AFMER could come into

3   the possession of private security organizations;

4   correct?

5    A   Yes.

6    Q   And firearms that are manufactured in a

7   given year and cataloged in AFMER could come into

8   the possession of firearms wholesalers; correct?

9    A   Correct.

10    Q   And firearms that are manufactured in a

11   given year and cataloged into AFMER could come into

12   the possession of firearms retailers; correct?

13    A   Correct.

14    Q   AFMER data does not track how many firearms

15   are -- are illegally trafficked from the

16   United States into other countries, does it?

17    A   I'm sorry.  Can you repeat that one?  I

18   want to make sure --

19    Q   AFMER data does not track how many

20   firearms, if any, are illegally trafficked from the

21   United States to another country; correct?

22    A   Correct.

23    Q   AFMER data does not track numbers of

24   magazines at all; correct?

25    A   Correct.

```
 1        Q    The ITC data that you relied on -- it
 2   doesn't tell you how many firearms were actually
 3   purchased by private citizens in a given year;
 4   correct?
 5        A    Correct.
 6        Q    And it doesn't tell you how many firearms,
 7   if any, were imported in a given year, cataloged by
 8   ITC and then came into the possession of some law
 9   enforcement agencies; correct?
10        A    Correct.
11        Q    And firearms that are imported in a given
12   year and cataloged by ITC could come into the
13   possession of private security organizations;
14   correct?
15        A    Correct.
16        Q    Firearms that were imported in a given year
17   and cataloged by the ITC could come into the
18   possession of firearm wholesalers; correct?
19        A    Correct.
20        Q    Firearms that are imported in a given year
21   and cataloged by ITC could come into the possession
22   of firearms retailers; correct?
23        A    Correct.
24        Q    And the ITC does not track how many
25   firearms, if any, are illegally trafficked from the
```

1   United States into another country; correct?

2        A    To the best of my knowledge, they do not.

3        Q    Does AFMER data track firearm attrition

4   rates, meaning the rate of firearms that cease to be

5   functional due to loss, destruction, or

6   deterioration?

7        A    It does not.

8        Q    Does ITC data track that?

9        A    It does not.

10       Q    And ITC doesn't track magazines, does it?

11       A    I don't believe so.  They have hundreds and

12  hundreds of codes and, you know, for the purpose of

13  this one, we were just looking at the firearms

14  imported minus exported, and, you know, I don't

15  recall that they -- the ITC tracks magazines or, at

16  least at the time, we didn't identify a code that

17  did.

18       Q    Are you aware of anyone in the firearms

19  industry who tracks how many people actually own

20  LCMs?

21       A    Just to confirm, LCM, large capacity

22  magazine, referring to 11-plus?

23            No.  I'm not aware of anybody.  That

24  doesn't mean that somebody doesn't.

25       Q    So in paragraph 11, you state:

**H I N E S   R E P O R T E R S**                                        129

```
 1          I, ALTHEA L. MILLER, CSR NO. 3353, RPR,

 2    CCRR NO. 149 certify:  That the foregoing proceedings

 3    were taken before me at the time and place herein set

 4    forth; at which time the witness, JAMES CURCURUTO, was

 5    duly sworn; and that the transcript is a true record of

 6    the testimony so given.

 7          Witness review, correction, and signature

 8    was

 9    (  ) by Code.            (  ) requested.

10    (  ) waived.                 (X) not requested.

11

12          The dismantling, unsealing, or unbinding of

13    the original transcript will render the Reporter's

14    Certificate null and void.

15          I further certify that I am not financially

16    interested in the action, and I am not a relative or

17    employee of any attorney of the parties, nor of any

18    of the parties.

19

20          Dated this 13th day of August, 2023.

21

22

23

24    _____
      ALTHEA L. MILLER, CSR No. 3353, RPR, CCRR No. 149

25    ///
```

# Exhibit I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM WIESE, et al.,                  )
                                        )
                Plaintiffs,     )
                                        )
        vs.                       ) **CASE NO.**
                                        )
                                        )   2:17-cv-00903-WBS-KJN
ROB BONTA, et al.,                      )
                                        )
                Defendants.     )
_____ )

## DEPOSITION OF
## LUONG Q. DANG
## VOLUME 1

**DATE:**        Thursday, July 27, 2023

**REPORTER:**    Susan Van Booven, CSR No. 3956

## VIA REMOTE VIDEO TECHNOLOGY



## HINES REPORTERS

**INTERNATIONAL TOWER**
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

**866.432.4300; 213.688.7887**

**WWW.HINESREPORTERS.COM**

1      UNITED STATES DISTRICT COURT

2    FOR THE EASTERN DISTRICT OF CALIFORNIA

3         SACRAMENTO DIVISION

4

5  WILLIAM WIESE, et al.,          )
                                   )
6            Plaintiffs,           )
                                   )
7  vs.                             )Case No. 2:17-cv-
                                   )00903-WBS-KJN
8  ROB BONTA, et al.,              )
                                   )
9            Defendants.           )
   _____)

