ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
ROBERT L. MEYERHOFF
Deputy Attorney General, State Bar No. 298196
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6177
  E-mail:  Robert.Meyerhoff@doj.ca.gov
*Attorneys for Defendants*

George M. Lee, State Bar No. 172982
SEILER EPSTEIN LLP
  4 Embarcadero Center, 14th Floor
  San Francisco, CA  94111
  Telephone:  (415) 979-0500
  E-mail: gml@seilerepstein.com

Raymond M. DiGuiseppe, State Bar No. 228457
THE DIGUISEPPE LAW FIRM, P.C.
  116 N. Howe Street, Suite A
  Southport, North Carolina 28461
  Phone: (910) 713-8804
  Fax: (910) 672-7705
  Email: law.rmd@gmail.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **WILLIAM WIESE, et al.,** <br><br> Plaintiff, <br><br> v. <br><br> **ROB BONTA, et al.,** <br><br> Defendant. | 2:17-cv-00903-WBS-KJN <br><br> **JOINT STATUS REPORT RE: STAY OF PROCEEDINGS PENDING DUNCAN v. BONTA** |

//

Pursuant to this Court's Order of October 11, 2023 [Dkt. 139], the parties to the above-entitled action hereby submit this Joint Status Re: Stay of Proceedings Pending the Ninth Circuit's decision on the merits in *Duncan v. Bonta*, No. 23-550805, as follows:

### PLAINTIFFS' POSITION

It has now been 2,362 days since this action was filed on April 28, 2017. That is longer than World War II lasted (2,194 days), or the American Civil War (1,505 days). In other words, entire regimes could be taken down and dismantled more quickly than the time it has taken for the Plaintiffs to obtain relief in their challenge of a single set of laws infringing upon a fundamental, constitutionally protected right.

This case was, in fact, filed before *Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB, which was filed in the Southern District of California on May 17, 2017. This case was also filed before *New York State Rifle & Pistol Assn. Inc. v. Bruen*, 142 S.Ct. 2111 (2022), which was filed in 2018 and which has now made it all the way to the Supreme Court and back on remand while this case has largely languished in stays.

One would think that a case challenging an infringement upon an enumerated right in the Constitution would move with more urgency. But the State of California has thrown considerable resources into obfuscating what should be a simple question: Are the magazines at issue in common use, for lawful purposes, throughout this country? And despite the State's attempts to overwhelm the answer to the question through meritless objections, reams of paid declarations, and constitutionally irrelevant history, the answer is a resounding yes. *See, e.g.*, *Duncan v. Becerra*, 970 F.3d 1133, 1147 (9th Cir. 2020) ("[N]early half of all magazines in the United States today hold more than ten rounds of ammunition. And the record shows that such magazines are overwhelmingly owned and used for lawful purposes."), reh'g en banc granted, opinion vacated, 988 F.3d 1209 (9th Cir. 2021), and on reh'g en banc sub nom. *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), cert. granted, judgment vacated, 142 S.Ct. 2895 (2022), *and vacated and remanded*, 49 F.4th 1228 (9th Cir. 2022); *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015); *Kolbe v. Hogan*, 813 F.3d 160, 174 (4th Cir. 2016); *Association of New Jersey*

*Rifle and Pistol Clubs, Inc. v. Attorney General*, 910 F.3d 106, 116–17 (3d Cir. 2018) ("The record shows that millions of magazines are owned, often come factory standard with semi-automatic weapons, are typically possessed by law-abiding citizens for hunting, pest-control, and occasionally self-defense, and there is no longstanding history of [large capacity magazine] regulation.") (cleaned up); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the . . . large-capacity magazines at issue are 'in common use' as that term was used in *Heller*."); *Heller v. Dist. of Columbia* (*Heller II*), 670 F.3d 1244, 1261 (D.C. Cir. 2011); *Wiese v Becerra*, 306 F. Supp. 3d 1190, 1195 (E.D. Cal. 2018) ("Plaintiffs have alleged, and there is no dispute in this case, that many people inside and outside of California have for many years lawfully possessed large capacity magazines for purposes such as self-defense, target shooting, and hunting.") As Judge Bumatay pointed out in his dissent from the recent order imposing a partial stay in *Duncan*:

> Moreover, we cannot ignore large-capacity magazines' ubiquity elsewhere in the country. As stated earlier, it is undisputed that over 100 million large-capacity magazines exist nationwide—with some estimates being five times that number. They account for half of all magazines nationwide. Likely tens of millions of these magazines already exist in other parts of the Ninth Circuit. Indeed, the majority even concedes that Californians purchased millions of large-capacity magazines in 2019.

*Duncan v. Bonta*, --- F.4th ---, No. 23-55805, 2023 WL 6588623, at *15 (9th Cir. Oct. 10, 2023) (Bumatay, J., dissenting from order granting partial stay pending appeal).

Standard capacity magazines, that is, ordinary magazines capable of holding more than 10 rounds of ammunition, are widely held by Americans, as the numbers are in the millions, by all estimates. The State does not dispute this fact—nor does it offer any estimates of its own—but instead attempts to nibble around the edges of this well-understood fact, for example, by claiming that the industry estimates (based upon manufacturing and export data) fail to account for such magazines that may be held by law enforcement.[1]

But this court has already found that common use is not really disputed. *See Wiese*, 306 F.