10

11

12

13

14

15

16

17

18

19         DEPOSITION OF LUONG Q. DANG, VOLUME 1, taken

20  on behalf of the Defendants Rob Bonta and Allison

21  Mendoza, at (PARTICIPANTS REMOTE), California,

22  beginning at 12:35 p.m. and ending at 2:12 p.m., on

23  Thursday, July 27, 2023, before Susan Van Booven,

24  Certified Shorthand Reporter No. 3956.

25

```
 1   APPEARANCES:

 2

 3   For the Plaintiffs:

 4            THE DiGUISEPPE LAW FIRM, P.C.
              (PARTICIPANTS REMOTE)
 5            BY:  RAY DiGUISEPPE, ESQ.
              116 North Howe Street, Suite A
 6            Southport, North Carolina, 28461
              (910) 713-8804
 7            law.rmd@gmail.com

 8

 9   For the Defendants Rob Bonta and Allison Mendoza:

10            ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA
              (PARTICIPANTS REMOTE)
11            BY:  ROBERT L. MEYERHOFF, Deputy Attorney
              General
12            300 South Spring Street, Suite 1702
              Los Angeles, California 90013-1230
13            (213) 269-6177
              Robert.Meyerhoff@doj.ca.gov
14

15
     Also Present (Remotely):
16
              MacKENNA ALVAREZ
17

18

19

20

21

22

23

24

25
```

```
1          A     I don't quite understand your question.
2          Q     So the large-capacity magazines you own, you
3    state, were originally manufactured for a Steyr GB
4    pistol, correct?
5          A     Yes.
6          Q     Do you know -- let me rephrase.
7                You state that -- you testified earlier that
8    this pistol was manufactured in Austria, correct?
9          A     Yes.
10         Q     Do you know if it was first sold in Austria?
11         A     No.
12         Q     Do you know how it was imported into the
13   United States?
14         A     No.
15         Q     You state in paragraph 5, "As far as I am
16   aware, the magazines that I have for the Steyr GB
17   pistol were the only magazines made for that pistol."
18   Do you see that?
19         A     Yes.
20         Q     Why do you say "as far as I am aware"?
21         A     After 2000, through searches and conversations
22   with dealers and manufacturers, I've come so far to the
23   conclusion that there are no aftermarket manufacturers
24   out there for it.
25         Q     But that's only as far as you're aware,
```

1    correct?

2        A    Yes.

3        Q    The next sentence starts, "On information and

4    belief."  Do you see that?

5        A    Yes.

6        Q    What does that sentence mean to you?  I mean,

7    what does that phrase, "On information and belief,"

8    mean to you?

9        A    What I understand, what I know.

10       Q    Have you contacted the original manufacturer

11   of this pistol?

12       A    No.

13       Q    So, to be clear, you've never inquired of them

14   whether there were other magazines made for this

15   pistol, correct?

16       A    I've researched through their website.

17       Q    But you've never contacted them, correct?

18       A    No.  No.

19       Q    What is the current condition of your Steyr GB

20   pistol?

21       A    I don't understand your question.

22       Q    Would you describe the condition of your Steyr

23   pistol as new, like new, average?

24       A    Like new.

25       Q    Have you ever fired your Steyr GB pistol?

```
 1              DEPOSITION OFFICER'S CERTIFICATE

 2                 (Civ. Proc. S 2025.520 (e))

 3    STATE OF CALIFORNIA        )
                                 ) ss.
 4    COUNTY OF LOS ANGELES      )

 5

 6         I, Susan Van Booven, hereby certify:

 7         I am a duly qualified Certified Shorthand

 8    Reporter, in the State of California, holder of

 9    Certificate No. 3956 issued by the Court Reporters

10    Board of California and which is in full force and

11    effect. (Bus. & Prof. S 8016)

12         I am not financially interested in this

13    action and am not a relative or employee of any

14    attorney of the parties, or of any of the parties.

15    (Civ. Proc. S 2025.320(a))

16         I am authorized to administer oaths or

17    affirmations pursuant to California Code of Civil

18    Procedure Section 2093(b), and prior to being

19    examined, the deponent was first placed under oath

20    or affirmation by me.  (Civ. Proc. S 2025.320,

21    2025.540(a))

22         I am the deposition officer that

23    stenographically recorded the testimony in the

24    foregoing deposition, and the foregoing transcript

25    is a true record of the testimony given.  (Civ.
```

```
 1   Proc. S 2025.540(a))

 2           I have not, and shall not, offer or provide

 3   any services or products to any party's attorney or

 4   third party who is financing all or part of the

 5   action without first offering same to all parties or

 6   their attorneys attending the deposition and making

 7   same available at the same time to all parties or

 8   their attorneys.  (Civ. Proc. S 2025.320(b))

 9           I shall not provide any service or product

10   consisting of the deposition officer's notations or

11   comments regarding the demeanor of any witness,

12   attorney, or party present at the deposition to any

13   party or any party's attorney or third party who is

14   financing all or part of the action, nor shall I

15   collect any personal identifying information about

16   the witness as a service or product to be provided

17   to any party or third party who is financing all or

18   part of the action.

19

20

21   Dated:    August 11, 2023

22

23

24

25                          Susan Van Booven, CSR No. 3956
```