---

[1] But as one district court has observed, even if the plaintiffs did not differentiate between guns used by civilians and guns used by law enforcement officers, it would not alter the common usage analysis, as "the number of law enforcement officers in the U.S. is well under a million." *Delaware State Sportsmen's Association, Inc. v. Delaware Department of Safety and Homeland Security*, 2023 WL 2655150, at *6 n.10 (D. Del., Mar. 27, 2023).

Supp. 3d at 1195. Therefore, a path toward a decision is straightforward, as the district court found in *Duncan*. *See Duncan v. Bonta*, 2023 WL 6180472 (S.D. Cal. Sept. 22, 2023). The State has not offered any evidence to meet their burden that magazine capacity restrictions have any constitutionally relevant historical analogue from the relevant era.

The principles controlling the legal question here—"whether [a] stay may be granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy," *Mendez v. Optio Solutions, LLC*, 239 F. Supp. 3d 1229, 1232 (S.D. Cal. 2017)—compel the conclusion that any further stay would indeed be inappropriate here. "In determining whether a stay is appropriate, a district court " 'must weigh competing interests and maintain an even balance.' " *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). " 'These competing interests include the possible damage resulting from granting a stay, the hardship or inequity a party may suffer if required to go forward, and the simplifying or complicating of issues, proof, and questions of law that could result from a stay.' " *Id.* (quoting *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007)). " 'A stay should not be granted unless it appears likely the other proceedings will be conducted within a reasonable time in relation to the urgency of the claims presented to the court.' " *Id.* (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)).

Ultimately, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. This is particularly true when a stay "would be of indefinite duration," as in cases where "whatever the outcome, appeal is likely and will further delay proceedings until a final determination is made by the U.S. Supreme Court." *Mendez*, 299 F. Supp. 3d at 1233–34. A defendant's inability to "demonstrate a hardship in moving forward with inevitable discovery and motion practice" weighs even further against a stay. *Id.* at 1234. Here, whatever the outcome of the next adjudication in *Duncan*, it's certain not to be last word on the matter, and this case should not *once again* just be left hanging in balance indefinitely. And Defendants cannot demonstrate they would suffer any real hardship should this case proceed. Indeed, the parties' summary judgment motions—in which both parties have invested additional time and

resources—are fully briefed, with a decision of this Court being the only thing left in the process.

Accordingly, this case should proceed without further delay to a merits decision. As Judge Bumatay noted in his dissent from the Ninth Circuit's en banc panel decision to stay the decision in *Duncan*: "This court has repeatedly acquiesced to the violation of Californians' right to bear arms. Now it does so again, without even analyzing the merits of this case. Enough should be enough." *Duncan*, --- F.4th ---, 2023 WL 6588623, at *16 (Bumatay, J., dissenting). We agree. The State has put up years of roadblocks, denying plaintiffs a ruling on their constitutional claims. The case has been fully briefed and is ripe for a decision.

### DEFENDANTS' POSITION

Plaintiffs challenge the State's large-capacity magazine restrictions in California Penal Code Section 32310 under the Second Amendment, and they seek injunctive relief. In *Duncan v. Bonta*, No. 17-cv-1017, Dkt. 149 (S.D. Cal. Sept. 22, 2023), a district court in the Southern District of California issued a decision permanently enjoining the same provision challenged in this case, Section 32310, on Second Amendment grounds. The Attorney General has appealed that decision and sought an emergency stay of the district court's permanent injunction. An en banc panel of the Ninth Circuit stayed the permanent injunction pending appeal and is poised to hear the merits of the appeal at an oral argument to be scheduled the week of March 18, 2024. *Duncan v. Bonta*, No. 23-55805, Dkts. 12, 13 (9th Cir. Oct. 11, 2023). The issues presented in that appeal are nearly identical to the issues presented in this case, and a decision from the en banc panel in that case would likely inform the proper disposition of the claims asserted by Plaintiffs here.

In view of those circumstances, it may best serve the interests of efficiency and judicial economy for the Court to stay this case pending resolution of *Duncan v. Bonta*, given that the en banc court will hold a hearing on the merits in the near future and its decision will likely control the outcome of this case. At the same time, if the Court prefers to proceed to a hearing on the cross-motions for summary judgment, Defendants are prepared to proceed and stand ready to litigate the cross-motions at the hearing on October 30, 2023.

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated: October 16, 2023 | SEILER EPSTEIN LLP |
|   | */s/ George M. Lee* |
|   | George M. Lee<br>*Attorneys for Plaintiffs* |
| Dated: October 16, 2023 | ROB BONTA<br>Attorney General of California<br>MARK R. BECKINGTON<br>Supervising Deputy Attorney General |
|   | */s/ Robert L. Meyerhoff* |
|   | ROBERT L. MEYERHOFF<br>Deputy Attorney General<br>*Attorneys for Defendants* |